1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

   SENTIUS INTERNATIONAL, LLC,    )  C-13-00825 PSG
6                                  )
                   PLAINTIFF,      )  SAN JOSE, CALIFORNIA
7                                  )
            VS.                    )  JANUARY 8, 2014
8                                  )
   MICROSOFT CORPORATION,          )  PAGES 1-139
9                                  )
                   DEFENDANT.      )
10  _____)

11

12            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
13           UNITED STATES MAGISTRATE JUDGE

14  A P P E A R A N C E S:

15  FOR THE PLAINTIFF:    SUSMAN GODFREY
                          BY:  MAX L. TIBBLE
16                             SANDEEP SETH
                               VINEET BHATIA
17                        1000 LOUISIANA STREET, SUITE 5100
                          HOUSTON, TEXAS  77002
18

19  FOR THE DEFENDANT:    FISH & RICHARDSON
                          BY:  JONATHAN J. LAMBERSON
20                        500 ARGUELLO STREET, SUITE 500
                          REDWOOD CITY, CALIFORNIA  94063
21

    ALSO PRESENT:         MARK BOOKMAN
22                        ISABELLA FU

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
 1     SAN JOSE, CALIFORNIA                    JANUARY 8, 2014
 2                    P R O C E E D I N G S
 3       (COURT CONVENED AT 9:44 A.M.)
 4           THE COURT:  MR. RIVERA, WOULD YOU PLEASE CALL THE
 5     MATTER THAT'S BEEN SPECIALLY SET?
 6           THE CLERK:  YES, YOUR HONOR.
 7       CALLING SENTIUS INTERNATIONAL, LLC VERSUS MICROSOFT
 8     CORPORATION, CASE NUMBER CV-13-825 PSG, MATTER ON FOR TUTORIAL
 9     AND CLAIM CONSTRUCTION.
10       COUNSEL, PLEASE STATE YOUR APPEARANCES.
11           MR. TRIBBLE:  YOUR HONOR, MAX TRIBBLE FOR THE
12     PLAINTIFF SENTIUS.  WITH ME IS MY CO-COUNSEL, SANDEEP SETH.
13           THE COURT:  MR. TRIBBLE, GOOD MORNING.  AND GOOD
14     MORNING TO YOUR TEAM AS WELL.
15           MR. TRIBBLE:  AND MY PARTNER, VINEET BHATIA, WILL BE
16     HERE.  HE THOUGHT WE STARTED AT 10:00, BUT WE'RE READY TO GO
17     EARLY, BUT HE MAY COME IN.
18           THE COURT:  I LOOK FORWARD TO SEEING HIM.
19       AND I WILL ALSO SAY I APPRECIATE EVERYONE'S WILLINGNESS TO
20     START EARLY.  IT CERTAINLY HELPS ME.  THANK YOU.
21       COUNSEL.
22           MR. LAMBERSON:  GOOD MORNING, YOUR HONOR.
23     JONATHAN LAMBERSON, FISH & RICHARDSON, FOR MICROSOFT
24     CORPORATION.
25           THE COURT:  MR. LAMBERSON, GOOD MORNING.
```

1          MR. LAMBERSON:  ALSO HERE IS MS. ISABELLA FU,

2     ASSOCIATE COUNSEL FOR MICROSOFT.

3          THE COURT:  GOOD MORNING TO YOU AS WELL, MS. FU.

4        ALL RIGHT.

5          MR. TRIBBLE:  YOUR HONOR, PARDON ME.  I SHOULD ALSO

6     SAY THAT MR. MARK BOOKMAN IS HERE TODAY.

7          THE COURT:  GOOD MORNING, MR. BOOKMAN.

8          MR. TRIBBLE:  HE'S THE CEO OF SENTIUS AND THE MAIN

9     INVENTOR ON THE PATENTS.

10          THE COURT:  WELCOME TO YOU AS WELL, SIR.

11        ALL RIGHT.  WELL, I THINK WE ALL UNDERSTAND WHY WE'RE

12     HERE, WHICH IS OF COURSE FOR THE TUTORIAL AND CLAIM

13     CONSTRUCTION.

14        I WANT TO JUST BEGIN, IF I COULD, BY SAYING I APPRECIATE

15     THE BRIEFING AND THE MATERIALS THAT WERE SUBMITTED IN ADVANCE.

16     I FOUND THEM EXTREMELY HELPFUL OVER THE LAST FEW DAYS IN

17     PREPARING.

18        I WOULD CERTAINLY BENEFIT FROM SOME BROADER DISCUSSION OF

19     THE BACKGROUND TECHNOLOGY BEFORE WE GET INTO THE NITTY GRITTY

20     OF THIS COLUMN AND THIS LINE AND SO ON AND SO FORTH.

21        HAVING SAID THAT, I'M CERTAINLY OPEN TO HOWEVER YOU ALL

22     WISH TO STRUCTURE THIS EXERCISE.

23        I HAVE CLEARED AS MUCH OF THE DAY AS WE NEED, SO TIME

24     WON'T BE A PROBLEM FROM MY PERSPECTIVE, BUT I'M REALLY HAPPY TO

25     TAKE MY LEAVE FROM YOU ALL IN TERMS OF HOW YOU WANT TO PROCEED.

1       I WOULD SUGGEST, WHEN WE GET TO THE CLAIM TERMS, THAT IT

2   WOULD BE MOST EFFICIENT FOR ME TO TAKE EACH TERM UP ONE BY ONE,

3   AND IN THE ABSENCE OF ANY DISAGREEMENT BETWEEN THE PARTIES, I

4   NORMALLY FIND IT HELPFUL TO WORK THROUGH THE TERMS IN THE ORDER

5   IN WHICH THEY'RE ADDRESSED IN THE BRIEFS.

6       WITH THAT, MR. TRIBBLE OR MR. LAMBERSON, I DON'T KNOW IF

7   YOU HAVE ANY THOUGHTS ABOUT HOW TO PROCEED.

8           MR. TRIBBLE:  I THINK WE BOTH AGREE WITH THAT

9   APPROACH, YOUR HONOR.

10          MR. LAMBERSON:  YES.

11          THE COURT:  OKAY.  DOES THAT WORK?  THEN LET'S GET AT

12  IT.

13          MR. TRIBBLE:  NOW, AS TO THE TUTORIAL, WE

14  SUBMITTED --

15          THE COURT:  I HAVE IT, AND I HAVE REVIEWED IT.

16          MR. TRIBBLE:  SO I GUESS I'M A LITTLE BIT, EXCUSE ME,

17  AT A LOSS.  I MEAN, DID YOU HAVE QUESTIONS OR DO YOU WANT TO GO

18  OVER IT AGAIN?

19          THE COURT:  WELL, I CERTAINLY DON'T NEED YOU TO MARCH

20  ME THROUGH THE MATERIALS YOU'VE SUBMITTED.  I'VE GOT THEM AND I

21  APPRECIATE THEM.

22      I DID HAVE A COUPLE OF BIGGER PICTURE QUESTIONS, IF I

23  COULD, AND IF THESE ARE ISSUES THAT ARE MOST EFFICIENTLY

24  ADDRESSED GOING THROUGH THE TERMS ONE BY ONE, WE CAN DO THAT.

25          MR. TRIBBLE:  I THINK IT WOULD BE.

```
 1                 THE COURT:  OKAY.

 2                 MR. TRIBBLE:  I DON'T --

 3                 MR. LAMBERSON:  I MEAN, IF THERE ARE SPECIFIC ISSUES,

 4      YOUR HONOR, THAT YOU WANTED US TO ADDRESS FIRST, I THINK THAT

 5      MAKES SENSE.

 6                 THE COURT:  WHY DON'T WE JUST MARCH THROUGH THE

 7      TERMS?  I'M SURE I'LL HAVE PLENTY OF OPPORTUNITIES TO ADDRESS

 8      THEM IN THAT CONTEXT.

 9                 MR. TRIBBLE:  OKAY.  LET'S GO AHEAD AND MARCH RIGHT

10      THROUGH IT.

11             YOUR HONOR, THE FIRST TERM IS "DATABASE," AND WHAT WE'VE

12      DONE IN THIS TABLE IS WE'VE SET OUT THE TWO PROPOSED

13      CONSTRUCTIONS, AND WE'VE HIGHLIGHTED THE PART OF THE MICROSOFT

14      CONSTRUCTION THAT WE FIND OBJECTIONABLE.

15             SENTIUS PROPOSES THAT A DATABASE IS SIMPLY "A COLLECTION

16      OF DATA WITH A GIVEN STRUCTURE FOR ACCEPTING, STORING AND

17      PROVIDING, ON DEMAND, DATA FOR AT LEAST ONE USER," AND I'LL

18      TELL YOU WHERE THAT CONSTRUCTION CAME FROM IN A SECOND.

19             MICROSOFT'S CONSTRUCTION IS -- IT'S MUCH LONGER AND

20      NARROWER.  IT REQUIRES RECORDS AND FIELDS WHICH, OF COURSE,

21      WOULD BE TERMS THAT ARE UNDEFINED FOR THE JURY, AND THEN IT

22      GIVES AN EXAMPLE THAT EVEN NARROWS IT BEYOND WHAT JUST THE

23      FIRST SENTENCE WOULD MEAN, AND WE'LL COME BACK TO THAT A LITTLE

24      LATER.

25             SENTIUS' CONSTRUCTION COMES FROM JUDGE ARMSTRONG'S
```

1    ADOPTION IN THE FLYSWAT CASE OF THE TWO PARTIES' AGREED

2    CONSTRUCTION.

3              THE COURT:  UM-HUM.

4              MR. TRIBBLE:  IT'S NOT DISPOSITIVE, OF COURSE.  IT IS

5    INFORMATIVE FOR THE COURT THAT JUDGE ARMSTRONG DID ADOPT THIS,

6    AND IT'S INFORMATIVE THAT THE TWO COMPETING PARTIES IN THAT

7    CASE BOTH AGREED TO THIS CONSTRUCTION.

8              THE COURT:  YEAH.  THERE WAS NO DEBATE IN THAT CASE,

9    RIGHT?

10             MR. TRIBBLE:  THAT'S CORRECT.

11             THE COURT:  THIS WAS SUBMITTED.

12             MR. TRIBBLE:  YES.  AND SO IT'S NOT DISPOSITIVE, BUT

13   IT IS INFORMATIVE.

14        WE'VE PUT FORWARD IN OUR BRIEFING DICTIONARY DEFINITIONS.

15   THIS IS THE 1994 IBM DICTIONARY OF COMPUTING, "A COLLECTION OF

16   DATA WITH A GIVEN STRUCTURE."  YOU CAN SEE IT'S FAIRLY SIMILAR,

17   ALMOST IDENTICAL.

18        AND SIMILARLY, THE IEEE DEFINITION IS CONSISTENT WITH THIS

19   CONSTRUCTION, JUST "A COLLECTION OF LOGICALLY RELATED DATA

20   STORED TOGETHER."

21        NOW, WE CITED OTHER COURT'S CONSTRUCTIONS OF THE TERM

22   "DATABASE," AND THEY'RE SIMILARLY -- THEY'RE VERY SIMILAR, "A

23   COLLECTION OF DATA WITH A GIVEN STRUCTURE," "A STRUCTURED SET

24   OF DATA," "A STRUCTURED SET OF DATA HELD IN A COMPUTER."

25             CLEARLY SITTING IN THE ABSTRACT, THE TERM "DATABASE," IT'S

```
 1        A VERY BROAD TERM.  THERE ARE DIFFERENT KINDS OF DATABASES.

 2             AND SO TO ME THE QUESTION AT THE END OF THE DAY IS, HAS

 3        SENTIUS DONE SOMETHING IN THE SPEC, OR THE PROSECUTION HISTORY,

 4        THAT CONSTITUTES A CLEAR DISAVOWAL OF THE FULL SCOPE OF

 5        COVERAGE OF THIS CLAIM TERM?

 6             AND WE SUBMIT THAT WE HAVEN'T.

 7             AND SO -- AND IN FACT, ALONG THOSE LINES, MICROSOFT, THEY

 8        CITE A COURT'S DEFINITION FROM THE FEDERAL CIRCUIT WHERE THEY

 9        GAVE AN EXTREMELY NARROW DEFINITION OF, I THINK IT WAS

10        "ELECTRONIC DATABASE."

11             BUT THE POINT ABOUT FINISAR IS THAT INVENTION WAS ABOUT

12        SERVING UP ALL KINDS OF MEDIA AND IT REQUIRED THAT IT BE A

13        RELATIONAL DATABASE WITH INDICES INDEXING THE DATA EVERY WHICH

14        WAY SO IT WOULD BE ABLE TO ACCESS AND SERVE UP ALL OF THE DATA.

15        IT WAS THE ESSENCE OF THE INVENTION.

16             THAT NARROWING TYPE OF FEATURE IS JUST NOT PRESENT IN THE

17        SENTIUS PATENT AND FILE HISTORY.

18             THE COURT:  SO I TAKE IT WHAT YOU'RE SAYING ON THIS

19        POINT, MR. TRIBBLE, IS CERTAINLY A RELATIONAL DATABASE COULD

20        QUALIFY AS THAT TERM HAS BEEN USED IN THIS PATENT, BUT IT'S NOT

21        THE ONLY WAY IN WHICH THE DATA CAN BE STRUCTURED OR ARRANGED AS

22        DISCLOSED?

23             MR. TRIBBLE:  THAT'S EXACTLY RIGHT, YOUR HONOR.

24             AND SO -- IN FACT, YOU'RE ONE STEP AHEAD OF ME, SO LET'S

25        LOOK AT FIGURE 1 IN THE '731.
```

1      AND SO YOU'LL SEE -- LET'S SEE IF I HAVE A POINTER.  SO

2  YOU'LL SEE -- LET'S WALK THROUGH THIS.  THE INVENTION STARTS

3  WITH A TEXT FILE OR A SYNCHRONIZED AUDIO/VISUAL TEXT FILE,

4  OKAY?  AND SO CLEARLY THE SYNCHRONIZED AUDIO/VISUAL TEXT

5  FILE -- I SUPPOSE SINCE IT'S SYNCHRONIZED, YOU HAVE TEXT

6  SYNCHRONIZED WITH THE AUDIO/VISUAL.  THERE'S SOME KIND OF, YOU

7  KNOW, DATABASE THERE THAT KEEPS TRACK OF THAT SYNCHRONIZATION.

8      BUT IT ALSO -- THE PREFERRED EMBODIMENT TALKS ABOUT JUST

9  IMPORTING A TEXT FILE.  IT SHOWS A JAPANESE TEXT FILE.  THAT'S

10  WHAT GOES IN ON THE FRONT END.

11      AND THE DISPUTE IS -- THIS IS AN ODD CASE.  I'VE NEVER

12  SEEN A CASE BEFORE WHERE THE DEFENDANT'S BRIEFING -- YOU KNOW,

13  IT'S ALL BLACK LETTER LAW THAT YOU DON'T CONSTRUE THE CLAIMS IN

14  LIGHT OF THE ACCUSED PRODUCTS.

15      BUT MOST OF THE BRIEFING AND PRESENTATION OF MICROSOFT IS

16  BASICALLY COMPARING MICROSOFT WORD AND SAYING, "WELL, WE'RE

17  DIFFERENT."  AND IT'S JUST -- I THINK IT'S NOT SOMETHING THAT

18  SHOULD BE CONSIDERED IN CLAIM CONSTRUCTION.

19      AT ANY RATE, JUST TO WALK YOU THROUGH IT, LET'S TAKE THE

20  CASE OF A TEXT FILE.  IT GOES TO THE VISUAL EDITOR, ITEM 19,

21  AND THE VISUAL EDITOR CUTS THE WORDS IN THE TEXT FILE INTO

22  EITHER GROUPS OF SINGLE WORDS AND/OR PHRASES, GROUPS OF WORDS.

23          THE COURT:  THAT'S THE PARSING WE'RE GOING TO TALK

24  ABOUT IN A LITTLE BIT?

25          MR. TRIBBLE:  CORRECT.

```
 1              THE COURT:  OKAY.

 2              MR. TRIBBLE:  BUT IT'S REFERRED TO AS CUTTING IN THE

 3      PATENT, AND I'LL SHOW YOU THIS.

 4          BUT THE RESULT COMING OUT OF THAT CUTTING PROCESS IS THE

 5      WORDIFIED DATABASE, WHICH IS HIGHLIGHTED THERE, ITEM 20.  SO

 6      THERE'S A WORDIFIED DATABASE, WHICH IS JUST THE TEXT FILE CUT

 7      UP.

 8          ON THE OTHER HAND, THERE'S A RELATIONAL DATABASE, 15, THAT

 9      HAS ALL THE LINKABLE OUTSIDE RESOURCE MATERIALS THAT CAN BE

10      LINKED TO THIS, AND WE'LL GET TO THIS IN A SECOND, BUT

11      EVENTUALLY IT GOES DOWN TO THIS LINKAGE AND ALL THIS, AND IT'S

12      DOWN HERE WHERE IT CREATES ITEM 35, WHICH IS THE LOOK-UP TABLE.

13      THAT'S ANOTHER -- IT CALLS IT A LOOK-UP TABLE, BUT OBVIOUSLY

14      THAT IS A TABLE -- THAT IS A DATABASE AS WELL.

15              THE COURT:  UM-HUM.

16              MR. TRIBBLE:  AND I THINK THE ESSENCE OF THE DISPUTE

17      IS THAT MICROSOFT IN ITS BRIEFING, THEY SEEM TO SAY THAT WHAT

18      WE'RE DISCLOSING AND TALKING ABOUT IS A TABLE FORMAT AND NO ONE

19      WOULD EVER THINK OF A MICROSOFT WORD DOCUMENT AS A TABLE.  I

20      MEAN, THAT'S BASICALLY THEIR ARGUMENT, COMPARING IT TO THE

21      ACCUSED PRODUCT.

22          AND THE FACT OF THE MATTER IS THERE ARE MANY DATABASES

23      DISCLOSED.

24          AND THEN THE IRONY OF IT IS THAT THIS TEXT FILE THAT

25      THEY'RE COMPLAINING ABOUT, AT THE END OF THE DAY, AT THE END OF
```

1    THEIR BRIEF, THEY ADMIT THAT A TEXT FILE CAN BE A DATABASE,

2    WHICH SEEMS TO CONTRADICT THEIR EARLIER BRIEFING.

3        BUT AT ANY RATE, THE -- THEY HAVE TO ADMIT THAT IN LIGHT

4    OF THE DEPENDENT CLAIMS, BUT ALSO IN LIGHT OF THE FACT THAT THE

5    PREFERRED EMBODIMENT IS A TEXT FILE, IT'S A JAPANESE TEXT FILE

6    THAT'S GOING IN.

7        AND SO THEIR CONSTRUCTION, IF IT MEANS WHAT THEY SAY,

8    WOULD EXCLUDE THE PREFERRED EMBODIMENT WHICH, UNDER VITRONICS,

9    IS RARELY CORRECT.

10       SO HERE'S THE SECTION IN THE SPEC IN COLUMN 7 THAT

11   DESCRIBES THE CUTTING PROCESS AND THE LINKING PROCESS.

12       AND SO THIS DESCRIBES HOW THE VISUAL EDITOR TAKES THE TEXT

13   FILE AND MAKES THE CUTS RESULTING IN THE WORDIFIED DATABASE,

14   AND IT SAYS YOU POINT AND CLICK, DIVIDE THE TEXT INTO

15   INDIVIDUAL COMPONENTS OF TEXT THAT ARE LINKED WITH THE

16   ADDITIONAL REFERENCE MATERIAL.

17       THOSE PIECES ARE GOING TO BE LINKED, BUT THEY'RE NOT

18   LINKED AT THIS STAGE.  THEY'RE NOT LINKED BY THE VISUAL EDITOR.

19   THAT OCCURS THROUGH THE LINK ENGINE IN THE SUBSEQUENT PROCESS.

20           THE COURT:  SO IT'S ACTUALLY SEVERAL STEPS FURTHER

21   DOWN THE LINE?

22           MR. TRIBBLE:  THAT'S CORRECT.

23       AND THE ORIGINAL TEXT IS PROVIDED BY A PUBLISHER IN ASCII

24   FORMAT OR SOME OTHER FORMAT, AND THEN THE TEXT IS DIVIDED UP

25   INTO COMPONENT WORDS OR PHRASES IN PREPARATION FOR THE NEXT

1      STEP.

2           SO NOW LET'S GO TO THE NEXT STEP.

3           WE HAVE THE LINKING PROCESS.  THE LINKING PROCESS,

4      ACCORDING TO THE SPECIFICATION, TAKES THE TEXT AFTER THE WORD

5      CUT PROCESS AND LINKS IT TO AN EXTERNAL RESOURCE.  SO THIS IS

6      WHERE THE LINKS ARE BEING CREATED.

7           THE DATABASE 20, WHICH IS THE WORDIFIED DATABASE, SOURCES

8      A GRAMMAR PARSER AND A LINK ENGINE THAT BUILDS AN INDEX WHICH

9      IN TURN LOCATES EACH REFERENCE IN THE SOURCE MATERIAL.

10          AND IN THE CASE OF LANGUAGE LEARNING, IT GOES ON.

11          AT ANY RATE, HERE IS WHERE THE LINKING PROCESS IS

12     BEGINNING, AND SO THAT IS AFTER THE CREATION OF THE WORDIFIED

13     DATABASE, SO THERE'S ANOTHER DATABASE THAT -- I THINK THAT

14     MICROSOFT WOULD LEAVE THE IMPRESSION THAT THE ONLY THING THAT

15     COULD BE A DATABASE IS SOMETHING WHICH IS A TABLE FORMAT WHERE

16     YOU HAVE, HERE'S THE PIECE AND HERE'S THE LINK, AND THAT'S THE

17     LOOK-UP TABLE.

18          WE HAVE A LOOK-UP TABLE.  THAT'S AT THE BOTTOM LEFT OF

19     FIGURE 31, ITEM 35.

20          BUT I JUST WANT TO POINT OUT THERE ARE MANY DATABASES IN

21     HERE.  THE TEXT FILE, AS MICROSOFT ADMITS, CAN BE A DATABASE.

22     AND THEY HAVE TO ADMIT THIS, NOT ONLY BECAUSE OF THE PREFERRED

23     EMBODIMENT, BUT WE HAVE THESE DEPENDENT CLAIMS, AND IT MAKES

24     CLEAR, THE ELECTRONIC DATABASE CAN BE A RELATIONAL DATABASE OR

25     IT COULD BE SOME OTHER TYPE OF FILE, INCLUDING AN ELECTRONIC

1    TEXT.

2         OKAY.  AND "ELECTRONIC" IN THE CONTEXT OF THIS, THEY'RE

3    TALKING ABOUT ELECTRONIC, STORED IN MEMORY, STORED

4    MAGNETICALLY.

5         THE COURT:  BUT IN ANY EVENT, HOWEVER IT'S STORED --

6    I'M SORRY, WOULD YOU GO BACK TO SLIDE 11 -- WHAT THIS SHOWS

7    BETWEEN THE TEXT FROM COLUMN 7 AND THE FIGURE WHICH YOU'VE

8    HIGHLIGHTED ON THE LEFT-HAND SIDE IS THAT WELL BEFORE WE GET TO

9    THE POINT WHERE THERE IS A RELATION ESTABLISHED WITH LINKS,

10   THERE ARE DATABASES.

11        MR. TRIBBLE:  CORRECT.  THAT'S CORRECT, YOUR HONOR.

12   THAT'S MY POINT.  THANK YOU.

13        AND THEN HERE WE JUST CITED THE PART OF THE MICROSOFT

14   BRIEF WHERE THEY MAKE CLEAR THAT A TEXT FILE CAN BE A DATABASE

15   UNDER THEIR PROPOSED CONSTRUCTION, THEY SAY SO LONG AS IT IS

16   ORGANIZED USING FIELDS AND RECORDS.

17        AND IT'S JUST -- AGAIN, IF WE HAD THE PROPER CONSTRUCTION

18   OF FIELDS AND RECORDS, MAYBE THAT WOULD BE OKAY.

19        WE JUST THINK IT'S CONFUSING AND UNNECESSARY IN THIS CASE

20   TO GO INTO THAT LEVEL OF DETAIL.

21        WHAT THEY CITE IN THEIR FOOTNOTE 6 FOR THE STATEMENT THAT

22   THEIR CONSTRUCTION, TO BE FILLED DIRECTLY, IS THEY CITE A

23   DOCUMENT THAT WE HAD FOUND WHERE IT SAYS, ACCORDING TO THIS

24   PERSON, THE SIMPLEST POSSIBLE DATABASE CONSISTS OF AN

25   UNFORMATTED TEXT FILE IN WHICH EACH LINE CORRESPONDS TO A

1    RECORD, AND THEN THE SEPARATED PIECES OF IT ARE THE FIELDS.

2    AND SO A TEXT FILE, YOU KNOW, COULD BE A DATABASE.

3         AND SO, YOU KNOW, JUST GOING BACK TO IT, THE DEPENDENT

4    CLAIM, THE DESCRIPTION OF THE CUTTING PROCESS, THE CREATION OF

5    THE WORDIFIED DATABASE ALL MAKE CLEAR THAT THE TERM WAS USED

6    BROADLY AND GENERICALLY.  THERE'S NOTHING TO INDICATE THAT WE

7    HAVE MADE A CLEAR DISAVOWAL OF THE FULL SCOPE OF CLAIM

8    COVERAGE.

9         THANK YOU, YOUR HONOR.

10         THE COURT:  THANK YOU, MR. TRIBBLE.

11    MR. LAMBERSON.

12         MR. LAMBERSON:  GOOD MORNING, YOUR HONOR.

13         THE COURT:  GOOD MORNING AGAIN.

14         MR. LAMBERSON:  LET ME SEE IF MY CLICKER WILL WORK.

15    IT WILL.

16         THE KEY DISPUTE HERE, YOUR HONOR, THE KEY OBJECTION WE

17    HAVE TO SENTIUS' CONSTRUCTION IS THAT IT'S JUST INCREDIBLY

18    BROAD TO THE POINT OF BEING OVERBROAD AND INDEFINITE.

19         IF YOU LOOK AT SENTIUS' CONSTRUCTION -- I THINK WE ALL

20    AGREE THAT A DATABASE IS A STRUCTURE.  IT'S A STRUCTURE.

21         AND YET, SENTIUS DOESN'T SAY WHAT THAT STRUCTURE IS.  IT

22    SAYS IT'S A COLLECTION OF DATA WITH A GIVEN STRUCTURE.

23         WELL, WHAT IS THAT STRUCTURE?  IT JUST BEGS THE QUESTION.

24         AND IN FACT, WE CAN SEE THE BREADTH OF THAT WHEN WE LOOK

25    AT SENTIUS' CONTENTIONS.  WHAT WE SEE THEY'RE ACCUSING IS A

1    WORD DOCUMENT IN MEMORY AS BEING A DATABASE; THEY'RE ACCUSING

2    AN OUTLOOK E-MAIL AS BEING A DATABASE; THEY'RE ACCUSING A

3    POWERPOINT SLIDE AS BEING A DATABASE; THEY'RE ACCUSING A ONE

4    NOTE FILE AS BEING A DATABASE.  ONE NOTE IS BASED ON HTML, I

5    BELIEVE.

6         SO ALL OF THESE THINGS HAVE A STRUCTURE AND, UNDER

7    SENTIUS' CONSTRUCTION, THEY'RE SAYING THAT IS A DATABASE.

8         AND FRANKLY, ANY OTHER FILE.  I MEAN, EVERY FILE STORED ON

9    A COMPUTER HAS SOME GIVEN STRUCTURE.  EVERY FILE STORES DATA

10   AND CAN RETRIEVE DATA.  SO UNDER SENTIUS' CONSTRUCTION, WE JUST

11   DON'T KNOW WHERE TO DRAW THE LINES, WHAT IS A DATABASE AND WHAT

12   IS NOT.

13        SO WHAT WE'VE TRIED TO DO, YOUR HONOR, IS LOOK TO THE

14   INTRINSIC RECORD AND SEE WHAT DOES THE INTRINSIC RECORD

15   DISCLOSE AS SORT OF THE BASELINE FOUNDATIONAL STRUCTURE FOR A

16   DATABASE.

17        AND I JUST WANT TO CLARIFY, YOUR HONOR.  WE'RE NOT SAYING

18   IT HAS TO BE RELATIONAL.  WE'RE NOT SAYING THERE HAS TO BE

19   TABLES.  THAT IS NOT OUR CONSTRUCTION.

20        OUR CONSTRUCTION IS RECORDS AND FIELDS AS SORT OF THE

21   FOUNDATIONAL STRUCTURE FOR A DATABASE FORMAT.

22        NOW --

23        THE COURT:  MR. LAMBERSON, ON THAT POINT, LET ME MAKE

24   SURE I APPRECIATE WHAT YOU'RE SAYING.  YOU'RE SAYING THAT YOU

25   CAN HAVE RECORDS AND FIELDS TO STRUCTURE DATA WITHOUT THERE

```
 1      NECESSARILY BEING A TABLE, WITHOUT THERE NECESSARILY BEING A

 2      RELATIONAL DATABASE?

 3              MR. LAMBERSON:  ABSOLUTELY, YOUR HONOR.

 4          AND SORT OF THE SIMPLEST EXAMPLE THAT WE'VE TALKED ABOUT,

 5      IT COULD POTENTIALLY BE A TEXT FILE WHERE YOU HAVE DELIMITED

 6      TEXT, AND WE'LL GET TO THIS IN A SECOND.

 7          BUT THAT IS THE POINT, YOUR HONOR.  YOU DON'T HAVE TO

 8      HAVE -- RELATIONAL USUALLY CONNOTES MULTIPLE TABLES WHERE YOU

 9      HAVE THIS FIELD RELATES TO THIS FIELD.

10          NOT REQUIRED.  OUR CONSTRUCTION, YOU COULD HAVE A SINGLE

11      RECORD WITH A SINGLE FIELD POTENTIALLY.  I SUPPOSE OUR

12      CONSTRUCTION DOES SAY RECORDS AND FIELDS, SO PERHAPS IT'S

13      MULTIPLE.

14          BUT IN ANY EVENT, THE KEY POINT IS RECORDS AND FIELDS --

15      AND THERE SEEMS TO BE SOME CONFUSION, ON SENTIUS' PART AT

16      LEAST, AND I'D LIKE TO CLEAR THAT UP.  I THINK IT'S A FAIRLY

17      STRAIGHTFORWARD CONCEPT.  RECORD IS A SINGLE ENTRY IN THE

18      DATABASE, IT COULD BE MADE UP OF ONE OR MORE FIELDS; AND A

19      FIELD IS A SINGLE PIECE OF DATA WITHIN THE RECORD.

20          OUR CONSTRUCTION WE THINK CLARIFIES THAT -- I'LL GET TO

21      WHERE WE TOOK THAT FROM IN A MOMENT, IT'S FROM A DICTIONARY

22      DEFINITION -- AND THAT'S JUST MEANT TO BE ILLUSTRATIVE.

23          I THINK OUR CONSTRUCTION SAYS "FOR EXAMPLE."  WE'RE JUST

24      TRYING TO EXPLAIN IT TO THE JURY.  WE'RE NOT TRYING TO SUGGEST

25      THAT THE RECORD HAS TO LOOK LIKE OUR EXAMPLE.  IT'S JUST AN
```

```
 1        EXAMPLE.

 2                THE COURT:  SO, FOR EXAMPLE, IN YOUR CONSTRUCTION

 3        WHEN YOU SAY "A FIELD WOULD BE THE STREET ADDRESS FIELD,

 4        NAMELY, 12 WEST 21ST STREET," YOU'RE NOT --

 5                MR. LAMBERSON:  IT'S JUST AN EXAMPLE.

 6                THE COURT:  -- SUGGESTING THAT THAT'S THE ONLY WAY IN

 7        WHICH A FIELD COULD BE SET OUT?

 8                MR. LAMBERSON:  ABSOLUTELY RIGHT.  AND WE COULD

 9        CHANGE IT TO SAY "A FIELD, FOR EXAMPLE, COULD BE" -- IN THIS

10        EXAMPLE, "A FIELD WOULD BE" MAY BE A BETTER MAY TO SAY IT.  BUT

11        WE'RE JUST TRYING TO PROVIDE AN EXAMPLE OF RECORDS AND FIELDS.

12            AND LET ME GET TO THE INTRINSIC RECORD BECAUSE THAT REALLY

13        IS WHERE WE DRAW THIS FROM.  THIS IS NOT SOMETHING WE'RE MAKING

14        UP OBVIOUSLY, OR PULLING FROM DICTIONARY DEFINITIONS.

15            THIS IS THE '985 PATENT -- AND JUST TO CLARIFY AT THE

16        START HERE, THE '985 AND THE '349 HAVE THE SAME SPECIFICATION,

17        THEY'RE ONE FAMILY, SO IN OUR SLIDES WE'VE ONLY CITED TO THE

18        '985, BUT YOU CAN FIND THE SAME DISCLOSURE IN THE OTHER PATENT.

19            SAME THING FOR THE RE-ISSUED PATENT.  SAME SPECIFICATION,

20        SO WE'LL CITE TO THE '731 RE-ISSUED PATENT.

21            SO LOOKING AT THE '985 PATENT, WE HAVE HERE A DISCUSSION

22        ABOUT TWO DATABASES, THE TERM DATABASE, AND THE CUSTOMER'S

23        DATABASE.  AND THE TERM DATABASE IS WHAT STORES THE TERMS IN

24        THE PATENT AND IS TALKING ABOUT EACH OF THESE HAVING FIELDS AND

25        MAPPING BETWEEN THE FIELDS OF THESE DATABASES.  SO VERY TYPICAL
```

1    DESCRIPTION OF DATABASES AS HAVING FIELDS.

2         AND I THINK IT GETS EVEN MORE CLEAR WHEN YOU LOOK AT THE

3    '731 PATENT.  THIS -- AND IT'S GOING TO TAKE A SECOND FOR ME TO

4    EXPLAIN THIS, BUT -- AND THIS IS NOT IN THE BRIEFING, BUT IN

5    PREPARING, I NOTICED THIS DISCLOSURE, COLUMN 11 IS THE KEY

6    PIECE HERE OF THE '731 PATENT, AND THAT'S WHAT'S SHOWN ON THE

7    RIGHT OF OUR SLIDE 12.

8         WE'RE TALKING HERE ABOUT THE PERSONAL DICTIONARY WHICH THE

9    PATENT DESCRIBES AS A RELATIONAL DATABASE.  BUT THIS IS THE

10   DATABASE THAT STORES THE WORDS AND THE PRONUNCIATIONS IN THE

11   '731 PATENT.

12        AND IN COLUMN 11, IT'S INTERESTING BECAUSE IT'S TALKING

13   ABOUT HOW YOU IMPORT AND EXPORT DATA FROM THAT DATABASE.  SO IF

14   YOU WANTED TO, YOU KNOW, DUMP THE DATABASE CONTENTS TO WHAT

15   THEY CALL A TAB DELIMITED FILE, WHICH IS ONE OF THESE FILES

16   WE'VE BEEN TALKING ABOUT, IT'S ESSENTIALLY A TEXT FILE WHERE

17   YOU HAVE THE OUTPUT OF THE DATABASE IN A SPECIFIC FORMAT

18   DELIMITED BY TABS BETWEEN THE FIELDS.

19        AND WHAT THIS IS SHOWING US IN THIS COLUMN 11 IS THE

20   ACTUAL STRUCTURE OF THE DATABASE.  THIS IS WHAT YOU HAVE TO

21   STRUCTURE YOUR DATA AS TO GET IT INTO THE DATABASE OR WHEN IT

22   COMES OUT OF THE DATABASE.

23        AND WHAT WE SEE HERE IS THAT IT'S A RECORD STRUCTURE WITH

24   EIGHT FIELDS.  YOU HAVE THE WORD, THE PRONUNCIATION, THE

25   MEANING -- SO IN OUR EXAMPLE, WE TALK ABOUT THE JAPANESE

1    ECONOMY DEFINITION THAT'S IN THE PATENT.  THIS IS WHERE THAT

2    WOULD BE.  THIS IS THE FIELD THAT WOULD STORE THAT MEANING, AND

3    THE WORD WOULD BE THE KANJI CHARACTER.

4         SO THIS IS A RECORD FIELD STRUCTURE, AND THAT'S WHAT THIS

5    PATENT IS TALKING ABOUT WHEN IT'S TALKING ABOUT THESE

6    DATABASES.

7              THE COURT:  MR. LAMBERSON, I TEND TO AGREE WITH YOUR

8     CHARACTERIZATION OF WHAT IS DESCRIBED IN COLUMN 5 AND

9     COLUMN 11.

10        THE HIGHER LEVEL CONCERN I HAVE IS AT COLUMN 5, LINE 5 OR

11   SO, THE PATENT PRETTY PLAINLY MAKES CLEAR THAT WHAT IS BEING

12   DISCUSSED IN COLUMN 5 IS A FIGURE AND THAT THAT FIGURE IS AN

13   EXEMPLARY EMBODIMENT OF THE INVENTION.

14        SO EVEN IF I ACCEPT EVERYTHING YOU'RE SAYING ABOUT WHAT'S

15   DISCLOSED HERE, HOW DO I RECONCILE THAT WITH SOME PRETTY CLEAR

16   LANGUAGE THAT SAYS WE'RE JUST TALKING ABOUT ONE EXAMPLE?

17             MR. LAMBERSON:  I AGREE WITH YOU THERE, YOUR HONOR.

18        I THINK THE KEY POINT HERE IS THAT WE DO NEED TO THINK

19    ABOUT WHAT ELSE THE PATENT SAYS ABOUT THE DIFFERENCE BETWEEN

20    DATABASES AND WORD PROCESSING FILES.

21        SO IF WE LOOK JUST BELOW HERE ON COLUMN 11, AND THERE'S

22   SOME ADDITIONAL SLIDES I'LL GET TO, BUT STARTING HERE, IT'S

23   TALKING ABOUT THIS FORMAT, AND IT SAYS IF YOU WANTED TO IMPORT

24   OR EXPORT DATA AND YOU CREATED THIS USING A WORD PROCESSOR

25   FILE, YOU WOULD THEN NEED TO SAVE IT AS A TEXT FILE.

1        NOW, WHY DOES IT SAY THAT?  IT SAYS THAT BECAUSE EVEN IF

2    YOU WERE TO TYPE THESE EXACT FIELDS USING A TAB BETWEEN EACH

3    ONE INTO MICROSOFT WORD, OR ANY OTHER WORD PROCESSOR, YOU COULD

4    NOT IMPORT THAT INTO THE DATABASE BECAUSE THEY DON'T STORE

5    THEIR DATA IN THIS WAY AS RECORDS AND FIELDS.  THEY HAVE A

6    DIFFERENT STRUCTURE.

7        AND WE SEE THAT AGAIN AND AGAIN IN THE PATENTS.  THIS IS

8    COLUMN 7 OF THE '731 PATENT.  IT TALKS ABOUT THE ORIGINAL TEXT,

9    THE INPUT TEXT BEING EITHER IN A TEXT FILE OR A WORD PROCESSOR

10   FILE.

11       BUT THAT IS BEFORE IT IS PUT INTO THE DATABASE.  IT DOES

12   NOT EQUATE THE TWO THINGS.  YOU HAVE AN INPUT DATA, TEXT OR

13   WORD PROCESSOR, AND THEN YOU LOWER -- YOU CUT IT, YOU HAVE TO

14   CUT IT, YOU CAN'T JUST TAKE IT AND PUT IT INTO THE DATABASE,

15   THEY USUALLY USE A VISUAL CUTTER, SOMEBODY TAKES A MOUSE,

16   SELECTS EACH WORD, AND THAT IS WHAT IS THE WORDIFIED DATABASE.

17   IT'S NOT THE INPUT DATA.  IT'S NOT THE TEXT FILE.  IT'S NOT THE

18   WORD PROCESSOR FILE.

19       SO WHATEVER "DATABASE" MEANS, WE START TO SEE THAT IT HAS

20   TO BE SOMETHING DIFFERENT THAN A WORD PROCESSOR FILE OR A TEXT

21   FILE, AND WE SEE IT AGAIN IN COLUMN 5.  WE SEE THAT YOU START

22   WITH A BOOK -- SENTIUS IS CORRECT.  YOU START WITH A BOOK OR

23   OTHER MULTIMEDIA SOURCE.  IT COULD BE A TEXT FILE.  IT COULD BE

24   A MULTIMEDIA FILE.  ALL OF THOSE HAVE A GIVEN STRUCTURE,

25   GRANTED.

1          BUT THOSE ARE NOT THE DATABASE.

2          AND I THINK IT'S EVEN THE MOST CLEAR IN THE '985 PATENT

3     FAMILY WHERE THEY ACTUALLY TALK ABOUT SPECIFIC FILE TYPES,

4     INCLUDING MICROSOFT WORD.  THEY SAY YOUR SOURCE DATA CAN BE

5     XML, HTML, RTF, WORD, ACROBAT.

6          BUT THOSE ARE NOT THE DATABASE.  THOSE ARE THE SOURCE

7     FILES.

8          AND, YOU KNOW, YOU LOOK AT ANY OF THESE FILE TYPES, YOU

9     LOOK AT HTML -- THIS IS AN EXAMPLE THAT WE PUT IN OUR TUTORIAL,

10    JUST A SAMPLE HTML WE MADE UP -- IT HAS A VERY SPECIFIC

11    STRUCTURE, HIGHLY STRUCTURED.  HTML, XML, EVEN WORD DOCUMENTS,

12    VERY, VERY STRUCTURED.

13         BUT THE PATENT SAYS -- OR TREATS THOSE AS THE SOURCE, THE

14    SOURCE INFORMATION, NOT THE DATABASE INFORMATION.  SO THERE

15    MUST BE SOME DIFFERENCE.

16         AND JUST TO PUT A FINER POINT ON THIS, SENTIUS, EVEN TODAY

17    AND IN THEIR BRIEFING, THEY SAY, WELL, YOU TAKE YOUR TEXT FILE

18    AND YOU CREATE THE WORDIFIED DATABASE; THEREFORE, THESE THINGS

19    MUST BE THE SAME.

20         WELL, WE'RE IGNORING, OR THEY'RE IGNORING, THE STEP THAT

21    HAPPENS HERE.  IT'S NOT THE SAME.  YOU HAVE TO ACTUALLY USE

22    YOUR VISUAL EDITOR TO CUT THE FILE FIRST AND TO PUT IT INTO A

23    FORMAT THAT'S IN THE DATABASE.

24         AND --

25              THE COURT:  IF I CAN JUST GO BACK TO SLIDE 17, I

1    THINK THIS IS A HELPFUL PLACE TO FOCUS.

2          MR. LAMBERSON:  YEAH.

3          THE COURT:  AS I UNDERSTAND SENTIUS' ARGUMENT ON THIS

4    PARTICULAR POINT, WHAT THEY'RE SAYING IS SOMETHING SLIGHTLY

5    DIFFERENT, WHICH IS THAT UNDER YOUR CONSTRUCTION, THE

6    PARTICULAR STRUCTURE THAT I THINK YOU'VE BEEN VERY TRANSPARENT

7    IN URGING FOR EVERY DATABASE ISN'T IN PLACE UNTIL YOU GET TO

8    THE LINKING STAGE.  AND SO, FOR EXAMPLE, IN WHAT IS PLAINLY

9    LABELED A DATABASE, A WORDIFIED DATABASE, WE DON'T HAVE THE

10   PARTICULAR STRUCTURE THAT YOU ARE URGING BE INCLUDED IN THE

11   CONSTRUCTION.

12        SO HOW DO I RECONCILE THAT?  I WOULD APPRECIATE IT.

13          MR. LAMBERSON:  WHAT I THINK WE DON'T HAVE, YOUR

14   HONOR, IS I'M NOT AWARE OF ANY DISCLOSURE OF WHAT THIS

15   WORDIFIED DATABASE LOOKS LIKE IN THE PATENT.

16          THE COURT:  I COULDN'T FIND ANYTHING MYSELF.  I

17   THOUGHT MAYBE I MISSED SOMETHING.

18          MR. LAMBERSON:  NO, I THINK THAT'S RIGHT.

19        WHAT I CAN SAY, YOUR HONOR, AND WHAT WE'VE GIVEN IN OUR

20   PREVIOUS SLIDES, IS ALL OF THE PLACES WHERE IT DOES PROVIDE ANY

21   INDICATION OF THE STRUCTURE, IT DOES TALK ABOUT RECORDS AND

22   FIELDS.

23        WHAT I HAVEN'T SEEN IS ANY OTHER -- YOU KNOW, SENTIUS IS

24   ABSOLUTELY CORRECT THAT THERE MAY BE OTHER WAYS TO STORE DATA.

25   WE BELIEVE RECORDS AND FIELDS IS SORT OF A FUNDAMENTAL, COMMON,

1      YOU KNOW, MAYBE THE MOST COMMON WAY TO STORE DATA.

2          I'M SURE YOU COULD FIND MORE EXOTIC WAYS TO STORE DATA IN

3      A DATABASE.

4          WHAT WE KNOW IS THESE PATENTS DON'T TELL US WHAT THIS

5      WORDIFIED DATABASE LOOKS LIKE.  THEY ONLY TELL US WHAT A FEW OF

6      THE DATABASES LOOK LIKE, AND FOR THOSE, THEY ALWAYS TALK ABOUT

7      RECORDS AND FIELDS.  I'M NOT AWARE OF ANY OTHER DISCLOSURE OF

8      ANY OTHER STRUCTURE.

9          SO, YOU KNOW, WE'RE FACED WITH A CHOICE BETWEEN NO

10     STRUCTURE AT ALL, WHICH IS SENTIUS' DEFINITION, OR THE ONLY

11     STRUCTURE WE CAN FIND IN ANY OF THE INTRINSIC RECORD FOR WHAT A

12     DATABASE STRUCTURE LOOKS LIKE, WHICH WE BELIEVE IS OUR PROPOSED

13     CONSTRUCTION.

14         THE COURT:  WOULD YOU AGREE, MR. LAMBERSON, THAT IT

15     IS POSSIBLE, AND CERTAINLY CONSISTENT WITH THIS DISCLOSURE, TO

16     HAVE DATA COLLECTED OR ORGANIZED IN AN UNSTRUCTURED MANNER?  IN

17     OTHER WORDS, IT'S POSSIBLE TO HAVE DATA IN A FILE OR IN A

18     FOLDER THAT'S UNSTRUCTURED, RIGHT?

19         MR. LAMBERSON:  SO WHEN YOU SAY "UNSTRUCTURED,"

20     ALL -- IF DATA IS IN A FILE, IT IS STRUCTURED IN THE SENSE THAT

21     SOMEBODY KNOWS HOW TO READ IT.  I MEAN, THE ONLY TRULY

22     UNSTRUCTURED DATA WOULD BE RANDOM DATA THAT'S NOT EVEN, YOU

23     KNOW -- IF YOU'RE ABLE TO LOOK AT THE DATA WITH SOMETHING, THEN

24     IT HAS SOME STRUCTURE.

25         THE COURT:  ISN'T THAT THE POINT, THAT YOU MAY NOT BE

```
1     ABLE TO LOOK AT IT BECAUSE IT COULD BE UNSTRUCTURED, AND ISN'T

2     THE POINT OF THIS DESCRIPTION, AGAIN IN COLUMN 7 AND COLUMN 11,

3     SIMPLY THAT THERE HAS TO BE SOME STRUCTURE TO PERMIT THE VISUAL

4     EDITOR TO DO ITS JOB?  THAT'S HOW I WAS READING IT, BUT MAYBE

5     I'VE GOT IT WRONG.

6              MR. LAMBERSON:  WELL, I WOULD SAY TWO POINTS, YOUR

7     HONOR.  THERE MUST BE SOME STRUCTURE FOR THE VISUAL EDITOR TO

8     BE ABLE TO OPEN IT, ABSOLUTELY RIGHT.  THAT DOESN'T MEAN IT'S A

9     DATABASE STRUCTURE.  THAT DOESN'T MEAN A TEXT FILE IS A

10    DATABASE.

11         THERE ALSO MUST BE SOME STRUCTURE TO THE WORDIFIED

12    DATABASE.  THE PATENT DOESN'T TELL US WHAT IT IS, BUT WE KNOW

13    AT THIS POINT IT IS A DATABASE, AND WE KNOW AT THIS POINT IT'S

14    NOT CALLED A DATABASE.  IT DOESN'T CALL IT THE TEXT DATABASE.

15    IT NEVER CALLS THE SOURCE DOCUMENTS THE DATABASE.

16         ONLY ONCE THEY'VE BEEN RUN THROUGH THIS VISUAL EDITOR DOES

17    IT BECOME -- IS IT TRANSFORMED AND IS THE STRUCTURE CHANGED

18    INTO THE WORDIFIED DATABASE.

19         SO IT WOULD BE -- IT WOULD BE VERY HELPFUL IF WE KNOW WHAT

20    THAT LOOKED LIKE.  WE DON'T, BUT WE DO HAVE OTHER DISCLOSURES

21    ABOUT OTHER DATABASES AND ALL OF THEM USE RECORDS AND FIELDS,

22    AND WE BELIEVE, YOU KNOW, GIVEN THAT AND GIVEN THE CHOICE WE'RE

23    FACED WITH HERE, THAT IS WHAT THE INTRINSIC RECORD TEACHES

24    ABOUT DATABASES.

25              THE COURT:  OKAY.  SO IF I UNDERSTAND WHAT YOU'RE
```

```
 1    SAYING CORRECTLY, WHAT YOU'RE SAYING IS THAT CERTAINLY IN ORDER

 2    FOR THE VISUAL EDITOR TO DO ITS JOB, THERE MUST BE SOME

 3    STRUCTURE TO IT, AND IMPORTANTLY, A STRUCTURE THAT THE VISUAL

 4    EDITOR UNDERSTANDS.  THAT'S THE KEY, RIGHT?

 5            MR. LAMBERSON:  THAT'S RIGHT.

 6            THE COURT:  OKAY.  BUT THAT STRUCTURE ALONE IS

 7    INSUFFICIENT TO LABEL THAT TEXT FILE A DATABASE ACROSS THE

 8    BOARD?

 9            MR. LAMBERSON:  THAT'S RIGHT.  AND THE PATENT DOESN'T

10    DO SO AND DOESN'T TREAT IT AS A DATABASE.

11            THE COURT:  SO THEN HOW DO YOU RECONCILE, MAYBE

12    YOU'RE ABOUT TO GET TO THIS, BUT HOW DO YOU RECONCILE THAT WITH

13    THE DEPENDENT CLAIM ARGUMENT MR. TRIBBLE WAS MAKING A FEW

14    MINUTES AGO?

15            MR. LAMBERSON:  I DON'T BELIEVE THERE'S ANY

16    INCONSISTENCY, YOUR HONOR.  IT IS POSSIBLE, AND MAYBE I'LL

17    SWITCH SLIDES -- THIS ISN'T IN THE DECK, BUT -- THIS IS A

18    BACKUP SLIDE I DIDN'T KNOW I WOULD NEED TO USE.  I APOLOGIZE.

19            THE COURT:  THAT'S ALL RIGHT.

20            MR. LAMBERSON:  I CAN GET A BACKUP.

21        BUT WHAT I WANTED TO SHOW HERE, YOUR HONOR, THIS WOULD BE

22    A SIMPLE TEXT FILE ORGANIZED -- THIS WOULD BE A COMMON

23    DELIMITED FILE.  YOU HAVE YOUR RECORDS AND FIELDS AND YOU HAVE

24    A COMMA BETWEEN THE DIFFERENT FIELDS.

25            SO ALL WE BELIEVE THE DEPENDENT CLAIMS ARE SAYING IS THAT
```

1   YOU COULD USE THIS STRUCTURE OR YOU COULD USE WHATEVER

2   STRUCTURE ORACLE USES, MICROSOFT ACCESS, SQL SERVER, WHATEVER

3   DATABASE STRUCTURE YOU WANT TO USE IS FINE, AND TEXT FILES ARE

4   CERTAINLY ONE OF THEM IF YOU ORGANIZE IT LIKE THIS.

5       BUT THAT IS NOT -- THAT IS NOT THE SAME THING AS SAYING

6   THAT ALL TEXT FILES ARE DATABASES.

7           THE COURT:  AND IF I CAN JUST GO BACK TO YOUR POINT A

8   MINUTE AGO, BECAUSE -- IF I CAN ANTICIPATE YOUR NEXT POINT --

9   THERE IS A SET OF RECORDS AND FIELDS STRUCTURED IN A WAY THAT

10  THE VISUAL EDITOR UNDERSTANDS.

11          MR. LAMBERSON:  WELL, AND NOT EVEN JUST THAT THE

12  VISUAL EDITOR UNDERSTANDS.  THIS FILE HAS RECORDS AND FIELDS

13  AND THERE ARE MANY DATABASES THAT COULD READ AND IMPORT THIS

14  PARTICULAR TYPE OF FILE.  YOU COULD LOAD THIS DATA INTO

15  MICROSOFT ACCESS, FOR EXAMPLE.  IT KNOWS HOW TO OPEN IT BECAUSE

16  IT HAS RECORDS AND FIELDS.

17      IF YOU WERE TO JUST TYPE THIS INTO WORD AND SAVE IT AS A

18  WORD FILE, THE EXACT SAME TEXT, MICROSOFT -- I SHOULDN'T SPEAK

19  ABOUT ACCESS.  MAYBE IT KNOWS HOW TO BEHIND THE SCENES DO IT.

20      BUT DATABASES IN GENERAL COULD NOT JUST TAKE THAT AND

21  IMPORT IT.  THEY WOULD HAVE TO -- EVEN IF ACCESS WERE TO KNOW

22  HOW TO DO IT, CONVERT IT TO A WORD FILE, TO A TEXT FILE AND

23  THEN DO IT, THE POINT IS YOU NEED -- YOU KNOW, IT IS POSSIBLE

24  TO CREATE A TEXT FILE THAT HAS RECORDS AND FIELDS.

25      EVEN THEN, YOUR HONOR, I'M NOT SURE IT'S COMPLETELY

```
 1    ACCURATE TO CALL THAT A DATABASE BY ITSELF JUST SITTING ON A

 2    DISK.  WHEN YOU LOOK AT THE PATENT, AS I MENTIONED, IT TALKS

 3    ABOUT THESE AS DELIMITED FILES.  IT DOESN'T SAY THAT ITSELF IS

 4    A DATABASE.  I THINK WE COULD QUIBBLE ABOUT THAT.  THE

 5    DEPENDENT CLAIM SUGGESTS THAT IT IS.

 6         WE DON'T NEED TO GO THERE.  THE KEY POINT IS THAT, YES, IT

 7    IS POSSIBLE, IF YOU USE RECORDS AND FIELDS, TO MAKE A TEXT FILE

 8    INTO A DATABASE STRUCTURE IF YOU CHOOSE.

 9         THAT DOES NOT MEAN ALL TEXT FILES ARE DATABASES.  IF THEY

10    DON'T HAVE THE STRUCTURE, THEY'RE NOT.  CERTAINLY IT DOES NOT

11    MEAN THAT POWERPOINT SLIDES, E-MAILS, WORD DOCUMENTS ARE

12    DATABASES.  THEY ARE NOT.

13         SO THAT -- I DON'T VIEW THERE AS BEING ANY CLAIM

14    DIFFERENTIATION ISSUE AT ALL.  WE'RE NOT DISPUTING THAT.

15              THE COURT:  RIGHT.  SO, AGAIN -- AND I APOLOGIZE FOR

16    REPEATING MYSELF -- BUT IF WE GO BACK TO YOUR CONSTRUCTION, YOU

17    WOULD SUGGEST THAT YOUR CONSTRUCTION COULD BE APPLIED IN THE

18    CONTEXT OF THE DEPENDENT CLAIM WHERE THE DEPENDENT CLAIM

19    SPECIFIES THAT THE DATABASE IS A TEXT FILE.

20         THE KEY IS THAT THE TEXT FILE WOULD HAVE TO HAVE THE

21    RECORDS AND FIELDS JUST AS ANY OTHER DATABASE WOULD HAVE TO?

22              MR. LAMBERSON:  THAT'S RIGHT, YOUR HONOR.

23              THE COURT:  OKAY.

24              MR. LAMBERSON:  ONE OTHER KEY POINT I WANTED TO

25    EMPHASIZE HERE, YOUR HONOR, IS THIS, THE FILE HISTORY ISSUE.
```

1          THE COURT:  I DID WANT TO GET TO THE HISTORY OF IT,

2     YEAH, THANK YOU.

3          MR. LAMBERSON:  AND THIS APPLIES TO BOTH THE DATABASE

4     ISSUE AND THE LINKING ISSUE.  I THINK IT SORT OF EQUALLY

5     APPLIES TO BOTH.

6          THE ISSUE HERE IS IF YOU LOOK AT THE -- SO I THINK WE

7     EXPLAINED IN OUR TUTORIAL, YOU HAVE THE '720 PATENT WHICH WAS

8     SORT OF -- WE'LL CALL IT THE PARENT, I SUPPOSE, BUT IT'S THE

9     ORIGINAL SENTIUS PATENT FILED IN '94, IT WAS INVALIDATED, AND

10    WHAT SENTIUS, OR ANY PATENT OWNER, CAN DO IF THAT HAPPENS IS

11    GET RE-ISSUED PATENTS OUT OF IT.  SO THE RE-ISSUED

12    PATENTS-IN-SUIT BOTH CAME FROM THE '720 PATENT.

13         SO IT REALLY IS -- I CALL IT THE PARENT, BUT IT REALLY IS

14    THE SAME PATENT IN A SENSE.  THEY'VE JUST ASKED THE PATENT

15    OFFICE TO GO BACK AND CHANGE THE CLAIMS.  THAT'S THE ONLY

16    DIFFERENCE.

17         SO WE BELIEVE THE PROSECUTION HISTORY FOR THE '720 PATENT

18    IS JUST AS IMPORTANT TO THE RE-ISSUED PATENTS AS THE

19    PROSECUTION HISTORY FOR THE RE-ISSUE PROCEEDINGS.

20         SO WHAT HAPPENED IN THE '720 PROSECUTION?

21         WELL, THERE WAS A REJECTION OVER THIS TRANSPARENT LANGUAGE

22    PROGRAM AND THE CASSORLA PATENT, AN OBVIOUSNESS REJECTION, AND

23    THE TRANSPARENT LANGUAGE PROGRAM, AS WE INDICATED IN OUR

24    TUTORIAL, IT'S BASICALLY A PROGRAM FOR DOING SOMETHING VERY

25    SIMILAR TO WHAT SENTIUS PURPORTED TO BE OFFERING, ALLOWING YOU

1   TO TRANSLATE AND SEE DEFINITIONS FOR FOREIGN LANGUAGE

2   DOCUMENTS.

3       BUT WHAT THE PATENT OFFICE SAID IS THE DISCLOSURE THEY HAD

4   BEFORE THEM DIDN'T SPECIFICALLY SHOW HOW, WHEN YOU CLICK, IS

5   THAT TRANSLATED INTO SHOWING THE TRANSLATION.

6       BUT THEY SAY, YOU KNOW WHAT, THAT IS SOMETHING THAT'S

7   OBVIOUS.  CLICKING ON SOMETHING AND HAVING INFORMATION POP UP

8   IS OBVIOUS.  IN '94 EVEN THAT WAS VERY TYPICAL.

9       AND THE EXAMPLE THEY GIVE IS THIS CASSORLA PATENT.  AND

10  THIS SLIDE IS A LITTLE BUSY, BUT WHAT WE HAVE ON THE BOTTOM IS

11  THE CASSORLA PATENT.

12      AND ON THE TOP IS WHAT SENTIUS SAID IN RESPONSE.  SO WHAT

13  DID SENTIUS SAY ABOUT THIS -- WELL, MAYBE I'LL START WITH THE

14  CASSORLA PATENT.

15      SO THE CASSORLA PATENT, WHAT IT WAS, YOU HAD BASICALLY A

16  FILE -- AND THAT'S WHAT'S SHOWN IN FIGURE 2 OF CASSORLA, WHICH

17  WAS EXHIBIT E TO MY DECLARATION -- AND IT'S STRUCTURED.  RATHER

18  LIKE HTML, IT'S GOT HEADINGS, PARAGRAPHS.

19      AND WHAT CASSORLA DID IS THEY GAVE EACH TAB BASICALLY AN

20  ADDRESS, OR A SET OF FLAGS YOU COULD CALL THEM, OR NUMBERS.

21      AND THEY -- EACH ONE CORRESPONDED TO ONE OF THESE

22  HEADINGS.  AND THEN IF A USER WANTED TO PUT IN ANNOTATIONS,

23  THAT WOULD NOTE WHAT LOCATION THEY WANTED THE ANNOTATION AND

24  THEN WHAT THE ANNOTATION WAS, AND YOU COULD HAVE MULTIPLE USERS

25  DOING ANNOTATIONS, SO YOU COULD HAVE -- THIS IS THE SAME

1    LOCATION, USER NUMBER 2, ITEM NUMBER 2.  AND SO THE FIRST USER

2    SAID, IS THE -- SPELLING, QUESTION MARK?  THE SECOND USER SAYS

3    IT'S OKAY.

4         SO THAT'S WHAT CASSORLA DID TO APPLY ANNOTATIONS TO A

5    DOCUMENT.

6         AND WHAT SENTIUS SAID IN RESPONSE IS THAT CASSORLA USES

7    RELATIVE POSITION WITHIN THE DOCUMENT TO FIX THE POSITION OF

8    THE ANNOTATIONS, THEREBY GENERATING IDENTIFYING TAGS.  THE TAGS

9    ARE USED TO RETRIEVE THE ANNOTATIONS BASED ON THE POSITION IN

10   THE DOCUMENT.

11        SO I JUST WANTED TO MAKE CLEAR HERE THAT WE'RE NOT TALKING

12   ABOUT TAGS IN THE SENSE THAT I THINK SENTIUS SHOWED IN ITS

13   TUTORIAL HAVING ACTUAL, YOU KNOW, TAGS WITHIN THE BODY THAT

14   REFERRED TO LIKE AN HTML LINK REFERRING OUT TO THE EXTERNAL

15   CONTENT.  THAT'S NOT WHAT CASSORLA IS DOING.

16        BUT IT IS USING THIS METHOD OF INDICATING WHAT THE TAGS

17   ARE, AND IT IS FIXED IN THE SENSE BECAUSE YOU'VE GOT AN ADDRESS

18   HERE AND AN ADDRESS HERE.

19        SO THE POINT HERE, YOUR HONOR, AND WHAT SENTIUS SAID IN

20   RESPONSE, THIS WAS A CROWDED FIELD.  YOU HAD A LOT OF -- AS THE

21   PATENT OFFICE SAID, CLICKING AND GETTING DATA IS NOT ANYTHING

22   NEW OR NOVEL, AND SO SENTIUS HAD TO BE VERY SPECIFIC.

23        AND WHAT DID SENTIUS HAVE TO DO TO GET THIS PATENT

24   ALLOWED?  IT HAD TO ADD BASICALLY TWO LIMITATIONS.  IT HAD TO

25   HAVE THE ADDRESS ON THE ELECTRONIC DATABASE FOR THE SOURCE

```
 1    MATERIAL IMAGE, AND THAT'S STORED IN A LOOK-UP TABLE.

 2         SO WE WOULD SUBMIT THAT FOR BOTH THIS AND THE LINKING

 3    TERM, THIS DATABASE STRUCTURE AND THE METHOD OF USING THE

 4    ADDRESSES TO REFER TO TABLES BASICALLY IN A DATABASE WAS

 5    CRITICAL AND WAS, IN FACT, THE -- I MEAN, THE CLAIMS WERE

 6    ALLOWED AFTER THIS AMENDMENT AND ARGUMENT.

 7              THE COURT:  I SEE.  SO WHAT YOU'RE SAYING IS THIS

 8    DISTINCTION OVER CASSORLA COULD NEVER HAVE BEEN SUSTAINED IF

 9    THE, IF THE DATABASE AREN'T STRUCTURED WITH RECORDS AND FIELDS

10    THAT ALLOWED THIS PARTICULAR RELATIONSHIP TO BE MADE?  IS THAT

11    THE CASE?

12              MR. LAMBERSON:  WE BELIEVE SO, YES, YOUR HONOR.

13         AND I WOULD ASK SENTIUS, IN FACT, YOU KNOW, WHAT IS IT

14    ABOUT CASSORLA THAT IS NOT A DATABASE UNDER THEIR CONSTRUCTION?

15    AND WHAT IS IT THAT DOESN'T HAVE, DOESN'T HAVE ADDRESSES?

16         I BELIEVE IT DOES.  THESE ARE, IN A SENSE, AN ADDRESS.

17         SO, YOU KNOW, UNDER THEIR DEFINITION, I BELIEVE CASSORLA

18    WOULD BE A DATABASE.  WHEN WE LOOK AT THE FILE HISTORY, WE

19    BELIEVE, WHEN READ IN CONTEXT, SENTIUS IS BEING MUCH MORE

20    SPECIFIC HERE.  THEY'RE TALKING ABOUT THE SPECIFIC TABLE, TABLE

21    DATABASE STRUCTURE WITH LINKS.

22              THE COURT:  IS SENTIUS, IN THIS HISTORY OR IN ITS

23    BRIEFING, TAKING THE POSITION THAT CASSORLA WOULD NOT BE A

24    DATABASE?  I DIDN'T UNDERSTAND THAT TO BE WHAT THEY WERE

25    SAYING.
```

```
1           MR. LAMBERSON:  WELL, THEY HAD TO AMEND AROUND
2   CASSORLA, AND THE LIMITATION THEY ADDED WAS ADDRESS IN AN
3   ELECTRONIC DATABASE.
4       SO, YOU KNOW, AND THE ARGUMENT THEY MADE FOCUSSED ON THE
5   TAGGING.  BUT THEY DIDN'T ADD AN AMENDMENT RELATED TO TAGS.
6       THE ONLY CLAIM AMENDMENT THEY MADE -- AND THIS IS IN
7   EXHIBIT D TO OUR DECLARATION -- THE ONLY AMENDMENT TO THE
8   CLAIMS WAS TO ADD THIS ADDRESS IN AN ELECTRONIC DATABASE.
9       SO THAT HAD TO BE, FOR THE PATENT OFFICE, WHAT GOT THIS
10  PATENT ALLOWED IN OUR VIEW.
11          THE COURT:  BUT COULDN'T THAT AMENDMENT STAND, EVEN
12  UNDER THEIR CONSTRUCTION, THAT THERE WAS A STRUCTURE TO THE
13  COLLECTION OF DATA, PRESUMABLY, THAT INCLUDED AN ADDRESS AND ON
14  THAT BASIS THE ARGUMENT WOULD BE JUST AS EFFECTIVE WITH THEIR
15  CONSTRUCTION AS YOURS?
16          MR. LAMBERSON:  WELL, I THINK THE POINT I WOULD MAKE
17  HERE, YOUR HONOR -- AND THIS WILL APPLY TO THE LINK ARGUMENT AS
18  WELL -- IF YOU'RE GOING TO TAKE A DEFINITION OF DATABASE THAT
19  COVERS ANYTHING, AND IF YOU'RE GOING TO TAKE A DEFINITION OF
20  LINK THAT COVERS ANYTHING, THERE IS NO WAY TO DISTINGUISH
21  CASSORLA.
22      WE KNOW THEY DID SO AND WE KNOW THEY ADDED TO THE CLAIMS
23  AND WE KNOW WHAT THEY ARGUED.  WE KNOW THEY TALKED ABOUT HAVING
24  A DATABASE, AN ELECTRONIC DATABASE.  THE WORD "DATABASE" WAS
25  ADDED TO THE CLAIMS.
```

```
 1          WE KNOW THAT THEY TALKED ABOUT HAVING A LOOK-UP TABLE AND

 2     THE ADDRESSES SPECIFICALLY TO FIND THE DATA IN THAT DATABASE.

 3          THE COURT:  UM-HUM.

 4          MR. LAMBERSON:  THAT'S WHAT WE KNOW THEY ADDED.

 5          AND I THINK THAT WE HAVE TO GIVE THIS SOME MEANING.  WE

 6     CAN'T NOW ERASE ALL OF THAT BY ADOPTING A BROAD DEFINITION FOR

 7     BOTH DATABASE AND LINK THAT BASICALLY ELIMINATES ANY

 8     DISTINCTION THAT COULD HAVE BEEN DRAWN.

 9          I AGREE WITH YOU THAT IT'S POSSIBLE TO READ -- SO THE TWO

10     POSSIBLE DISTINCTIONS WOULD BE HAVING A DATABASE VERSUS NOT

11     HAVING A DATABASE.  THEY DID ADD THAT TO THE CLAIMS.

12          AND THEN THE SECOND ONE WOULD POTENTIALLY BE -- I'D HAVE

13     TO GO BACK AND LOOK AT WHAT THEY ADDED TO THE CLAIMS ABOUT THE

14     LINKS, WHETHER THE ADDRESS --

15          THE COURT:  JUST FOCUSSING ON THAT FIRST POINT,

16     BECAUSE I DO THINK THAT'S IMPORTANT, IT WOULD SEEM TO ME THAT

17     WHAT SENTIUS IS SAYING HERE -- THIS IS HOW I READ IT EARLIER

18     ANYWAY -- WAS, "LOOK, THERE'S AN ADDRESS ON THE DATABASE.

19     THAT'S HOW WE DISTINGUISH CASSORLA," AND THEIR CONSTRUCTION

20     ISN'T NECESSARILY CONSISTENT WITH THAT BECAUSE UNDER THEIR

21     CONSTRUCTION, AGAIN, THERE'S A STRUCTURED COLLECTION OF DATA

22     THAT INCLUDES THE ADDRESS, SO THERE'S NO INCONSISTENCY.

23          MR. LAMBERSON:  WELL, IT'S NOT THAT IT'S

24     INCONSISTENT, YOUR HONOR.  IT'S THAT THEY WERE CLEARLY SAYING

25     SOMETHING WAS DIFFERENT ABOUT CASSORLA.
```

1          THE COURT:  ABSOLUTELY.

2          MR. LAMBERSON:  AND THE QUESTION IS, WHAT IS IT?

3      AND I DON'T THINK THEIR CONSTRUCTION CAPTURES IT BECAUSE

4  THEIR CONSTRUCTION WOULD READ ON CASSORLA.

5      SO THERE MUST BE SOME DIFFERENCE HERE.  WE BELIEVE THE

6  DIFFERENCE THEY'RE TALKING ABOUT IS THE STRUCTURE OF THE

7  DATABASE AND THE FACT THAT IT HAS TABLES, WHICH WE BELIEVE

8  CONNOTES RECORDS AND FIELDS.

9          THE COURT:  AND I APOLOGIZE IF I'M JUST NOT GROKKING

10  THE POINT.

11      I READ THE DISTINCTION OVER CASSORLA AS RELATING TO THE

12  FACT THAT THERE WAS AN ADDRESS, IN WHATEVER YOU DEFINE THE

13  DATABASE TO BE, THAT'S BASICALLY FIXED OR DETERMINED, RIGHT?

14      SO REGARDLESS OF HOW SPECIFIC, OR WHAT SPECIFIC STRUCTURE

15  THE DATABASE HAS, SO LONG AS THE CLAIMED INVENTION MAKES CLEAR

16  THAT THERE'S AN ADDRESS THAT'S FIXED FOR THE SOURCE MATERIAL IN

17  THAT DATABASE, CASSORLA IS DISTINGUISHED, RIGHT?

18          MR. LAMBERSON:  IT MAY BE POSSIBLE TO READ IT THAT

19  WAY, YOUR HONOR.

20      BUT I WOULD SUBMIT THAT THE CLAIMS DON'T, DON'T TRACK

21  THAT, AND THE AMENDMENT THAT WAS MADE HAD NOTHING TO DO WITH

22  WHETHER LINKS WERE FIXED OR NOT FIXED.

23      SENTIUS' PROPOSED CONSTRUCTION FOR LINK, AND MICROSOFT'S

24  FOR THAT MATTER, DOESN'T SAY ANYTHING ABOUT FIXED OR NOT FIXED.

25          AND IN FACT, THE ONLY AMENDMENT THAT WAS MADE WAS TO ADD

1    "ADDRESS ON AN ELECTRONIC DATABASE."

2         SO PERHAPS IT'S POSSIBLE TO READ IT THAT WAY, BUT I THINK

3    WE DO HAVE TO LOOK AT THE ACTUAL CLAIM AMENDMENT, AND I COULD

4    PULL UP THE ACTUAL EXHIBIT IF THAT WOULD BE HELPFUL.

5         ONE OTHER POINT HERE, YOUR HONOR, I DID WANT TO -- I KNOW

6    WE'RE TAKING A LOT OF TIME -- BUT I DID WANT TO TOUCH ON THE

7    EXTRINSIC EVIDENCE BECAUSE THAT EXISTS FOR US AS WELL AS

8    SENTIUS, OBVIOUSLY.  CERTAINLY NOT AS POWERFUL AS THE INTRINSIC

9    RECORD THAT WE JUST LOOKED AT, BUT IT ALSO HAS TO BE

10   CONSIDERED.

11        THE FIRST ONE I WANTED TO POINT OUT -- THIS WAS EXHIBIT C,

12   IT'S DEPOSITION TESTIMONY FROM BRIAN YAMANAKA, WHO'S A NAMED

13   INVENTOR.  THIS WAS TAKEN FROM THE FLYSWAT LITIGATION.

14        AND THIS JUST UNDERSCORES THE POINT THAT IN THEIR SYSTEM,

15   YOU HAVE DATA FILES THAT THEY RECEIVED FROM A PUBLISHER OF

16   JAPANESE DICTIONARIES, AND HE SAID THEY HAD TO CONVERT THEM,

17   CONVERT THEM INTO A DATABASE.  IT WASN'T THAT THESE DATA FILES

18   WERE THE DATABASE.  THEY HAD TO BE CONVERTED.

19        SAME THING DOWN HERE.  DATA FILE, LIKE A TEXT FILE, YOU

20   COULD IMPORT IT INTO THE DATABASE FORMAT.  SO YOU HAD TO HAVE

21   A -- A DATABASE FORMAT WAS SOMETHING DIFFERENT THAN THE SOURCE

22   DOCUMENT.

23             THE COURT:  WELL, BUT ISN'T -- YOU CAN STAY THERE FOR

24   A MOMENT.  I THOUGHT THE POINT OF THIS EXCERPT WAS IT HAS TO BE

25   SEARCHABLE OR SOMETHING THAT COULD BE PROCESSED.  YOU CAN START

1    WITH A DATABASE, BUT IT STILL MAY NOT BE SEARCHABLE DATA.

2    WE'VE GOT TO GET IT TO A POINT WHERE WE CAN DO SOMETHING TO IT.

3            MR. LAMBERSON:  WELL, YOU HAVE TO BE ABLE TO LOAD IT

4    IN THE FIRST INSTANCE, THOUGH.  AND THE ONLY POINT WE WERE

5    TRYING -- SO I DO AGREE THAT THERE ARE ADDITIONAL THINGS

6    TYPICALLY THAT A DATABASE WOULD HAVE TO SUPPORT, AND PERHAPS

7    EVEN BE SUPPORTED BY THE INTRINSIC RECORD, LIKE SEARCHABILITY,

8    AN INDEX, FOR EXAMPLE.

9         FIGURE 2 THAT WE'VE TALKED ABOUT QUITE A BIT, THE LOOK-UP

10   TABLE, THE PATENT CALLS IT AN INDEX REPEATEDLY AND EVERYBODY

11   AGREES THAT ALL THE CLAIMS HAVE THAT LOOK-UP TABLE.  SO

12   IMPLICITLY, THE CLAIMS DO REQUIRE AN INDEX OR AN INDEXED

13   DATABASE.

14        IN ANY EVENT, THE ONLY THING WE WERE TRYING TO POINT OUT

15   HERE IS THAT IT'S SIMPLY NOT CORRECT, AS SENTIUS DOES, TO DRAW

16   A LARGE BOX -- YOU KNOW, TO SAY THAT THE WORDIFIED DATABASE IS

17   THE SAME AS THE INPUT DATA, THAT EVEN THEIR OWN INVENTOR, WHEN

18   HE WAS ASKED ABOUT IT --

19            THE COURT:  AND THE FIGURE MAKES CLEAR THOSE ARE TWO

20   DISTINCT ENTITIES, RIGHT?

21            MR. LAMBERSON:  THAT'S RIGHT, YOUR HONOR.

22        AND WE ALSO CITED SOME DATABASES -- NOW, SO WE PRIMARILY

23   TOOK OUR EXAMPLE FROM EXHIBIT F, NEWTON'S TELECOM DICTIONARY,

24   '94, THE RECORD AND FIELD EXAMPLE WE TOOK FROM THERE.  WE

25   THOUGHT IT WAS HELPFUL.

1      THERE ARE OTHERS THAT TALK ABOUT RECORDS AND FIELDS.

2    THERE ARE ALSO OTHERS, THOUGH, THAT TALK LOOSELY ABOUT ANY

3    AGGREGATION OF DATA.  NO DOUBT THAT IS TRUE.

4      BUT WHAT THE FEDERAL CIRCUIT HAS SAID IS THIS IS NOT AN

5    EXERCISE IN FINDING THE BROADEST POSSIBLE DICTIONARY AND THEN

6    SAYING THAT'S THE ONE.  IT'S WHAT DOES THE INTRINSIC RECORD

7    SUPPORT AND, YOU KNOW, SENTIUS SAID SOMETHING TO THE EFFECT OF,

8    YOU KNOW, THIS IS AN UNUSUAL CASE, I THINK THEY WERE REFERRING

9    TO THE FACT THAT WE WERE TALKING ABOUT THE ACCUSED PRODUCTS SO

10   MUCH, AND I AGREE THAT IT IS AN UNUSUAL CASE.

11     I CAN SAY I HAVE NEVER SEEN A PATENT WHERE YOU ACTUALLY

12   HAVE THE ACCUSED PRODUCT DISCUSSED IN THE PATENT AS BEING

13   SOMETHING DIFFERENT THAN THEY'RE NOW ACCUSING IT, SO I DO THINK

14   THAT IS UNIQUE AND DIFFERENT.

15     AND I THINK WHEN WE'RE LOOKING AT THOSE OTHER DATABASE

16   CASES OR OTHER EXTRINSIC SOURCES, WE HAVE TO KEEP THAT IN MIND,

17   THAT THEY DIDN'T HAVE THAT FACT, AND IT IS A CRITICAL AND

18   REALLY SORT OF STRIKING FACT FOR THIS CASE.

19     THE OTHER THING I'D POINT OUT, YOUR HONOR, IF YOU ACTUALLY

20   READ THE DATABASE CASES THEY CITED, NONE OF THEM -- THIS

21   DISPUTE ABOUT RECORDS AND FIELDS ISN'T RAISED IN ANY OF THEM.

22   MANY OF THEM HAVE TO DO WITH WHETHER IT'S RELATIONAL OR NOT.

23     AS I SAID, THAT'S NOT OUR ARGUMENT.  SO I DON'T BELIEVE,

24   EVEN IF YOU DID CONSIDER THEM -- FIRST OF ALL, THEY ARE

25   EXTRINSIC.  THEY DON'T HAVE OUR RECORD.  BUT EVEN IF YOU WERE

```
1    TO LOOK AT THEM, I DON'T THINK THEY SHED A LOT OF LIGHT ON THE

2    DISPUTE HERE.

3         AND JUST THE FINAL POINT, YOUR HONOR, WE DO HAVE TO KEEP

4    SECTION 112 IN MIND WHEN WE'RE FACED WITH A DEFINITION AS BROAD

5    AS SENTIUS'.

6         I THINK ALL PARTS OF IT COME INTO PLAY.  YOU KNOW, WHAT

7    ARE THE BOUNDARIES WOULD GO TO DEFINITENESS.  IS THERE ANY

8    BOUNDARY?

9         CAN SENTIUS POSSIBLY SAY -- IF WE ADOPT THEIR BROAD

10   DEFINITION WHERE AN E-MAIL IS A DATABASE OR A POWERPOINT FILE,

11   CAN THEY POSSIBLY SHOW THAT THEY HAD POSSESSION OF THAT?  I

12   DON'T BELIEVE SO.

13        CAN THEY POSSIBLY SHOW HOW TO ENABLE AN E-MAIL DATABASE?

14   I DON'T BELIEVE SO.

15        SO WE DO HAVE TO KEEP THAT IN MIND WHEN WE'RE CONSTRUING

16   THE CLAIMS AS WELL.

17             THE COURT:  THANK YOU VERY MUCH, MR. LAMBERSON.

18        MR. TRIBBLE, DO YOU WANT TO OFFER REBUTTAL ON THESE

19   POINTS?

20             MR. TRIBBLE:  YES, YOUR HONOR.

21        CAN WE PUT UP CLAIM 8?

22             MR. BOLES:  SAY THAT AGAIN.

23             MR. TRIBBLE:  CLAIM 8 ON THE '731.

24        I WANT TO BE CLEAR WHAT WE'RE TALKING ABOUT.  CLAIM 8 ON

25   THE '731.  WE'LL GET TO THAT.
```

1           NO, YOU DON'T HAVE THE TYPED UP ONE.

2               THE COURT:  I HAVE CLAIM 8 IN FRONT OF ME,

3       MR. TRIBBLE.  SO --

4               MR. TRIBBLE:  IT'S IN SLIDE --

5               MR. LAMBERSON:  YOU CAN USE THE ELMO AS WELL.

6               MR. TRIBBLE:  WE'VE GOT IT.  GO TO CLAIM -- SLIDE 58,

7       OR ACTUALLY GO TO SLIDE 56.  NO, 58.  WE'LL STICK WITH 58.

8           THIS IS A -- I HAVE THIS FOR THE DISCUSSION ABOUT THE

9       ORDER OF THE STEPS, BUT THIS IS CLAIM 8 OF THE '731, AND SO I

10      JUST WANT TO BE CLEAR THAT WHAT WE'RE TALKING ABOUT IS THE BIG

11      FIGHT OVER INFRINGEMENT, AND THE REASON WE'RE HERE TODAY

12      TALKING ABOUT DIFFERENT SCOPES OF WHAT "DATABASE" MAY MEAN IS

13      STEP 1 WHERE IT TALKS ABOUT SOURCE MATERIAL STORED IN AN

14      ELECTRONIC DATABASE.  OKAY?

15          SO NOW CAN WE GO BACK TO OUR FIGURE 1 SLIDE?  SLIDE 8.

16              AND SO THE ISSUE IS WHETHER THIS TEXT FILE GOING INTO THE

17      VISUAL EDITOR, THAT'S THE SOURCE MATERIAL, OR THE SOURCE

18      MATERIAL CAN BE ITEM 14, THE SYNCHRONIZED TEXT.

19              AND KIND OF THE IMPLIED ARGUMENT WAS, WELL, IT COMES OUT

20      OF THE VISUAL EDITOR AND THEN IT'S A WORDIFIED DATABASE AND,

21      THEREFORE, THE TEXT FILE -- IT REFERS TO IT AS A TEXT FILE.

22          IT DOESN'T CALL IT A DATABASE.

23          BUT ITEM 14A CALLS IT A SYNCHRONIZED TEXT AND AUDIO VISUAL

24      FILE, OR SOMETHING LIKE THAT, AND THAT'S CLEARLY A DATABASE.

25          IT DOESN'T FOLLOW THAT WHAT WAS GOING IN IS A DATABASE.

```
 1          AND YOU HEARD THE ARGUMENT AGAIN, IT'S IMPLIED THAT A

 2   DATABASE IS REALLY A TABLE.  WHEN THEY SAY, OH, A TEXT FILE CAN

 3   BE A TABLE, LET ME SHOW YOU THIS EXTRA SLIDE NUMBER 2 I HAVE,

 4   AND HE SHOWED YOU -- IT HAD THE COLUMN HEADINGS, DATE, PUPIL,

 5   GRADE, AND THEN IT HAD RECORDS FOR EACH OF THE PUPILS.  OKAY?

 6          AND THAT'S -- AND SO THE QUESTION REMAINS, IF THAT'S WHAT

 7   THEY'RE LIMITING IT TO, IT EXCLUDES THE PREFERRED EMBODIMENT

 8   BECAUSE YOU HAVE A JAPANESE FILE GOING IN, IT'S JUST A TEXT

 9   FILE, IT'S NOT ENTRIES TO BE IMPORTED INTO EXCEL FOR A

10   SPREADSHEET.  IT'S JUST A TEXT FILE.

11          AND SO -- YOU KNOW, WE'VE GONE THROUGH -- YOU KNOW,

12   JUDGE ARMSTRONG'S OPINION, THE DICTIONARIES, THE OTHER COURTS,

13   IT'S CLEAR THAT STANDING ALONE, THE TERM "DATABASE," ALL IT HAS

14   TO HAVE, IT HAS TO HAVE STRUCTURE THAT CAN BE STORED AND

15   RETRIEVED.

16          AND SO IT'S NOT UNLIMITED IN SCOPE, OKAY?  IT HAS TO BE

17   STRUCTURED ENOUGH -- IN THE PREFERRED EMBODIMENT, IT HAS TO BE

18   STRUCTURED ENOUGH SO THAT YOU CAN OPERATE ON IT WITH THE VISUAL

19   EDITOR.  THE VISUAL EDITOR IS NOT IN THE CLAIMS, BUT THERE'S A

20   CUTTING PROCESS THAT HAS TO BE DONE, AND SO THERE HAS TO BE A

21   STRUCTURE.

22          AND THAT'S WHAT OUR CONSTRUCTION FROM THE FLYSWAT CASE

23   CAPTURES.  IT'S A COLLECTION OF DATA WITH A GIVEN STRUCTURE.

24          YEAH, WE DON'T SAY WHAT STRUCTURE BECAUSE THERE CAN BE

25   MANY KINDS OF STRUCTURE, BECAUSE IT HAS TO BE A STRUCTURE FOR
```

```
 1    SENDING, STORING AND PROVIDING, ON DEMAND, DATA FOR AT LEAST
 2    ONE USER.
 3              THE COURT:  SO ANOTHER WAY YOU MIGHT HAVE SAID THAT,
 4    MR. TRIBBLE, IT MAY BE AS GOOD TO SAY IT THE WAY YOU HAVE, BUT
 5    ANOTHER WAY YOU MIGHT HAVE SAID IT IS "A COLLECTION OF DATA
 6    WITH STRUCTURE SUFFICIENT FOR," AND THE POINT IS IT'S GOT TO BE
 7    GOOD ENOUGH TO DO THE OTHER THINGS.
 8              MR. TRIBBLE:  EXACTLY, YOUR HONOR.  AND I'M NOT
 9    WEDDED TO THESE WORDS.  THESE WORDS -- I WASN'T IN THE FLYSWAT
10    CASE AND THEY AGREED TO WHAT THEY AGREED TO AND THAT'S WHY WE
11    STARTED WITH THAT, YOU KNOW, BUT THERE ARE THESE OTHER
12    DEFINITIONS THAT CAPTURE THE SAME ESSENCE I GUESS IS WHAT I'M
13    TRYING TO SAY.
14         SO THEN AT THE END OF THE DAY, THE QUESTION BECOMES, GIVEN
15    THAT BROAD SCOPE, DID WE DO OR SAY ANYTHING TO DISAVOW, CLEARLY
16    DISAVOW THE FULL SCOPE OF THAT CLAIM COVERAGE?
17              AND SO IN ITS ARGUMENT, MICROSOFT STARTS OUT QUOTING FROM
18    THE '985 PATENT.
19              WELL, THE INVENTION WE'RE TALKING ABOUT -- "DATABASE" IS
20    USED IN THE '985.  THE '985, THOUGH, WAS FILED SEVEN YEARS
21    LATER, OKAY?  I MEAN, LET'S FOCUS ON THE '731, OKAY, THE EARLY
22    PATENT THAT REALLY MAKE USE OF THE DATABASE, YOU KNOW, IN A
23    DIFFERENT WAY.
24              AND BY THE WAY, TO SAY THIS IS A WORD FILE, IT REFERS TO
25    WORD AND HTML, AND THEN OVER HERE, THE '985 LATER SAYS WELL, IT
```

1   CAN ALSO WORK WITH MANY COMMERCIALLY ACCEPTABLE OR COMMERCIALLY

2   KNOWN DATABASE PROGRAMS, SUCH AS ORACLE AND ET CETERA, THAT IS

3   NOT A CLEAR DISAVOWAL.  IT'S NOT SAYING THAT A WORD DOCUMENT OR

4   AN HTML DOCUMENT IS NOT A DATABASE.

5        SO AGAIN WE GET THIS COMPARISON TO THE ACCUSED PRODUCT,

6   WHICH IS IMPROPER.  WE'VE HAD AN ARGUMENT THAT, WELL, IF IT WAS

7   CONSTRUED THAT WAY, IT WOULD BE INVALID.

8        YOU KNOW, YOU DON'T CONSTRUE CLAIMS TO BE VALID OR

9   INVALID.  YOU CONSTRUE CLAIMS, YOU KNOW, TO MEAN WHAT A PERSON

10  OF ORDINARY SKILL WOULD UNDERSTAND THOSE TERMS TO MEAN.

11       AND SO -- AND, AGAIN, ALL OF THAT SEEMS TO BE GOING

12  BACK -- YOU KNOW, ANYWAY, THERE'S A CLEAR ADMISSION THAT A TEXT

13  FILE CAN BE A DATABASE.  THE QUESTION IS, WHAT MAKES A TEXT

14  FILE A DATABASE IN SOME CIRCUMSTANCES?  WE SUBMIT THAT IT'S

15  STRUCTURED ENOUGH TO ALLOW YOU TO STORE AND RETRIEVE THE DATA.

16       NOW, LET ME ADDRESS -- LET ME ADDRESS THIS -- I THINK --

17  IT SEEMS TO ME THAT YOUR HONOR HAD CORRECTLY UNDERSTOOD THE

18  CASSORLA REFERENCE AND STORING EVERYTHING, BUT LET'S GO TO

19  THEIR EXHIBIT D THAT THEY RELY ON, BECAUSE THIS DOES HAVE --

20       GO TO -- IT'S PAGE 2 AT THE BOTTOM.  IT'S PAGE 3 AT THE

21  TOP, MR. BOLES.

22       AND SO IF YOU LOOK AT THIS, I DON'T HAVE IT HIGHLIGHTED,

23  BUT FIRST OF ALL, THE FIRST THING ABOUT THE WHOLE PROSECUTION

24  HISTORY ARGUMENT -- NO, GO BACK TO THE PRIOR PAGE, THERE WE

25  GO -- IS IT DOESN'T RELATE GENERICALLY TO THE TERM "DATABASE."

1    THIS IS TALKING ABOUT THE SOURCE MATERIAL IMAGE STORED IN A

2    DATABASE.

3         SO, REMEMBER, BY THE TIME IT GETS TO THE VIEWER, IT PUTS

4    UP AN IMAGE OF THE DOCUMENT ON THE SCREEN.  AND IN FACT, WE'VE

5    PUT -- I'M NOT GOING TO -- I DON'T THINK I SHOULD SPEND THE

6    TIME TO SHOW YOU, BUT IN OUR REPLY BRIEF, WE PUT IT AS

7    EXHIBIT 1 WHAT THE EXAMINER'S OBJECTIONS WERE.  AND THE

8    OBJECTIONS WERE OVER THIS CONCEPT OF, YOU KNOW, DOES CASSORLA

9    OPERATE IN THE SAME WAY TO SHOW THAT WHEN THE USER IS LOOKING

10   AT IT AT THE END, WHEN THEY CLICK ON SOMETHING AND THE

11   ANNOTATION POPS UP, DOES IT DO IT IN THE SAME WAY?

12        BECAUSE IF YOU LOOK AT THIS CLAIM -- FIRST OF ALL, IT'S A

13   LOT SHORTER.  IT'S DIFFERENT FROM THE CLAIMS TODAY, WHICH ARE

14   TOTALLY DIFFERENT.

15             THE COURT:  UM-HUM.

16             MR. TRIBBLE:  BUT JUST STARTING OFF, THIS IS TALKING

17    ABOUT THE IMAGE -- THE DATABASE STORING THE SOURCE MATERIAL

18    IMAGE, NOT THE DATABASE STORING THE SOURCE MATERIAL, WHICH ARE

19    THE CLAIMS AT ISSUE NOW.

20        AND AS YOUR HONOR CORRECTLY POINTED OUT, THEY PUT THAT IN

21   BECAUSE OVER AND OVER AGAIN, WHAT THEY ADDED TO WERE THE WORD

22   "ADDRESS" BECAUSE THEY'RE TALKING ABOUT THREE ADDRESSES.

23   THEY'RE TALKING ABOUT THE STARTING POINT ADDRESS OF THE IMAGE

24   DATABASE; AND THEN FOR THE CUTS, THERE'S A, A STARTING ADDRESS

25   AND AN ENDING ADDRESS THAT'S BASICALLY AN OFFSET FROM THE

```
 1    STARTING ADDRESS.

 2         AND SO -- AND THEN THEY DESCRIBE THAT LATER AND THE -- AND

 3    IF WE GO TO THE LAST -- WELL, GO TO PAGE 8 OF 9.  THEY QUOTED

 4    PART OF IT -- NO, THE PRIOR PAGE.  THERE WE GO.

 5         IF YOU LOOK AT THE FIRST LITTLE PARAGRAPH AS TO THIS IMAGE

 6    DATABASE, WHAT IT'S TALKING ABOUT IS, UNLIKE CASSORLA, IT'S

 7    TAGLESS AND MEDIA INDEPENDENT.  AND IT GOES -- AND THEN THE

 8    NEXT PARAGRAPH TALKS ABOUT HOW IT STORES IN A LOOK-UP TABLE --

 9    THIS IS THE LOOK-UP TABLE -- THE START ADDRESS.  IT SAYS "THE

10    ELECTRONIC ADDRESS IS STORED."  THAT'S THE BEGINNING ADDRESS OF

11    THE DATABASE.

12         AND THEN FOR EACH OF THE DISCRETE PIECES, IT STORES THE

13    START AND END ADDRESSES.

14              THE COURT:  OR I THINK YOU JUST EXPLAINED TO ME, IN

15     SOME INSTANCES AT LEAST, IT STORES THE OFFSET FROM THE INITIAL

16     ADDRESS.

17              MR. TRIBBLE:  CORRECT.  THAT'S CORRECT.

18              THE COURT:  OKAY.

19              MR. TRIBBLE:  AND SO WE CAN GO BACK TO SLIDE 2.

20         THE -- AND SO THE POINT, YOUR HONOR, IS NONE OF THAT IS

21    SOME CLEAR DISCLAIMER OF THE SCOPE OF THE TERM "DATABASE."

22    THEY WERE TRYING TO DISTINGUISH THE OLD CLAIM, THE DIFFERENT

23    CLAIM IN THE '720, THE MUCH SHORTER CLAIM FROM CASSORLA, AND

24    IT'S NOT A DISCLAIMER SAYING "DATABASE IS LIMITED TO THIS."

25    WE'VE ALREADY SEEN, THERE IS A LOOK-UP TABLE, AND THAT'S A
```

1    DATABASE WITH FIELDS AND RECORDS, BUT THAT DOESN'T MEAN THAT

2    ALL DATABASES ONLY HAVE FIELDS AND RECORDS.

3           AND SO THAT'S OUR POINT ABOUT THAT.

4           THE COURT:  OKAY.

5           MR. TRIBBLE:  AND THEN LIKE THE QUOTES FROM

6    MR. YAMANAKA, AND IN THEIR BRIEF THEY HAD A QUOTE FROM

7    MR. BOOKMAN, THOSE SIMILARLY ARE NOT CLEAR DISCLAIMERS.

8           IF YOU LOOK, AS HE EXPLAINED IN THE SECOND HIGHLIGHTED

9    QUOTE, HE SAID "WE IMPORTED INTO OUR DATABASE FORMAT," OKAY?

10          SO IN THE PREFERRED EMBODIMENT, YOU KNOW, THEY DID TAKE

11   THE DATA AND THEY PUT IT IN THEIR SPECIALIZED DATABASE FORMAT.

12   AGAIN, THAT'S NOT A DISCLAIMER AS TO WHAT THE TERM "DATABASE"

13   MEANS.

14          SO AT THE END OF THE DAY, WE'RE LEFT WITH THESE CLAIMS

15   THAT ARE EXAMINED BY THE PATENT AND TRADEMARK OFFICE AND THAT,

16   YOU KNOW, SAY, YOU KNOW, YOU START WITH THE SOURCE MATERIAL

17   STORED IN A DATABASE AND DEPENDING ON WHAT FIELDS AND RECORDS

18   MEAN, YOU KNOW, BECAUSE THE TEXT FILE, YOU CAN THINK OF IT AS,

19   YOU KNOW, A TERM OR A PARAGRAPH MIGHT BE THE RECORD AND THE

20   SPACES DELIMITS THE FIELDS OF DIFFERENT WORDS, OKAY, IF THAT'S

21   WHAT IT MEANS, FIELDS AND RECORDS WOULD BE FINE.

22          BUT OTHERWISE, IF IT'S SOMETHING NARROWER THAN THAT, WHICH

23   IS CLEARLY WHERE MICROSOFT IS HEADED WITH THIS AS WE SAW FROM

24   THEIR GRADE, PUPIL, DATE EXAMPLE OF A TEXT FILE, AND EVEN THEN,

25   THEY HEDGED ON WHETHER THAT WOULD BE A DATABASE.  THEY KIND OF

1      SAID IT WOULD BE LIKE A DATABASE.

2           YOU KNOW, THEN IF THAT IS THE CASE, IT WOULD EXCLUDE THE

3      PREFERRED EMBODIMENT.

4               THE COURT:  ALL RIGHT.  THANK YOU, MR. TRIBBLE.

5           MR. LAMBERSON, ANY LAST WORD ON THIS OR SHALL WE TURN TO

6      THE NEXT TERM?

7               MR. LAMBERSON:  I THINK JUST ON THE EXCLUDING

8      PREFERRED EMBODIMENT POINT, YOUR HONOR --

9               THE COURT:  SURE.

10              MR. LAMBERSON:  -- I DON'T BELIEVE WE ARE -- THE

11     CLAIM TALKS ABOUT -- THE FIRST LIMITATION REALLY IS STORING THE

12     SOURCE MATERIAL IN THE DATABASE, SO YOU HAVE THE SOURCE

13     MATERIAL, THEN YOU PUT IT IN THE DATABASE.

14          WE'RE SAYING THOSE ARE TWO DIFFERENT THINGS, THE SOURCE

15     MATERIAL AND THE DATABASE.

16          THEY'RE BASICALLY ACCUSING THE SOURCE MATERIAL NOW AS

17     BEING THE DATABASE.  THEY'RE SAYING THE WORD FILE -- THE WORD,

18     MICROSOFT WORD DOCUMENT IS THE DATABASE.

19          WE'RE NOT EXCLUDING ANYTHING.  YOU HAVE TO PUT IT INTO A

20     DATABASE AND THE DATABASE HAS TO BE SOMETHING DIFFERENT THAN

21     THE SOURCE DATA.

22          AND THEN JUST ONE OTHER POINT ON THE PROSECUTION HISTORY,

23     YOUR HONOR.  I JUST WANT TO MAKE SURE THE COURT'S LOOKING AT

24     THE RIGHT SPOT.

25              MR. TRIBBLE WAS FOCUSSING ON CLAIM 1.  REALLY THE COURT

1      SHOULD LOOK AT CLAIM 8, WHICH IS WHAT'S ASSERTED HERE.

2           THE COURT:  I APOLOGIZE.  WE'RE TALKING ABOUT THE

3      '731, CLAIM 8?

4           MR. LAMBERSON:  YES, WHICH BECAME -- AT THIS POINT IT

5      WAS THE '720, CLAIM 8, BUT THE NUMBERING REMAINS THE SAME.  SO

6      THIS BECAME THE '731, CLAIM 8, NOT CLAIM 1.

7        AND THE ONLY THING ADDED HERE IS "ADDRESS STORED IN

8      ELECTRONIC DATABASE."  THERE'S NOTHING ABOUT TAGS BEING FIXED

9      OR NOT.  THAT'S WHAT WAS ADDED AND THAT'S WHAT WE HAVE TO

10     UNDERSTAND, YOU KNOW, WHAT WERE THEY TRYING TO DISTINGUISH?

11          AND I AGREE IT GOES TO BOTH THE DATABASE AND POTENTIALLY

12     THE LINKING PIECE OF IT, BUT WE DO THINK THIS DATABASE

13     STRUCTURE WAS PART OF WHAT THEY HAD TO ADD TO GET AROUND THE

14     PRIOR ART, AND THAT'S THE ONLY POINT.

15          THANK YOU, YOUR HONOR.

16          THE COURT:  ALL RIGHT.  THANK YOU.

17          MR. TRIBBLE:  YOUR HONOR, JUST ON THAT POINT.

18          THE COURT:  SURE.

19          MR. TRIBBLE:  JUST TO BE CLEAR -- AND HE'S CORRECT, I

20     SHOULD HAVE PUT UP CLAIM 8 -- BUT IT HAS ALL THE OTHER ENTRIES

21     FOR ADDRESS, JUST LIKE CLAIM 1.  IT'S REALLY THE SAME ARGUMENT.

22          AND THE ONLY OTHER THING I WOULD SAY ABOUT IT IS THAT IT

23     DOES TALK ABOUT TAGS AND TAGLESS AND EVERYTHING, BUT THAT'S THE

24     POINT IS I THINK WHEN THEY AMENDED THAT, THEY WERE CLEARLY

25     TRYING TO EMPHASIZE THAT WE HAVE THIS LOOK-UP TABLE WITH

```
 1     STARTING AND ENDING ADDRESSES -- WHICH BY THE WAY, CASSORLA,

 2     YOU'RE CORRECT, YOUR HONOR, WE'RE NOT CONTENDING THAT THOSE ARE

 3     NOT DATABASES, THOSE TWO TABLES THAT WERE SHOWN ON THAT.

 4          BUT THE -- AND SO THE DATABASE WAS NOTHING -- THAT WAS NOT

 5     BEING ADDED TO DISTINGUISH ANYTHING.  IT WAS POINTING OUT THAT

 6     OUR METHOD OF CUTTING IT AND HAVING THESE JUST STARTING AND

 7     ENDING ADDRESSES AND THEN THAT LINKS TO AN EXTERNAL RESOURCE,

 8     THAT'S WHAT'S DIFFERENT.

 9          THE COURT:  THAT'S THE DISTINCTION.  ALL RIGHT.

10     WHY DON'T WE TURN TO "LINKING" IF WE COULD?

11          MR. TRIBBLE:  OKAY.  ON THIS ONE, I HAVE A BIT OF AN

12     UPDATE.  YOU KNOW, WE FILED OUR INITIAL STATEMENT OF WHAT THE

13     CONSTRUCTIONS WERE AND EVERYTHING, AND THROUGH THE BRIEFING IT

14     HAS EVOLVED A LITTLE BIT AND SO I WANT TO WALK YOU THROUGH

15     THIS.

16          AND THESE ARE THE FIRST TWO LINKED TERMS.  THERE ARE SOME

17     OTHER ONES THAT FOLLOW ON FROM THIS THAT I THINK THE DECISION

18     ON THIS WILL DECIDE THOSE, AND SO BASICALLY HERE ARE THE TWO

19     CONSTRUCTIONS.

20          THE MICROSOFT CONSTRUCTION ORIGINALLY HAD "IN A RECORD

21     THAT IS DIFFERENT FROM THE ORIGINATING RECORD."  IN THEIR

22     BRIEFING, THEY AGREED TO DROP THAT PART, AND SO THAT'S WHY

23     WE'VE MARKED THAT OUT AND GREYED IT.  OKAY?

24          AND SO THEN WE'RE LOOKING AT THE DIFFERENCE BETWEEN OUR

25     PROPOSED CONSTRUCTION AND THEIR PROPOSED CONSTRUCTION, AND WE
```

1     REALLY DECIDED THAT THEY'RE VERY CLOSE AND IT -- AND IT ALL

2     DEPENDS ON WHAT "POINTER" MEANS.

3          SO AT END OF THE DAY, IN OUR REPLY BRIEF, WE SAID, "LOOK,

4     WE'RE FINE WITH THEIR CONSTRUCTION, JUST REPLACE THE WORD

5     'POINTER' WITH 'REFERENCE.'"

6          AND SO THAT'S THE SINGLE POINT OF DIFFERENCE, I BELIEVE,

7     AS IT STANDS NOW.

8               THE COURT:  I APPRECIATE THAT CLARIFICATION.  I WAS

9     TRYING TO PUT ALL THIS TOGETHER MYSELF AND I WASN'T DOING A

10    VERY GOOD JOB.

11              MR. TRIBBLE:  I APOLOGIZE.  THE WAY THE BRIEFING WAS

12    DONE, BOTH SIDES, THEY WOULD MAKE THEIR ARGUMENT, AND THEN IN

13    THE LAST SENTENCE OF EACH SECTION WOULD SAY, "OH, AND BY THE

14    WAY, WE'RE FINE WITH THIS."  SO WE'LL TRY TO DO THAT

15    DIFFERENTLY FROM NOW ON, YOUR HONOR.

16         AND SO THIS "USING REFERENCE," THIS CONSTRUCTION BASICALLY

17    COMES AGAIN FROM JUDGE ARMSTRONG'S OPINION IN THE FLYSWAT CASE,

18    AND OUR PROPOSED DEFINITION, I THINK, IS IDENTICAL.  IT'S

19    "REFERRING" -- OR NOW WE SAY "A REFERENCE," BUT IT'S REFERRING

20    "TO DATA OR INFORMATION OR THE LOCATION OF DATA OR

21    INFORMATION."

22         AND JUDGE ARMSTRONG FOUND THAT THAT FALLS WITHIN THE

23    MEANING OF THE TERM "LINKING."

24         AND IN FACT, THAT'S WHERE MICROSOFT GOT THEIR PROPOSAL.

25    THEY JUST REPLACED "REFERRING" WITH "POINTER."

```
 1          AND SO THE ISSUE IS, ARE LINKS LIMITED TO POINTERS?

 2          IT KIND OF DEPENDS ON WHAT "POINTER" MEANS.  OUR REAL

 3    ISSUE WITH "POINTER" IS IT'S -- THE TERM IS USED, I BELIEVE,

 4    ONCE IN THE '731 IN THE SPEC TO REFER TO HYPERLINKS.  IT

 5    SAYS -- WHEN IT WAS SAYING HERE IS THE PRIOR ART, YOU KNOW,

 6    THAT WE'RE GOING TO BE DIFFERENT FROM, AND IT SAYS HYPERLINKS

 7    WERE A SIMPLE TYPE OF POINTER, AND THERE'S A STATEMENT IN THE

 8    FILE HISTORY REFERRING TO A POINTER.

 9          POINTERS ARE FINE, AS LONG AS WE ALL AGREE ON WHAT A

10    POINTER IS.  I MEAN, OBVIOUSLY TO US A POINTER IS A REFERENCE.

11          MICROSOFT SAYS, YOU KNOW, ON ONE EXTREME, A POINTER WOULD

12    BE AN ADDRESS, A SPECIFIC ADDRESS.

13          BUT I THINK MICROSOFT SAYS IN THEIR BRIEF THAT "POINTER"

14    SPECIFIES THE PLACE OR LOCATION OF THE DATA, AND I CAN POINT TO

15    THAT IN THE BRIEF IF THERE'S ANY DISPUTE ABOUT THAT.

16          BUT I JUST WANT TO POINT OUT THAT IF YOU -- IF THAT'S WHAT

17    "POINTER" MEANS, IF YOU REPLACED "POINTER" WITH "LOCATION" --

18               THE COURT:  WE'VE ALREADY KIND OF GOT THAT COVERED

19     ELSEWHERE IN THE CONSTRUCTION, RIGHT?

20               MR. TRIBBLE:  IT WOULDN'T MAKE ANY SENSE, OKAY?  IT

21     WOULD SAY "THE LOCATION OF THE LOCATION OF THE DATA."  THAT'S

22     WHY WE THINK IT'S TOO NARROW.

23          AND SO WE LIKE THE STATEMENT FROM JUDGE ARMSTRONG, AND SO

24    WE POINTED OUT IN THE SPEC, IT SAYS "THE NUMBER AND TYPE OF

25    LINKS FOR ANY COMPONENT IS DYNAMIC."
```

1      NOW, I DON'T WANT TO -- I WANT TO BE CLEAR, WHEN IT SAYS

2  "TYPE OF LINKS," IT SAYS "THAT MEANS A SINGLE ENTRY COULD HAVE

3  SEVERAL DIFFERENT REFERENCES ATTACHED TO IT, EACH CONTAINING

4  DIFFERENT FORMS OF DATA."

5      BUT THE POINT IS SINCE THE EXTERNAL RESOURCES COULD BE

6  SOUND, AUDIO --

7          THE COURT:  VIDEO, YEAH.

8          MR. TRIBBLE:  -- ET CETERA, THE LINKS COULD TAKE

9  DIFFERENT FORMATS.

10     AND LET'S SKIP OVER THAT.

11     LET'S GO TO THE IBM DICTIONARY OF COMPUTING.  YOU KNOW,

12  THERE ARE ASSOCIATIONS BETWEEN TWO DIFFERENT INFORMATION NODES,

13  SO REFERENCE ASSOCIATION.

14     AND I WANTED TO POINT OUT THIS JUST TO SHOW THAT --

15  BECAUSE THERE'S A REFERENCE IN THE SPEC TO DIRECTLY LINKING,

16  WHICH IMPLIES THAT LINKING CAN ALSO BE DONE INDIRECTLY, AND SO

17  I WANT TO POINT OUT THAT IN THE PREFERRED EMBODIMENT, WE HAVE

18  THIS LOOK-UP TABLE IN FIGURE 2, AND IT'S GOT THE START AND END

19  ADDRESSES OF EACH OF THE DISCRETE PIECES.  OKAY?

20     AND THEN IT HAS LINK, AND THAT WHOLE COLUMN IS LINK, BUT

21  I'VE HIGHLIGHTED IN YELLOW THE TEXT, PICT, AND SO ON BECAUSE I

22  WANT TO POINT OUT, THE LINK IN THAT CASE, FIRST IT TELLS YOU

23  LIKE, YOU KNOW, GO TO THE TEXT DICTIONARY OR THE PICTURE

24  DATABASE OR TEXT DATABASE AND SO ON, AND IN THE PREFERRED

25  EMBODIMENT, IT THEN GIVES YOU FURTHER INFORMATION.

1         BUT IF YOU LOOK AT WHAT I'VE DESCRIBED IN STEP 203, THE

2    OFFSET IS WHERE YOU CLICK, THAT TELLS YOU WHAT PIECE, WHAT YOUR

3    OFFSET IS IN THE MATERIAL FROM WHERE YOU CLICKED.  AND SO IN

4    203, IT SAYS THAT OFFSET, WHERE YOU CLICKED, IS LINKED TO TEXT.

5         AND THEN IT SAYS, "LOOK UP TEXT AT INDEX 200."  IN OTHER

6    WORDS --

7              THE COURT:  SO THAT'S THE INDIRECT.

8              MR. TRIBBLE:  THAT'S THE INDIRECT, THAT THERE'S

9    FURTHER PROCESSING BEING DONE IN THE PREFERRED EMBODIMENT.  IT

10   SAYS FIRST GO TO THE TEXT DICTIONARY, THEN THERE'S FURTHER

11   PROCESSING TO GO SEE WHAT ENTRY CORRESPONDS TO THE NUMBER 200,

12   AND THAT'S WHERE IT PULLS UP THE WORD JAPANESE ECONOMY.  OKAY?

13        AND SO I JUST WANTED THIS IDEA OF -- BECAUSE I THINK, YOU

14   KNOW, WHEN -- IT'S JUST A ONE SENTENCE STATEMENT IN THEIR BRIEF

15   WHEN THEY SAY A POINTER IS THE LOCATION OR PLACE.  I THINK THEY

16   MAY SAY PLACE OF THE DATA.

17        YOU KNOW, IT IMPLIES THAT THIS IS A, AN ADDRESS OR

18   SOMETHING LIKE THAT.  IT TELLS YOU EXACTLY WHERE IT GOES.

19        AND IN THE PREFERRED EMBODIMENT, THERE'S FURTHER

20   PROCESSING.  YOU KNOW, IT REFERS YOU TO THE TEXT DICTIONARY AND

21   IT HAS THE, THE ALGORITHMS IN IT OR THE PROCESSING POWER,

22   YOU'LL FIND THE CORRESPONDING ONE.

23              THE COURT:  IT'S A TWO-STEP.

24              MR. TRIBBLE:  A TWO-STEP, YES, YOUR HONOR.  THAT'S A

25   GOOD WAY OF SAYING IT.

```
 1            SO AGAIN WE HAVE A CLAIM DIFFERENTIATION ARGUMENT WHERE

 2      THE LINK, IT CAN BE A HYPERLINK, THE LINK CAN BE AN ADDRESS,

 3      BUT THE LINK CAN ALSO BE REFERENCE INFORMATION FOR RETRIEVING

 4      THE SELECTED MATERIALS, OKAY?

 5            AND SO, YOU KNOW, THAT'S AS FAR AWAY AS YOU CAN GET.  AS

 6      LONG AS IT'S REFERENCE INFORMATION THAT ALLOWS THE SOFTWARE TO

 7      RETRIEVE THE CORRECT EXTERNAL REFERENCE MATERIAL, THAT'S A

 8      LINK.

 9            THANK YOU.

10            THE COURT:  THANK YOU, MR. TRIBBLE.

11      MR. LAMBERSON.

12      MR. LAMBERSON, I JUST WANT TO BEGIN BY ASKING ON THIS

13      POINT, ARE YOU IN AGREEMENT THAT WE ARE AT A PLACE WHERE THE

14      DIFFERENCE BETWEEN THE PARTIES IS "POINTER" VERSUS "REFERENCE"?

15      OR DO YOU HAVE A DIFFERENT VIEW?

16            MR. LAMBERSON:  I BELIEVE THAT'S RIGHT, YOUR HONOR.

17      I DO AGREE.

18            THE COURT:  OKAY.  WHY DON'T YOU GO AHEAD AND TELL ME

19      WHY "POINTER" IS THE WAY TO GO?

20            MR. LAMBERSON:  AND ONE THING I SHOULD SAY, YOUR

21      HONOR.  WE DIDN'T JUST CHOP OFF THE END OF OUR CONSTRUCTION.

22      WE REPLACED -- THEY DIDN'T LIKE THE WORD "RECORD."  WE REPLACED

23      IT IN THEIR DEFINITION FOR EXTERNAL CONTENT, WHICH IS

24      "INFORMATION THAT IS EXTERNAL TO THE SOURCE MATERIAL."

25            THE COURT:  THAT'S THEIR --
```

```
 1              MR. LAMBERSON:  IT'S FROM FLYSWAT.

 2              MR. TRIBBLE:  OH, FAIR ENOUGH.

 3              THE COURT:  YEAH.

 4              MR. LAMBERSON:  SO I DON'T THINK THAT'S A DISPUTE.

 5      WE'RE JUST TALKING ABOUT -- AND WHAT WE'VE DONE HERE, WE'VE PUT

 6      THE CLAIM LANGUAGE ON THE LEFT.  THIS IS CLAIM 8 FROM THE '731.

 7              JUST TO HIGHLIGHT WHAT WE'RE TALKING ABOUT HERE, WE'RE

 8      TALKING ABOUT A PART OF THE LOOK-UP TABLE.  SO THE LOOK-UP

 9      TABLE HAS THREE THINGS.  IT HAS STARTING ADDRESSES, ENDING

10      ADDRESSES, AND A LINK TO THE EXTERNAL REFERENCE MATERIAL.

11              AND AS -- IT'S SIMILAR IN THE LATER PATENTS.  YOU HAVE

12      THESE DATABASES THAT ARE SYNDICATED, AND THEN YOU HAVE THESE

13      LINKS THAT ARE USED TO LINK A TERM FROM THE DOCUMENT TO THE

14      IDENTIFYING CONTENT.

15              THE COURT:  CAN WE JUST GO BACK --

16              MR. LAMBERSON:  YEAH.

17              THE COURT:  -- AND I PROBABLY SHOULD HAVE ASKED THIS

18      QUESTION 20 MINUTES AGO.

19              WHEN WE'RE TALKING HERE IN THE CLAIM TERM ABOUT STARTING

20      ADDRESSES, FOR EXAMPLE, AND I DON'T BELIEVE THAT'S A -- MAYBE I

21      OVERLOOKED IT.

22              MR. LAMBERSON:  NOT IN DISPUTE.

23              THE COURT:  NOT IN DISPUTE, OKAY.  EVEN BETTER.

24              DOES THE STARTING ADDRESS REFER SPECIFICALLY TO THE

25      INITIAL CUT OR THE STARTING CUT ON THE FILE?  OR AM I JUST
```

```
 1         MISCONSTRUING A BUNCH OF DIFFERENT CONCEPTS HERE?

 2              MR. LAMBERSON:  THERE'S TWO CONCEPTS, YOUR HONOR.

 3         THERE'S THE BEGINNING POSITION ADDRESS, WHICH WOULD BE SORT OF

 4         POSITION 0.

 5              THE COURT:  OKAY.

 6              MR. LAMBERSON:  THAT WOULD BE SORT OF YOUR FIRST --

 7         WHEN YOU START CUTTING, THAT WOULD BE SORT OF THE FIRST

 8         ADDRESS.

 9              THE COURT:  OKAY.

10              MR. LAMBERSON:  AND THEN ALL YOUR OTHER ADDRESSES GO

11         ON FROM THERE.  SO YOUR FIRST WORD MIGHT BE FROM 0 TO 5, YOUR

12         NEXT WORD FROM 6 TO 10, AND SO ON AND SO ON.

13              THE COURT:  OKAY.

14              MR. LAMBERSON:  SO THIS TABLE -- WHEN WE TALK ABOUT

15         THE STARTING AND ENDING ADDRESSES, THOSE ARE ADDRESSES FOR ONE

16         OF THE CUT PIECES AND THEY ARE AN OFFSET FROM THE START OF THE

17         FILE.

18              THE COURT:  OKAY.

19              MR. LAMBERSON:  SO THIS WOULD BE THE 5 TO 10.

20              THE COURT:  OKAY.

21              MR. LAMBERSON:  AND WE'LL GET TO SOME GRAPHICS WITH

22         THAT AS WELL.

23           BUT, YOUR HONOR, I WANT TO GIVE YOU A LITTLE MORE

24         BACKGROUND HERE.

25              THE COURT:  GO AHEAD.
```

1           MR. LAMBERSON:  BECAUSE I THINK THAT THIS -- THIS IS

2    AN EXAMPLE WHERE BOTH PARTIES REALLY AGREE HOW THE ACCUSED

3    PRODUCT WORKS, AND REALLY THE ONLY DISPUTE IS ONE OF CLAIM

4    SCOPE.  IS IT A LINK OR IS IT NOT?

5           AND YOU MAY HAVE SEEN IN SENTIUS' TECHNICAL TUTORIAL, THEY

6    HAD A LOT OF PICTURES OF TABLES THAT WERE NOT DRAWN FROM THE

7    PATENT, AND THE REASON THEY DID THAT, PRETTY STRAIGHTFORWARD,

8    THEY WERE TRYING TO MAKE SOMETHING THAT LOOKED LIKE WHAT WORD

9    DOES.

10          SO I'D LIKE TO GIVE YOU A LITTLE MORE EXPLANATION FOR WHAT

11   WORD DOES AND YOU CAN UNDERSTAND WHAT THEY ARE CALLING A LINK

12   AND WHY WE DON'T BELIEVE IT'S A LINK.

13          SO IT'S ACTUALLY FAIRLY STRAIGHTFORWARD.  WORD CREATES

14   TABLES FOR BACKGROUND SPELL CHECKING THAT HAVE THE START OF A

15   RUN OF TEXT, AND THEN IF THEY CHECK IT, THEY FLAG IT AS

16   CHECKED.  SO THIS IS A FLAG, A 0 OR A 1, HAVE I CHECKED IT OR

17   NOT; AND THEN THEY HAVE A FLAG, IS IT MISSPELLED OR NOT?  THERE

18   WILL BE AN ADDITIONAL FLAG, IS THERE A GRAMMAR ERROR OR NOT?

19              THE COURT:  OKAY.  LET ME STOP YOU THERE BECAUSE THIS

20   IS HELPFUL.

21              MR. LAMBERSON:  UM-HUM.

22              THE COURT:  THIS IS ONE OF THE BACKGROUND QUESTIONS I

23   WANTED TO GET TO THAT I MENTIONED EARLIER.

24          SO WALK ME THROUGH THIS EXAMPLE IN A LITTLE MORE DETAIL.

25   SO AS I UNDERSTAND IT, THE USER IS ENTERING THE TEXT THAT YOU

1    SEE HERE ON SLIDE 32, THE QUICK BROWN FOX JUMPS OVER THE LAZY

2    DOG.

3              MR. LAMBERSON:  RIGHT.

4              THE COURT:  AS THE USER IS ENTERING THAT TEXT INTO

5    THE EDITOR, IN THIS CASE WORD --

6              MR. LAMBERSON:  RIGHT.

7              THE COURT:  -- YOU'RE TELLING ME THAT THE -- IN THE

8    BACKGROUND, THERE IS THIS TABLE BEING ASSEMBLED IN REAL TIME?

9              MR. LAMBERSON:  RIGHT.

10             THE COURT:  OKAY.  AND AS I UNDERSTAND THE ACCUSED

11   PROCESS, OR PRODUCT HERE, THE -- WHAT'S REALLY BEING FOCUSSED

12   ON OR TARGETED IS THE REAL TIME LIVE CHECKING ELEMENT OF ALL OF

13   THIS.

14        NOW, WHEN YOU SAY THAT THERE'S A BIT -- AN INITIAL RECORD

15   CREATED WHERE THE FIRST FIELD IS THE BEGINNING ADDRESS AND THE

16   SECOND FIELD IS CHECKED, IS THE CHECKED FIELD OF THE RECORD

17   MARKED POSITIVE, OR 1, WHEN THE PROCESS HAS BASICALLY

18   COMPLETED?  OR IN OTHER WORDS --

19             MR. LAMBERSON:  NO.

20             THE COURT:  OKAY.  SO WHERE AM I GETTING THAT WRONG?

21             MR. LAMBERSON:  YOU KNOW WHAT?  I EVEN HAVE SOME

22   ANIMATIONS.  SENTIUS HAS SEEN THESE BEFORE, SO I DON'T THINK

23   I'M SURPRISING ANYBODY.

24        ARE YOU ALL RIGHT IF I USE THE ANIMATION?

25             MR. TRIBBLE:  SURE.

1          MR. LAMBERSON:  ALL RIGHT.  HOPEFULLY I CAN GET THESE

2     TO RUN.

3          THE COURT:  OKAY.

4          MR. LAMBERSON:  SO AS YOU'RE TYPING, YOU CREATE THIS

5     TABLE DYNAMICALLY IN THE BACKGROUND.  EACH TIME YOU TYPE A

6     WORD, IT'S GOING TO RUN A CHECK ON IT AND IT'S GOING TO SEE, IS

7     IT IN THE DICTIONARY OR NOT?  AND IF IT'S NOT, IT'S FLAGGED AS

8     CHECKED AFTER YOU TYPE THE WORD AND IT SAYS IT'S NOT

9     MISSPELLED.

10         THE COURT:  OKAY.

11         MR. LAMBERSON:  AND AT THAT POINT YOU CAN KEEP

12    TYPING -- LET'S SEE, IF I CAN KEEP TYPING -- AND IT'LL KEEP

13    CHECKING AS YOU TYPE, AND IT'LL ONLY MARK A NEW REGION ONCE YOU

14    GET TO A WORD THAT IS MISSPELLED.  IF YOU TYPE THE WHOLE THING

15    CORRECTLY, YOU'RE ONLY GOING TO HAVE ONE ENTRY AND IT'S GOING

16    TO SAY EVERYTHING IS FINE.

17         THE COURT:  AH, OKAY.  OKAY.  AND SO IT'S ONLY -- AND

18    THIS GETS TO MY QUESTION.  SO IT'S ONLY WHEN THERE IS AN ERROR

19    OR A MISSPELLING THAT YOU HAVE MULTIPLE ENTRIES IN THAT TABLE

20    THAT'S BEING BUILT?

21         MR. LAMBERSON:  THAT IS ACCURATE, YOUR HONOR, I --

22    YES.

23         THE COURT:  OKAY.

24         MR. LAMBERSON:  AND THAT'S ALL IT DOES.  I MEAN, YOU

25    CAN KEEP TYPING.  IT'LL CHECK THE NEXT REGION AND IT'LL MARK

1        THAT AS CORRECT.

2             SO ALL THAT WORD KNOWS AT THIS POINT IS THAT SOMETHING IS

3        MISSPELLED.  IT DOES NOT KNOW WHAT THE CORRECT SPELLING IS.  IT

4        DOES NOT KNOW WHETHER THERE IS A CORRECT SPELLING.  IT DOES NOT

5        KNOW WHERE THE CORRECT SPELLING IS.

6             AND YOU MAY ASK, WELL, WHY?  WHY DOESN'T IT JUST PUT IN

7        THIS TABLE WHAT THE CORRECT SPELLING IS?  NUMBER ONE, PEOPLE

8        OFTEN DON'T CORRECT THE MISSPELLINGS.  WHENEVER I TYPE

9        "SENTIUS" IN A BRIEF, IT'S UNDERLINED.  AND GUESS WHAT?  I

10       DON'T DO ANYTHING WITH THAT.  I LEAVE IT THERE UNDERLINED.  SO

11       YOU MAY NOT NEED THE CORRECT SPELLING.

12            OR, ALTERNATIVELY, THERE MAY BE MULTIPLE POTENTIAL CORRECT

13       SPELLINGS.  WORD DOESN'T KNOW WHICH ONE IS THE ABSOLUTE CORRECT

14       SPELLING.  IT'S NOT THAT SMART YET.

15            SO WHAT IT DOES IS IT LEAVES IT FOR LATER.  AND LATER, IF

16       SOMEBODY WERE TO COME ALONG AND RIGHT CLICK, WORD WOULD SEND

17       THE WORD THEY CLICKED ON OUT TO THE DICTIONARY, SAY TAKE A LOOK

18       AT THIS AND PLEASE SEND ME BACK A LIST OF CORRECTIONS.

19            THE COURT:  RIGHT.  WHERE THERE ARE MULTIPLE OPTIONS,

20       IT WILL PRESENT THOSE OPTIONS AND THE USER MAKES A SELECTION.

21            MR. LAMBERSON:  THAT'S RIGHT.  BUT THAT'S ALL DONE

22       LATER.  THAT IS NOT DONE THROUGH THIS TABLE.

23            AND SO THE KEY DISPUTE HERE, YOUR HONOR, IS, IS THIS FLAG

24       SAYING THAT IT'S MISSPELLED, AND THERE WILL BE ANOTHER ONE THAT

25       SAYS THERE'S A GRAMMAR ERROR, IS THAT A LINK TO ANYTHING?

1      WE BELIEVE IT'S NOT.  SENTIUS BELIEVES IT IS.  THAT IS THE

2    CRUCIAL ISSUE IN THIS CASE, AND THAT IS WHY THERE'S A DISPUTE

3    ABOUT "LINK."

4      YOU KNOW, AN ANALOGY MIGHT BE IF I GAVE YOUR HONOR A PIECE

5    OF PAPER WITH A WORD ON IT AND I SAID "THIS WORD IS

6    MISSPELLED," YOU COULD ASK ME, "HOW DO YOU SPELL IT?"  "I DON'T

7    KNOW.  SORRY."

8      NOW, YOU MAY KNOW, "I'VE GOT A DICTIONARY IN MY OFFICE.

9    I'LL GO LOOK THERE.  OR I'LL SEARCH ON-LINE USING MY FAVORITE

10   SEARCH ENGINE."

11     BUT I DIDN'T GIVE IT TO YOU, AND THIS TABLE DOESN'T GIVE

12   YOU THAT ANSWER.

13     SO THE QUESTION IS, HOW BROADLY DO WE READ "LINK"?  DO WE

14   SAY THAT FLAGGING IS MISSPELLED -- IS A LINK OR NOT?

15     SO GOING BACK TO THE SLIDES, YOU KNOW -- WELL, FIRST OF

16   ALL, LET'S UNDERSTAND WHAT THIS LINK REALLY IS IN THE PATENTS.

17   I THINK WE ALL DO UNDERSTAND IT.  IN THE '731 CLAIMS, THE LINK

18   IS WHAT YOU USE TO GET THE EXTERNAL MATERIAL AND THEN DISPLAY

19   IT TO THE USER.  IT'S THAT SIMPLE.

20     AND IN THE LATER TWO PATENTS, THEY BASICALLY JUST REFER

21   BACK TO THE '720 PATENT, WHICH BECAME THE RE-ISSUED PATENT, FOR

22   HOW THIS WHOLE RICHLINK PROCESSOR OPERATES.  SO THEY BASICALLY

23   HAVE THE SAME DISCLOSURE.  THERE'S NOTHING NEW.

24     SO WE'RE TALKING ABOUT A LOOK-UP TABLE WITH A LINK AND THE

25   LINK IS WHAT YOU USE TO GET THE MATERIAL.

1          AND SENTIUS DESCRIBED IT PRETTY SIMPLY IN THE PRIOR CASE.

2     THEY SAID THE LOOK-UP TABLE IS WHERE YOU GO TO FIND AN OUTPUT

3     VALUE THAT CORRESPONDS TO AN INPUT VALUE.  THE OUTPUT VALUE IS

4     EXTERNAL REFERENCE MATERIAL.

5          SO THAT'S WHAT WE BELIEVE WE'RE TALKING ABOUT WHEN WE'RE

6     TALKING ABOUT A LINK.  YOU GO TO THIS TABLE AND IT'S GOT TO

7     TELL YOU HOW TO GET THAT EXTERNAL REFERENCE MATERIAL.  IT CAN'T

8     JUST TELL YOU, "OH, YOU BETTER GO FIND IT.  GO COMB THROUGH

9     YOUR DICTIONARY AND FIND IT."

10         WE DON'T BELIEVE THAT'S ENOUGH.  THAT'S WHY WE WORRY ABOUT

11    THIS WORD "REFERENCE TO."  IS THAT A REFERENCE TO THE FACT THAT

12    IT'S MISSPELLED?  YES.

13         IS IT FLAGGING FOR SOMEBODY THAT MAYBE LATER ON YOU SHOULD

14    GO LOOK IT UP?  YES.

15         DOES IT POINT TO THE CORRECT SPELLING?  NO.

16         DOES IT POINT TO ANYTHING AT ALL?  NO.

17         WHY DID WE CHOOSE "POINTER"?  WELL, WE CHOSE "POINTER"

18    PRIMARILY BECAUSE IT'S A WORD THAT EVERYBODY IN THE ORIGINAL

19    FLYSWAT LITIGATION, INCLUDING SENTIUS, SEEMED PERFECTLY

20    COMFORTABLE WITH.

21         THIS IS AGAIN FROM SENTIUS' BRIEFING.  NOW, THEY DID USE

22    THE WORD "REFERRING TO," BUT ALL THE DICTIONARY DEFINITIONS

23    THEY GAVE IN THAT CASE USED THE WORD "POINTER."

24         AND WHEN THE COURT -- JUST TO BE CLEAR, THE COURT DID NOT

25    ADOPT SENTIUS', THIS PROPOSAL DEFINITION WITH "REFERRING," AND

```
1    I HEARD SOMETHING THAT SORT OF SUGGESTED THAT, BUT THAT'S NOT

2    THE ULTIMATE CONSTRUCTION.

3         NOW, THE COURT DID AGREE THAT THAT'S GENERALLY WHAT THE

4    PATENT IS TALKING ABOUT.

5         BUT WHAT ELSE DID THE COURT SAY?  THE PATENT ALSO AGREED

6    THAT WE'RE ALSO TALKING ABOUT A POINTER, AND "THIS USE OF

7    'LINKING' FALLS SQUARELY WITHIN SENTIUS' SUGGESTED MEANING OF A

8    POINTER."

9         SO THE COURT EVEN UNDERSTOOD THAT AT THAT TIME -- THERE

10   WAS PROBABLY NO DISPUTE ABOUT THIS PARTICULAR ISSUE, BUT AT

11   THAT TIME, EVERYBODY SEEMED TO UNDERSTAND, WHEN THEY'RE SAYING

12   "REFERRING TO," WE'RE REALLY TALKING ABOUT A POINTER.

13        THE COURT:  WHAT'S INTERESTING TO ME, MR. LAMBERSON,

14   AS I WAS COMPARING SENTIUS' PROPOSED LANGUAGE TO YOURS -- AND

15   THIS WAS BEFORE I APPRECIATED WHAT MR. TRIBBLE CLARIFIED

16   EARLIER THAT THE PARTIES REALLY HAD MOVED MUCH CLOSER TO ONE

17   ANOTHER -- HAD I BEEN PRESENTED WITH THE TWO CONSTRUCTIONS, I

18   ALMOST WOULD HAVE GUESSED MICROSOFT WAS MORE INTERESTED IN

19   SENTIUS' CONSTRUCTION, AND HERE'S WHY, AND I'D LIKE TO GET YOUR

20   REACTION, IF I COULD.

21        IN THEIR ORIGINAL CONSTRUCTION, THEY TALK ABOUT "A

22   CONNECTION," RIGHT, AND IN SOME WAYS "CONNECTIONS" AND

23   "POINTERS" SEEM MUCH MORE ALIGNED THAN THE BROADER REFERENCE.

24        SO WHY WOULDN'T "CONNECTION" PERHAPS GET YOU WHERE YOU

25   NEED TO BE?
```

```
1              MR. LAMBERSON:  WELL, I AGREE.  AND ACTUALLY WE HAVE

2       A -- MAYBE I'LL SKIP AHEAD TO THIS.

3              SO OUR SLIDE 44, "CONNECTION" IS EITHER TOO BROAD OR TOO

4       NARROW --

5              THE COURT:  OKAY.

6              MR. LAMBERSON:  -- AND IT'S HARD FOR ME TO UNDERSTAND

7       WHICH, AND I'M THINKING NOW THAT THEY'VE GONE TO "REFERENCE,"

8       IT'S PROBABLY TOO BROAD, BUT LET'S TALK ABOUT IT.

9              TO ME, "CONNECTION" MEANS PHYSICAL LINKAGE.  WHEN I TALK

10      ABOUT TWO THINGS BEING CONNECTED, I THINK OF A LINKAGE, A

11      DIRECT, WHAT I CALL A DIRECT CONNECTION, OR MAYBE INDIRECT, BUT

12      THERE HAS TO BE PHYSICAL CONNECTION.

13             YOU KNOW --

14             THE COURT:  YOU'RE THINKING ABOUT THIS (INDICATING).

15             MR. LAMBERSON:  THOSE ARE CONNECTED.

16             WHEN YOU THINK ABOUT IT IN THE COMPUTER CONTEXT, I

17      WOULD -- YOU KNOW, MORE HARDWARE MAYBE.  A PROCESSOR IS

18      CONNECTED TO THE NETWORK CARD THROUGH A BUS.  THERE'S AN

19      ELECTRONIC CONNECTION.

20             SO IN THAT SENSE, IT'S TOO NARROW, AND WE'LL GO THROUGH

21      SOME OF THE INTRINSIC RECORD, BUT CERTAINLY THE HYPERLINK AND

22      THE REFERENCE NUMERAL EXAMPLES, THOSE ARE NOT WHAT I WOULD CALL

23      A "CONNECTION" PERSONALLY.

24             SO I THINK IT'S A CONFUSING TERM FROM THAT RESPECT.

25             BUT THEN WE HAVE SENTIUS' REPLY BRIEF IN THE FOOTNOTE
```

```
 1    WHERE THEY SAY "CONNECTION MEANS ANY ASSOCIATION BETWEEN TWO

 2    THINGS," AND I THINK THAT'S WHAT THEY'RE GETTING AT WITH

 3    "REFERENCE TO," AND IT'S WHAT THEY WERE TRYING TO GET AT

 4    THROUGH "CONNECTION," AND THAT'S WHERE WE FUNDAMENTALLY

 5    DISAGREE.

 6         IF YOU HAVE TWO WEB PAGES ON THE INTERNET, ARE THOSE

 7    LINKED SIMPLY BECAUSE THEY'RE BOTH ON THE INTERNET?  I DON'T

 8    BELIEVE SO.  I THINK THERE HAS TO BE SOME, SOMETHING, SOME

 9    POINTER BETWEEN THE TWO.

10         YOU KNOW, IF THE WEBSITES ARE CNN AND FOX NEWS, ARE THOSE

11    CONNECTED BECAUSE THEY'RE BOTH NEWS ORGANIZATIONS OR BECAUSE

12    THEY BOTH -- LET'S SAY THEY BOTH HAVE THE SAME ARTICLE FROM THE

13    ASSOCIATED PRESS.  ARE THEY NOW LINKED SIMPLY BECAUSE THEY BOTH

14    HAVE THE SAME ARTICLE?  I DON'T THINK SO.  I DON'T THINK ONE OF

15    SKILL IN THE ART WOULD THINK SO.

16              THE COURT:  ALL RIGHT.

17              MR. LAMBERSON:  SO WHAT DOES THE INTRINSIC RECORD

18    SHOW?  WELL, WE ALL AGREE, THE INTRINSIC RECORD ONLY SHOWS ONE

19    THING, AND THAT'S THIS REFERENCE NUMERAL EMBODIMENT WHERE YOU

20    HAVE BASICALLY AN ADDRESS, AND THE ADDRESS IS GOING TO POINT

21    YOU TO ANOTHER, ANOTHER LOCATION IN ANOTHER TABLE POTENTIALLY,

22    AND THAT'S GOING TO TELL YOU WHAT YOUR EXTERNAL CONTENT, WHAT

23    YOU'RE LOOKING UP.

24         NOW, YOU KNOW, I WILL SAY, I THINK IT IS POSSIBLE ONE

25    COULD LOOK AT THE FILE HISTORY AND SAY THAT'S ALL THIS PATENT
```

1    SHOULD REALLY COVER, AND I THINK WE DIDN'T FULLY APPRECIATE HOW

2    STRONG THE '720 PROSECUTION HISTORY'S STATEMENT WAS UNTIL EVEN

3    PREPARING FOR THE HEARING.

4         SO, YOU KNOW, MR. TRIBBLE IS RIGHT THAT THERE IS THIS WORD

5    "ADDRESS" ADDED OVER AND OVER AND OVER AGAIN TO THE CLAIMS, AND

6    IF THAT'S THE DISTINCTION, THEN I THINK WE MAY HAVE TO JUST SAY

7    THAT THIS IS REALLY IT, THIS IS ALL YOU GET GIVEN THE

8    PROSECUTION HISTORY.

9         BUT EVEN THAT REALLY DOESN'T MATTER FOR THE DISPUTE AT

10   HAND.  YOU KNOW, WE COULD POTENTIALLY -- WE HAVEN'T ADVOCATED

11   THAT.  THE COURT MAY FIND THAT, I SUPPOSE.

12        BUT IN A SENSE IT DOESN'T MATTER BECAUSE THE DISPUTE IS,

13   YOU KNOW, CAN A FLAG BE A LINK?

14        AND FLAG IS NOT AN ADDRESS.  WE ALL AGREE WITH THAT.

15        IN ANY EVENT, YOU KNOW, THERE MAY BE INDIRECT LINKS IF YOU

16   PUT ASIDE THE PROSECUTION HISTORY STATEMENT.  WE GAVE AN

17   EXAMPLE WHERE YOU HAVE -- YOU GO TO YOUR LOOK-UP TABLE AND THAT

18   GIVES YOU A FILE PATH.  A FILE PATH IS YET ANOTHER LINK THAT

19   TAKES YOU TO THE FILE SYSTEM AND THEN YOU FIND YOUR CONTENT.

20        THE COURT:  RIGHT.  BUT ISN'T THE POINT THAT BEFORE

21   YOU GET TO THE FILE PATH IN THE LOOK-UP TABLE, THERE'S AN

22   INTERMEDIATE STEP?

23        MR. LAMBERSON:  THAT'S RIGHT.  AND YOU COULD HAVE

24   MULTIPLES.  I MEAN, WE CAN DRAW IT OUT.  YOU COULD HAVE ADDRESS

25   100 POINT YOU TO ADDRESS 200, 200 TO 400, 400 TO 600, AND THEN

```
 1          YOU GET TO YOUR EXTERNAL CONTENT.

 2              BUT THE POINT IS, EACH STEP ALONG THE WAY HAS TO MOVE YOU

 3       FORWARD.  IT CAN'T JUST SAY --

 4                  THE COURT:  IT'S OUT THERE.

 5                  MR. LAMBERSON:  YOU CAN'T GET TO A POINT WHERE IT

 6       SAYS, "IT'S OUT THERE SOMEWHERE.  GO LOOK HARDER.  HOPEFULLY

 7       YOU'LL FIND IT."  THAT'S NOT A LINK.

 8              THE DISPUTE IS NOT DIRECT/INDIRECT.  THAT HAS NEVER BEEN

 9       THE DISPUTE.

10                  THE COURT:  BUT YOU'RE SAYING IT WOULD BE A

11       CONNECTION, WOULDN'T IT, IN YOUR EXAMPLE?

12                  MR. LAMBERSON:  IF IT WERE JUST OUT THERE?

13                  THE COURT:  WELL, NO.  I TEND TO AGREE WITH YOU THERE

14       THAT THE FACT THAT, "HEY, GO LOOK IN THE LIBRARY, IT'S

15       SOMEWHERE," THAT'S NOT SUFFICIENT.

16              BUT AS I'M JUST THINKING ABOUT THE RIGHT LANGUAGE TO

17       CAPTURE THESE POINTS, IT SEEMS TO ME THAT IF YOUR CONCERN IS

18       YOU WANT -- EVEN IN THE INDIRECT EXAMPLE, YOU WANT TO MAKE

19       CLEAR TO THE JURY THAT THE DATABASE IS TELLING THE APPLICATION

20       WHERE TO GO SPECIFICALLY, EVEN IF IT HAS TO GO TO MULTIPLE

21       DIFFERENT PLACES.  "CONNECTION" WOULD SEEM TO ME TO GIVE YOU

22       THAT SPECIFICITY OR DESTINATION THAT YOU'RE CONCERNED ABOUT.

23                  MR. LAMBERSON:  I WOULD AGREE WITH YOUR HONOR IN THE

24       SENSE THAT IF YOU'RE SAYING THERE HAS TO BE SOMETHING HERE THAT

25       IS DIRECTLY CONNECTED TO SOMETHING THERE, OR INDIRECTLY
```

1    CONNECTED, IN THE SENSE THAT ONE HAS TO GET YOU TO THE OTHER, I

2    WOULD AGREE.

3            THE COURT:  IT'S THE ASSOCIATION, THE LOOSER --

4            MR. LAMBERSON:  "ASSOCIATION" IS TOO LOOSE.

5            THE COURT:  RIGHT.

6            MR. LAMBERSON:  "CONNECTION" I JUST BELIEVE IS MAYBE

7    NOT THE RIGHT WORD, ONLY BECAUSE IN MY VIEW IT COULD EXCLUDE

8    SOMETHING LIKE A REFERENCE, AN ADDRESS OR A REFERENCE NUMERAL,

9    WHICH WE'RE NOT TRYING TO DO.  WE DO AGREE THEY GET AT LEAST

10   THAT MUCH, SO WE WOULDN'T WANT TO EXCLUDE THAT.

11       THAT'S WHY WE BELIEVE THE WORD "POINTER" IS A PERFECTLY

12   GOOD USAGE IN THAT LINK OF CHAINS THAT WE BUILT.

13           THE COURT:  BECAUSE IT'S DIRECTING THE APPLICATION TO

14   THE DATA OR INFORMATION OR THE LOCATION.

15           MR. LAMBERSON:  OR THE LOCATION.  AND THE "OR THE

16   LOCATION OF" IS CRITICAL THERE BECAUSE WHAT THAT GETS YOU IS

17   INDIRECT POINTERS.

18       SO IF I HAVE A POINTER THAT TELLS ME 100 GOES TO 200, NOW

19   I'VE GOT A POINTER TO THE LOCATION OF A NEW PIECE OF DATA.  SO

20   IT'S NOT -- YOU KNOW, AND IN A SENSE, THAT'S EVEN -- AGAIN,

21   WE'RE GIVING THEM A VERY BROAD CLAIM SCOPE HERE BECAUSE IT

22   REALLY DOESN'T MATTER FOR THE DISPUTE AT HAND BECAUSE OUR VIEW

23   IS A FLAG, WHETHER IT'S A POINTER OR A CONNECTION, THAT'S NOT

24   IT.

25           SO THE SAME THING IS TRUE FOR A HYPERLINK.  THAT IS AN

 1    EXAMPLE IN THE PATENT, AND A HYPERLINK HAS TO SPECIFY WHAT

 2    WEBSITE ARE YOU LINKING TO.

 3         AGAIN, I WOULDN'T TYPICALLY CALL THAT A CONNECTION BETWEEN

 4    THE TWO.  THE CONNECTION WOULD BE MORE OF THE PHYSICAL

 5    UNDERLYING LAYERS.

 6         BUT REGARDLESS, WE DO BELIEVE IT'S A POINTER AND THE

 7    PATENT SAYS SO.

 8         "POINTER" ALSO, WE WOULD JUST POINT OUT, IT'S A TERM THAT

 9    BOTH INVENTORS WERE COMFORTABLE WITH WHEN THEY WERE ASKED IN

10    FLYSWAT ABOUT WHAT A LINK IS.  THIS IS MR. BOOKMAN:  "A LINK IS

11    A POINTER IN A RECORD THAT REFERS TO THE LOCATION OF ANOTHER

12    RECORD."

13         "SO A LINK IS A POINTER," HE'S ASKING HIM LATER, AND "I

14    BELIEVE THAT'S SUFFICIENT, YES."

15         THE COURT:  YEAH, IT'S INTERESTING.  HE'S COMFORTABLE

16    WITH BOTH "POINTER" AND "REFERENCE," RIGHT?

17         MR. LAMBERSON:  THAT'S TRUE.  THAT'S TRUE.

18    ABSOLUTELY RIGHT.

19         AND I THINK IT'S ABSOLUTELY RIGHT TO SAY IN FLYSWAT, THOSE

20    TWO -- EVERYBODY DID CONSIDER THOSE TWO EQUIVALENT.  I MEAN,

21    SENTIUS IN ITS BRIEFING USED BOTH WORDS INTERCHANGEABLY.  THE

22    COURT USED BOTH WORDS INTERCHANGEABLY.  THE INVENTOR USED BOTH

23    WORDS INTERCHANGEABLY.

24         AND MR. YAMANAKA AS WELL WAS ASKED A SIMILAR QUESTION.

25    THIS ONE WAS JUST ABOUT POINTER AND WOULD YOU AGREE WITH IT,

```
 1        AND HE SAID YES.

 2            AND IT'S ALSO -- AGAIN, WE CITE EXTRINSIC EVIDENCE, NOT

 3     BECAUSE WE'RE RELYING ON IT, MORE TO SHOW THAT WE'RE NOT CRAZY.

 4     THIS WAS A PERFECTLY WELL ACCEPTED, UNDERSTOOD DEFINITION FOR A

 5     LINK.  ONE DEFINITION, CERTAINLY.  THERE ARE OTHERS, BUT WE

 6     BELIEVE IT'S THE BEST DEFINITION.

 7            WE'VE ALREADY TALKED ABOUT "REFERENCE" BEING TOO VAGUE.

 8            AND I WOULD POINT OUT AGAIN HERE, YOUR HONOR, 112 HAS TO

 9     BE CONSIDERED.  IF YOU'RE GOING TO SAY "REFERENCE," WHAT DOES

10     THAT MEAN?  WHAT'S A REFERENCE?  WHAT'S NOT A REFERENCE?  YOU

11     KNOW, IS SIMPLY BEING IN THE SAME, YOU KNOW, ROOM A REFERENCE

12     TO SOMETHING?

13            IT'S UNCLEAR, IT'S VAGUE, POTENTIALLY INDEFINITE.

14            YOU KNOW, TO THE EXTENT WE'RE GOING TO TAKE "LINK" TO THE

15     OUTER LIMITS AND SAY ANYTHING IS A LINK, THEN WE'RE GOING TO

16     HAVE WRITTEN DESCRIPTION ENABLEMENT ISSUES AS WELL.

17            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

18        MR. TRIBBLE.

19            MR. TRIBBLE:  YES, YOUR HONOR.

20        OKAY.  SO, AGAIN, IT'S ONE OF THESE THINGS ABOUT

21     CONSTRUING THE CONSTRUCTION, OKAY?

22        WE PROPOSED "CONNECTION," BUT WE UNDERSTOOD

23     "CONNECTION" -- AND WHEN WE SAID "POINTER," IT TALKS ABOUT

24     POINTER THAT REFERS, AND SO WHENEVER WE SAY "POINTER," WE'VE

25     ALWAYS UNDERSTOOD IT TO MEAN, AS JUDGE ARMSTRONG DID BECAUSE HE
```

1    SAID THAT A REFERENCE FALLS WITHIN THE MEANING OF "LINK," AND

2    THEN HE USED THE WORDS "ELECTRONIC CONNECTION," AND SO I

3    THINK -- IF YOU READ THE WHOLE OPINION, IT REFERS -- THIS IS

4    BACK IN THE ORIGINAL PATENT, THE '720, IT TALKS ABOUT

5    ELECTRONIC FILES AND, YOU KNOW, ELECTRONIC KIND OF MEANT, I

6    GUESS, COMPUTERIZED OR SOMETHING.

7         AND SO I THINK BY "CONNECTION," HE MEANT AN ASSOCIATION.

8    OKAY?  AND THAT'S THE WAY WE MEANT IT WHEN WE PROPOSED IT.

9         AND ESPECIALLY GIVEN THE FACT THAT JUDGE ARMSTRONG, IN HIS

10   OPINION, HAD SAID THAT REFERRING TO DATA -- YOU KNOW, A

11   REFERENCE FALLS WITHIN THAT CONSTRUCTION THAT HE ADOPTED USING

12   THE WORD "CONNECTION."

13        AND SO, AGAIN, YOU KNOW, "POINTER" COULD BE FINE IF IT

14   MEANS "REFERENCE" OR "ASSOCIATION."  YOU KNOW, IT'S INDIRECT.

15        SO AGAIN, LIKE I SAY, IT'S A STRANGE CASE.  I'VE NEVER

16   SEEN A CASE WHERE THE DEFENDANT IS PROPOSING TO CONSTRUE THE

17   CLAIMS IN CONNECTION WITH THE ACCUSED PRODUCTS, AND I THINK

18   IT'S IMPROPER.

19        BUT JUST TO EXPLAIN, WHEN YOU HAVE THE LOOK-UP TABLE IN

20   MICROSOFT WORD AND IT'S GOT A COLUMN FOR MISSPELLED, THEY CALL

21   IT A FLAG.  WE CALL THAT A LINK OR A REFERENCE, A REFERRAL, GO

22   LOOK AT THE SPELL CHECK DICTIONARY.

23        NEXT COLUMN, GO LOOK AT THE GRAMMAR DICTIONARY, YES OR NO.

24        AND AS WE SAW IN FIGURE 2 -- AND KEEP IN MIND, IN ADDITION

25   TO JUDGE ARMSTRONG, WE HAVE THE 1994 IBM DICTIONARY OF

1    COMPUTING THAT TALKS ABOUT ASSOCIATION, OKAY?

2         AND -- WELL, JUST TO JUMP AHEAD, REMEMBER, I MEAN, WHAT

3    MICROSOFT IS REALLY PROPOSING IS ADDRESS, WHETHER IT'S A MEMORY

4    ADDRESS OR THE ROW NUMBER IN A TABLE, OKAY, OR THE FILE PATH.

5         YOU KNOW, THAT FILE PATH THEY SHOWED YOU, THAT'S NOT IN

6    THE PATENT.  THAT'S A DEMONSTRATIVE THEY CREATED.

7         AND AT THE END OF THE DAY, YOU KNOW, WE HAVE CLAIM 24

8    WHERE THE LINK CAN BE REFERENCE INFORMATION FOR RETRIEVING, AND

9    WE'RE REFERRING THEM, GO LOOK AT THE SPELL CHECK DICTIONARY.

10        BUT, AGAIN, I THINK THAT'S REALLY AN ISSUE FOR SUMMARY

11   JUDGMENT LATER ON.

12        THE ISSUE IS, WHAT DOES "LINK" MEAN?  WE HAVE

13   JUDGE ARMSTRONG AND WE HAVE THE IBM DICTIONARY.  CLEARLY "LINK"

14   CAN BE DIRECT OR INDIRECT, VERY BROAD.

15        AND, YOU KNOW, WE WOULD GO WITH EITHER, YOU KNOW, THE IBM

16   DICTIONARY OR JUST -- WE TRIED TO MEET THEM IN THE MIDDLE AND

17   USE ALL THE SAME WORDS FROM JUDGE ARMSTRONG'S STATEMENT.

18        IN OTHER WORDS, THEY POOH-POOH IT NOW SAYING, "WELL, HE

19   DIDN'T ADOPT THAT AS THE FINAL CONSTRUCTION."

20        BUT THAT'S WHERE THEY GOT THEIR PROPOSED CONSTRUCTION

21   FROM, OR THOSE WORDS, THEY JUST REPLACED -- THEY TOOK ALL THOSE

22   SAME WORDS, THEY SAY IN THE BRIEF, "THIS IS WHERE WE GOT IT

23   FROM," SO IT WAS GOOD ENOUGH TO PUT IN THEIR CONSTRUCTION, ONLY

24   THEN THEY WANT TO CHANGE AND STRIKE OUT "REFERRING" AND PUT IN

25   "POINTER" THAT THEY'RE THEN GOING TO CONSTRUE LATER AS BEING

1    MORE NARROW THAN WHAT WAS INTENDED FROM THE VERY SOURCE FROM

2    WHICH THEY GOT THEIR CONSTRUCTION.

3         AND THEN GOING BACK TO THIS, AGAIN, THEY POINT TO THIS

4    AND, YOU KNOW, I THINK IT'S HELPFUL.  THE TEXT, THAT'S A FLAG

5    OR A POINTER OR A REFERENCE.  GO LOOK AT THE TEXT DICTIONARY.

6         NOW, THE QUESTION IS, DO YOU HAVE TO HAVE THE COMMA 0 OR

7    THE COMMA 100?  WE SAY THAT'S THE PREFERRED EMBODIMENT.

8              THE COURT:  IT'S ONE WAY TO DO IT.

9              MR. TRIBBLE:  IT'S ONE WAY TO DO IT.  AND WHATEVER IT

10   SAYS, IT MAKES CLEAR IT'S A TWO-STEP PROCESS, THAT THERE'S

11   PROCESSING THAT CAN GO ON AFTER THE REFERRAL TO THE TEXT

12   DICTIONARY, AND THAT'S EXACTLY -- AGAIN, I THINK IT'S AN ISSUE

13   FOR SUMMARY JUDGMENT.

14        BUT, YOU KNOW, AS FAR AS THE CLAIM CONSTRUCTION GOES, YOU

15   KNOW, IT'S CLEAR THAT IT'S BROAD.

16        THE QUESTION IS, HAS THERE BEEN SOME KIND OF CLEAR

17   DISAVOWAL OF CLAIM SCOPE?

18        AND THEN I WAS AMAZED TO HEAR FOR THE FIRST TIME EVER,

19   BECAUSE IT'S NOT IN THE BRIEFING, THIS ASSERTION THAT THE

20   PROSECUTION HISTORY RELATING TO THE CASSORLA REFERENCE, SOMEHOW

21   WE'VE LIMITED OURSELVES TO THE -- THAT SOMEHOW WE'VE DISAVOWED

22   THE FULL CLAIM SCOPE OF THE TERM "LINK," AND THEY INVITE THE

23   COURT TO DO THAT SUA SPONTE EVEN THOUGH THEY HAVEN'T RAISED IT

24   IN THEIR BRIEFING.

25        WELL, LET'S LOOK -- I WANT TO BE ABSOLUTELY CLEAR ABOUT

1        THIS.  IT MAKES A STATEMENT, BUT THAT HAD NOTHING TO DO WITH

2        DISTINGUISHING CASSORLA FOR A VERY SIMPLE REASON.

3              CAN YOU PULL UP EXHIBIT E TO MICROSOFT'S BRIEF?  AND GO TO

4        THE PAGE THAT HAS FIGURES 2 AND 3.

5              THEY SHOWED YOU THIS IN CONNECTION WITH "DATABASE."  AND

6        SO THE FIGURE 2 IS THE -- IS HOW THEY STORE THE, I GUESS YOU

7        WOULD CALL IT THE SOURCE MATERIAL, OKAY?

8              AND SO YOU CAN SEE THAT FOR EACH PART -- AND IT CAN GO

9        DOWN TO WORD LEVEL -- THOSE NUMBERS ON THE RIGHT -- SO IT SAYS

10       IT'S THE FIRST HEADING, AND IT'S GOT A 0 IN SUBHEADING 2 AND

11       SUBHEADING 3, AND SO ON.  SO IT SAYS IT'S IN THE FIRST SECTION,

12       THIRD PARAGRAPH, FIFTH WORD.  I MEAN, IT'S A LITTLE MORE

13       DETAILED THAN THAT, BUT THAT'S BASICALLY WHAT IT IS.

14             AND THAT'S WHY -- ONE OF THE REASONS IT'S DIFFERENT, IT

15       USES THIS HIERARCHICAL STRUCTURE INSTEAD OF OFFSET AND THINGS

16       LIKE THAT.

17             BUT MORE IMPORTANTLY, LOOK AT FIGURE 3.  THIS IS THE

18       STORAGE OF THE ANNOTATIONS.

19             SO LET'S BACK UP ONE PAGE JUST TO BE CLEAR ABOUT WHAT

20       CASSORLA WAS.  CASSORLA WAS, AS SHOWN IN FIGURE 1, WHERE YOU

21       HAVE A TEXT -- JUST THE TOP PART, THE DISPLAY PART AT THE TOP,

22       YEAH, THERE WE GO -- SO YOU HAVE TEXT AND THEN YOU CAN MAKE

23       BRIEF ANNOTATIONS.  SPELLING, QUESTION MARK?  IT'S OKAY.  THEY

24       HAVE ONE THAT'S THREE WORDS LONG.  OKAY.  THOSE -- THAT'S WHAT

25       CASSORLA WAS ABOUT.  IT WAS ABOUT COMMENTING ON A DOCUMENT.

1          SO NOW LET'S GO TO THE NEXT PAGE, AND SO LET'S BLOW UP

2     FIGURE 3.

3          THIS IS WHERE THEY STORED THE ANNOTATIONS, AND IT HAS THE

4     COORDINATES FOR THE WORD OR PARAGRAPH THAT THE ANNOTATION

5     RESPONDS TO, AND IT'S GOT SOME ITEM TYPE, THINGS LIKE THAT.

6          AND THEN IT HAS THE ACTUAL REFERENCE MATERIAL.  IT HAS THE

7     ANNOTATION IN IT.  THERE'S NO LINK.  THERE'S NO LINK IN

8     CASSORLA.  SO WHATEVER WE SAID ABOUT LINK HAD NOTHING TO DO

9     WITH SOME DISAVOWAL OF THE SCOPE OF LINK BECAUSE IT WASN'T

10    RELEVANT TO CASSORLA.  IT DIDN'T HAVE ANY LINKS.

11         THANK YOU, YOUR HONOR.

12            THE COURT:  THANK YOU, MR. TRIBBLE.

13         ALL RIGHT.  IF I MIGHT, I'D LIKE TO TAKE A SHORT BREAK AND

14    THEN WE'LL KEEP GOING AT IT.

15         THANK YOU.

16            MR. TRIBBLE:  THANK YOU, YOUR HONOR.

17         (RECESS FROM 11:24 A.M. UNTIL 11:41 A.M.)

18            THE COURT:  ALL RIGHT.  LET'S TURN TO THE THIRD TERM.

19    I BELIEVE IT'S "SYNDICATED."  AM I RIGHT ABOUT THAT?

20            MR. SETH:  OKAY.  AS WE SWITCH NOW TO THE SECOND

21    PATENT FAMILY, I WANTED TO FIRST GET A LITTLE BIT OF CLARITY

22    WITH REGARD TO SOME DIFFERENCES BETWEEN THESE TWO PATENT

23    FAMILIES.

24         AS WE'VE EXTENSIVELY DISCUSSED THIS MORNING, THE FIRST

25    PATENT FAMILY RELATES TO THE USE OF THIS LOOK-UP TABLE TO

1    RECORD THE STARTING AND END POINT ADDRESSES OF THE WORDS THAT

2    WE'VE CUT FROM A SOURCE TEXT DOCUMENT TO CREATE THIS WORDIFIED

3    DATABASE AND THEN PUT IN SOME FORM OF LINKING INFORMATION TO

4    EXTERNAL SOURCE MATERIALS, AND CLAIM 8 OF THE '731 PATENT

5    RECITES THAT QUITE EXTENSIVELY.

6         NOW, THE SECOND PATENT FAMILY IS A COMPLETELY DIFFERENT

7    PATENT FAMILY -- AND I'LL EXPLAIN THIS SLIDE IN A MINUTE -- IN

8    THAT THERE'S NO REQUIREMENT IN THE CLAIMS OF THE SECOND PATENT

9    FAMILY TO ACTUALLY USE THE LOOK-UP TABLE, ALTHOUGH THERE'S A

10   DISCUSSION AND EVEN A REFERENCE BACK TO THE '720 ORIGINAL

11   PATENT FOR THE USE OF THE LOOK-UP TABLE IN THE LINKING

12   PROCEDURES.

13        NOW, THE LINKING PROCEDURES ARE, YOU KNOW, DESCRIBED VERY

14   SIMILARLY, BUT WHAT THE MAIN THRUST OF THE SECOND PATENT FAMILY

15   HAS TO DO WITH IS THE CENTRALIZED ARCHITECTURE AND HOW WE'RE

16   GOING TO UTILIZE LOCAL COPIES OF THE DATABASES THAT WE NEED TO

17   PERFORM THE LINKING, AND IN PARTICULAR, HOW WE'RE GOING TO GET

18   THE DICTIONARIES OUT TO THE REMOTE PROCESSORS THAT ARE USING

19   THEM.

20             THE COURT:  UM-HUM.

21             MR. SETH:  SO THE REASON I BROUGHT THIS SLIDE UP IS I

22   JUST WANTED TO CLARIFY SOMETHING, AND THAT IS THAT IN THIS

23   TIMELINE, WHICH CAME UP IN THE TUTORIAL AND IT WAS -- THERE WAS

24   SOME ALLUSION TO IT IN THE BRIEFING AS WELL, THERE'S SOME

25   CONFUSION INTRODUCED AND I WANTED TO STRAIGHTEN THAT OUT AND

1    THEN WE'LL GO RIGHT INTO "SYNDICATE."

2         THE COURT:  SURE.

3         MR. SETH:  AND THAT IS THAT THE MICROSOFT OFFICE 95

4    PRODUCT AND 97 AND 2000 ARE ALL PRODUCTS THAT ARE ACCUSED OF

5    INFRINGING THE FIRST PATENT FAMILY FOR USING THE LOOK-UP TABLES

6    IN WHICH THEY'RE ABLE TO DO THE RED SQUIGGLIES AND THE GREEN

7    SQUIGGLIES AND PROVIDE THIS DYNAMIC INFORMATION ON THE FLY WHEN

8    YOU RIGHT CLICK ON THEM AND YOU CAN GET TO THE APPROPRIATE

9    SPELLINGS OR THE APPROPRIATE GRAMMAR, EXECUTING THE LINK THAT'S

10   IN THE LOOK-UP TABLE.

11        IN THE -- SO THESE, THESE ARE ALSO ACCUSED -- I'M SORRY.

12   NONE OF THESE ARE ACCUSED AGAINST THE SECOND PATENT FAMILY, AND

13   THIS IS WHERE I WANTED TO CLARIFY.  THE SECOND PATENT FAMILY,

14   WHICH WE SAY REQUIRES THE AUTOMATIC -- THE AUTOMATIC DELIVERY

15   OF THE DICTIONARIES, THAT IS NOT A FEATURE THAT WAS INTRODUCED

16   UNTIL WINDOWS -- I'M SORRY -- OFFICE 2010.  SO I JUST WANTED TO

17   CLARIFY THIS.

18        THE COURT:  I APPRECIATE THAT.  THAT'S HELPFUL.

19        IS THIS -- IS THIS TIMELINE IN THE MATERIALS?  DO I HAVE A

20   COPY OF THIS?

21        MR. SETH:  YOU DO HAVE A COPY OF THE TIMELINE.

22   OH, NO.  WE'RE GOING TO GIVE YOU A COPY OF THE TIMELINE.

23        THE COURT:  I APPRECIATE THAT.

24        MR. LAMBERSON:  IT'S FROM OUR TECHNICAL TUTORIAL,

25   YOUR HONOR.

1          MR. SETH:  BUT WE'LL ACTUALLY GIVE YOU A PRINTOUT OF

2     THIS SLIDE.

3          THE COURT:  I APPRECIATE THAT.  THANK YOU.  I KNEW

4     I'D SEEN IT SOMEWHERE.

5          MR. TRIBBLE:  YOUR HONOR, HERE'S ONE COPY, AND WE'LL

6     HAVE SOME MORE COPIES FOR THE COURT IN JUST A SECOND.

7          THE COURT:  I APPRECIATE THAT.  THANK YOU.

8          MR. SETH:  OKAY.  AND NOW I WILL GET INTO THE

9     PRESENTATION PROPER.

10         HERE WE HAVE THE THORNY ISSUE OF WHAT IS "SYNDICATING,"

11    AND UNLIKE THE "DATABASE" LIMITATIONS OR THE "LINKING"

12    LIMITATIONS OF THE FIRST PATENT FAMILY IN WHICH WE'RE TALKING

13    ABOUT TERMS THAT ARE, YOU KNOW, PRETTY CLEARLY DEFINED, PRETTY

14    WELL UNDERSTOOD, PRETTY PLAIN AND ORDINARY TERMS IN THE ART, WE

15    NOW HAVE THIS "SYNDICATED" TERM THAT COMES FROM SOME BASIS BACK

16    IN THE 1800S AND IT IMPLIES THAT THERE'S SOME KIND OF

17    PUBLICATION AND THERE MAY BE A ONE TO MANY RELATIONSHIP, OR

18    PERHAPS A SIMULTANEOUS RELATIONSHIP, WE'RE NOT REALLY SURE.

19    AND WE NEED TO FIGURE OUT WHAT THIS TERM MEANS IN THE CONTEXT

20    OF THIS PATENT.

21         WE SAY IT'S "MAKING CONTENT AVAILABLE FOR AUTOMATIC

22    DOWNLOAD OVER" -- AND BY THE WAY, WE UPDATED AS WELL TO SAY,

23    YEAH, YOU'RE RIGHT, IT DOESN'T NEED TO BE OVER THE INTERNET,

24    BUT "OVER A NETWORK TO ONE OR MORE REMOTE SUBSCRIBED

25    COMPUTERS."

1          AND ONE THING I WANTED TO JUST TALK ABOUT IS, YOU KNOW,

2     WE'RE CONSTANTLY ADMONISHED NOT TO IMPORT LIMITATIONS INTO A

3     CLAIM TERM FROM THE PREFERRED EMBODIMENT, BUT WHAT DOES THE

4     COURT DO WHEN THE TERM IS SOMEWHAT VAGUE OR SUBJECT TO MULTIPLE

5     ARBITRATIONS?

6          AND THIS CAME -- THIS ISSUE CAME UP PRETTY SQUARELY IN

7     THIS NETWORK COMMERCE, INC. VERSUS MICROSOFT CASE IN WHICH THE

8     TERM "DOWNLOAD COMPONENT" HAD TO BE CONSTRUED, AND THIS WAS

9     CLEARLY NOT A TERM THAT YOU COULD FIND IN A DICTIONARY, LIKE

10    "SYNDICATING" IS.  YOU CAN'T GO TO A COMPUTER DICTIONARY AND

11    FIND IT.  AND THE COURT HAD TO RESORT TO THE SPECIFICATION TO

12    TRY TO FIGURE OUT WHAT THE TERM MEANS.

13         IN THAT PARTICULAR CASE, THERE WERE BASICALLY THREE

14    ELEMENTS OF "DOWNLOAD COMPONENT" THAT THE SPECIFICATION

15    RECITED, AND THAT WAS ALSO SORT OF THE ONLY EXAMPLE OF A

16    DOWNLOAD COMPONENT THAT WAS GIVEN, AND THE COURT CONSTRUED THE

17    TERM TO HAVE ALL THREE OF THOSE FUNCTIONS DESCRIBED IN THE

18    SPECIFICATION.

19         NOW, WHAT I'D LIKE TO DO IS --

20              THE COURT:  KIND OF LIKE, MR. SETH, THIS PARTICULAR

21    DISCLOSURE SEEMS TO TALK ABOUT POINTERS AND POINTERS ALONE, AND

22    WE'RE TALKING ABOUT LINKS, RIGHT?  I TAKE YOUR POINT HERE TO BE

23    THE FLIP SIDE OF THE ARGUMENT I WAS JUST HEARING BETWEEN

24    MR. TRIBBLE AND MR. LAMBERSON.

25              MR. SETH:  RIGHT.  WELL, WHEREAS THE '731 PATENT WAS

```
 1        EXTREMELY OPEN-ENDED WITH REGARD TO A "LINKED" TERM, OR A

 2        "DATABASE" TERM, WE HAVE A VERY DIFFERENT SITUATION WITH THE

 3        '985 PATENT FAMILY BECAUSE WE HAVE AN ENTIRE ARCHITECTURE

 4        THAT'S DESIGNED FOR ONE PURPOSE WHEN IT COMES TO THE

 5        SYNDICATION OF THE DATABASES, AND THAT IS TO AUTOMATICALLY GET

 6        THOSE DATABASES TO ALL THE REMOTELY -- TO THE REMOTE PROCESSORS

 7        THAT ARE SUBSCRIBED FOR THOSE DATABASES, AND WE'RE GOING TO

 8        WALK THROUGH THE SPEC AND SHOW EXACTLY HOW CLEAR THAT POINT IS

 9        IN THE SPEC.

10            AND WE START WITH A CALL OUT FROM THE '985 PATENT WHERE

11    WHAT -- WHAT ARE WE TRYING TO ACHIEVE WITH THIS INVENTION?

12            AND WE'RE TRYING TO ACHIEVE THE SCALEABLE SYSTEM, SO THERE

13    IS A ONE TO MANY RELATIONSHIP GOING ON HERE THAT'S VERY

14    CONSISTENT WITH THE USE OF THE WORD "SYNDICATION."

15            OKAY.  WE WANT TO BE ABLE TO GET THIS OUT TO AS MANY

16    COMPUTERS AS WE CAN SELL OUR PRODUCT TO.

17            AND, OF COURSE, THE TITLE ALSO IMPLIES THE IMPORTANCE OF

18    THE AUTOMATED DELIVERY.

19            BUT HERE FIGURE 1 IS A DIAGRAM ILLUSTRATING THE

20    RELATIONSHIP BETWEEN THE MODULES THAT COMPRISE THE AUTOMATED

21    DATABASE CREATION AND DELIVERY SYSTEM, AND OUR CLAIMS ARE NOT

22    TO THE DATABASE CREATION, OUR CLAIMS ARE TO THE SYNDICATION.

23            BUT IT IS -- SO WE HAVE THE TITLE, AND QUITE IMPORTANTLY,

24    THE SPECIFICATION IS VERY CLEAR THAT THE -- WHAT'S CALLED THE

25    RICHLINK PROCESSORS IN THE PREFERRED EMBODIMENT, BUT WHICH, YOU
```

 1    KNOW, THE LINKING ENGINE BASICALLY, IN THE PARSING AND THE

 2    LINKING AND ALL THE FUNCTIONALITY AT THE REMOTE COMPUTER, THAT

 3    SOFTWARE IN ITS VARIOUS MODULES WILL AUTOMATICALLY DOWNLOAD,

 4    FROM THE CENTRAL DATABASE, THE DATA STRUCTURES NECESSARY TO

 5    PERFORM THE HIGH-SPEED TAGGING OF THE TEXT AND EXECUTE THE

 6    TAGGING RULES SO THAT WE CAN PERFORM THE LINKING.

 7         OKAY.  THAT'S ABSOLUTELY CRITICAL.

 8         AND WHAT WE'RE TALKING ABOUT HERE, JUST TO BE VERY CLEAR,

 9    ARE -- THE DATA OBJECTS THAT WE'RE SYNDICATING ARE BASICALLY

10    WHAT WILL BE THE LOCAL COPIES OF THE DICTIONARY THAT WILL BE

11    USED.

12         SO THERE'S A MASTER COPY OF THE DICTIONARY AT THE CENTRAL

13    PROCESSOR AND THAT WILL PERIODICALLY BE UPDATED, AND THEN WE

14    HAVE LOCAL REPRESENTATIONS THAT ARE BEING USED AT THE REMOTE

15    PROCESSORS, AND SO THOSE DATA OBJECTS, YOU KNOW, REFERRED TO IN

16    THE CLAIMS ARE THE CONTENTS OF THE DATABASE AND THE TEMPLATES

17    THAT ARE ONCE AGAIN SYNDICATED TO THE REMOTE SERVERS RUNNING A

18    PROCESSING ENGINE.

19         SO IN THIS PATENT, WE HAVE THE AUTOMATED DELIVERY AND THAT

20    IS REFERRED TO IN THE PATENT AS SYNDICATION.

21         THE COURT:  AND OF COURSE THE AMBIGUITY, RIGHT,

22    MR. SETH, IS THAT THE TITLE OF THE PATENT SAYS "AUTOMATED

23    CREATION AND DELIVERY."  THE QUESTION IN MY MIND IS, DOES THE

24    "AUTOMATED" MODIFY BOTH "CREATION" AND "DELIVERY" OR JUST

25    "CREATION"?

1          MR. SETH:  RIGHT.  BUT THERE ARE MANY OTHER VERY

2     CLEAR REFERENCES --

3          THE COURT:  FAIR ENOUGH.

4          MR. SETH:  -- THAT THEY'RE AUTOMATED DELIVERY.

5          THE COURT:  THAT MAY BE THE CASE.

6          MR. SETH:  THAT THE DELIVERY IS AUTOMATED IN ALL

7     CASES.

8          AND ALONG THOSE LINES, YOUR HONOR, THERE ARE -- I THINK

9     THE FACT THAT THERE ARE SO MANY REFERENCES NOT TO AUTOMATED

10    SYNDICATION DOES TEND TO SHOW THAT THE IDEA WAS THAT

11    SYNDICATION REFERS TO THE AUTOMATED DELIVERY.  THAT'S WHAT THE

12    WHOLE DELIVERY ARCHITECTURE IS GEARED FOR.

13         AND, AGAIN, THIS IS CALLED OUT FROM THE '985 PATENT WHERE

14    IT ACTUALLY MAKES THE POINT WE WERE JUST DISCUSSING WHERE

15    THERE'S AUTOMATIC BUILDING, THERE'S AUTOMATIC ASSIGNMENT, AND

16    THEN THERE'S SYNDICATION.

17         SO WHY DID THEY NOT NEED TO FEEL -- WHY DO THEY FEEL NO

18    NEED TO PUT "AUTOMATIC"?  WELL, THAT IS BECAUSE IT'S AUTOMATED

19    DELIVERY.

20         NOW, GOING INTO A LITTLE BIT OF DETAIL REGARDING HOW THIS

21    SYSTEM WORKS, YOU HAVE THE SYSTEM, THE CENTRAL SERVER, WHICH IN

22    9B IS -- THERE'S NO NUMBER, BUT IT'S REFERRED TO AS THE SYSTEM

23    DB SERVER.

24         AND THEN YOU HAVE -- IN THIS EXAMPLE, THERE'S TWO RICHLINK

25    PROCESSORS THAT ARE CONNECTED TO THE CENTRAL SERVER OVER THE

1    NETWORK.  THEY'RE RUNNING.

2         AND THEY HAVE MODULES, AND LATER ON WE'LL BE TALKING ABOUT

3    MODULES, BUT THERE ARE A WHOLE HOST OF MODULES THAT THE

4    SPECIFICATION GOES INTO THAT COMPRISE THIS SYSTEM THAT'S

5    RUNNING ON THE REMOTE SERVER OR ON THE REMOTE PROCESSOR.

6         AND ONE OF THEM, OR TWO OF THE MODULES ARE CALLED THE

7    LEXICON AND TEMPLATE MANAGERS, AND THESE ARE IMPORTANT BECAUSE

8    HERE THE SPECIFICATION IS DESCRIBING VERY CLEARLY THAT, THAT

9    THESE ARE USED -- ARE WHAT IS AUTOMATICALLY OBTAINING THE

10   COPIES THAT THEY ARE SUBSCRIBED TO OF THE DATABASES THAT THEY

11   WILL BE USING FOR THE LINKING PROCESS, OR THE DICTIONARIES I

12   SHOULD SAY.

13        SO IN THIS EXAMPLE, THEY ACTUALLY LOG INTO THE CENTRAL

14   PROCESS THAT -- AND IT SAYS, "PREFERENCES ARE ENFORCED BASED ON

15   THAT LOGIN SO THAT THE SERVER ONLY OBTAINS LEXICONS AND

16   TEMPLATES FOR WHICH THEY HAVE PRIVILEGES."

17             THE COURT:  SO IN THIS PORTION OF THE SPECIFICATION,

18   WHEN THE SPECIFICATION OR THE DESCRIPTION IS REFERRING TO

19   OBJECTS, IT'S YOUR READING OF THIS THAT THE OBJECTS WE'RE

20   TALKING ABOUT HERE ARE ALL LOCAL OBJECTS, AND THE POINT IS THAT

21   THE LOCAL OBJECTS ARE THEN AUTOMATICALLY ACCESSING CONTENT TO

22   WHICH THERE'S -- TO WHICH IT SUBSCRIBES ON SOME TYPE OF REMOTE

23   SERVER?  IS THAT BASICALLY THE IDEA?

24             MR. SETH:  THERE ARE MODULES, AND THE OBJECTS THAT

25   ARE REFERRED TO IN THE CLAIM ARE, ARE THE BASICALLY THE COPIES

```
1        FOR SYNDICATION OF THE DATABASE.

2              THE COURT:  OKAY.

3              MR. SETH:  THOSE ARE REFERRED TO AS THE LEXICON

4    OBJECTS IN THE SPECIFICATION, BUT IT'S JUST A COPY OF THE

5    CENTRAL TERM DATABASE.

6              THE COURT:  AND ARE THOSE COPIES LOCAL COPIES OR ARE

7    THEY REMOTE COPIES?  THAT'S JUST THE CONFUSION I HAVE IN MY

8    MIND.

9          MAYBE I'M NOT BEING CLEAR.  LET ME TRY IT AGAIN AND YOU

10   CAN TELL ME IF I'VE GOT THIS RIGHT OR WRONG.

11             MR. SETH:  OH, SURE.

12             THE COURT:  AS I READ THIS, AND AS I READ IT BEFORE,

13   MY IMPRESSION IS THAT IT TALKS ABOUT TEMPLATE DATABASES,

14   TEMPLATE OBJECTS, AND WHEN IT SAYS TEMPLATE OBJECTS IN

15   PARTICULAR, IT TALKS ABOUT IT FOR THAT SERVER, AND I HAD

16   UNDERSTOOD THAT TO MEAN THE REMOTE SOURCE OF THE CONTENT, BUT

17   PERHAPS I'M MISINTERPRETING HOW THIS ALL FITS TOGETHER.

18             MR. SETH:  LET ME SEE IF I CAN --

19             THE COURT:  UNDOUBTEDLY I AM, SO WHY DON'T YOU TAKE A

20   RUN AT TRYING TO CORRECT MY MISUNDERSTANDING.

21             MR. SETH:  LET ME SEE IF I CAN CLARIFY THAT.

22             THE COURT:  YEAH.

23             MR. SETH:  THERE'S SOMETHING THAT'S GOING TO BE

24   SYNDICATED FROM THE MASTER, FROM THE CENTRAL SERVER.

25             THE COURT:  RIGHT.  THAT'S SERVER NUMBER 1 IN THIS
```

1    CASE.

2              MR. SETH:  RIGHT.  OH, NO, NO, NO.  THAT'S WHAT'S

3    BEING SYNDICATED TO.  THAT'S THE CONFUSION.

4              THE COURT:  THAT'S MY CONFUSION.

5              MR. SETH:  IT IS ALSO REFERRED TO AS A SERVER, BUT

6    THE CENTRAL SERVER IS WHAT YOU SEE IN THE MIDDLE.  THAT'S

7    WHAT'S HOSTING THE MASTER COPY OF THE DATABASE, AND IT'S -- IN

8    THIS PREFERRED EMBODIMENT, IT'S A PULL SYSTEM, WHAT WE REFER TO

9    AS A PULL SYSTEM IN THAT THESE REMOTE -- WHAT YOU SEE, THE

10   RICHLINK PROCESSOR, ARE THE REMOTE COMPUTERS.

11             THE COURT:  EITHER ONE OR TWO IS PULLING FROM THE

12   SYSTEM DB SERVER IN THE MIDDLE.

13             MR. SETH:  THE DICTIONARY COPIES THAT THEY'RE

14   AUTHORIZED TO RECEIVE.

15             THE COURT:  BY SUBSCRIPTION.

16             MR. SETH:  BY SUBSCRIPTION.

17             THE COURT:  OKAY, GOT IT.

18             MR. SETH:  AND THOSE ARE REFERRED TO AS THE LEXICON

19   OBJECTS.

20             THE COURT:  THAT'S HELPFUL.  THANK YOU.

21             MR. SETH:  OKAY.

22         AND THIS IS JUST, AGAIN, THESE ARE SUBSCRIBED -- THIS IS

23   THE SPECIFICATION TALKING ABOUT THAT THESE ARE SUBSCRIBED

24   COMPUTERS.  YOU'RE NOT GOING TO JUST GIVE OUT THE COPIES OF THE

25   DICTIONARY TO ANYBODY WHO ASKS.

1        AND THIS IS ALSO SOMEWHAT IMPORTANT, AND THERE'S DEPENDENT

2    CLAIMS THAT GO TO SYNCHRONIZATION AS WELL, AND WE CONTEND, YOUR

3    HONOR, THAT THE AUTOMATED DELIVERY NATURE OF THE SYNDICATION

4    PROCESS IS WHAT ENABLES THIS ROUTINE SYNCHRONIZATION TO ALSO BE

5    TAKING PLACE TO WHERE WHEN THE SYSTEM STAYS IN SYNC, WHEN

6    THERE'S AN UPDATE TO THE MASTER DATABASE, IT'S VERY IMPORTANT

7    THAT IF YOU WANT ALL YOUR PROCESSORS TO BE PROVIDING THE SAME

8    POP UP WINDOW AND THE SAME INFORMATION, THEY SHOULD HAVE THE

9    MOST RELEVANT CONTENT, THE MOST UP-TO-DATE CONTENT, AND SO THEY

10   PERFORM A SYNCHRONIZATION, WHICH CAN BE JUST A PERIODIC

11   SYNCHRONIZATION OR IT CAN BE BY NOTICE FROM THE CENTRAL

12   PROCESSOR, "HEY, I'VE UPDATED MY DATABASE.  YOU NOW GET THE

13   LATEST COPY."

14       AND ALL THIS IS BY THE WAY -- YOU KNOW, BY WAY OF HAVING

15   THIS WHOLE ENTIRE ARCHITECTURE THAT ALLOWS YOU TO HAVE

16   THOUSANDS, MILLIONS, OR HOWEVER SCALEABLE YOU WANT IT TO BE,

17   RUNNING THE SAME CONTENT IN ORDER TO PROVIDE THE SAME LINKING

18   INFORMATION WHEN YOU ACTUALLY ACCESS AND RETRIEVE THE

19   INFORMATION BASED ON THE LINK.

20       AND OF COURSE, YOU KNOW, THEY CONTINUOUSLY REENFORCE THAT

21   THESE ARE COMPUTER IMPLEMENTED METHODS.

22       AND SO OUR POINT IS THAT WHEN IT COMES TO THE PROPOSED

23   CONSTRUCTION OF MICROSOFT THAT THIS JUST BE DISTRIBUTING,

24   THAT'S WAY TOO BROAD.  THAT WOULD ENCOMPASS JUST HANDING

25   SOMEBODY A CD AND THAT, THAT -- IT HAS NOTHING TO DO WITH

```
 1        ENABLING THE AUTOMATIC DOWNLOAD OR BEING IN THE NETWORK

 2        ENVIRONMENT OR ANY OF THE ARCHITECTURE THAT'S CLEARLY,

 3        UNIFORMLY, AND SOLELY DISCLOSED WHEN IT COMES TO THIS DELIVERY

 4        PROCESS.

 5              THE COURT:  MR. SETH, CAN WE JUST BRING UP ONE OF THE

 6        ASSERTED CLAIMS IN THE '985 THAT USES SYNDICATING?

 7              MR. SETH:  YES.

 8              THE COURT:  MAYBE CLAIM 1 OR CLAIM 11.  IT DOESN'T

 9        REALLY MATTER.

10              MR. SETH:  LET ME JUST GET US TO A SLIDE THAT DOES

11        THAT.  I'LL GET THAT IN JUST A SECOND.

12              THE COURT:  THERE WE GO.  THANK YOU.

13              MR. SETH:  OKAY.

14              THE COURT:  SO I JUST WANT TO RUN YOUR LAST ARGUMENT

15        THROUGH THIS ACTUAL CLAIM --

16              MR. SETH:  SURE.

17              THE COURT:  -- AND SEE HOW IT PLAYS.

18          WHAT YOU'RE SAYING THEN, AMONG OTHER THINGS, IS THAT WE

19        HAVE SYNDICATING AS ESSENTIALLY THE FIRST STEP OF THIS, RIGHT?

20        I BELIEVE THAT'S THE ONLY PLACE IN THE CLAIM THAT THE TERM

21        "SYNDICATING" APPEARS.

22              IN THAT -- IN THIS CASE, THE PREAMBLE, YOU HIGHLIGHTED

23        JUST A MINUTE AGO THE FACT THAT THE PREAMBLE IN ALL OF THESE

24        CLAIMS, OR AT LEAST MANY OF THEM, TALK ABOUT A COMPUTER

25        IMPLEMENTED METHOD.
```

1              IS YOUR SIMPLE POINT HERE THAT FOR THE "SYNDICATED" TERM,

2      AND FRANKLY FOR EACH OF THE OTHER CLAIMS THAT FOLLOW, IT WOULD

3      MAKE NO SENSE FOR THOSE TO BE ANYTHING OTHER THAN COMPUTER

4      IMPLEMENTED WHEN THE PREAMBLE MAKES PRETTY CLEAR THAT'S THE

5      WHOLE POINT OF THIS STRUCTURE?  IS THAT BASICALLY IT?

6              MR. SETH:  YES, THAT'S CORRECT.  THAT IS CORRECT.

7              THE COURT:  OKAY.

8              MR. SETH:  IT'S ONE CLUE OR INDICATOR AS TO WHAT

9      THE --

10             THE COURT:  IT MAY NOT BE DISPOSITIVE, BUT IT'S A

11     HINT THAT WE'RE LOOKING AT THIS THING.

12             MR. SETH:  WE'RE TALKING ABOUT AUTOMATED THINGS

13     HAPPENING.

14         AND I JUST WANTED TO POINT OUT, IT'S NOT HIGHLIGHTED IN

15     THE SLIDE, BUT THE DATA OBJECTS WE'RE TALKING, YOU KNOW, ABOUT

16     THE LEXICON OBJECTS IN THE SPECIFICATION.

17             THE COURT:  YEAH.

18             MR. SETH:  OKAY.

19             THE COURT:  OKAY.  THANK YOU.  THAT'S HELPFUL.

20             MR. SETH:  OKAY.

21             THE COURT:  MR. LAMBERSON.

22             MR. LAMBERSON:  SO SINCE SENTIUS SET THE TABLE A

23     LITTLE BIT WITH THE TIMELINE, I THOUGHT MAYBE I'D DO THAT A

24     LITTLE BIT AS WELL.

25             THE COURT:  SURE.

1      MR. LAMBERSON:  JUST SO THAT YOUR HONOR UNDERSTANDS,

2    THE PROBLEM HERE IS SENTIUS HAS MADE A PROBLEM FOR ITSELF BY

3    AMENDING ITS CLAIMS TO BE THE WAY THAT THEY ARE TODAY.

4      IF YOU TAKE A LOOK AT THE PROSECUTION HISTORY, THIS WAS

5    EXHIBIT M, AND IF YOU LOOK AT THE CLAIMS THAT WERE ORIGINALLY

6    FILED, WHAT YOU'RE GOING TO SEE IS THAT THOSE CLAIMS REALLY

7    READ ON WHAT I'LL CALL SORT OF THE FRONT END WORK, PICKING OUT

8    THE TERMS, ASSIGNING THEM TO EXPERTS.

9      THAT'S REALLY WHAT THESE PATENTS ARE ABOUT.  IF YOU READ

10   THESE TWO PATENTS, THESE LATER PATENTS, THE ONLY WRITTEN

11   DESCRIPTION IS ABOUT HOW YOU ASSIGN THESE TERMS TO EXPERTS AND

12   THEN YOU CREATE THE DATABASE AND THEN YOU SEND IT OUT.

13     THERE'S REALLY ALMOST NO DISCUSSION OF THE BACK END, THE

14   RICHLINK PROCESSOR.  THE ONLY DISCUSSION THAT THERE IS SAYS "GO

15   SEE OUR '720 PATENT," AND THAT'S IT.

16     SO WHEN YOU LOOK AT THE CLAIMS THAT WERE ORIGINALLY,

17   ORIGINALLY FILED BACK WHEN THE APPLICATION WAS FILED, THAT'S

18   WHAT THEY COVERED.  THERE WAS NO SYNDICATING.  SYNDICATING

19   WASN'T THERE.  IT WAS REALLY EVERYTHING UP UNTIL THAT POINT

20   THAT THEY WERE TRYING TO CLAIM.

21     IDENTIFYING THE TERM, IT'S HARD TO READ BECAUSE IT'S

22   BLACKED OUT; ASSIGNING A TERM TO A SOURCE FOR IDENTIFYING

23   SUPPLEMENTAL CONTENT, THAT'S THE EXPERT; BUILDING A DATABASE;

24   AND THEN THE LAST, I BELIEVE, WOULD HAVE BEEN -- SO SYNDICATING

25   WAS THE LAST STEP.

1    WHAT THEY DID -- SENTIUS DECIDED, YOU KNOW WHAT -- WELL, I

2    DON'T KNOW WHAT THEY DECIDED.  I DON'T CLAIM TO KNOW WHAT THEY

3    DECIDED.

4    BUT FOR WHATEVER REASON, THEY DECIDED THEY WANTED TO CLAIM

5    THE BACK END, SO THEY TOOK ALL THAT PART ABOUT THE FRONT END

6    OUT AND NOW IT'S JUST A BACK END PROCESS, AND THE PROBLEM THEY

7    HAVE, YOUR HONOR, FRANKLY IS THAT THAT'S WHAT THE '720 PATENT

8    AND THE RE-ISSUED PATENTS ARE ABOUT.

9    AND THE OTHER PROBLEM THEY HAVE IS THAT YOU HAVE

10   SEVEN-PLUS YEARS OF TIME -- AND THESE PATENTS ARE NOT

11   RELATED -- SO THE PRIORITY DATE HERE IS 2001.

12   THE REASON WE HAD THAT TIMELINE, IF YOU LOOK AT IT, THE

13   ACCUSED PRODUCT IS RED SQUIGGLES.  WELL, RED SQUIGGLES HAVE

14   BEEN AROUND SINCE '95; GREEN SQUIGGLES ARE ACCUSED, THOSE HAVE

15   BEEN AROUND SINCE '97; SYNONYMS ARE ACCUSED, THOSE HAVE BEEN

16   AROUND SINCE 2000; AND ACTIONS OR SMART TEXT, OFFICE XP, WHICH

17   WAS RELEASED A FEW MONTHS BEFORE THEY FILED THESE PATENTS,

18   EVERY SINGLE ONE OF THESE ACCUSED FEATURES WAS IN OFFICE BEFORE

19   THESE PATENTS WERE EVER FILED.

20   NOW, HOW DOES SENTIUS TRY TO GET AROUND THAT?  THEY TRY TO

21   DO IT THROUGH SYNDICATING.  WE DON'T THINK THAT EVEN SUCCEEDS,

22   BUT THAT IS WHAT'S GOING ON HERE.  THEY HAVE A PROBLEM.  THEY

23   HAVE SOME PATENTS WHERE THEY CHANGED THE CLAIMS TO TRY TO READ

24   THEM TO BE ON THE BACK END INSTEAD OF THIS EXPERT PROCESS.  WHO

25   KNOWS HOW THE EXPERT PROCESS WOULD HAVE FARED.  BUT IT IS A

1    PROBLEM FOR THEM.

2         SO NOW WE'RE ARGUING ABOUT SYNDICATING, SO LET ME JUST GO

3    BACK.

4         OKAY.  SO THE QUESTION IS, WHAT DOES "SYNDICATING" MEAN?

5    AND THE DISPUTES ARE, I THINK, IS IT AUTOMATIC?  IS IT OVER A

6    NETWORK?  EVERYBODY AGREES THOSE ARE THE TWO ISSUES.

7         AND WE HAVE TO START WITH THE FACT THAT EVERYBODY AGREES,

8    "SYNDICATING" IS NOT A COINED TERM.  THIS IS NOT A TERM THAT

9    SENTIUS MADE UP.  IT'S A TERM THAT EVERYBODY WAS ABLE TO FIND

10   IN DICTIONARIES.

11        NOW, SENTIUS IS RIGHT.  IT PROBABLY IS A TERM FROM THE

12   1800S ORIGINALLY.  IT'S AN OLD TERM.  IT'S A TERM THAT'S BEEN

13   AROUND.

14        BUT THEY CHOSE TO USE THIS WORD IN THEIR CLAIMS.  AND THE

15   IMPORTANT PIECE THERE IS NONE OF THE DICTIONARY DEFINITIONS

16   CITED BY ANYBODY FOR THIS PLAIN MEANING TERM TALK ABOUT

17   AUTOMATIC OR TALK ABOUT A NETWORK.

18        AND IF IT'S FROM THE 1800S, WE KNOW THAT NETWORK IS OUT.

19   AUTOMATIC -- SOMEBODY HAD TO PUT IT IN THE MAIL.  IT'S PROBABLY

20   NOT AUTOMATIC.

21        AND WHAT THE THORNER CASE TELLS US HERE, WHEN YOU'RE

22   DEALING WITH A PLAIN MEANING TERM -- THERE THE CASE DEALT WITH

23   "FLEXIBLE" AND "ATTACHED" AND THE COURT PUT IN SOME ADDITIONAL

24   LIMITATIONS ON THOSE FROM THE SPECIFICATION.

25        THE FEDERAL CIRCUIT SAID, HOLD ON.  WHEN YOU HAVE A PLAIN

```
 1    MEANING TERM, "FLEXIBLE," THAT GETS ITS PLAIN MEANING.

 2    "ATTACHED" GETS ITS PLAIN MEANING.  YOU DON'T ADD IN ADDITIONAL

 3    THINGS.  THE ONLY TIME YOU DO IS IF THE PATENTEE EXPRESSLY

 4    REDEFINES THE TERM, ACTS AS THEIR OWN LEXICOGRAPHER.

 5         SO IF SENTIUS HAD SAID, "BY 'SYNDICATING,' WE MEAN

 6    'AUTOMATIC NETWORK DISTRIBUTION,'" FINE.  NONE OF US WOULD BE

 7    ARGUING ABOUT THIS.

 8         OR IF THERE'S SOME CLEAR DISAVOWAL OF CLAIM SCOPE.  I

 9    DIDN'T HEAR ANY ARGUMENTS ABOUT THAT TODAY.  THERE'S A LITTLE

10    BIT IN THE BRIEFING THAT WE'LL TOUCH ON.

11         BUT OUR VIEW IS NEITHER OF THOSE EXCEPTIONS APPLY.

12    "SYNDICATING," WHEN YOU LOOK AT THE DEFINITIONS, THE VERB

13    DEFINITIONS, "PUBLISH THROUGH A SYNDICATE."  "SELL THROUGH A

14    SYNDICATE FOR PUBLICATION."  "PUBLISH SIMULTANEOUSLY IN A

15    NUMBER OF PERIODICALS."

16         WE'VE SAID "DISTRIBUTE," TO SELL OR PUBLISH.  IT'S GETTING

17    IT OUT THERE IS THE POINT, WE BELIEVE.

18         AND THAT'S IT.

19         THE COURT:  WOULD YOU -- I TAKE IT, THOUGH, FROM YOUR

20    ARGUMENT THAT YOU WOULD HAVE A LITTLE PROBLEM IF THE COURT

21    SIMPLY INSTRUCTED THE JURY TO APPLY THE PLAIN AND ORDINARY

22    MEANING OF "SYNDICATE."

23         MR. LAMBERSON:  I THINK THE COURT CAN'T DO THAT NOW

24    GIVEN THAT THE PARTIES ARE DISPUTING IT.  I THINK 02 MICRO

25    TELLS US THAT THERE IS A DISPUTE -- WELL, I GUESS HERE'S WHAT I
```

```
1    SHOULD SAY.

2          THE COURT:  THIS IS A REALLY INTERESTING QUESTION,

3    BECAUSE I'VE WRESTLED WITH THIS IN SOME OTHER CASES, TOO.  IT'S

4    CLEAR THAT YOU HAVE A DIFFERENCE OF OPINION HERE ABOUT WHAT

5    THIS TERM MEANS, AND YET, AT THE END OF THE DAY, IF THE COURT

6    IS AS SATISFIED THAT THE TERM ITSELF INSTRUCTS THE JURY

7    SUFFICIENTLY, OR AT LEAST AS SUFFICIENTLY AS ANY ADDITIONAL

8    CONSTRUCTION, I WONDER IF, UNDER 02, I STILL HAVE THAT

9    DISCRETION.

10         MR. LAMBERSON:  HERE'S WHAT I WOULD SAY, YOUR HONOR,

11   AND THIS IS WHAT WE SAID FOR "RECEIVING."  IF THE COURT WERE TO

12   SAY TO THE JURY, "'SYNDICATING' GETS ITS PLAIN MEANING, WHICH

13   EXPRESSLY DOES NOT MEAN THAT IT HAS TO BE AUTOMATIC OR OVER THE

14   NETWORK."

15         AND YOU DON'T EVEN HAVE TO TELL THE JURY THAT.  FRANKLY,

16   AS LONG AS YOU ARE CLEAR TO THE PARTIES, I THINK THAT THIS

17   DISPUTE WILL BE OVER BECAUSE ALL OF OUR ACCUSED PRODUCTS WERE

18   OUT THERE BEFOREHAND.

19         I'M HOPING AT THAT POINT -- THIS SEEMS TO BE SENTIUS' ONLY

20   ARGUMENT TO AVOID INVALIDITY, SO I ASSUME THAT THEY WOULD DROP

21   THE PATENTS AT THAT POINT.

22         BUT AS LONG AS YOUR HONOR IS CLEAR THAT THOSE ARE NOT

23   REQUIREMENTS OF SYNDICATION, I THINK THAT WOULD PROBABLY BE

24   SUFFICIENT.

25         THE COURT:  AS YOU POINT OUT, THOUGH, CERTAINLY ONE
```

1    COULD READ 02 AS SUGGESTING THAT I HAVE TO DO SOMETHING HERE.

2         MR. LAMBERSON:  I THINK YOU HAVE TO -- IF SENTIUS

3    WERE TO SAY THAT THE PLAIN MEANING OF "SYNDICATE" INCLUDES

4    AUTOMATIC AND NETWORK DISTRIBUTION, THEN THERE CERTAINLY WOULD

5    BE A DISPUTE.

6         IF SENTIUS ACKNOWLEDGED THAT PLAIN MEANING DOES NOT

7    REQUIRE THOSE TWO THINGS, THEN I THINK THERE WOULDN'T BE AND WE

8    COULD ALL AGREE TO THAT, BUT WE WOULD JUST NEED TO GET IT ALL

9    CLEAR ON THE RECORD.

10        ALL RIGHT.  SO WHAT DO THE PATENTS SAY?  SENTIUS SHOWED

11   YOU A LOT OF LANGUAGE IN THE PATENTS TALKING ABOUT THINGS,

12   VARIOUS THINGS BEING AUTOMATIC.

13        WHAT THEY CAN'T SHOW YOU IS ANY PLACE WHERE IT SAYS

14   "AUTOMATICALLY SYNDICATING."  IT'S NOT IN THERE.

15        THEY CLEARLY KNEW HOW TO USE THE WORD "AUTOMATIC."  IT'S

16   IN THE PATENT 20-SOME TIMES.  THEY DESCRIBE VARIOUS THINGS AS

17   BEING AUTOMATIC.

18        THE ONE THAT SENTIUS SORT OF FOCUSES ON MOST IS THE

19   SYNCHRONIZATION PIECE.  NOW, JUST TO BE CLEAR, SYNDICATION AND

20   SYNCHRONIZATION ARE TWO COMPLETELY DIFFERENT PIECES HERE OF THE

21   CLAIMED INVENTION.

22        SYNCHRONIZATION IS THE INITIAL -- I'M SORRY.  SYNDICATION

23   IS THE INITIAL DISTRIBUTION, AND THEN AFTERWARDS, YOU MAY NEED

24   TO SYNCHRONIZE.

25        THE COURT:  AND AM I RIGHT IN UNDERSTANDING THAT YOU

1    MAY CONCEDE THAT SYNCHRONIZATION MAY HAVE TO BE AUTOMATED, BUT

2    YOU'RE CERTAINLY NOT --

3              MR. LAMBERSON:  EVEN THERE, YOUR HONOR, IF YOU LOOK

4    AT THE DISCLOSURE, ALL IT SAYS IS THAT SYNCHRONIZATION OF DATA

5    CAN BE SCHEDULED SO THAT TRANSFERS OCCUR AUTOMATICALLY.  SO IT

6    SUGGESTS YOU COULD DO IT AUTOMATICALLY.  I DON'T THINK IT

7    REQUIRES IT.

8         AND THERE ARE SEPARATE CLAIMS THAT JUST SAY IT'S

9    SYNCHRONIZED.  THEY DON'T SAY IT'S AUTOMATIC.

10        WHERE THE PATENTEE WANTS TO CLAIM AUTOMATIC, THEY DO SO.

11   THIS IS CLAIM 21.  IT TALKS ABOUT AUTOMATICALLY ASSOCIATING A

12   TERM WITH A LINK.  SO THAT PART OF IT, YES, IS AUTOMATIC.  AND

13   THEY KNOW HOW TO CLAIM THAT.

14        THEY DIDN'T CLAIM "AUTOMATICALLY SYNDICATING."  THEY

15   DIDN'T EVEN CLAIM "AUTOMATICALLY SYNCHRONIZING."

16        AND I THINK, YOU KNOW, THE INTERESTING THING HERE,

17   SENTIUS -- I HAD TO LOOK UP WHETHER THIS IS ACTUALLY AN ADVERB,

18   IF THAT'S THE RIGHT WAY TO CALL IT, AND I THINK IT IS, MY

19   ENGLISH IS A LITTLE RUSTY, ENGLISH LESSONS -- BUT SENTIUS ON

20   THE ONE HAND, THEY KEEP POINTING TO THE TITLE AND THEY SAY THE

21   TITLE REFERS TO AUTOMATED CREATION AND DELIVERY; THEREFORE,

22   AUTOMATED DELIVERY IS THIS INVENTION.

23        WELL, WHEN WE POINT OUT THAT THERE'S OTHER INSTANCES

24   DESCRIBING WHAT EVERYBODY AGREES IS A PREFERRED EMBODIMENT, AND

25   IT SAYS "AUTOMATICALLY CREATE SYNDICATING LINK," AND WE SAY,

1    "WELL, THAT SHOULD APPLY TO ALL THREE AS WELL.  'AUTOMATICALLY'

2    WOULDN'T HAVE BEEN NECESSARY IF 'SYNDICATE' WERE AUTOMATIC."

3          SENTIUS SAYS, "OH, NO, 'AUTOMATICALLY' JUST MODIFIES

4    'CREATE' HERE."

5          WELL, IT'S TWO PAGES SEPARATE IN THEIR BRIEFING.  IT CAN'T

6    BE BOTH.

7          AND THE OTHER THING I'D POINT OUT -- SO WHAT WE BELIEVE IS

8    THAT WHEN SENTIUS WANTS TO CALL SOMETHING AUTOMATIC, WANTS TO

9    CLAIM SOMETHING IS AUTOMATIC, THEY DO SO.  WHEN THEY DON'T,

10   THEY DON'T.

11         AND THEY HAVEN'T POINTED YOU TO A SINGLE INSTANCE WHERE

12   THEY REDEFINE THE TERM OR DISCLAIMED ANYTHING BECAUSE IT WAS

13   AUTOMATIC, LET ALONE OVER THE NETWORK.  I DON'T THINK WE SAW

14   ANY SLIDES ON WHERE THE SPECIFICATION REQUIRES NETWORK

15   DISTRIBUTION.

16         AND ONE OTHER POINT ON THE TITLE, YOUR HONOR.  I WOULD

17   JUST POINT YOU TO THE PITNEY BOWES CASE.  WE CITED IT IN OUR

18   BRIEFING.  IT -- THAT CASE SAYS THE TITLE IS IRRELEVANT TO

19   CLAIM CONSTRUCTION, OR NEARLY IRRELEVANT, SOMETHING TO THAT

20   EFFECT.  SO JUST --

21              THE COURT:  IT KEEPS THE DOOR OPEN, I THINK IT'S FAIR

22   TO SAY.

23              MR. TRIBBLE:  THAT'S RIGHT.

24         BUT EVEN IF YOU WERE TO LOOK AT THE TITLE, AGAIN, OR IN

25   ANY OF THESE OTHER LOCATIONS, THIS ONE I THINK IS PERHAPS --

1    YOU KNOW, SENTIUS' BEST ARGUMENT IS THEY CITE TO THIS ONE

2    PASSAGE IN COLUMN 2 OF THE '985 PATENT, AND IT TALKS ABOUT

3    AUTOMATICALLY DOWNLOADING NECESSARY PIECES.

4         WELL, FIRST OF ALL, THIS DOESN'T USE THE WORD "SYNDICATE."

5    IT DOESN'T REDEFINE THE WORD "SYNDICATE."  THEY'RE CERTAINLY

6    ENTITLED TO DESCRIBE THEIR INVENTION HOWEVER THEY LIKE, BUT

7    WHEN THEY USE A DIFFERENT CLAIM TERM, IF THEY DIDN'T REDEFINE

8    IT, THEY'RE STUCK WITH THAT TERM.  AND THIS DOESN'T REDEFINE

9    "SYNDICATE" IN ANY WAY THAT WE CAN SEE.  THERE'S NO DISAVOWAL

10   ANYWHERE IN THIS STATEMENT.

11        AT MOST WE HAVE HERE A DISCUSSION ABOUT A PREFERRED

12   EMBODIMENT, AND I THINK YOUR HONOR WAS RIGHT ON THE MARK WHEN

13   YOU SAID, HOW CAN IT BE THAT IF WE'RE NOT GOING TO LIMIT

14   SENTIUS TO THE ADDRESS EMBODIMENT IN THE EARLIER PATENTS --

15   WHICH OUR CONSTRUCTION DOESN'T, BY THE WAY -- BUT IF WE'RE NOT

16   GOING TO DO THAT, THEN HOW CAN IT BE THAT WE'RE GOING TO TAKE

17   THIS ONE STATEMENT THAT DOESN'T EVEN USE THE WORD "SYNDICATING"

18   AND SAY THAT THIS -- AND DOESN'T TALK ABOUT NETWORK

19   DISTRIBUTION -- AND SAY THAT THIS IS A REQUIREMENT FOR THIS

20   SYNDICATION LIMITATION?  IT'S JUST -- IT'S JUST INCONSISTENT.

21        THERE -- I DIDN'T HEAR IT TODAY, BUT THERE WAS A MENTION

22   IN THE BRIEFING ABOUT PROSECUTION HISTORY DISCLAIMER.  WE DON'T

23   THINK THAT THERE IS ONE.

24        IF YOU LOOK AT THE PROSECUTION HISTORY, EXHIBIT 12 I

25   BELIEVE TO SENTIUS' OPENING DECLARATION, WHAT THE PATENTEE WAS

1    SAYING IS THEY HAD THIS REFERENCE, GARNER, IT COULD EXPORT DATA

2    LOCALLY, BUT IT DIDN'T SEND IT ANYWHERE.

3         THEY SAID, "THAT'S NOT OUR INVENTION.  OUR INVENTION TALKS

4    ABOUT REMOTE MACHINES.  YOU HAVE TO SEND IT THROUGH A REMOTE

5    MACHINE."

6         THEY NEVER SAID GARNER SENDS IT, BUT IT'S NOT AUTOMATIC.

7    THEY NEVER SAID GARNER SENDS IT, BUT IT'S NOT OVER A NETWORK.

8         AND THIS IS SORT OF A SILLY SLIDE, BUT WHAT ARE WAYS YOU

9    COULD SYNDICATE NOT OVER A NETWORK?  NOT AUTOMATICALLY?  YOU

10   KNOW, YOU COULD HAVE DIFFERENT MEDIA.  YOU COULD HAVE A CD.

11   YOU COULD HAVE A DISK, A USB DRIVE.  YOU KNOW, FOR ARTICLES,

12   YOU COULD HAVE IT OVER THE MAIL.  I ASSUME TODAY IT'S MORE

13   ELECTRONIC.

14        AND TO THIS POINT ABOUT THE PREAMBLE, SO THEY SEEM TO

15   SUGGEST, WELL, A CD WOULDN'T BE -- YOU KNOW, SYNDICATING BY CD

16   WOULDN'T BE MEETING THE PREAMBLE, WHICH IS A COMPUTER

17   IMPLEMENTED METHOD.

18        WELL, FIRST OF ALL, WE KNOW THAT PREAMBLES GENERALLY ARE

19   NOT LIMITING, AND I DON'T BELIEVE THESE ARE.

20        BUT EVEN IF YOU WERE TO CONSIDER THAT, IT STILL DOESN'T

21   GET YOU TO AUTOMATIC AND OVER A NETWORK.

22        AND SO LET'S THINK ABOUT IT.  WHAT ARE SOME WAYS YOU COULD

23   DISTRIBUTE NOT AUTOMATICALLY?  LET'S TAKE NETWORK OUT OF THE

24   PICTURE FIRST.

25        WELL, YOU COULD HAVE THE USER CLICK A DOWNLOAD BUTTON AND

1    THEN THE DATABASE IS SYNDICATED.  IT'S NOT AUTOMATIC.  THE USER

2    HAD TO DO SOMETHING.

3         BUT THE DISTRIBUTION STILL GOES FROM A SERVER TO A CLIENT

4    OVER A NETWORK.  OUR VIEW IS THAT SHOULD BE SYNDICATION.

5         YOU COULD HAVE THE USER, YOU KNOW, RUN A BATCH FILE, IT

6    GOES AND PULLS IT FROM SOMEWHERE.

7         YOU COULD HAVE A USER CLICK AN "I AGREE" BUTTON BEFORE

8    THEY INSTALL IT.  YOU KNOW, DO YOU WANT TO INSTALL?  YES OR NO?

9    YES.

10         NOW, YOU KNOW, THE CLAIMS DON'T REQUIRE OR EXCLUDE ANY OF

11    THAT.  BUT THE POINT IS, NEITHER DID THE SYNDICATION.  THE

12    SYNDICATION PIECE OF IT JUST DEALS WITH THE DISTRIBUTION OF THE

13    DATABASE, AND WE SHOULDN'T BE BRINGING IN THIS ADDITIONAL

14    CONCEPT ABOUT WHAT THE USER DOES OR DOESN'T HAVE TO DO OR WHAT

15    THE SYSTEM DOES OR DOESN'T HAVE TO DO.  AS LONG AS IT'S

16    DISTRIBUTED, THAT SHOULD BE SYNDICATION.

17         AND THEN HOW ABOUT THE NETWORK PIECE?  WELL, YOU COULD

18    HAVE SYNDICATION NOT OVER WHAT WE WOULD CALL A NETWORK.  YOU

19    COULD HAVE COMPUTERS CONNECTED BY A MODEM.  TYPICALLY THAT'S A

20    DIRECT CONNECTION BETWEEN TWO.  IT'S NOT A NETWORK.  OUR VIEW

21    IS THAT WOULD BE SYNDICATION.

22         SCSI IS AN INTERFACE, YOU CAN CONNECT MULTIPLE MACHINES,

23    TYPICALLY NOT CONSIDERED A NETWORK.  IT'S A DIRECT CABLE

24    CONNECT BETWEEN ALL OF THEM IN LIKE A ROUND, A CIRCLE.

25         IN OUR VIEW, THERE'S JUST NOTHING THAT EXCLUDES ANY OF

1    THESE WHEN YOU HAVE A TERM LIKE "SYNDICATING" THAT IS,

2    EVERYBODY AGREES IT'S A PLAIN MEANING TERM, AND WHEN YOU HAVE A

3    SPECIFICATION THAT REALLY DOESN'T ADD EITHER OF THOSE

4    LIMITATIONS, THAT -- AT MOST, MAYBE A PREFERRED WAY TO DO IT

5    WOULD BE AUTOMATIC, SURE.

6         A PREFERRED WAY TO DO IT MIGHT BE OVER A NETWORK, EVEN

7    THOUGH IT'S NOT DISCUSSED.  BUT IT'S NOT A REQUIREMENT FOR

8    SYNDICATION.

9              THE COURT:  CAN YOU GO BACK TO SLIDE 56 FOR A MOMENT?

10             MR. LAMBERSON:  YES.

11             THE COURT:  THANK YOU.  SO I WANT TO UNDERSTAND

12    GARNER AND WHAT'S BEING SAID ABOUT GARNER HERE A LITTLE BIT

13    BETTER.

14         IN GARNER, WAS THERE ANY DISCUSSION AT ALL ABOUT HOW THE

15    SYNDICATION WAS PERFORMED?  IN OTHER WORDS, DOES GARNER -- AND

16    IT MAY NOT ULTIMATELY MATTER BECAUSE WHAT MATTERS IS HOW THAT

17    IS DISTINGUISHED, I THINK I GET THAT PART -- BUT I SEE THAT THE

18    EXAMINER CHARACTERIZED GARNER AS SIMPLY "SYNDICATING GENERALLY"

19    WITHOUT REALLY ANY SPECIFIC DISCUSSION BEYOND THAT.

20             MR. LAMBERSON:  YEAH.  I BELIEVE WHAT WAS AT ISSUE IN

21    GARNER, YOUR HONOR -- AND GARNER IS EXHIBIT K TO MICROSOFT'S

22    DECLARATION, A FAIRLY LENGTHY REFERENCE.

23         BUT I BELIEVE WHAT THE PATENT OFFICE WAS REFERRING TO WAS

24    JUST THIS TABULATION FUNCTION THAT TOOK A TABLE IN A DATABASE

25    AND EXPORTED IT AND IT DIDN'T SAY WHERE IT WENT.

```
 1              AND THE IMPLICATION TO ME WOULD BE WHEN YOU'RE EXPORTING,
 2      IT WOULD GO TO A LOCAL MACHINE.
 3              AND SENTIUS' POINT IN RESPONSE WAS, "OUR CLAIMS REQUIRE
 4      SYNDICATION TO A REMOTE MACHINE."
 5              THERE'S NO DISCUSSION IN GARNER OF TAKING THIS EXPORT
 6      AND -- THEY SAY IT DOESN'T SAY SENDING IT TO ANY SERVER, MUCH
 7      LESS A REMOTE SERVER.  THAT I TAKE IS THE POINT, THAT THERE'S A
 8      COMPLETE LACK OF DISTRIBUTION.
 9              AND ONE OTHER POINT HERE, YOUR HONOR.  I THINK SENTIUS
10      ACCURATELY DESCRIBED IT, BUT I JUST WANTED TO COME BACK TO YOUR
11      CONFUSION.  I SHOULDN'T SAY "CONFUSION," BUT YOUR
12      CLARIFICATION.
13                   THE COURT:  GO AHEAD AND SAY IT.
14                   MR. LAMBERSON:  I APOLOGIZE, YOUR HONOR.
15                   THE COURT:  I'LL COP TO THAT.
16                   MR. LAMBERSON:  WELL, I'LL SAY I WAS CONFUSED ABOUT
17       THE PATENT'S USE OF THESE -- OF THIS TERM "SERVER" IN BOTH
18       LOCATIONS.
19              BUT THIS AGAIN GOES TO WHAT SENTIUS WAS ORIGINALLY
20      CLAIMING AND SORT OF NOW HOW THEY'VE MORPHED THAT INTO THE
21      CURRENT DAY.
22              IF YOU READ THE PATENTS ORIGINALLY, YOU DID HAVE THIS
23      CENTRAL PLACE WHERE PEOPLE, WHERE EXPERTS WERE USING THEIR,
24      THEIR MOUSE TO ENTER ANNOTATIONS ASSOCIATED WITH WORDS, AND
25      THEN THAT WOULD GET SENT OUT TO THIS RICHLINK PROCESSOR SERVER.
```

```
 1            THAT'S NOT A CLIENT MACHINE.  IT'S ACTUALLY -- YOU KNOW,

 2     SO SAY AOL WANTED TO HAVE THEIR OWN SERVER AND THEY WANTED

 3     USERS TO BE ABLE TO TAKE THEIR DOCUMENTS, THEIR SOURCE

 4     DOCUMENTS, THEN THEY WOULD TAKE THEM AND THEY WOULD ADD THE

 5     LINK.

 6            THE COURT:  RIGHT.  THIS IS A SERVER SORT OF

 7     ARCHITECTURE, NOT A CLIENT SERVER.

 8            MR. LAMBERSON:  THAT'S WHAT'S IN THE PATENT.  THERE'S

 9     NO DISCUSSION ABOUT SENDING IT TO CLIENTS.

10        NOW, NOBODY IS SAYING SENTIUS' CLAIMS ARE LIMITED TO THAT.

11     THEY HAVE CLAIMS NOW THAT REALLY DON'T SAY ONE WAY OR THE OTHER

12     WHERE IT'S SENT TO.  THEY JUST SAY IT'S SENT.

13        BUT THAT IS WHAT THE PATENTS, YOU KNOW, ORIGINALLY ARE

14     TALKING ABOUT.

15        AND THIS WILL COME UP IN THE "MODULE" ISSUE AS WELL.  YOU

16     KNOW, WHAT YOU DON'T HAVE IN THESE PATENTS IS REALLY ANY

17     DISCUSSION ABOUT WHAT THESE SERVERS DO OTHER THAN JUST A

18     REFERENCE TO THE '720 PATENT, AND THE '720 PATENT DOES DESCRIBE

19     THESE RICHLINK PROCESSOR SERVERS.

20        IN ANY EVENT, I DON'T KNOW IF WE -- I DIDN'T SEE SLIDES ON

21     "RECEIVING."  WE HAVE ONE SLIDE ON RECEIVING.  I DON'T KNOW IF

22     IT MAKES SENSE FOR ME TO TALK ABOUT THAT.

23            THE COURT:  MR. TRIBBLE?

24            MR. TRIBBLE:  I CAN ADDRESS THAT, YOUR HONOR.

25        WE'RE NOT GOING TO ASSERT ANY CLAIMS FROM THAT PATENT, SO
```

```
 1        WE THINK IT'S MOOT.  I MEAN, THE SAME ARGUMENTS WOULD APPLY,

 2        BUT WE THINK IT'S MOOT AND DOESN'T NEED TO BE CONSTRUED.

 3               THE COURT:  ALL RIGHT.  I APPRECIATE THAT

 4        CLARIFICATION.

 5               MR. LAMBERSON:  OKAY.

 6               THE COURT:  THANK YOU, MR. LAMBERSON.

 7               MR. LAMBERSON:  THANK YOU.

 8               THE COURT:  MR. SETH, ANY REBUTTAL?

 9               MR. SETH:  SINCE I'M COMING BACK UP ANYWAY.

10        YOUR HONOR, I THINK, YOU KNOW, THIS IS PROBABLY A VERY

11        GOOD EXAMPLE OF WHY YOU CAN'T JUST RELY ON DICTIONARIES, WHY WE

12        ARE ENJOINED TO LOOK AT THE SPECIFICATION TO REALLY FIGURE OUT

13        WHAT IS MEANT WHEN THERE'S A CLAIM TERM THAT IS AMBIGUOUS,

14        ADMITTEDLY.

15           BUT THERE'S ABSOLUTELY NO POSITION THAT WE'RE TAKING THAT

16        THERE'S A PLAIN MEANING HERE, OKAY, AND I THINK IN JUST LOOKING

17        AT THE DICTIONARIES, THEY'RE ALL OVER THE PLACE AS TO IS IT

18        SIMULTANEOUS?  IS IT NOT?  WHAT IS IT?

19          SO I THINK 02 WOULD REQUIRE A CONSTRUCTION.

20               THE COURT:  ALL RIGHT.  I APPRECIATE YOUR CONFIRMING

21        THAT.

22               MR. SETH:  YOU'RE NOT GETTING OFF THAT EASILY.

23               THE COURT:  OKAY.  I APPRECIATE YOUR CONFIRMING THAT.

24               MR. SETH:  RIGHT.  YEAH.  AND THEN THE NON -- AND THE

25        NON-REQUIREMENT OF SIMULTANEOUS DELIVERY I THINK IS A PERFECT
```

```
 1          EXAMPLE OF WHY DICTIONARIES DON'T APPLY.

 2              AND THERE'S ALSO NO DISPUTE THAT "SYNDICATING" AND

 3      "SYNCHRONIZING" ARE TWO DIFFERENT THINGS, BUT OUR POINT IS THAT

 4      UNLESS YOU HAVE THE AUTOMATED DELIVERY SYSTEM, YOU'RE NOT GOING

 5      TO GET TO THE SPECIFICATION DESCRIBING THE AUTOMATED

 6      SYNCHRONIZATION AS WELL.

 7                  THE COURT:  CAN WE JUST TAKE A LOOK AT THAT SECTION

 8      ONE MORE TIME, IF WE COULD?  I THINK IT'S IMPORTANT THAT I

 9      APPRECIATE THAT POINT AS CLEARLY AS I CAN.

10                  MR. SETH:  SURE.

11                  THE COURT:  SO WHERE IN --

12                  MR. SETH:  YEAH, LET ME JUST GET YOU THERE.

13                  THE COURT:  IF YOU COULD DIRECT ME, I'D APPRECIATE

14      IT, TO WHERE IT TALKS ABOUT SYNCHRONIZATION.  I GUESS IT'S

15      COLUMN 12.  IS THAT RIGHT?  95, DATA SYNCHRONIZERS.

16                  MR. SETH:  CAN WE GO TO COLUMN 12?

17                  THE COURT:  YEAH, I'M LOOKING AT LINE, MAYBE 42, GIVE

18      OR TAKE, OF COLUMN 12.  YEAH, THERE IT IS.

19                  MR. SETH:  WELL, THERE -- THERE'S A BIDIRECTIONAL

20      ASPECT AS WELL.

21                  THE COURT:  OKAY.

22                  MR. SETH:  SO THERE ARE -- WHAT WE WERE REFERRING TO

23      EARLIER WAS A PORTION OF THE SPECIFICATION THAT WAS ACTUALLY

24      TALKING ABOUT SOMETHING ON THE RICHLINK PROCESSOR THAT WAS

25      REFERRED TO AS THE LEXICON MANAGER --
```

1          THE COURT:  UM-HUM.

2          MR. SETH:  -- AND A TEMPLATE MANAGER, AND THAT WAS

3     THE MODULE THAT WENT AND GOT THE DATABASES FROM THE CENTRAL

4     SERVER.

5          AND HERE WE'RE TALKING ABOUT MODULES THAT IF THERE WAS A

6     CHANGE MADE AT THE REMOTE COMPUTER RUNNING --

7          THE COURT:  I SEE.

8          MR. SETH:  -- THEN WE COULD SYNCHRONIZE THAT BACK TO

9     IF WE WANTED.

10          THE COURT:  OKAY.

11          MR. SETH:  AND SO THERE'S NO DISPUTE, YOUR HONOR,

12     THAT "SYNCHRONIZATION" AND "SYNDICATION" ARE TWO DIFFERENT

13     THINGS.

14          AND I THINK THE ONLY OTHER POINT I WOULD MAKE IS THAT

15     WE -- GOING BACK TO THE FIGURE WHERE WE SEE THE CENTRAL

16     PROCESSOR, THE RICHLINK PROCESSOR IS ALSO REFERRED TO AS A

17     PROCESSOR, IT'S TRUE.

18          BUT IT IS CERTAINLY A CLIENT OF THE, OF THE CENTRAL SERVER

19     AS WELL, EVEN THOUGH IT MAY BE A SERVER FOR OTHER COMPUTERS.

20          THE COURT:  RIGHT, RIGHT.

21          MR. SETH:  OKAY.  ALL RIGHT.

22          SO I THINK OUR NEXT TOPIC HAS TO DO WITH THE MODULE AND

23     THE PROCESSOR LIMITATIONS AND WHETHER OR NOT THESE ARE ACTUALLY

24     MEANS-PLUS-FUNCTION ELEMENTS.

25          OUR POSITION, OF COURSE, IS THAT THEY ARE NOT

1    MEANS-PLUS-FUNCTION ELEMENTS BECAUSE, IN THE FIRST PLACE, MEANS

2    WAS NOT USED IN THE CLAIMS, AND CERTAINLY COULD HAVE BEEN, AS

3    IT WAS USED IN OTHER CLAIMS.

4        BUT THE TERM "MODULE," "PROCESSING MODULE," "PROCESSOR

5    MODULE," THESE CLAIM ELEMENTS DO NOT RECITE THE MEANS, THE

6    STATUTORY LANGUAGE FOR THE MEANS-PLUS-FUNCTION AND, THEREFORE,

7    THERE IS A STRONG PRESUMPTION THAT THEY'RE NOT SUBJECT TO 112.

8        AND THEN THE QUESTION IS, IS THERE ANYTHING TO REBUT THAT

9    PRESUMPTION?  OKAY?

10       AND SO ONCE AGAIN, WE'LL -- YOU KNOW, FIRST OF ALL, BEFORE

11   WE EVEN GET TO THE SPECIFICATION, AND I THINK THIS IS

12   ADEQUATELY BRIEFED, THERE'S A LOT OF CASE LAW OUT THERE THAT,

13   YOU KNOW, MODULES ARE NOT MEANS-PLUS-FUNCTION ELEMENTS.  THEY

14   RECITE SUFFICIENT STRUCTURE.

15       AND I THINK WHAT'S IMPORTANT, JUST TO SKIP TO THE

16   SPECIFICATION, IS THAT THROUGHOUT THE SPECIFICATION OF THE '985

17   PATENT, WE'RE TALKING ABOUT SOFTWARE RUNNING ON A PROCESSOR.

18   THAT'S WHAT WE'RE TALKING ABOUT.

19       AND WE'RE TALKING ABOUT VARIOUS COMPONENTS THAT DO VARIOUS

20   THINGS.

21       AND CONSISTENTLY THROUGHOUT THAT SPECIFICATION, THOSE

22   COMPONENTS OF -- THOSE SOFTWARE COMPONENTS THAT ARE RUNNING ON

23   A PROCESSOR ARE REFERRED TO AS "MODULES," AND THAT'S -- THAT'S

24   BASICALLY THE ESSENCE OF WHY IT IS NOT -- AND, YOU KNOW, I

25   PROVIDE EXAMPLES OF THE RICHLINK PROCESSOR SYSTEM BEING

1    REFERRED TO AS REALLY A SET OF MODULES, THE MODULES IN THIS

2    CORE COMPONENT GROUP.  THE RICHLINK PROCESSOR ITSELF IS ALSO

3    REFERRED TO AS A MODULE.

4         AND THEN HERE WE SEE, FOR THE TERM "FINDER MODULE," WHICH

5    IS NOT A PART OF THE ASPECT THAT WE ARE CLAIMING AS

6    INFRINGEMENT HERE BECAUSE WE'RE NOT TALKING ABOUT THE DATABASE

7    CREATION, WE'RE TALKING ABOUT THE DATABASE DELIVERY AND THE USE

8    OF THE DATABASE AT THE REMOTE PROCESSOR, BUT HERE I THINK IT'S

9    IMPORTANT THAT IT'S REFERRING TO A FLOW CHART FOR THE MODULE,

10   AGAIN SHOWING THAT WE'RE TALKING ABOUT THE SOFTWARE.

11        AND HERE THERE'S ANOTHER CALL OUT FOR THE RICHLINK CONTENT

12   EDITOR THAT IS A MODULE, AND IT'S REFERRED TO AS AN

13   APPLICATION, AGAIN INDICATING WE'RE TALKING ABOUT SOFTWARE.

14        AND THEN THE DATA SYNCHRONIZERS THAT YOU POINTED OUT

15   EARLIER THAT DO THE REVERSE SYNCHRONIZATION ARE MODULES.

16        SO, YOU KNOW, THE SPECIFICATION IS REPLETE THAT MODULES

17   ARE SIMPLY DATA -- SOFTWARE RUNNING ON A PROCESSOR, AND THAT'S

18   WHAT I'VE GOT ON THAT.

19             THE COURT:  ALL RIGHT.  THANK YOU.

20        MR. LAMBERSON.

21             MR. LAMBERSON:  SO, YOUR HONOR, STARTING WITH SORT OF

22   I GUESS FIRST PRINCIPLES HERE, PURELY FUNCTIONAL CLAIM LANGUAGE

23   IS VERY POWERFUL.  IF YOU DESCRIBE SOMETHING ONLY BY WHAT IT

24   DOES, YOU'RE BASICALLY EXCLUDING EVERYBODY ELSE IN THE COUNTRY

25   FROM DOING THE SAME THING IN ANY MANNER USING ANY STRUCTURES.

1       THAT'S WHY, IN 1946, THE SUPREME COURT STRUCK DOWN CLAIMS

2    THAT USE THAT TYPE OF CLAIMING.

3       IT'S ALSO WHY CONGRESS PASSED A VERY LIMITED EXCEPTION TO

4    THAT, NOW CALLED 112(F), IN ALL THE CASE LAW IT WAS 112(6) --

5    THANKS TO CONGRESS FOR RECODIFYING THAT -- IN ORDER TO ALLOW

6    CERTAIN FUNCTIONAL CLAIMING, BUT ONLY IF YOU PAID A PRICE.

7       YOU CAN DO A FUNCTIONAL CLAIM, BUT YOU HAVE TO TELL THE

8    WORLD IN YOUR PATENT WHAT STRUCTURE YOU'RE TALKING ABOUT.

9       AND YOU'RE NOT LIMITED TO JUST THAT STRUCTURE.  YOU ALSO

10   GET ANY EQUIVALENT TO THAT STRUCTURE.

11      WE KNOW FROM THE FEDERAL CIRCUIT FROM MULTIPLE CASES THAT

12   THE WORDS "MEANS FOR" ARE NOT REQUIRED.  CASES -- CLAIMS THAT

13   DON'T USE "MEANS FOR," THERE IS A REBUTTABLE PRESUMPTION THAT

14   112(6) DOES NOT APPLY.

15      BUT WHEN YOU HAVE A CLAIM WHERE THERE IS NOT STRUCTURE IN

16   THE CLAIM, IN THE CLAIM, FOR PERFORMING THAT FUNCTION, THEN

17   THAT PRESUMPTION IS OVERCOME.

18      AND SENTIUS FOCUSSED A GREAT DEAL ON WHAT'S SHOWN IN THE

19   SPECIFICATION ABOUT THESE MODULES.

20      I'M SORRY.  LET ME GET SOME WATER.

21          THE COURT:  SURE.

22      (PAUSE IN PROCEEDINGS.)

23          MR. LAMBERSON:  BUT ALL WE HAVE IN THE CLAIMS -- NONE

24   OF THE STRUCTURES UNDERLYING THOSE MODULES ARE IN THE CLAIMS.

25   ALL IT SAYS IS "A TERM MODULE FOR," AND THEN IT GIVES A

1     FUNCTION.  "A PROCESSING MODULE FOR," AND THEN A FUNCTION.

2          SAME THING FOR "PROCESSOR" AND THEN JUST THE BARE TERM

3     "MODULE" BY ITSELF.

4          SENTIUS HASN'T MADE AN ARGUMENT THAT -- THIS POPS UP IN

5     CERTAIN CASES WHERE THE PARTIES WILL SAY, "WELL, 'TERM MODULE,'

6     BY ITSELF, IS SOMETHING THAT EVERYBODY KNOWS WHAT 'TERM MODULE'

7     IS.  THE WHOLE WORLD KNOWS THAT.  IT'S IN THE DICTIONARY."

8          NOT THE CASE HERE.  WE DON'T HAVE ANY EVIDENCE OF THAT.

9          "PROCESSING MODULE" IS THE SAME.

10          AND WHAT WE KNOW IS YOU HAVE THESE WORDS LIKE "PROCESSOR"

11     OR "MODULE" -- THIS IS FROM THE PATENT OFFICE REGULATIONS,

12     EXHIBIT N.  IT'S CERTAINLY NOT BINDING, BUT THERE'S CASE LAW

13     THAT SAYS THE SAME THING.

14          "MODULE FOR" IS A NON-STRUCTURAL TERM THAT MAY INVOKE

15     112(6).  SO ALREADY WHEN WE'RE TALKING ABOUT PRESUMPTIONS,

16     WE'RE ALREADY IN A WORLD WHERE WE KNOW THAT WE HAVE A TERM THAT

17     OTHER CASES AND THE PATENT OFFICE HAVE SAID CAN TRIGGER 112(6).

18          SO THIS IS NOT A CASE WHERE WE'RE DEALING WITH SOME EXOTIC

19     CLAIM LANGUAGE THAT NOBODY HAS SEEN BEFORE.  "MODULE FOR," AND

20     THEN YOU HAVE A RECITATION OF A FUNCTION, IS A TERM THAT CAN

21     CONNOTE THAT KIND OF PURELY FUNCTIONAL CLAIMING.

22          AND "MICROPROCESSOR" IS ANOTHER ONE.  WHAT WE HAVE HERE,

23     THERE ARE MANY, MANY CASES THAT DEAL WITH THE SITUATION WHERE

24     YOU HAVE A MEANS, ADMITTEDLY MEANS-PLUS-FUNCTION CLAIM, MEANS

25     FOR MAKING MONEY ON THE STOCK MARKET, AND THEN THE

1    SPECIFICATION WILL SAY YOU CAN MAKE MONEY ON THE STOCK MARKET

2    USING A COMPUTER.

3         WELL, THE CASE LAW SAYS THAT'S NOT GOOD ENOUGH.  YOU NEED

4    TO GIVE -- IF YOU'RE DEALING WITH A SOFTWARE CLAIM, YOU NEED TO

5    GIVE AN ALGORITHM.  YOU CAN'T JUST SAY TO DO IT WITH A COMPUTER

6    OR A PROCESSOR RUNNING INSTRUCTIONS.  YOU NEED TO SAY WHAT

7    THOSE INSTRUCTIONS ARE.

8         THE COURT:  IN THOSE SITUATIONS, ARE YOU NECESSARILY

9    DEALING WITH A 112(6) OR 112(F) PROBLEM, OR ARE THERE OTHER

10   REASONS WHY THAT LIMITATION MAY BE INFORMED?

11        MR. LAMBERSON:  THE CASES THAT DEAL WITH THIS THAT

12   WE'VE CITED IN OUR BRIEFING ARE CASES WHERE IT WAS EITHER

13   ADMITTEDLY 112(6) OR THERE ALREADY WAS A FINDING OF 112(6).

14        BUT THE SOQUE HOLDINGS CASE, WHICH IS FROM THE NORTHERN

15   DISTRICT, 2010, POINTS OUT THAT LOGICALLY, IF PUTTING THAT --

16   IF PUTTING "PROCESSOR," JUST A PROCESSOR IN THE SPEC ISN'T

17   ENOUGH STRUCTURE TO SUPPORT A MEANS CLAIM, THEN HOW CAN YOU

18   POSSIBLY SAY LOGICALLY THAT IF I SAY "PROCESSOR IN THE CLAIM"

19   THAT THAT'S GOOD ENOUGH, THAT THAT'S ENOUGH STRUCTURE?

20        THE COURT:  THE POINT OF THE SECTION IS THERE'S GOT

21   TO BE STRUCTURE SOMEWHERE, AND IF THE STRUCTURE IS INSUFFICIENT

22   IN ORDER TO PROVIDE 112(F) SUPPORT, IT WOULD BE INSUFFICIENT TO

23   AVOID 112(F) ALTOGETHER.

24        MR. LAMBERSON:  THAT'S THE LOGICAL CONCLUSION.  AND

25   THE REASON WHY IS ARTICULATED IN THESE CASES THAT WE'VE CITED

```
 1      THAT DEAL WITH COMPUTER OR PROCESSOR, AND WHAT THEY SAY IS

 2      SIMPLY DISCLOSING A COMPUTER AS THE STRUCTURE DOESN'T LIMIT THE

 3      SCOPE OF A CLAIM, AND THAT'S BECAUSE A GENERAL PURPOSE COMPUTER

 4      OR A GENERAL PURPOSE PROCESSOR, THEY CAN DO ANYTHING.  I MEAN,

 5      YOU CAN PROGRAM A COMPUTER TO DO JUST ABOUT ANY TASK, AND THAT

 6      IS NOT -- SO -- AND I SHOULD SAY, THERE IS A LIMITED EXCEPTION.

 7      IF YOU HAVE A CLAIM WHERE THE FUNCTION CAN BE PERFORMED BY A

 8      GENERAL PURPOSE COMPUTER, A MODULE FOR STORING DATA IN A

 9      MEMORY, A GENERAL PURPOSE COMPUTER CAN DO THAT.  YOU MAY NOT

10      NEED MORE STRUCTURE AT THAT POINT.

11           BUT THAT'S NOT WHAT WE'RE TALKING ABOUT.  WE'RE TALKING

12      ABOUT THINGS THAT WOULD REQUIRE ALGORITHMIC SPECIFICITY,

13      PARSING THE DOCUMENT TO IDENTIFY TERMS, IDENTIFYING THE

14      CONTENT.  THOSE ARE NOT THINGS THAT A GENERAL PURPOSE COMPUTER

15      CAN DO JUST OUT OF THE BOX IN ANY SENSE.

16           AND WE'VE CITED CASES THAT ACTUALLY SPECIFICALLY DEAL WITH

17      "MODULE" AND "PROCESSOR."  TO BE SURE, THERE ARE OTHER CASES

18      THAT HAVE COME OUT THE OTHER WAY.  YOU KNOW, THIS IS PROBABLY

19      NOT AN EXHAUSTIVE LIST.  EACH CASE DOES HAVE TO BE ANALYZED ON

20      THE FACTS.

21           BUT HERE I THINK, YOU KNOW, WHAT WE NEED TO LOOK AT IS

22      WHAT IS THE -- WHAT WOULD THE STRUCTURE BE FOR THESE CLAIM

23      LIMITATIONS?

24           AND SO WE TURN TO THE PATENT.  SENTIUS CITED AGAIN A LOT

25      OF DIFFERENT DISCUSSION OF VARIOUS MODULES.  THERE ARE OTHER
```

1    MODULES IN THE PATENTS, AND MAYBE SOME OF THEM RECITE

2    STRUCTURE.

3         WHAT WE DON'T HAVE IS ANYTHING THAT TELLS US, HOW DO YOU

4    PARSE A DOCUMENT?  WHAT ARE THE RULES THAT YOU USE TO DO THE

5    ACTUAL PARSING?

6         WHAT WE SEE IN THE PATENT IS WE SAY -- THE '985 PATENT

7    SAYS "TEXT MAY BE PARSED."  IT DOESN'T SAY HOW.

8         IT SAYS "PARSING USING NATURAL LANGUAGE PROCESSING TO

9    TOKENIZE THE TEXT."  WELL, TOKENIZE IT HOW?  WHAT KIND OF

10   NATURAL LANGUAGE PROCESSING?  HOW DO YOU BREAK IT UP.

11        WE DON'T SEE IT.

12        AND WHAT WE SAW -- YOU KNOW, WHEN YOU LOOK AT SENTIUS'

13   TECHNICAL TUTORIAL, I THOUGHT THIS WAS INTERESTING BECAUSE THEY

14   SAY "A COMMON PARSER, FOR EXAMPLE, LOCATES WHITE-SPACE IN

15   BETWEEN THE LETTERS WHERE ONE WORD ENDS AND A SECOND BEGINS."

16        ALL RIGHT.  IF THIS WERE IN THE PATENT, WE WOULD HAVE A

17   PARSER, AN ALGORITHM EXPRESSED IN WORDS FOR HOW YOU DO THE

18   PARSING.  WE DON'T.  WE DON'T HAVE THIS IN THE PATENT.

19             THE COURT:  DOES THE -- I'M SORRY, MR. LAMBERSON --

20             MR. LAMBERSON:  YEAH.

21             THE COURT:  -- BUT I WANT TO ASK, DOES THE FACT THAT

22   THERE MAY BE ALL SORTS OF STRUCTURES THAT ARE CAPABLE OF

23   PERFORMING THE FUNCTION -- LET'S ASSUME I ACCEPT YOUR ARGUMENT

24   AND WE'RE TALKING ABOUT 112(F) FOR A MOMENT.

25             DOES THE FACT THAT THERE ARE MULTIPLE STRUCTURES AVAILABLE

```
 1    NECESSARILY MEAN THAT THE PATENTEE HAS FAILED TO MEET HIS

 2    OBLIGATION WHERE ONE OF ORDINARY SKILL IN THE ART WOULD

 3    UNDERSTAND THAT ANY OF THESE PARSERS WOULD BE PERFECTLY

 4    ADEQUATE TO THE TASK.  I WANT TO MAKE SURE I APPRECIATE WHAT

 5    YOU'RE SAYING.

 6              MR. LAMBERSON:  YEAH, I THINK -- SO I THINK THE

 7    POINT, YOUR HONOR, IS -- SO IF WE'RE ARGUING IN A WORLD WHERE

 8    112(F) APPLIES, THE QUESTION IS NOT WHAT ONE OF SKILL IN THE

 9    ART WOULD HAVE KNOWN.

10        AND I BELIEVE WE HAVE SOME SLIDES THAT SAY THAT.  NOAH

11    SYSTEMS I BELIEVE IS PERHAPS THE BEST CASE.

12        WE CAN'T CONFUSE ENABLEMENT WITH THE REQUIREMENTS OF

13    112(6), SO THE QUESTION IS NOT, COULD ONE IMPLEMENT A PARSER?

14        IF YOU ASKED A HUNDRED SOFTWARE ENGINEERS AT THE RELEVANT

15    TIME --

16              THE COURT:  PROBABLY A HUNDRED OF THEM WOULD KNOW HOW

17    TO PARSE.

18              MR. LAMBERSON:  THEY WOULD KNOW ONE WAY TO PARSE,

19    ABSOLUTELY.  THEY COULD IMPLEMENT IT.  THEY WOULD PROBABLY DO

20    WHAT SENTIUS SAID, FIND THE WHITE SPACE.

21        BUT THERE ARE OTHER WAYS TO PARSE.  FIRST OF ALL, THAT'S

22    NOT IN THE PATENT.  THAT'S ALL THE PATENTEE HAD TO SAY.  IF

23    WE'RE IN A 112(F) WORLD, TO MEET THE BARGAIN, THE STATUTORY

24    BARGAIN, ALL THEY HAD TO DO WAS PUT THAT ALGORITHM IN THE SPEC,

25    ONE SENTENCE, AND THEY DIDN'T DO IT.
```

```
1          AND THE TEST THAT NOAH SYSTEMS TELLS US, IT'S NOT WHAT ONE

2     OF SKILL IN THE ART WOULD HAVE UNDERSTOOD, WOULD HAVE BROUGHT

3     TO THE TABLE FROM OTHER SOURCES OR THEIR OWN KNOWLEDGE.

4          THE QUESTION IS, DOES THE SPEC TELL YOU HOW TO DO IT?

5          AND IT'S WORTH POINTING OUT, EVEN THAT EXAMPLE THAT

6     SENTIUS GIVES, YOU KNOW, THAT MAY TELL YOU HOW TO PARSE TEXT

7     ONLY FILES.  WHAT ABOUT FILES THAT HAVE IMAGES OR GRAPHICS OR

8     SOUNDS?

9          AND THAT ACTUALLY IMPLICATES THE HOLDING IN THE FLYSWAT

10    CASE WHERE THE COURT SAID, "YOU KNOW WHAT?  THERE IS NO

11    ENABLEMENT HERE BECAUSE YOUR CLAIMS READ ON TO PARSING SOUND

12    FILES, VIDEO FILES, NO ENABLEMENT OF THAT.  THAT'S NOT

13    SOMETHING ANYONE WOULD KNOW HOW TO DO."

14         SENTIUS NEVER APPEALED THAT JUDGMENT OF INVALIDITY.

15         IN ANY EVENT, WHAT WE HAVE ARE PATENTS THAT JUST DON'T

16    EXPLAIN HOW YOU DO THE PARSING.

17         THEY DO REFERENCE THE '720 PATENT, SO SENTIUS -- SENTIUS

18    HAD SAID IN ITS TUTORIAL THAT THIS IS AN INCORPORATION BY

19    REFERENCE.

20         I DISAGREE.  I DON'T -- THERE IS NO STATEMENT HERE THAT,

21    "THE CONTENTS OF WHICH ARE INCORPORATED BY REFERENCE."  IT

22    SAYS -- YOU KNOW, IT SAYS "TERMS CAN BE TAGGED USING THIS

23    PATENT," BUT THAT I BELIEVE THE CASE LAW SAYS IS NOT SUFFICIENT

24    FOR INCORPORATION.

25         BUT LET'S PUT THAT ASIDE.  EVEN IF YOU GO LOOK AT THE '720
```

```
 1        PATENT, WHAT DOES IT SHOW FOR ITS PARSER?  IT SHOWS A BLACK

 2        BOX, THAT SAME DISCLOSURE THAT SENTIUS GAVE, YOU KNOW, THIS

 3        COMMON PARSER.

 4             IT'S NOT IN THE '720 PATENT, EITHER.  THE '720 PATENT JUST

 5        SAYS -- AND IN FACT, THE ONLY -- THE ONLY PARSING, IF YOU COULD

 6        CALL IT THAT, AND I DON'T BELIEVE YOU COULD, BUT THE ONLY THING

 7        THE '720 PATENT DOES DISCLOSE, LET ME SAY IT THIS WAY, IS USING

 8        A VISUAL EDITOR.  IT'S AN ACTUAL HUMAN BEING TAKING THEIR MOUSE

 9        AND SELECTING THE WORDS.

10             THE '720 PATENT DOES NOT DISCLOSE PARSING.  IT DOESN'T

11        EVEN DISCLOSE WHAT SENTIUS CALLS A COMMON PARSER.  IT SAYS YOU

12        HAVE TO HAVE A HUMAN BEING DO IT.

13             AND THE COURT IN FLYSWAT NOTED THIS.  IT SAID, "THE ONLY

14        MEANS OF CUTTING IS A VISUAL EDITOR, A METHOD OF AUTO-CUTTING,"

15         WHICH I WOULD CALL PARSING, AUTOMATICALLY CUTTING THE

16        DOCUMENT, "IS NOT DEFINED."

17             NOW, THEY SAID ONE OF SKILL IN THE ART COULD BUILD AN AUTO

18        CUTTER, BUT AGAIN THAT'S NOT THE QUESTION WHEN WE'RE IN THE

19        112(6) WORLD.  IT'S, IS IT IN THERE?

20             AND WHAT WE SEE IS IT'S NOT IN THE '985, AND EVEN IF YOU

21        WERE TO TRY TO INCORPORATE BY REFERENCE -- AND AS WE'LL SEE IN

22        THE NEXT LIMITATION, THERE'S AN ADDITIONAL PIECE THERE WHICH

23        IS -- CASE LAW TELLS US YOU CAN'T LOOK TO THE INCORPORATION BY

24        REFERENCE FOR THE STRUCTURE.

25             SO EVEN IF YOU LOOK TO THE INCORPORATION BY REFERENCE,
```

1    EVEN IF LEGALLY THAT WERE PROPER, WHICH IT'S NOT, YOU STILL

2    DON'T FIND IT.

3         IT'S NOT IN THE '720 PATENT, EITHER.

4         I SUPPOSE -- WELL, THE ONLY THING DISCLOSED IS THE MANUAL

5    PROCESS AND THAT'S IT.

6         AND I THINK SENTIUS' REPLY, WHEN YOU TAKE A LOOK AT IT,

7    JUST BEGS THE QUESTION HERE.  SENTIUS SAYS "THE PARSING STEPS

8    INCLUDE SELECTING THE RULES USED TO FIND TERMS OR SPECIFIC

9    TERMS TO BE MATCHED."  THAT'S THE QUESTION AT ISSUE HERE.  WHAT

10   ARE THE RULES?  WHAT ARE THE PARSING RULES?  THEY CITE TO TWO

11   PLACES WHERE THEY SAY THOSE ARE DISCLOSED.  THE FIRST ONE, 8:51

12   TO 54, IS HERE.  IT DOESN'T SAY ANYTHING ABOUT HOW YOU PARSE AT

13   ALL.

14        THE SECOND ONE IS LONGER, BUT IT'S THE SAME.  YOU KNOW,

15   WE'VE EXCERPTED IT HERE.  YOUR HONOR CAN LOOK AT IT, IT'S 9:23

16   TO 45.  THERE'S NO DISCLOSURE OF WHAT THOSE RULES ARE IN THAT

17   SECTION.

18        AND THE SECOND PIECE HERE -- SO THAT'S THE PARSING PIECE.

19   WE DON'T BELIEVE THERE'S ANY DISCLOSURE OF CORRESPONDING

20   STRUCTURE, WHICH WOULD MEAN THE CLAIMS, IF THEY ARE 112(F) --

21   IF USING THIS "MODULE FOR" OR "PROCESSOR FOR" LANGUAGE ARE

22   112(F), THEN WE BELIEVE THEY'RE INVALID.  IT'S INDEFINITE IF

23   YOU DON'T GIVE THE CORRESPONDING STRUCTURE.

24        THE SECOND PIECE IS IDENTIFYING CONTENT, IDENTIFYING

25   CONTENT.  SO THE ONLY EXPLANATION YOUR HONOR HAD TODAY FOR HOW

1    YOU WOULD DO THIS STEP IS FROM THE 7 -- IS FROM THE RE-ISSUED

2    PATENT.  YOU WOULD USE A LOOK-UP TABLE.  THAT IS THE ONLY

3    DISCLOSURE IN ANY OF THESE PATENTS ABOUT HOW YOU DO A LOOK-UP.

4         AND IT'S NOT IN THE '985 OR THE '349 PATENTS.  HOW DO YOU

5    IDENTIFY CONTENT?

6         AND THE OTHER INTERESTING THING HERE, IT MAY BE MORE OF AN

7    ASIDE, BUT THERE ARE SORT OF TWO IDENTIFYING CONTENT STEPS WHEN

8    YOU THINK ABOUT IT.  THERE'S THE INITIAL PROCESSING BY THE

9    KNOWLEDGE WORKER, AND THEN THERE'S WHAT I'LL CALL THE, THE -- I

10   DON'T KNOW HOW TO CHARACTERIZE IT -- THE COMPUTER ON THE OTHER

11   END THAT'S ALREADY RECEIVED IT AND THAT IS THEN ADDED -- THE

12   RICHLINK PROCESSOR.  WE'LL CALL IT THAT.

13        SO I THINK WE ALL AGREE THAT THIS IS TALKING ABOUT THAT

14   RICHLINK PROCESSOR IDENTIFYING CONTENT.  I DON'T THINK WE'RE

15   TALKING ABOUT THIS AS BEING THE KNOWLEDGE WORKER'S, YOU KNOW,

16   MANUALLY ADDING SOMETHING.

17        BUT IF THAT IS THE STRUCTURE, THEN IT MAY BE -- YOU KNOW,

18   WE CERTAINLY DON'T DO THAT, SO MAYBE THAT'S A FINE STRUCTURE.

19   BUT I DON'T BELIEVE THAT'S WHAT WE'RE TALKING ABOUT.

20        AND WHAT DOES SENTIUS SAY THIS IS?  WELL, THEY SAY, ONCE

21   AGAIN, YOU KNOW, "LOOKING UP THE TERM IN A LEXICON OBJECT."

22        AGAIN, IT BEGS THE QUESTION, HOW DO YOU DO THE LOOK UP?

23   WHAT IS THE ALGORITHM YOU USE TO FIND IT?  DO YOU USE A LOOK-UP

24   TABLE?  DO YOU USE CASSORLA AND ITS TAGS?  DO YOU USE

25   HYPERLINKS?  WHAT DO YOU USE TO FIND IT, TO ACTUALLY FIND THE

1    DATA?

2         AGAIN THEY POINT TO TWO SPOTS.  I WOULD NOTE THAT THIS

3    FIRST ONE, 8:51 TO 54, IS THE SAME PLACE THEY POINTED FOR THE

4    PARSING.  I DON'T THINK IT DISCLOSES EITHER ONE.

5         BUT YOU ALSO HAVE TO HAVE A CLEAR LINKAGE, SO IT'S GOT TO

6    BE ONE OR THE OTHER.  WHICH ONE IS IT LINKED TO?  WE DON'T

7    THINK IT'S RELEVANT TO EITHER ONE.

8         AND THEN THE OTHER PART THEY CITE, WHICH I'VE ALREADY

9    MENTIONED, IS THIS REFERENCE TO THE '720 PATENT.

10        NOW, IF WE WERE DEALING WITH THIS ISSUE FOR THE '720

11   PATENT, WE WOULD ABSOLUTELY AGREE THE '720 PATENT DISCLOSES AN

12   ALGORITHM FOR HOW DO WE DO THIS LOOK UP, AND IT'S THE LOOK-UP

13   TABLE AND WE'VE ALREADY TALKED ABOUT IT AT GREAT LENGTH TODAY.

14        BUT THE DEFAULT PROOF CASE SAYS EXTERNAL CONTENT

15   INCORPORATED BY REFERENCE CAN'T BE THE CORRESPONDING STRUCTURE.

16   IT NEEDS TO BE IN THE BODY OF THE PATENT ITSELF.  WE'RE NOT

17   GOING TO MAKE PEOPLE GO ROOT THROUGH A BUNCH OF EXTERNAL STUFF

18   TO FIND IT.

19             THE COURT:  AND OF COURSE I CAN GO BACK AND READ

20   DEFAULT PROOF AGAIN, BUT I'M CURIOUS, DO YOU INTERPRET THAT

21   CASE AS SUGGESTING A PER SE BAN ON SUPPORTING STRUCTURE AND

22   DOCUMENTS INCORPORATED BY REFERENCE?

23             MR. LAMBERSON:  SO, YOUR HONOR, I THINK IT'S AN

24   INTERESTING QUESTION.  YOU KNOW, IF YOU'RE ASKING MY PERSONAL

25   VIEW, I WOULD SAY IF YOU INCORPORATE SOMETHING BY REFERENCE,

1    YOU SHOULD VIEW THE WHOLE CONTENT AS BECOMING A PART OF THE

2    PATENT.

3         SO, YOU KNOW, PERSONALLY I WOULD HAVE NO PROBLEM -- NOW, I

4    DO THINK THERE'S AN ISSUE HERE BECAUSE I DON'T BELIEVE THIS IS

5    AN INCORPORATION BY REFERENCE, SO I DON'T THINK THAT'S WHAT

6    THEY'VE DONE.

7         BUT IF THEY HAD, YOU KNOW, PERSONALLY I THINK YOU SHOULD

8    BE ABLE TO DO THAT.

9         NOW, WHEN YOU READ DEFAULT PROOF, AND WE CAN PULL UP THE

10   QUOTE, I FIND IT FAIRLY CLEAR THAT THAT IS PROHIBITED -- AND

11   IT'S THE ONLY CASE WE WERE ABLE TO FIND THAT SPEAKS TO THIS

12   ISSUE -- AND IT SPECIFICALLY SAYS, I BELIEVE, INCORPORATION BY

13   REFERENCE AND SAYS WE'RE NOT GOING TO DO THAT.

14        SO, YOU KNOW, MY VIEW IS IT DOESN'T MEAN A WHOLE LOT WHEN

15   I HAVE A FEDERAL CIRCUIT CASE THAT SAYS THE OPPOSITE.

16        BUT EVEN IF YOUR HONOR WERE TO READ IT AND SAY, "YOU KNOW

17   WHAT?  MY VIEW MATCHES MR. LAMBERSON.  FEDERAL CIRCUIT, IT'S

18   DIFFERENT SOMEHOW," EVEN THEN, THE ONLY STRUCTURE WE SHOULD BE

19   TALKING ABOUT IS THIS LOOK-UP TABLE.

20        AND I JUST WANT TO BE CLEAR THAT IF WE ARE IN A WORLD

21   WHERE 112(F) APPLIES, IF THE COURT VIEWS THIS AS INCORPORATION

22   BY REFERENCE, WHICH WE DON'T THINK IT IS, IF THE COURT

23   OVERCOMES DEFAULT PROOF, WHICH WE DON'T SEE HOW, BUT MAYBE YOUR

24   HONOR WILL FIND A WAY, THE ONLY THING YOU GET OUT OF THAT, WE

25   THINK, IS THE LOOK-UP TABLE, AND THAT SHOULD IMPORT ALL OF THE

1    LIMITATIONS THAT WE TALKED ABOUT EARLIER TODAY, THE LINKING,

2    THE DATABASE, IT'S ALL OF THAT.

3         AND I JUST WANT TO MAKE CLEAR THAT IF WE DO GET TO THAT

4    POINT AFTER ALL THOSE STEPS, THAT THAT'S THE ONLY THING WE

5    COULD BE TALKING ABOUT.

6         NOW, WE DON'T THINK YOU GET THERE.  WE THINK THERE IS NO

7    STRUCTURE, NO INCORPORATION BY REFERENCE.  EVEN IF THERE IS,

8    YOU CAN'T USE IT ACCORDING TO THE FEDERAL CIRCUIT, SO INVALID.

9    THAT'S OUR POSITION.

10        BUT EVEN IF YOUR HONOR DISAGREED, WE THINK THAT'S THE MOST

11   YOU WOULD BE ABLE TO FIND FOR STRUCTURE.

12             THE COURT:  ALL RIGHT.  THANK YOU.

13        ANY REBUTTAL ON THIS POINT, MR. SETH?

14             MR. SETH:  JUST A FEW POINTS, YOUR HONOR.

15        CAN WE PUT UP '985, COLUMNS 15 AND 16?

16        ALL RIGHT.  CAN WE BLOW IT UP SOME TO GET IN THE VICINITY

17   OF THE MIDDLE OF THE DOCUMENT, AROUND CLAIM 20?  CAN YOU MOVE

18   OVER?  YEAH.

19        SO I'M JUST TRYING TO SHOW SIDE BY SIDE HERE OF CLAIM 36

20   WHICH USES THE TERM "MODULE LIMITATION," AND CLAIM 20, WHICH

21   USES A MEANS FOR LIMITATION, AND I WOULD SAY THAT THIS

22   HIGHLIGHTS THE DIFFERENCES THAT WE HAVE HERE.  YOU KNOW,

23   PRESUMABLY THESE ARE WRITTEN TO HAVE DIFFERENT CLAIM SCOPE.

24        I'M A PATENT ATTORNEY.  I SOMETIMES DO THIS BECAUSE I WANT

25   TO INCORPORATE THE SPECIFICATION LIMITATIONS VERSUS I DON'T.

```
1          SO -- AND I THINK THAT'S WHAT'S HAPPENED HERE.

2          NOW GOING TO THE SECOND POINT -- CAN YOU GO TO DO THAT

3     SPLIT SCREEN AT FIGURE 7, AND ALSO COLUMN 6?  COLUMN 6 OF THE

4     TEXT.  AND CAN YOU BLOW UP AROUND LINE 52?

5          OKAY.  SO MR. LAMBERSON, PUTTING ASIDE THE WHOLE

6     INCORPORATION BY REFERENCE ARGUMENT, SAYS THAT THERE'S NO

7     SPECIFICATION SUPPORT FOR THE PARSING.

8          BUT THERE'S A PARSER LISTED AS 710, AND IT'S DESCRIBED IN

9     COLUMN 6, LINE 58-ISH, YOU KNOW, THAT IT'S "A PARSER USING

10    NATURAL LANGUAGE PROCESSING TO TOKENIZE THE TEXT INTO

11    SIGNIFICANT OBJECTS, SUCH AS WORDS AND PHRASES."

12         DO YOU SEE THAT?

13             THE COURT:  I SEE.

14             MR. SETH:  SO THE POINT IS NOBODY CLAIMS THAT SENTIUS

15     INVENTED A PARSER.  PARSERS WERE KNOWN AND IT WAS A MODULE THAT

16     WAS USED TO START IDENTIFYING THE WORDS.

17         NOW, WITH REGARD TO THE LINKING RULES, THERE ARE A NUMBER

18    OF CITATIONS THAT I WANT TO GO THROUGH, BUT I THINK AN

19    OVERARCHING POINT I WANT TO MAKE ARE THAT THE SPECIFICATION IS

20    CLEAR THAT IT'S UP TO THE PUBLISHER WHAT LINKING RULES THAT

21    THEY WANT TO APPLY.

22         AND, AGAIN, THE CLAIMS THAT ARE AT ISSUE IN THIS CASE ARE

23    OPEN-ENDED AS TO HOW YOU DO THE LINKING.  IT IS IMPORTANT THAT

24    YOU DO LINKING, BUT HOW YOU DO IT IS NOT, NOT RESTRICTED.

25         THE POINT OF THESE CLAIMS IS THAT YOU'RE DOING THE LINKING
```

```
 1      WITH THE SYNDICATED DATA OBJECTS.  THAT'S THE POINT OF THESE

 2      CLAIMS.

 3           AND I DON'T KNOW WHAT THE OBJECTION IS THAT MR. LAMBERSON

 4      HAS THAT THERE'S ANOTHER PORTION OF THE INVENTION THAT'S --

 5      THAT WE'RE NOT ASSERTING IN THIS CASE ON HOW THOSE, THOSE

 6      DATABASES ARE GENERATED, BUT THAT'S JUST SIMPLY NOT AT ISSUE IN

 7      THIS CASE.

 8           AND THE CLAIMS THAT WE HAVE ARE VERY CLEARLY DIRECTED TO

 9      THE USE OF THE SYNDICATED DATA OBJECTS.

10           SO I JUST WANTED TO CLARIFY THAT.

11           NOW, WOULD YOU LIKE SOME WALK THROUGH FOR SOME OF THE

12      LINKING RULES THAT ARE GIVEN BY WAY OF EXAMPLE?

13               THE COURT:  IF YOU COULD GIVE ME AN EXAMPLE, THAT

14      WOULD HELP.

15               MR. SETH:  SURE.

16               THE COURT:  I WOULD APPRECIATE THAT.

17               MR. SETH:  CAN WE GO TO COLUMN 2, LINE 15, AND BLOW

18      THAT UP?

19               THE COURT:  I'M SORRY.  WHAT LINE -- OR WHAT COLUMN

20      ARE WE IN?

21               MR. SETH:  THIS IS COLUMN 2 NOW OF THE '985 PATENT.

22      AND WE'RE AT -- HERE WE'RE SETTING UP -- AND I APOLOGIZE, THESE

23      ARE NOT PRE-PREPARED SLIDES SO I DON'T HAVE THEM HIGHLIGHTED,

24      BUT THE INFORMATION FROM THE DATABASE NEEDED TO CREATE LINKS

25      AND THE RULES FOR LINKING TO THE DATABASE CONTENT ARE
```

```
 1        SYNDICATED TO THE REMOTE SERVERS.

 2             WHAT WE'RE SEEING HERE, AGAIN, IS THAT WHATEVER RULES THE

 3        PUBLISHER WANTS TO APPLY ARE PART OF THE CONTENT THAT'S

 4        SYNDICATED TO THE REMOTE PROCESSOR FOR USE --

 5             THE COURT:  OKAY.

 6             MR. SETH:  -- BY THE REMOTE PROCESSOR, AND IT'S

 7        OPEN-ENDED AS TO WHAT THOSE RULES COULD BE.  I'M GOING TO GIVE

 8        YOU SOME EXAMPLES.

 9             AND, AGAIN, WHAT WE'RE DOING HERE IS WE'RE SYNDICATING

10        THESE RULES ALONG WITH THE EXTERNAL SOURCE CONTENT SO THAT WE

11        DON'T HAVE TO HAVE A CONNECTION TO THE CENTRAL DATABASE WHEN

12        WE'RE ACTUALLY PROCESSING THE LINKS.

13             OKAY.  CAN WE GO TO 2:40?  THAT'S 975, COLUMN 2, LINE 40.

14             AND HERE AGAIN I'M JUST EMPHASIZING THAT THE PUBLISHER IS

15        SELECTING THE RULES THAT THEY WANT TO APPLY BECAUSE OBVIOUSLY

16        THERE ARE A NUMBER OF APPLICATIONS YOU MIGHT WANT TO APPLY

17        VARIOUS RULES TO IN TERMS OF WHEN YOU IDENTIFY A WORD OF

18        INTEREST, WHAT YOU WANT TO LINK IT TO.

19             ALL RIGHT.  6:62.  THAT'S '985, COLUMN 6, LINE 62.  HERE

20        THERE ARE -- SOME EXAMPLE RULES ARE WHETHER OR NOT THE TERM

21        CURRENTLY EXISTS IN THE DATABASE, WHETHER THERE'S AN UNUSUALLY

22        HIGH FREQUENCY OF USE, THE TYPE OF TERMS, WHETHER THE TERM IS

23        USED IN AN UNUSUAL MANNER, AND HERE ARE RULES WHERE WE'RE

24        IDENTIFYING TERMS OF INTEREST.

25             CAN WE GO TO 9:37?  THAT'S '985, COLUMN 9, LINE 37.
```

```
 1            THE COURT:  AND SO, MR. SETH, WOULD YOU AGREE THAT IF

 2     I WERE TO SAY 112(6) OR 112(F) DID APPLY, I WOULD BE OBLIGATED

 3     TO LIMIT THE SUPPORTING STRUCTURE TO THE EXAMPLES THAT YOU'RE

 4     WALKING ME THROUGH HERE?  OR --

 5            MR. SETH:  I THINK --

 6            THE COURT:  -- DO YOU HAVE A DIFFERENT VIEW?

 7            MR. SETH:  NO, I THINK I HAVE A DIFFERENT VIEW, AND

 8     THAT IS THAT -- WELL, FIRST, I'M SHOWING THAT THESE ARE BY WAY

 9     OF HOW OPEN-ENDED THE SPECIFICATION IS.

10            THE COURT:  I UNDERSTAND.

11            MR. SETH:  BUT WHEN WE GO TO THE ACTUAL MODULES THAT

12     ARE PERFORMING AS THE TERM "MODULE" AND "PROCESSING MODULE,"

13     WE'LL SEE THAT THERE ARE STEPS THAT ARE, AGAIN, GIVEN.  WE'VE

14     RECITED THOSE STEPS, AND I WILL SHOW YOU A SLIDE REGARDING WHAT

15     THOSE STEPS ARE WITH REGARD TO EACH OF THOSE MODULES.

16        IF I CAN JUST FINISH THIS, AND I'LL GO RIGHT TO THAT

17     SLIDE.

18            THE COURT:  OF COURSE.

19            MR. SETH:  I'M SORRY.  ARE WE AT 9:37?  YEAH.  THIS

20     IS JUST, AGAIN, RE-EMPHASIZING THAT THE TEMPLATE OBJECT, AS

21     WELL AS THE LEXICON OBJECTS, ARE USED IN APPLYING THE RULES.

22        AND THEN AT 10:20, THIS IS BY WAY OF HAVING POSSESSION OF

23     THE INVENTION.

24        OH, THIS IS WHERE WE'RE ACTUALLY CREATING THE TEMPLATES.

25     ONCE AGAIN, IT'S UP TO THE PUBLISHER AS TO WHAT TEMPLATES
```

1    THEY'RE GOING TO CREATE AND WHAT RULES THEY WILL DEFINE THAT

2    THEY'LL THEN SYNDICATE OUT FOR THE USE.

3         OKAY.  SO IF WE CAN -- I'LL TAKE CONTROL BACK AT SLIDE 50.

4         AND SOMETIMES THE WHOLE ALGORITHM THING IS WIELDED AS A

5    WEAPON THAT -- ALMOST TO THE POINT WHERE YOU HAVE TO -- ALMOST

6    IMPLYING THAT YOU HAVE TO PROVIDE SOURCE CODE OR SOMETHING OF

7    THAT NATURE, OF THAT SPECIFICITY, AND YOU DON'T.  AN ALGORITHM

8    IS SIMPLY A SERIES OF STEPS THAT YOU'RE DOING TO TEACH ONE OF

9    ORDINARY SKILL IN THE ART WHO WILL THEN TAKE THAT TEACHING AND

10   IMPLEMENT IT IN THE MANNER THAT THEY WANT.

11        AND SO WE HAVE A NUMBER OF CASES THAT SUPPORT THE

12   PROPOSITION THAT, YOU KNOW, YOU'RE NOT TALKING ABOUT SOURCE

13   CODE HERE.

14        BUT WHAT'S IMPORTANT IS GOING BACK TO THE TEACHINGS OF

15   THIS PARTICULAR PATENT WITH REGARD TO THESE MODULES, AND WE

16   THINK THAT IF YOU, IF YOU -- GOING BACK TO THESE SPECIFIC

17   MODULES, WE'VE RECITED THE PORTIONS OF THE SPECIFICATION THAT

18   SHOW THAT -- I'M SORRY.  I'VE LOST MY PLACE.

19        THIS IS THE PARSING STEP.  THIS IS THE PARSING STEP, AND

20   WE SEE THREE, THREE SORT OF SUBSTEPS, IF YOU WILL, TO THE

21   PARSING STEP:  THAT WE'RE SELECTING THE RULES THAT WE'RE GOING

22   TO USE TO FIND TERMS OF INTEREST, THAT'S WHAT WE'RE TEACHING;

23   AND THEN WE'RE GOING THROUGH THE DOCUMENT AND COMPARING THE

24   WORDS THAT WE HAVE PARSED TO THE RULES TO FIGURE OUT THE ONES

25   OF INTEREST; AND THEN, IF THERE'S A WORD OR PHRASE THAT MATCHES

1     THE RULE, THEN IT'S TAGGED FOR LINKING.

2          NOW WE'RE GOING TO HAVE TO -- NOW WE'VE IDENTIFIED IT AS A

3     TERM OF INTEREST AND NOW WE MUST LINK IT TO SOMETHING.

4          AND WITH REGARD TO THE IDENTIFYING STEP, WE NOW HAVE A

5     TERM OF INTEREST AND WE'RE GOING TO LOOK UP THAT TERM IN THE

6     LEXICON OBJECT AND THEN WE'RE GOING TO FIND THE CONTENT IN THE

7     LEXICON OBJECT THAT'S BEEN SYNDICATED TO US THAT'S ASSOCIATED

8     WITH THAT TERM.

9          SO IT'S PRETTY STRAIGHTFORWARD.

10          THE COURT:  ALL RIGHT.  THANK YOU.

11          ALL RIGHT.  JUST TO REVIEW THE BIDDING BEFORE WE TURN TO

12    "ORDER OF STEPS," MR. LAMBERSON, I WANT TO MAKE SURE I

13    UNDERSTAND WHAT IS LEFT.  IS THIS THE -- IS THIS REALLY THE

14    LAST TERM IN DISPUTE?

15          MR. TRIBBLE:  IT'S NOT EVEN A TERM.  IT'S KIND OF A

16    CONCEPT.

17          THE COURT:  AN ISSUE, YEAH, FAIR ENOUGH.  OKAY.

18          MR. TRIBBLE:  AND THE -- YOU KNOW, WE -- WE DROPPED

19    THE PATENT THAT HAD THE RECEIVING CLAIMS BECAUSE THEY -- THOSE

20    WERE INDUCEMENT CLAIMS, SO, YOU KNOW, THERE WERE OTHER ISSUES

21    THERE.

22          AND SO I THINK THIS IS ALL WE HAVE LEFT.

23          ON MEANS-PLUS-FUNCTION, OF COURSE -- IF THE COURT WERE TO

24    FIND THAT ANY OF THOSE TERMS ARE MEANS-PLUS-FUNCTION CLAIMS, OF

25    COURSE OUR VIEW IS THAT THEY SHOULD BE CONSTRUED ONLY TO

1    REQUIRE THE MINIMUM AMOUNT OF STRUCTURE NECESSARY TO PERFORM

2    THE FUNCTION.

3              THE COURT:  RIGHT.

4              MR. TRIBBLE:  AND IT SHOULD REQUIRE THAT OR THEIR

5    STRUCTURAL EQUIVALENCE.

6              THE COURT:  UNDERSTOOD.  OKAY.  SO LET'S TALK ABOUT

7    "ORDER."  THIS IS AN INTERESTING ONE, TOO.

8              MR. TRIBBLE:  YOU KNOW, ALMOST THEY COULD GO FIRST.

9    I MEAN, IT'S REALLY THEIR ISSUE, BUT I THINK I'LL GO AHEAD AND

10   PUT OUR ARGUMENT OUT THERE AND THEN WE'LL SEE WHAT THEY'VE GOT.

11             AND SO WE'VE PUT THE STEPS OF CLAIM 8 IN ORDER.  I THINK

12   THEY DID THE SAME THING IN THEIR BRIEF.  I THINK OUR -- I DON'T

13   REMEMBER IF OUR NUMBERS MATCH UP EXACTLY.  I THINK THEY SHOULD.

14             AND SO I THINK THEIR CONTENTION IS THAT THE CLAIMS SHOULD

15   BE CONSTRUED TO REQUIRE ALL THE STEPS IN THIS METHOD CLAIM BE

16   PERFORMED IN ORDER, AND VERY SIMPLY, OUR VIEW OF IT IS AS TO

17   SOME OF THE CLAIMS, CLEARLY SOME STEPS HAVE TO BE PERFORMED

18   BEFORE OTHERS BECAUSE YOU CAN'T, YOU CAN'T USE THE LOOK-UP

19   TABLE UNTIL YOU CREATE THE LOOK-UP TABLE.

20             THE COURT:  YOU CAN'T CUT BEFORE YOU RECORD, FOR

21   EXAMPLE.

22             MR. TRIBBLE:  I'LL GIVE THEM THAT.

23             AS TO THE OTHER CLAIMS, SOME OF THE OTHER CLAIMS CLEARLY

24   DON'T HAVE ANY SUCH REQUIREMENT AND IT'S NOT LOGICALLY

25   NECESSARY OR IMPLIED, AND SO GENERALLY THERE SHOULDN'T BE ANY

1      LIMITATION ON THE ORDER OF STEPS.  AND IN PARTICULAR, THERE ARE

2      TWO MAIN SECTIONS, ONE WHICH IS ABOUT CUTTING THE DOCUMENT AND

3      CREATING ALL THE LINKS, AND THE OTHER IS ABOUT THE DISPLAY

4      IMAGE.

5           AND IN FACT, IF WE CAN JUST REMIND YOU OF THE PREFERRED

6      EMBODIMENT, IF WE CAN GO BACK TO THAT FIGURE 1, WHICH I

7      THINK -- WAS IT SLIDE 8? -- OKAY.

8           THE COURT:  THERE WE GO.

9           MR. TRIBBLE:  SO HERE'S THE PREFERRED EMBODIMENT AND,

10     YOU KNOW, THE DISPLAY IMAGE THAT'S BEING DISPLAYED TO THE USER

11     AND THEN THEY CLICK ON THINGS AND ALL THAT IS DONE DOWN HERE,

12     OKAY?

13          THE CUTTING IS DONE UP HERE, THE LINKING IS DONE OVER

14     HERE.

15          I MEAN, THERE'S NO REASON, YOU KNOW, IN THE PREFERRED

16     EMBODIMENT, ALL THOSE STEPS IN CLAIM 8 -- LET'S GO BACK TO 54.

17     IN THE PREFERRED EMBODIMENT, IT DESCRIBES THESE STEPS AS BEING

18     PERFORMED IN THIS ORDER, BUT IT'S JUST THE PREFERRED

19     EMBODIMENT.

20          AND, YOU KNOW, WE CITE THE CASES THAT UNLESS THE STEPS OF

21     A METHOD ACTUALLY RECITE IN A WORD, THEY'RE NOT ORDINARILY

22     REQUIRED TO BE CONSTRUED.

23          AND IT DOES SAY YOU CAN LOOK AT THE LOGICAL IMPLICATIONS

24     OF THE WORDS IN THE CLAIMS AND SOMETIMES, YOU KNOW, THAT DOES

25     IMPLY AN ORDER.

1       IN MY OWN VIEW, I'M NOT EVEN SURE IT'S SOMETHING YOU NEED

2   TO INSTRUCT THE JURY ON.

3       I THINK, UNLESS AT TRIAL SOMEONE IS TRYING TO ARGUE

4   SOMETHING TRICKY AND IF IT REFERS TO THE TABLE, OKAY, AND

5   THEY'RE TRYING TO, YOU KNOW -- I THINK YOU KNOW WHAT I'M

6   SAYING.

7       IN OTHER WORDS, IT DOESN'T SEEM LIKE ANYTHING THAT WOULD

8   BE NECESSARY FOR A CLAIM CONSTRUCTION OPINION BY THE COURT OR

9   SOMETHING, BUT WE'RE AT THE COURT'S PLEASURE AND I'M NOT ABOUT

10  TO TELL YOU WHAT TO DO.

11      WE MAKE THIS STATEMENT, THESE STATEMENTS IN OUR BRIEF, BUT

12  LET ME EXPLAIN IT.

13      1 THROUGH -- STEPS 1 THROUGH 5, THIS IS THE CUTTING AND

14  CREATING OF THE LINKS AND EVERYTHING, CREATING THE LINK TABLE.

15      STEPS 6 THROUGH 9, THIS IS DISPLAYING, AND THEN A DISCRETE

16  PORTION OF THE SOURCE MATERIAL IMAGE IS SELECTED, IT DETERMINES

17  THE DISPLAY ADDRESS AND CONVERTS THE DISPLAY ADDRESS INTO AN

18  OFFSET VALUE.  THOSE ARE INDEPENDENT FROM THE CREATING, THE

19  CUTTING OF A DOCUMENT AND EVERYTHING.

20      IN OTHER WORDS, YOU COULD -- IN ANOTHER EMBODIMENT, YOU

21  COULD CREATE A SOURCE MATERIAL IMAGE DIRECTLY FROM THE ORIGINAL

22  SOURCE MATERIAL.

23          THE COURT:  WITHOUT HAVING TO DO ANY CUTTING AT ALL?

24          MR. TRIBBLE:  EXACTLY.

25          THE COURT:  RIGHT.

```
 1            MR. TRIBBLE:  AND SO THAT'S OUR REAL POINT.

 2         AND THEN IN THE BRIEF WE POINT OUT THAT, IN FACT, THERE'S

 3    A CLAIM 11, WHICH IS DEPENDENT OFF OF 10, WHICH IS DEPENDENT

 4    OFF OF 9, AND I DIDN'T PUT ALL THAT UP THERE, BUT I THINK JUST

 5    PUTTING UP 11 MAKES THE POINT THAT IT FURTHER COMPRISES THE

 6    STEPS OF COMPILING THE SOURCE MATERIAL IMAGES FROM AT LEAST THE

 7    PLURALITY OF DISCRETE PIECES AND THEN INDEXING THAT.

 8         I MEAN, IT POINTS OUT THAT THE -- IN THAT CLAIM, THE

 9    DISPLAY WOULD HAVE TO COME AFTER THE CUTTING PROCESS, BUT THEY

10    HAD TO CALL THAT OUT AS A DEPENDENT CLAIM --

11            THE COURT:  UM-HUM.

12            MR. TRIBBLE:  -- BECAUSE IT'S NOT REQUIRED IN THE

13    MORE GENERAL INDEPENDENT CLAIMS.

14            THE COURT:  ALL RIGHT.

15            MR. TRIBBLE:  AND I THINK THAT'S IT.

16            THE COURT:  THANK YOU, MR. TRIBBLE.

17         MR. LAMBERSON, YOUR RESPONSE?

18            MR. TRIBBLE:  OH, I SHOULD MAKE THE POINT, YOUR

19    HONOR, THAT BY "INDEPENDENT OF ORDER," WE MEAN IT EITHER COULD

20    COME BEFORE THE OTHER OR THEY COULD, THE STEPS COULD BE

21    INTERLEAVED.

22            THE COURT:  I SEE.  OKAY.  THANK YOU.

23         MR. LAMBERSON, GO AHEAD.

24            MR. LAMBERSON:  YOUR HONOR, I THINK WE JUST START BY

25    POINTING OUT THAT THE COURT IN FLYSWAT DID HOLD THAT THE CLAIMS
```

1    HAD TO BE PERFORMED IN ORDER.  THERE WAS NO APPEAL OF THAT.

2         AND WE DO HAVE TO BE AWARE HERE, YOUR HONOR -- WE

3    MENTIONED IT IN OUR TUTORIAL, AND I DID WANT TO CLARIFY, OUR

4    STATEMENT OF LAW WAS CORRECT FOR THIS CASE, BUT I DIDN'T WANT

5    TO LEAVE A WRONG IMPRESSION.

6         YOU DO HAVE A TWO YEAR WINDOW TO BROADEN YOUR CLAIMS

7    THROUGH RE-ISSUE.  AFTER THAT YOU DO NOT.  THESE CLAIMS WERE

8    PROSECUTED AFTER THAT WINDOW, SO IF THEY BROADENED THEIR PATENT

9    IN ANY WAY FROM WHAT THE '720 -- OR SORRY -- '730 CLAIMED,

10   INVALID.  RE-ISSUED PATENTS ARE INVALID.

11        SO WE HAVE TO BE AWARE OF WHAT THE COURT IN FLYSWAT SAID

12   AND DID AND WE HAVE TO BE AWARE OF WHETHER THEY CHANGED

13   ANYTHING TO BROADEN IT DURING THE PROSECUTION.  SO THAT'S A

14   FOUNDATIONAL POINT.

15        I'M NOT GOING TO WALK THROUGH ALL THE STEPS.  I THINK WE

16   CAN CUT TO THE CHASE HERE.  THERE'S LOTS OF THINGS THAT SENTIUS

17   SEEMS TO AGREE DO HAVE TO BE PERFORMED IN ORDER.

18        HERE'S THE ISSUE, YOUR HONOR:  THE ISSUE IS SMART TAGS OR

19   ACTIONS.  THERE IS NO -- WE TALKED ABOUT THE TABLE FOR SPELL

20   CHECK AND GRAMMAR CHECK.  THERE'S NO TABLE FOR ACTIONS.

21   EVERYTHING HAPPENS AFTER YOU CLICK.

22        AND SO THE DISPUTE BETWEEN THE PARTIES REALLY IS, DO THE

23   PATENTS REQUIRE BUILDING THE TABLE FIRST, GETTING YOUR LINKS

24   ALL SET UP, AND THEN DISPLAYING THE IMAGE SO SOMEBODY CAN CLICK

25   ON IT?

```
 1                THE COURT:  UM-HUM.
 2                MR. LAMBERSON:  OR CAN YOU DISPLAY IT, SOMEBODY
 3      CLICKS, AND THEN YOU DO A LOT OF WORK TO BUILD THE LINKS?
 4           THE PATENT NEVER DISCLOSED ANYTHING ABOUT HOW THAT LATER
 5      IMPLEMENTATION COULD OR WOULD BE DONE.
 6           LET'S REMEMBER THAT THE PATENTS DISCLOSE A PROCESS OF
 7      MANUALLY CUTTING THE SOURCE DOCUMENT.  SO HOW, HOW WOULD IT BE
 8      THE CASE THAT YOU'RE GOING TO SHOW THE DOCUMENT DOWN HERE,
 9      SOMEBODY CLICKS SOMEWHERE WHERE THERE IS NO LINK, AND NOW
10      YOU'RE GOING TO ADD ONE?  HOW WOULD THAT WORK IN THE PATENTED
11      SYSTEM?
12           THERE'S NO DISCLOSURE OF THAT.  I DON'T EVEN KNOW HOW TO
13      EXPLAIN IT.
14           I MEAN, THE WAY THE PATENT WORKS, THE CONSISTENT TEACHING
15      IN THIS PATENT IS YOU START UP HERE AND THAT'S HOW WE ALL
16      DESCRIBE IT THROUGHOUT THE DAY.  YOU START WITH YOUR SOURCE
17      FILE, YOU RUN IT THROUGH YOUR VISUAL EDITOR, YOU CREATE, YOU
18      PICK OUT YOUR WORDS, YOU ADD YOUR LINKS, AND THEN YOU PUBLISH
19      IT AND YOU MAKE IT SO THAT SOMEBODY CAN THEN LOOK AT IT.  AND
20      THEN -- YOUR LINKS ARE ALREADY IN PLACE AND THEN THEY CAN CLICK
21      ON THEM.
22           IT JUST DOESN'T MAKE ANY SENSE FOR THESE PATENTS TO SAY,
23      "WELL, YOU COULD SHOW IT FIRST AND HAVE THEM CLICK AND THEN
24      WE'LL JUST ADD IN THE LINKS LATER."  THE PATENTS DON'T TEACH
25      YOU HOW TO DO THAT.  THEY DON'T -- I MEAN, THAT'S NOTHING
```

1    THAT'S DISCLOSED.

2             THE COURT:  SO IS THAT REALLY THE ISSUE, WHERE THE

3    LINKING MUST TAKE PLACE?  WHAT LINKING --

4             MR. LAMBERSON:  THAT'S RIGHT.  AND THAT'S REALLY --

5    WHEN YOU LOOK AT THE CLAIM LANGUAGE, AND SENTIUS' SLIDE MAY

6    BE --

7        CAN YOU PUT YOUR SLIDE BACK UP?

8             MR. TRIBBLE:  WHICH ONE?

9             MR. LAMBERSON:  THE ONE WITH THE CLAIMS AND THE

10   NUMBERS.

11            MR. TRIBBLE:  YEAH, 54.

12            MR. LAMBERSON:  THEIRS IS PROBABLY BETTER THAN MINE.

13       THESE STEPS UP HERE, 1 THROUGH 5, ARE ALL, WE ALL AGREE

14   ARE ABOUT BUILDING THIS LOOK-UP TABLE.

15       AND THEN YOU DISPLAY IT, AND THEN YOU CAN DO YOUR

16   SELECTION AND REFER BACK TO THAT LOOK-UP TABLE.

17       AND SO IT'S OUR SIMPLE POINT THAT THE PATENTS DON'T TEACH

18   YOU HOW TO BASICALLY START MIDWAY, START HERE AND THEN AFTER

19   THE USER HAS CLICKED, THEN YOU ADD THE LINKS.  THE PATENTS

20   DON'T TEACH YOU HOW TO DO THAT.

21       IN FACT, THE PATENTS -- YOU COULDN'T DO IT WITH WHAT'S IN

22   THE PATENTS BECAUSE THEY'RE USING A VISUAL -- YOU'D NEED TO

23   SOMEHOW TURN OVER CONTROL OF THE DOCUMENT TO SOMEBODY ELSE WHO

24   WOULD THEN ADD THE LINK, I SUPPOSE, DO THE PARSING AND ADD THE

25   LINKS BY HAND, AND THEN YOU NEED TO REPUBLISH IT, THE USER I

```
 1          GUESS WOULD HAVE TO CLICK AGAIN.

 2               I DON'T KNOW WHETHER IT COULD BE DONE.  MAYBE IT COULD.

 3          BUT IT'S CERTAINLY NOT WHAT THE PATENTS TEACH.

 4               AND, YOU KNOW, THIS IS THE MOST CLEAR, I THINK, WHEN YOU

 5          JUST -- COLUMN 7 OF THE PATENT REALLY WALKS YOU THROUGH THIS

 6          PROCESS.  YOU START WITH THE CUTTING; THE TEXT IS THEN DIVIDED

 7          INTO WORDS; THEN IT'S LINKED AFTER THE CUTTING; AND THEN AFTER

 8          LINKING IT GETS COMPILED, AND THAT'S WHEN YOU ACTUALLY CREATE

 9          AN IMAGE OF THE TEXT THAT THE USER SEES AND THAT'S WHAT THEY

10          CAN CLICK.

11               THEY'RE NOT CLICKING ON THE SOURCE -- BY THIS POINT IN THE

12          PATENT, THE SOURCE DOCUMENT NO LONGER EXISTS.  IT'S GONE.  IT'S

13          MAYBE ON DISK SOMEWHERE, BUT YOU'VE ALREADY CUT IT, YOU'VE

14          TURNED INTO A DATABASE, YOU'VE ADDED LINKS, AND THEN YOU'VE

15          COMPILED IT, AND THAT'S WHAT THE PATENT TEACHES.

16               AND THE OTHER THING THAT I THINK -- IT'S NOT REALLY FULLY

17          BROUGHT OUT IN THE BRIEFING, BUT IT'S WORTH KEEPING IN MIND,

18          AND THIS GOES BACK TO THE BROADENING RE-ISSUE POINT, THESE

19          CLAIMS ALL ORIGINALLY TALKED ABOUT DISPLAYING AN IMAGE OF THE

20          SOURCE MATERIAL.

21               THE CLAIMS THAT WERE AT ISSUE IN FLYSWAT TALKED ABOUT

22          DISPLAYING IMAGES OF THE SOURCE MATERIAL, AND THE PATENT

23          THERE -- THE COURT THERE IN FLYSWAT SAID THAT IS, THAT IS THIS

24          COMPILATION PROCESS.  YOU'RE BASICALLY CREATING A VIEWABLE

25          IMAGE OF THE SOURCE THAT HAS YOUR LINKS EMBEDDED.
```

1    AND THAT'S WHAT THE '720 PATENT WAS ALL ABOUT.  IT'S WHAT

2    THE DISCLOSURE IN THESE PATENTS ARE ALL ABOUT.  YOU'RE NOT

3    DISPLAYING TO THE USER THE ORIGINAL SOURCE BECAUSE THAT HAS NO

4    LINKS.  IT'S NOT IN YOUR DATABASE.  YOU'RE DISPLAYING THIS

5    VIEWABLE COMPILED VERSION OF IT.

6    AND WHAT SENTIUS DID IN PROSECUTION WAS TO TAKE OUT THE

7    WORDS "SOURCE MATERIAL IMAGE."  THEY JUST CHANGED IT TO "SOURCE

8    MATERIAL," "DISPLAY THE SOURCE MATERIAL."

9    YOU KNOW, IF WE LOOK AT CLAIM 8, THE ACTUAL RE-ISSUED

10   PATENT WHICH SHOWS THE ADDITIONS AND DELETIONS, IT USED TO BE

11   UP FRONT, "SOURCE MATERIAL IMAGE."  THEY ACTUALLY CUT THE WORD

12   "IMAGE."

13   SO TO THE EXTENT WE'RE NOW GOING TO SAY WHAT THIS CLAIM IS

14   REALLY TALKING ABOUT IS NO LONGER DISPLAYING THE COMPILED IMAGE

15   OF THE SOURCE MATERIAL, BUT IT'S JUST DISPLAYING THE ORIGINAL

16   SOURCE MATERIAL AND THEN YOU CLICK ON THAT, THEN, YOUR HONOR, I

17   THINK WE DO HAVE A BROADENING IN THE RE-ISSUE AND I THINK WE

18   HAVE TO SAY THAT THIS CLAIM, AND ANY OTHER CLAIM THAT WE'RE

19   GOING TO READ THAT WAY, IS INVALID.

20   I MEAN, WE CAN DO SEPARATE BRIEFING ON IT, BUT I THINK

21   THOSE ARE THE TWO CHOICES.  EITHER, EITHER THE SPEC MEANS WHAT

22   IT SAYS AND YOU'RE DISPLAYING A VERSION OF THE DOCUMENT WITH

23   THE LINKS ALREADY INSERTED, OR WE SAY THEY'VE CHANGED THEIR

24   CLAIMS AND THAT'S NO LONGER REQUIRED AND THEN WE HAVE A

25   BROADENING RE-ISSUED.  I THINK THOSE ARE THE ONLY TWO OPTIONS

```
 1    HERE.

 2            THE COURT:  ALL RIGHT.  I APPRECIATE THE ARGUMENT.

 3    THANK YOU.

 4            MR. TRIBBLE:  CAN YOU LEAVE THAT UP?

 5            MR. LAMBERSON:  YEAH, SURE.  THERE MIGHT BE WORK

 6    PRODUCT ON OTHER PAGES.

 7            MR. TRIBBLE:  I'M NOT GOING TO CHANGE THE PAGE.

 8        IT'S NOT A BROADENING RE-ISSUE, YOUR HONOR.  THE PARTS IN

 9    ITALICS ARE ADDED.  WE ADDED THE BIG LINKING STEP.  OKAY?  IT'S

10    NARROWER.  IT'S A DIFFERENT CLAIM.

11        WHEN JUDGE ARMSTRONG MADE HER RULING IN THE FLYSWAT CASE,

12    SHE MADE HER RULING BECAUSE THE OLD CLAIM, THE '720 CLAIM, HAD

13    SOME WEIRD LANGUAGE WHERE THERE WAS AN ANTECEDENT REFERENCE,

14    OKAY, AND SO IT MADE THE CLAIM KIND OF NONSENSE, AND THAT WAS

15    FIXED IN THE RE-ISSUE.  IT'S NOT A BROADENING RE-ISSUE.

16        AGAIN TODAY, I KEEP GETTING THESE ARGUMENTS OF YOU HAVE TO

17    CONSTRUE IT THIS WAY BECAUSE OTHERWISE IT'LL BE INVALID.

18        LET'S CONSTRUE THE CLAIM THE WAY IT SHOULD BE CONSTRUED

19    AND WE'LL WORK ON DECIDING INVALIDITY ANOTHER DAY WHEN WE HAVE

20    A FAIR CHANCE TO FIGHT THE ARGUMENT.

21        OKAY.  LET'S GO TO 54.

22        SO JUST WALKING THROUGH IT -- LET'S GO TO 62.  AND THIS

23    APPLIES TO EVERYTHING WE'VE GONE THROUGH TODAY, OKAY?  I KNOW

24    YOU KNOW THE LAW, YOU KNOW IT A LOT BETTER THAN I DO, BUT

25    JUST -- I THINK THE KEY POINTS APPLICABLE TODAY, OKAY, IN
```

1    PHILLIPS, THEY REMIND US THAT IT IS THE CLAIMS OF THE PATENT

2    THAT DEFINE THE INVENTION, AND THE CLAIMS ARE OF PRIMARY

3    IMPORTANCE.

4         AND, OF COURSE, IT'S IMPROPER TO READ LIMITATIONS FROM THE

5    PREFERRED EMBODIMENT, EVEN IF IT'S THE ONLY EMBODIMENT, AND

6    THIS CITES THE AMERICAN MEDICAL SYSTEMS CASE.

7         BUT IN PHILLIPS, REMEMBER WHAT THE ISSUE WAS, OKAY?  I

8    DON'T KNOW IF YOU'VE LOOKED AT THESE DIAGRAMS LATELY.

9              THE COURT:  IT'S BEEN SOME TIME, MR. TRIBBLE, BUT I

10   DO RECALL THEM, YEAH.

11             MR. TRIBBLE:  OKAY.  IN THE DISTRICT COURT CASE, THE

12   CLAIMS USED THE TERM "BAFFLES," THESE WERE THESE BAFFLES

13   THAT -- IT SAID THAT ONE PURPOSE OF THE INVENTION WAS TO

14   MINIMIZE RICOCHETS.

15        AND SO THE BAFFLES THAT WERE DISCLOSED, THEY ONLY HAD ONE

16   EMBODIMENT -- JUST LIKE THE PATENT IN THIS CASE -- THERE WAS

17   ONLY ONE EMBODIMENT AND IT -- IT NEVER DISCLOSED BAFFLES THAT

18   WERE PERPENDICULAR BECAUSE THAT WOULDN'T MINIMIZE RICOCHETS.

19   IT WOULDN'T SERVE THAT STATED PURPOSE, ONE OF THE PURPOSES OF

20   THE INVENTION.

21        AND SO THE COURT CONSTRUED THE TERM "BAFFLES" AS ANGLES

22   OTHER THAN PERPENDICULAR, OTHER THAN 90 PERCENT, 90 DEGREES, IN

23   PART BECAUSE THE SOLE EMBODIMENT SHOWED IT OTHERWISE, AND IT

24   WAS A STATED PURPOSE THAT WOULDN'T BE SERVED BY 90 DEGREE

25   BAFFLES.

 1          THE FEDERAL CIRCUIT SAID -- THEY REVERSED.  BAFFLES IS NOT

 2     LIMITED TO THE PREFERRED EMBODIMENT.  IT'S NOT LIMITED TO

 3     ANGLES OTHER THAN 90 DEGREES.  DON'T READ THE PREFERRED

 4     EMBODIMENT OF THE CLAIMS, AND THEY SAID "WE'VE EXPRESSLY

 5     REJECTED THE CONTENTION THAT IF A PATENT DESCRIBES ONLY A

 6     SINGLE EMBODIMENT, THE CLAIMS OF THE PATENT MUST BE CONSTRUED

 7     AS BEING LIMITED TO THAT EMBODIMENT."

 8          AND SO LET'S GO BACK TO 54.

 9          AND SO THAT, THAT HAS BEEN A LOT OF THE ARGUMENT AGAINST

10     THE SENTIUS CONSTRUCTIONS TODAY ON ALL OF THE TERMS, AND

11     INCLUDING THIS ONE.

12          IN OTHER WORDS, THE WALK THROUGH -- THEY PUT UP FIGURE 1

13     AND THEY GO, WELL, THERE'S A VISUAL EDITOR WHERE THE CUTTING

14     COMES AND THEN THAT'S THE IMAGE THAT'S DISPLAYED, AND SO HOW --

15     THIS STEP MUST FOLLOW ALL OF THAT.

16          BUT THAT'S -- LET'S DO WHAT THE FEDERAL CIRCUIT SAYS.

17     LET'S START WITH THE CLAIM, AND THE CLAIM -- AND THERE'S THAT

18     CASE THAT SAYS THE CLAIM IS THE NAME OF THE GAME, OKAY -- BUT

19     STEP TWO -- RATS -- YOU KNOW, CUTTING.

20          IT DOESN'T SAY THERE'S A VISUAL EDITOR WITH SOMEBODY

21     SITTING AT IT MANUALLY CUTTING THIS.  IT JUST SAYS THERE'S

22     CUTTING.  OKAY?  A PERSON OF ORDINARY SKILL IS GOING TO KNOW

23     THAT IF YOU HAVE A TEXT FILE, YOU CAN CUT IT INTO A BUNCH OF

24     WORDS OR YOU CAN CUT IT INTO SENTENCES AND YOU CAN CUT IT ANY

25     NUMBER OF WAYS TO CREATE THESE PIECES.  SO IT HAS TO BE CUT.

1          AND THEN IT DOES ALL THE LINKING AND EVERYTHING.

2          BUT LOOK AT THE DISPLAY, DISPLAY AN IMAGE.  IT DOESN'T

3     SAY -- THE STATEMENT WAS MADE -- THIS WAS -- IT SAYS IT'S

4     DISPLAYING THE LINKED IMAGE OR SOMETHING.

5          THIS HAS NOTHING TO DO WITH LINKING.  IT'S JUST DISPLAYING

6     AN IMAGE OF THE SOURCE MATERIAL, YOU KNOW, AND THERE ARE ANY

7     NUMBER OF WAYS IT COULD GET THAT IMAGE.

8          AND THEN IT'S SELECTING A PIECE OF THAT, DETERMINING A

9     DISPLAY ADDRESS, AND THEN CONVERTING THE DISPLAY ADDRESS TO --

10    OF THE SELECTED DISCRETE PORTION TO AN OFFSET VALUE FROM THE

11    BEGINNING OF THE POSITION ADDRESS.

12         YOU KNOW, IN OTHER WORDS, YOU KNOW, THE ARGUMENT I HEARD

13    WAS TWO-FOLD.  THERE WAS THE BROADENING RE-ISSUE ARGUMENT

14    WHICH, YOU KNOW, I JUST THINK IT'S INCORRECT, BUT AT ANY RATE,

15    I DON'T THINK IT'S SOMETHING TO BE CONSIDERED TODAY.

16         I HEARD ANOTHER APPEAL TO YET ANOTHER PART OF THE ACCUSED

17    PRODUCTS, AND IT'S BLACK LETTER LAW THAT YOU DON'T CONSTRUE THE

18    CLAIMS WITH REGARD TO THE ACCUSED PRODUCTS.  YOU GIVE THE CLAIM

19    TERMS THEIR PLAIN AND ORDINARY MEANING.

20         YOU KNOW, THIS DOESN'T SAY THEY HAVE TO BE DONE IN ORDER.

21    THE CLAIMS, EXCEPT FOR CERTAIN CIRCUMSTANCES WHERE YOU CAN'T

22    USE A LINKED TABLE UNTIL YOU CREATE IT, WE AGREE WITH THAT.

23         BUT THE DISPLAY PART IS INDEPENDENT OF THE CUTTING AND

24    LINKING PART AND THOSE CAN BE INTERLEAVED OR DONE IN EITHER/OR

25    AND, YOU KNOW, OBVIOUSLY AT THE END OF THE DAY YOU'RE

1    DISPLAYING THE EXTERNAL REFERENCE MATERIAL.

2         BUT IT ALL STILL MAKES SENSE GIVING THE CLAIMS, YOU KNOW,

3    A PLAIN AND ORDINARY READING.

4         THE COURT:  ALL RIGHT.

5         MR. TRIBBLE:  THANK YOU.

6         THE COURT:  THANK YOU VERY MUCH.

7         ALL RIGHT.  I THINK I HAVE THE ARGUMENTS IN HAND.

8         LET ME GIVE YOU SOME GUIDANCE ON HOW I WOULD LIKE TO

9    PROCEED.

10        IT'S MY -- AS I MAY HAVE MENTIONED TO YOU AT OUR LAST

11   GATHERING, IT'S MY NORMAL PRACTICE TO ISSUE THE CONSTRUCTIONS

12   AT THE CONCLUSION OF THE HEARING.  IN THIS PARTICULAR INSTANCE,

13   YOU ALL HAVE RAISED ONE OR TWO ISSUES THAT GIVE ME SOME PAUSE,

14   PERHAPS A COUPLE MORE.

15        NEVERTHELESS, I DO WANT TO GET YOU YOUR CONSTRUCTIONS

16   WITHOUT ANY UNNECESSARY DELAY.

17        HERE'S HOW I WOULD PROPOSE TO PROCEED:  THERE'S BEEN GOOD

18   ARGUMENT.  I WANT TO GO BACK AND READ A COUPLE OF THE CASES YOU

19   CITE ME TO, YOU CITE TO ME, AND ALSO REVIEW A COUPLE OF

20   PORTIONS OF THE INTRINSIC RECORD.

21        I WILL GET YOU CONSTRUCTIONS VERY QUICKLY, HOPEFULLY IN A

22   MATTER OF A COUPLE DAYS AT THE OUTSET.

23        AND WHAT I WOULD PROPOSE IS THOSE CONSTRUCTIONS WILL NOT

24   HAVE MY FULL MULTI-PAGE ANALYSIS THAT WILL COME IN DUE COURSE,

25   BUT I THINK IT'S IMPORTANT TO KEEP YOUR CASE MOVING AND I DON'T

```
1    WANT MY DELAY TO BE A PROBLEM FOR YOU.  SO WHAT I WILL DO IS I

2    WILL ISSUE THE CONSTRUCTIONS -- A FULL OPINION WILL COME, YOU

3    DON'T HAVE TO WORRY ABOUT THAT -- BUT THAT WAY YOU'LL HAVE

4    SOMETHING TO WORK WITH, YOUR EXPERTS WILL BE HAPPY, AND MAYBE

5    YOU'LL EVEN HAVE A FURTHER CONVERSATION.

6         SO UNLESS THERE'S ANY OBJECTION, I'D LIKE TO PROCEED ON

7    THAT BASIS.

8         DOES THAT WORK FOR YOU?

9              MR. TRIBBLE:  NO OBJECTION, YOUR HONOR.  HAS ANYONE

10   EVER OBJECTED TO THAT?

11             THE COURT:  NOT YET, MR. TRIBBLE, BUT I'M WAITING.

12        (LAUGHTER.)

13             MR. LAMBERSON:  THAT'S FINE, YOUR HONOR.

14             THE COURT:  ALL RIGHT.  I DID ENJOY THE ARGUMENTS

15   TODAY.  I'LL GET MY ORDER OUT VERY QUICKLY, AND I WISH YOU ALL

16   SAFE TRAVELS HOME.

17             MR. TRIBBLE:  THANK YOU, YOUR HONOR.

18             MR. LAMBERSON:  THANK YOU, YOUR HONOR.

19        (THE PROCEEDINGS WERE CONCLUDED AT 1:14 P.M.)

20

21

22

23

24

25
```

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18          DATED:  FEBRUARY 21, 2014

19

20

21

22

23

24

25