1  Frank E. Scherkenbach (SBN 142549)
   scherkenbach@fr.com
2  Kurt L. Glitzenstein (*pro hac vice*)
   glitzenstein@fr.com
3  FISH & RICHARDSON P.C.
   One Marina Park Drive
4  Boston, MA 02210
   Telephone: (617) 542-5070
5  Facsimile: (617) 542-8906

6  Attorneys for Defendant
   MICROSOFT CORP.

7
   *Additional counsel listed on signature page*
8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       (SAN JOSE DIVISION)

12

13  SENTIUS INTERNATIONAL, LLC,          Case No.  5:13-cv-00825 PSG

14                  Plaintiff,           **DEFENDANT MICROSOFT**
    v.                                   **CORPORATION'S RESPONSIVE**
15                                       **CLAIM CONSTRUCTION BRIEF ON**
    MICROSOFT CORPORATION,               **"REFERENCE INFORMATION"**
16
                    Defendant.
17

18  AND RELATED COUNTERCLAIMS

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2           As Sentius itself wrote in its claim construction briefing in the *Flyswat*[1] case, the purported

3    invention in the reissue patents-in-suit is "an invention for electronically linking selected

4    components of material displayed on a computer with **external reference information**."  (Docket

5    No. 56-1 at 1).[2,3]  Sentius further explained that this external "reference information" is located

6    using a link, and is retrieved and shown to a user whenever a user clicks on a particular term in the

7    document.  (*See Id*. at 2 ("The system disclosed in Claim 8 consists of essentially two parts.  First,

8    the claim describes the creation of the linking mechanism between the displayed material (referred

9    to in the Patent as the 'source material') and the external **reference information**.  Second, Claim 8

10   explains the operation of the system when a user selects an element of the displayed material and

11   accesses the external **reference information** linked to that element."); *Id*. at 10 ("Thus, the patent

12   specification describes **reference information** as being available to 'each word in the electronic

13   text at a word by word level'"); *Id*. at 12 ("Beginning with subparagraph 8.5, the Patent discloses

14   the second functional element of the invention – the operation of the system when a user accesses

15   the source material image to obtain desired **reference information**.")).

16          It is not surprising that Sentius previously used the phrase "reference information" in a

17   manner entirely consistent with Microsoft's proposed construction, which is "the external content

18   that is pointed to by the link in the look-up table."  That is the only possible understanding of this

19   term in light of the relevant intrinsic and extrinsic evidence.  Indeed, Sentius cites no support in its

20   opening brief for its own proposed construction.  Sentius instead spends most of its briefing

21   attacking Microsoft's proposed construction as "nonsensical."  Yet if the phrase "reference

22   information" has only one possible construction, the Court must adopt that construction, whether or

23   not it renders the asserted claims indefinite.[4]  The Court cannot rewrite Sentius' claims, and it

24

---

25          [1] *Sentius Corp. v. Flyswat, Inc*., Case No. 00-CV-2233-SBA (N.D. Cal. June 22, 2000).
            [2]    While the *Flyswat* case dealt with the '720 patent, the '633 patent-in-suit (as a reissue of the
26   '720 patent) shares the same specification.
            [3]    All emphasis is added unless otherwise noted.
27          [4]    Also, as discussed below, if the Court concludes the disputed claim language supports two
     or more reasonable interpretations to one skilled in the relevant art, that language is indefinite.  *See*
28   *General Elec. Co. v. Wabash Appliance Corp*., 304 U.S. 364, 368-69 (1938) ("The inventor must
     'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may

MICROSOFT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
                                                                                                         ON "REFERENCE INFORMATION"
                                                                                                         Case No. 5:13-cv-00825 PSG

1    cannot ignore the available intrinsic and extrinsic evidence.  It also cannot ignore this dispute and

2    adopt a "plain meaning" construction, as Sentius suggests.  For the reasons discussed below, the

3    Court should adopt Microsoft's proposed construction and define the phrase "reference

4    information" to mean "the external content that is pointed to by the link in the look-up table."

5    **II.    STATEMENT OF FACTS**

6        **A.    The Asserted Patent**

7        Sentius' U.S. Patent No. RE43,633 ("the '633 patent") is one of two patents reissued[5] from

8    U.S. Patent 5,822,720 ("the '720 patent").  (*See* Docket No. 52-4).  The '633 Patent was filed on

9    June 8, 2009 as a continuation of the other asserted reissue patent, U.S. Patent No. RE 40,731 ("the

10   '731 patent").  (*Id*.).  The '633 patent also claims priority to a patent application filed on February

11   16, 1994, which was later abandoned.  (*Id*.).

12       The '633 patent, the '720 patent, and the '731 patent all share the same specification.  These

13   patents generally describe "building links in a computer environment between particular segments

14   of [the] source material and reference materials related to those segments" and "accessing the

15   reference materials when a segment of source material is selected by a user."  (Docket No. 56-1 at

16   6).  The term "reference information" at issue here appears in asserted claims 70 and 154 of the

17   '633 patent.  (*See* Docket No. 52-4).  Those claims recite:

18       70. The method of claim 62, wherein the link is reference information for retrieving
19       the selected one of the external reference materials.

20       154. The method of claim 146, wherein the link is reference information for
         retrieving the selected one of the plurality of external reference materials.

21

22       **B.    The Court's Claim Construction**

23       During the prior claim construction hearing, the parties disputed the meaning of the "link"

24   limitations in the '633 patent.  The only dispute between Microsoft and Sentius with respect to the

25   term "link" was whether it should be construed as a "pointer to" or a "reference to" external

26

27

28   be known which features may be safely used or manufactured without a license and which may
     not.'").

1  content.  (*See* Docket No. 74-2 at 52:12-19).  The Court agreed with Microsoft that the term "link"

2  should be construed as "a pointer to data or information or the location of data or information that is

3  external to the source material."  (Docket No. 66).

4  **III.    STATEMENT OF LAW**

5       Patent claims "must be read in view of the specification, of which they are a part."

6  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).  As "the person of ordinary

7  skill in the art is deemed to read the claim term not only in the context of the particular claim in

8  which the disputed term appears, but in the context of the entire patent, including the specification,"

9  an analysis of the claim terms that fails to take into account the teachings of the patent specification

10  is incomplete.  *See id.* at 1313; *see also Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed.

11  Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do

12  not have meaning removed from the context from which they arose"); *Markman v. Westview*

13  *Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("[A claim] term can be defined only in a way that

14  comports with the instrument as a whole").  Further, "[l]ike the specification, the prosecution

15  history [also] provides evidence of how the PTO and the inventor understood the patent," and is a

16  part of the intrinsic record.  *Phillips*, 415 F.3d at 1317.  Finally, while "less significant than the

17  intrinsic record in determining 'the legally operative meaning of claim language' … extrinsic

18  evidence can help educate the court regarding the field of the invention and can help the court

19  determine what a person of ordinary skill in the art would understand claim terms to mean."  *Id.* at

20  1317-19.

21       While the Federal Circuit has said that claims should be construed to preserve their validity,

22  "claims can only be construed to preserve their validity where the proposed claim construction is

23  'practicable,' is based on sound claim construction principles, and does not revise or ignore the

24  explicit language of the claims."  *See Generation II Orthotics, Inc. v. Medical Tech., Inc.*, 263 F.3d

25  1356, 1365 (Fed. Cir. 2001); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302,

26  1309 (Fed. Cir. 2000) ("having concluded that the amended claim is susceptible of only one

27

28       [5]    Reissue allows a patentee to correct a patent that has been deemed "wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the

1  reasonable construction, we cannot construe the claim differently from its plain meaning in order to

2  preserve its validity"); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co*., 849 F.2d 1430,

3  1434 (Fed. Cir. 1988) (rejecting argument that limitations should be added to claims to preserve

4  their validity).  The Federal Circuit "has repeatedly held that courts may not redraft claims to cure a

5  drafting error made by the patentee, whether to make them operable or to sustain their validity."

6  *See Lucent Techn., Inc. v. Gateway, Inc*., 525 F.3d 1200, 1215 (Fed. Cir. 2008) (explaining that

7  "[t]o do so 'would unduly interfere with the function of claims in putting competitors on notice of

8  the scope of the claimed invention.'").

9  **IV.   ARGUMENT**

10

| Claim Term | Sentius' Construction | Microsoft's Construction |
|---|---|---|
| "Reference Information" ('633 Patent Claims 70 & 154) | The term does not require construction. Alternatively, the term should be afforded its plain and ordinary meaning of information that refers the system [to the at least one of the plurality of external reference materials] | The external content that is pointed to by the link in the look-up table |

16   **A.  Microsoft's Proposed Construction is Consistent with the Intrinsic Evidence**

17        The intrinsic evidence uniformly supports Microsoft's proposed construction, and indeed

18  Sentius does not appear to argue otherwise.

19        First, the '633 patent specification describes "reference information" as external content that

20  the claimed system retrieves and displays to the user after the user selects a term in the source

21  material.  For example, when referring to Figure 3 (shown below), the '633 patent uses the phrase

22  "reference information" to describe the English language translation ("Japanese economy") that is

23  shown to a user when the user clicks on a particular location within the source material. (*See* Docket

24  No. 52-4 at 9:20-22 ("To view the English **reference information** the user selects the English

25  / / /

26  / / /

27

28

patentee claiming more or less than he had a right to claim in the patent."  35 U.S.C. § 251.

Reference from the pop-up menu and the information appears next to the pop-up menu."); *see also id.* at 5:4-6 ("The first module is an electronic viewer that gives the user access to **reference information** on each word in the electronic text at a word by word level.")).

*FIG. 3*

Second, the prosecution history of the original '720 patent similarly uses the phrase "reference information" to refer to the external content that is pointed to by the link in the claimed look-up table.  Specifically, during the prosecution of the '720 patent, the examiner rejected various claims based on the Transparent Language program prior art, noting that, "[t]he Transparent Language program includes a window for displaying foreign language stories and includes means to access **reference information** on selected portions thereof **including definitions and context**." (Ex. A (10/12/95 Office Action) at 4-5).  In a later response, Sentius wrote that it was amending its claims to, "clarify that the **source material pieces and reference information are linked** according to the value of the offsets of the starting, or starting and ending, positions of the source material pieces from the beginning location of said integrated source image."  (Ex. B (1/12/96 Office Action Response) at 9).  In other words, both the Patent Office and Sentius understood "reference information" to be the external content that is pointed to by the link in the look-up table.[6]

---

[6]   Notably, Sentius used the phrases "reference information" and "reference materials" interchangeably during prosecution of the reissue patents-in-suit when replacing the phrase "reference information" with the phrase "external reference materials" in several claims of the '731 patent.  (*See* Ex. C (Feb. 24, 2005 Prelim. Amendment) at 41 (claim 10); *see also id.* at 41-42

A.     **Microsoft's Proposed Construction is Consistent With the Extrinsic Evidence and With Sentius' Own Admissions About the Scope of the Claims**

The relevant extrinsic evidence, as well as Sentius' own admissions about the scope of its claims, also supports Microsoft's proposed construction.

First, as noted above, Sentius itself used the phrase "reference information" in its claim construction briefing in the *Flyswat* litigation to refer to the external content that is pointed to by the link in the look-up table.  (*See* Docket No. 56-1 at 1 ("The '720 Patent generally discloses an invention for electronically linking selected components of material displayed on a computer with **external reference information**"); *Id.* at 2 ("The system disclosed in Claim 8 consists of essentially two parts.  First, the claim describes the creation of the linking mechanism between the displayed material (referred to in the Patent as the 'source material') and the external **reference information**.  Second, Claim 8 explains the operation of the system when a user selects an element of the displayed material and accesses the external **reference information** linked to that element."); *Id.* at 10 ("Thus, the patent specification describes **reference information** as being available to 'each word in the electronic text at a word by word level'"); *Id.* at 12 ("Beginning with subparagraph 8.5, the Patent discloses the second functional element of the invention – the operation of the system when a user accesses the source material image to obtain desired **reference information**.")).

Second, during the parties' e-mail exchange regarding these newly-asserted claims, Sentius stated, "[w]e agree that the portions of the specification that you cite to arguably use the term 'reference information' synonymously with the external materials."  (*See* Docket No. 70-4).

Third, named inventor Marc Bookman previously testified that "cutting" meant "the process of dividing this source image into individual components **that will be linked with the external reference information**."  (Ex. D (Jun. 28, 2001 Bookman Depo.) at 190:8-11).

(claims 11-13)).  The only purported reason for this amendment, according to Sentius, was to "ensure proper antecedent basis, remove redundant terms, and provide improved clarity."  (*See id.* at 9).  Sentius said that "[n]o new matter [was] added" as a part of these amendments.  (*Id.* at 3).  Sentius never told the Patent Office that its replacement of the phrase "reference information" with the phrase "external reference material" materially changed the scope of its claims, and indeed it could not have done so given the requirements of 35 U.S.C. § 251, which strictly limits the types of changes that can be made through a reissue proceeding.

1   Once again, all of this evidence suggests that the phrase "reference information" means "the

2   external content that is pointed to by the link in the look-up table."

3       **B.      Sentius Provides No Support for its Proposed Construction, Which Means the
                   Court Must Reject It**

4

5       Sentius' cites no intrinsic or extrinsic evidence to support its own proposed construction.

6   (*See* Docket No. 93 at 7-9.)  The only thing that Sentius cites is the language of the asserted claims

7   themselves.  (*Id.*).  Sentius ignores that the language of these claims was first added to the '633

8   patent during the reissue prosecution, more than *seventeen years* after the original specification was

9   filed in February of 1994.  (*See* Ex. E (June 22, 2011 Amendment) at 17 & 35 (adding claims 70

10  and 154)).[7]  These new claims are thus not a part of the specification for purposes of 35 U.S.C.

11  § 112.  *See Purdue Pharma L.P. v. Faulding Inc.,* 230 F.3d 1320, 1329 (Fed. Cir. 2000) ("the

12  support for the invention must be found in the specification as filed, and … the amended claims

13  could not be used to provide that support").  Also, "no new matter [can] be introduced into [an]

14  application for reissue."  *See* 35 U.S.C. § 251(a).  In other words, these new claims must be

15  supported by *something* in the original specification; if not, they are invalid under either 35 U.S.C.

16  § 112 for lacking written description, or under 35 U.S.C. § 251 for impermissibly adding new

17  matter and/or broadening the claims during reissue proceedings, or possibly both.  Sentius does not

18  point to anything in the specification that supports these claims, and based on this complete lack of

19  any intrinsic or extrinsic evidence, the Court must reject Sentius' proposed construction out of hand.

20      **C.      The Court May Not Redraft Sentius' Claims to Preserve Their Validity**

21      Since Sentius cannot show that its proposed construction has any support in the specification

22  or the file history of the '633 patent, its briefing instead focuses on attempting to undermine

23  Microsoft's proposed construction, arguing that it would result in "nonsensical claims."  (*See*

24

25      [7]   Similar claims were added to the '731 patent in 2005, eleven years after the original
    application was filed.  (*See* Ex. C (2/24/2005 Prelim. Amendment) at 48 (claim 24), 54 (claim 63)).

26  While the '720 patent includes the words "reference information" (in a manner consistent with
    Microsoft's proposed construction), none of its claims recite that a "link is reference information."

27  (*See* Docket No. 56-15 ('720 patent)).  Also, while Sentius cited the '720 patent specification at
    6:41-7:46 as support for these new claims during prosecution, the cited paragraphs do not use the

28  phrase "reference information." (*See* Ex. E (June 22, 2011 Amendment) at 51 & 61; Docket No. 56-
    15 ('720 patent) at 6:41-7:46).

Docket No. 93 at 9).  While claims should generally be read to preserve their validity, the Court

must still apply "sound claim construction principles" in order to interpret those claims. *See Elekta*,

214 F.3d at 1309.  Specifically, the claims must be construed in light of the available intrinsic and

extrinsic evidence, and where the meaning of a claim term is clear "after reviewing all the intrinsic

evidence," the claims must be construed without regard to validity.  *See Lucent Techs.,* 525 F.3d at

1215 (noting that "[t]his court has repeatedly held that courts may not redraft claims to cure a

drafting error made by the patentee, whether to make them operable or to sustain their validity.").

Since the phrase "reference information" has a clear meaning, the Court must adopt that meaning,

regardless of whether it results in invalid or nonsensical claims.  *See Chef Am., Inc. v. Lamb-*

*Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("where as here, claims are susceptible to only

one reasonable interpretation and that interpretation results in a nonsensical construction of the

claim as a whole, the claim must be invalidated").[8]

Sentius cites *Praxair, Inc. v. ATMI, Inc*. 543 F.3d 1306, 1319 (Fed. Cir. 2008), for the

proposition that, "[a] claim will be found indefinite only if it 'is insolubly ambiguous,' and no

narrowing construction can be properly adopted."  Whether or not the two asserted claims at issue

here are indefinite is a separate question from the proper construction for the phrase "reference

information."  Microsoft agrees with Sentius that these claims are impossible to understand.  They

are either not infringed because no accused products (and quite possibly no real-world systems)

function in the manner recited, or they are invalid under 35 U.S.C. §§ 101 and/or 112 for claiming

non-functional and nonsensical systems.  As noted above, however, that does not mean that the

Court can simply ignore the language that Sentius chose for these claims, nor can the Court redraft

the claims to save their validity.

**D.      "Reference Information" Requires Construction**

Sentius further errs when it argues that because "reference" and "information" have a "well-

known" meaning that "is not seriously in dispute" the claim term "reference information" needs no

---

[8]      If, on the other hand, the Court concludes the claim language supports two or more
reasonable interpretations to one skilled in the relevant art, then the claims are indefinite.  *See*
*General Electric*, 304 U.S. at 368-69 ("The inventor must 'inform the public during the life of the

1   construction.  (*See* Docket No. 93 at 9).  Sentius provides no support for its argument that

2   "grammatically and in the context of the claim," "reference information" means "information used

3   to refer to something."  (*Id*.).  The term "reference information" in the context of the claimed

4   invention plainly refers instead to information that is referenced, such as dictionaries or

5   encyclopedias in a library (i.e., the "reference section," which contains "reference materials" with

6   "reference information").  Consistent with this plain meaning, the '633 patent describes "reference

7   materials, such as electronic encyclopedias, and dictionaries."  (*See* Docket No. 52-4 at 6:29-30, 43-

8   44; *see also id*. at 5:4-5 ("an electronic viewer that gives the user access to **reference information**

9   on each word")).  That is the "plain meaning" of this phrase in light of the intrinsic and extrinsic

10  evidence.  To the extent Sentius argues otherwise (without any support), that only demonstrates that

11  the "plain and ordinary meaning" of the phrase "reference material" is in dispute, which means the

12  Court must resolve that dispute.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d

13  1351, 1361 (Fed. Cir. 2008).[9]

14          **E.      Sentius Cannot Circumvent the Court's Construction of "Link"**

15          Just as Microsoft predicted when Sentius sought leave to assert these additional claims,

16  Sentius appears to be seeking a construction that circumvents the Court's construction of the term

17  "link."  As the Court will recall, the only dispute between Microsoft and Sentius at the claim

18  construction hearing with respect to the term "link" was whether the Court should construe the term

19  as a "pointer to data or information" or a "reference to data or information."  (*See* Docket No. 74-2

20  at 52:12-19).  Microsoft argued that the word "reference" was too vague, and that the more precise

21  term "pointer" was necessary to accurately capture the concepts described and claimed in the

22  reissue patents-in-suit.  (*See Id*. at 60:5-20, 62:25-63:9).  Indeed, Microsoft argued that the way

23  Sentius was applying the term "reference" rendered it invalid as indefinite.  (*Id*. at 68:7-16).  The

24  Court ultimately agreed with Microsoft's proposed construction for the term "link," rejected

25

26  patent of the limits of the monopoly asserted, so that it may be known which features may be safely
    used or manufactured without a license and which may not.'").

27      [9]   And once again, to the extent that the Court disagrees with Microsoft and finds that the
    phrase has multiple potential meanings to one of ordinary skill (i.e., information referenced from

28  and information referenced to), that means the limitation is indefinite.  *See General Electric*, 304
    U.S. at 368-69.

Sentius' proposal of "reference," and adopted as its construction "a **pointer** to data or information or the location of data or information that is external to the source material."  (Docket No. 66).

Because Microsoft does not infringe under the Court's construction for the term "link," Sentius now attempts to sidestep that construction.  Specifically, instead of establishing that the accused products include a "pointer" in a "look-up table" (which they do not), Sentius wants to argue that these claims only require "information" in the claimed table, and not a "pointer."  This argument is logically and legally flawed.  Under 35 U.S.C. § 112, a dependent claim must "incorporate by reference all the limitations of the claim to which it refers," and it must "specify a further limitation of the subject matter claimed."  In other words, these newly-asserted dependent claims must incorporate the concept of a "pointer," and whatever "reference information" means, it must be something narrower than a pointer. *See Phillips*, 415 F.3d at 1315.  Sentius' proposed construction, which suggests that the term "reference information" is merely "information" and not a "pointer," thus violates 35 U.S.C. § 112 and the Court's prior claim construction for the term "link."

Sentius never sought reconsideration of this Court's claim construction, and it does not do so now.  Since Sentius' proposed construction is inconsistent with both the plain meaning of the phrase "reference information" in light of all the relevant evidence, as well as with the Court's claim construction for the "link" limitation, the Court must reject Sentius' proposal.

## V.    CONCLUSION

For the reasons discussed above, Microsoft respectfully requests that the Court construe the term "reference information" to mean "the external content that is pointed to by the link in the look-up table."

Dated:  May 13, 2014                              Respectfully Submitted,


                                                  By: */s/ Jonathan J. Lamberson*
                                                      Jonathan J. Lamberson

                                                      Attorneys for Defendant
                                                      MICROSOFT CORP.

1 | *Additional Counsel*

2 | Jonathan J. Lamberson (SBN 239107)
lamberson@fr.com

3 | FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500

4 | Redwood City, CA  94063
Telephone: (650) 839-5070

5 | Facsimile: (650) 839-5071

6 | Isabella Fu (SBN 154677)
isabella.fu@microsoft.com

7 | MICROSOFT CORPORATION
One Microsoft Way

8 | Redmond, WA 98052
Telephone: (425) 882-8080

9 | Facsimile:  (425) 936-7329

10 | Attorneys for Defendant
MICROSOFT CORP.

11 |

12 | 50948291.doc

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

MICROSOFT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
ON "REFERENCE INFORMATION"
Case No. 5:13-cv-00825 PSG