UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC, | ) Case No. 5:13-cv-00825-PSG |
| Plaintiff, | ) **ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY** |
| v. | ) |
| MICROSOFT CORPORATION, | ) **(Re: Docket Nos. 76 and 78)** |
| Defendant. | ) |

Before the court are Defendant Microsoft Corporation's motions for summary judgment of invalidity as to U.S. Patent Nos. 7,672,985 and reissue patents RE 40,731 and RE 43,633.[1] Plaintiff Sentius International, LLC opposes both motions. The parties appeared for a hearing.[2] After considering the arguments, both in the original and supplemental papers and at the hearing, the court DENIES both motions. Through this order the court also resolves a claim construction dispute regarding the '633 patent by adopting a plain and ordinary meaning for the term "reference information" in independent claims 70 and 154.

---

[1] *See* Docket Nos. 76 and 78.

[2] *See* Docket No. 101.

# I. BACKGROUND

Sentius is a software company organized and operating its principal place of business in Virginia. Sentius "developed, marketed and licensed software for over 13 years."[3] Microsoft is a software company organized and operating its principal place of business in Washington. Relevant to this litigation, Microsoft produces software that includes both spell checking and grammar checking features. Sentius accuses these features of infringing the Sentius patents at issue in this case.[4]

Two of the patents Sentius asserts against Microsoft in this case are reissues of an earlier Sentius patent, U.S. Pat. No. 5,822,720. On June 22, 2000, Sentius filed a patent infringement suit in this district against Flyswat, Inc., alleging infringement of the '720 patent.[5] By the time of the claim construction hearing in that case, Sentius only was asserting a single claim against Flyswat: claim 8.[6] Claim 8 of the '720 patent recited:

---

[3] *See* Docket No. 85 at 2 (citing Docket No. 85-1 at ¶ 2 ("Sentius began developing software related to the invention claimed in the reissue patents in August 1993, began marketing in February 1994 and provided the software and related services through 2005. We sold our products to leading educational institutions, publishing firms, and enterprise customers.")).

[4] *See* Docket No. 1 at ¶ 7.

> 7. On information and belief, Microsoft has infringed and continues to infringe, directly and indirectly through contributory and/or induced infringement, one or more claims of the '985 Patent in making, offering for sale, and selling in the United States the Microsoft Office suite and its component programs such as Microsoft Word that use a "contextual reference engine" to parse content and to associate specific data objects to content for display pop-up screens. Upon information and belief, the contextual reference engine is used to provide such features as Spell Check, Autocorrect, Grammar Check, Synonyms, and Actions (previously referred to as Smart Tags) in Microsoft products. Microsoft's infringing activities in making, using, selling, importing and offering for sale products which incorporate the reference engine or its substantial equivalent violate 35 U.S.C. § 271.

*See also id.* at ¶¶ 19 and 25.

[5] *See Sentius Corp. v. Flyswat, Inc.*, Case No. 4:00-CV-2233-SBA, Docket No. 1 (N.D. Cal. June 22, 2000).

[6] *See* Docket No. 52, Ex. 6 at 2 ("Sentius alleges that Flyswat is contributorily infringing Claim 8 of the '720 Patent.").

2
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

8. A method for linking source material to reference material for display, comprising:
- [8.1] determining the beginning position address of a source material image stored in an electronic database, said source material image including a plurality of discrete pieces having links to external reference materials comprising any of textual, audio, video, and picture information;
- [8.2] cutting said source material image into said discrete pieces;
- [8.3] determining a starting point address and an ending point address of said discrete pieces of said image based upon said beginning position address of said source material image;
- [8.4] recording said starting and said ending addresses in a look-up table;
- [8.5] selecting a discrete portion of said source material image;
- [8.6] determining the address of said selected discrete portion;
- [8.7] converting said address of said selected discrete portion to an offset value from said beginning position address of said source material image;
- [8.8] comparing said offset value with said recorded start and end point addresses of said discrete pieces in said look-up table;
- [8.9] selecting an external reference that corresponds to said look-up table start and end point addresses; and
- [8.10] reproducing said external reference.[7]

In an order dated March 29, 2002, Judge Armstrong construed claim 8 and held that the method steps of claim 8 must be performed in the order recited.[8] Judge Armstrong also recognized that limitation 8.1 used the term "source material image" in an inconsistent manner, referring to both "the source material once it is entered into the system and from which the discrete parts are cut," as well as "an image displayed on a computer screen derived from the text (and/or other material) created by means of the: (1) linking, and (2) reassembly of the cut pieces (from the 'source material')."[9] Judge Armstrong rejected Sentius' argument that limitation 8.1 was simply a "'forward-looking' 'introductory' or 'summary' statement."[10] Even though Judge Armstrong was

---

[7] *See* Docket No. 56-15, Ex. O at 12:52-13:12.

[8] *See* Docket No. 52-7, Ex. 6 at 7-8.

[9] *Id.* at 23-24.

> Therefore, as used in the second clause of Claim 8.1 and Claim 8.5, "source material image" means "an image displayed on a computer screen derived from the text (and/or other material) created by means of the: (1) linking, and (2) reassembly of the cut pieces (from the 'source material')." As used in the first clause of Claim 8.1, and Claims 8.2 and 8.3, the term "source material image" means "the source material once it is entered into the system and from which the discrete parts are cut."

[10] *Id.* at 23 n.16.

"mindful" of the conflicting interpretations while writing her claims construction order, she could not "reconcile" the two inconsistent uses of the term and therefore refused to "redraft" the claim to "preserve" its validity.[11]

In an order dated August 6, 2002, Judge Armstrong held claim 8 of the '720 patent invalid because it lacked utility and was not properly enabled.[12] While limitation 8.1 recited a "source material image including a plurality of discrete pieces," those pieces were not "cut" until limitation 8.2 ("cutting said source material image into said discrete pieces").[13] "Limitation 8.1 logically [could not] be executed before Limitation 8.2."[14] The "nonsensical" limitations, rendered claim 8 invalid under 35 U.S.C. § 101.[15]

---

Sentius attempts to reconcile this apparent inconsistency by stating that Claim 8.1's second reference to source material image is a "forward-looking" "introductory" or "summary" statement. According to Sentius, the second reference to "source material image including discrete pieces having links" is an introductory clause which refers to the end result. This argument, however, is not supported by the language used in Claim 8. Claim 8.1 refers to "source material image" including discrete pieces "having" links to external reference material. '720 Pat., 12:55-59. The present possessive verb "have" does not imply some future state but instead refers to the present possession of something. Moreover, there is no claim language which explicitly states or implicitly suggests that the second use of "source material image" is introductory.

[11] *Id.* at 23.

[12] *See* Docket No. 56-16, Ex. P at 11-16.

[13] *Id.* at 12.

[14] *Id.* Judge Armstrong also observed that limitation 8.4 ("recording said starting and said ending address in a look-up table") describes the process of linking, because "links" are created by recording the position of the discrete pieces in the look-up table. *Id.* "However, as with the problems with the creation of discrete pieces, the execution of Limitation 8.1 containing the discrete pieces having 'links' precedes the creation of the 'links' in Limitation 8.4. This is nonsensical." *Id.*

[15] *See id.* at 12-14. Judge Armstrong also found limitation 8.1 was "nonsensical" because it contained an inconsistent usage of the same term. Because limitation 8.1 used the phrase "source material image" to refer to both the original source material entered into the system (i.e., the material from which discrete pieces were then cut), as well as the already-cut image containing links to the external content, essentially "the identical term refers to the before and after process – i.e., the material upon which the process is applied and the result of the process with which the user interacts." *Id.* at 14. The use of "source material image" twice with "diametrically opposite meanings" in the claim rendered the claim language inoperable and therefore invalid under

4
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

Judge Armstrong entered judgment and Sentius appealed Judge Armstrong's invalidity determination.[16] The parties settled out of court, rendering Sentius' appeal moot.

To correct the errors identified by Judge Armstrong, Sentius then filed a reissuance application with the PTO[17] resulting in the two reissue patents: the '731 patent and its continuation the '633 patent.

The '731 reissue patent addressed the defects identified by Judge Armstrong by:

- disambiguating the two senses of "source material image" by introducing separate terms to denote the two distinct meanings;

- moving the second clause of element 8.1, which referred to the post-processed source material after the processing occurred;

- introducing new limitations that narrowed the concept of linking;

- including a step for recording the links to external references; and

- narrowing the scope of the claims, and introducing dependent and independent claims, that were restricted to "textual" source material.

Here is what the claim 8 looked like following reissue, with the new material bolded and excised material struck:

8. A method for linking source material to **external** reference material**s** for display, **the method** comprising **the steps of**:

   determining ~~the~~ **a** beginning position address of a source material ~~image~~ stored in an electronic database, ~~said source material image including a plurality of discrete pieces having links to external reference materials comprising any of textual, audio, video, and picture information~~;

   cutting ~~said~~ **the** source material ~~image~~ into ~~said~~ **a plurality of** discrete pieces;

   determining a starting point address and an ending point address of ~~said~~ **at least one of the plurality of** discrete pieces ~~of said image~~ based upon ~~said~~ **the** beginning position address ~~of said source material image~~;

   recording ~~said~~ **in a look up table the** starting and ~~said~~ ending **point** addresses ~~in a look up table~~;

---

35 U.S.C. § 101, and also invalid as lacking written description under 35 U.S.C. § 112. *Id.* at 14-16.

[16] *See Sentius Corp. v. Flyswat Inc.*, 89 F. App'x 256, 257 (Fed. Cir. 2004).

[17] On February 24, 2005, Sentius filed its first reissuance application and that patent later issued as RE 40,731. *See* Docket No. 52-3, Ex 2. On June 8, 2009, Sentius filed its second reissuance application and that patent later issued as RE 43,633. *See* Docket No. 52-4, Ex 3.

  **linking at least one of the plurality of discrete pieces to at least one of a plurality of external reference materials by recording in the look-up table, along with the starting and ending point addresses of the at least one of the plurality of discrete pieces, a link to the at least one of the plurality of external reference materials, the plurality of external reference materials comprising any of textual, audio, video, and picture information;**

  **displaying an image of the source material;**

  selecting a discrete portion of ~~said~~ **the displayed** source material image;

  determining ~~the~~ **a display** address of ~~said~~ **the** selected discrete portion;

  converting ~~said~~ **the display** address of ~~said~~ **the** selected discrete portion to an offset value from ~~said~~ **the** beginning position address ~~of said source material image~~;

  comparing ~~said~~ **the** offset value with ~~said recorded~~ **the** start**ing** and end**ing** point addresses ~~of said discrete pieces~~ **recorded** in ~~said~~ **the** look-up table **to identify one of the plurality of discrete pieces**;

  selecting ~~an external reference that corresponds to said look-up table start and end point addresses~~ **one of the plurality of external reference materials corresponding to the identified one of the plurality of discrete pieces**; ~~and~~

  **retrieving the selected one of the plurality of external reference materials using a recorded link to the selected one of the plurality of external, reference materials; and**

  ~~reproducing said~~ **displaying the retrieved** external reference **material**.

The third asserted patent, the '985 patent, claims priority to a provisional patent application filed on August 16, 2001, and issued on October 30, 2006.[18] The '985 patent is directed towards a "method and apparatus are disclosed which automatically build a database by automatically identifying a term of interest and building a term database with supplemental content from an assigned source for that term."[19] Claim 1 is illustrative. It reads:

1. A computer implemented method for processing database content, the method comprising the steps of:

  syndicating one or more data objects associated with a term database to one or more remote computers, wherein the one or more data objects contain data associated with one or more terms;

  parsing one or more documents to identifY at least one term based on at least one rule;

  identifying content for the at least one term; and

  associating the at least one term with the identified content;

---

[18] *See* Docket No. 52-5, Ex. 4.

[19] *Id.* at 1.

wherein the one or more data objects associated with the term database provide a representation of at least a portion of the term database at the one or more remote computers and are used to link the identified content with the at least one term.[20]

## II. LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]  At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[22]  Material facts are those that may affect the outcome of the case.[23]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[24]  Patents are presumed valid and a party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence.[25]

### B. Section 251

35 U.S.C. § 251 provides a mechanism for patentees to remedy defective patents by reissue.[26]  Section 251 "can be read to encompass any error that causes a patentee to claim more or

---

[20] *Id.* at 14:8-22.

[21] Fed. R. Civ. P. 56(a).

[22] *House v. Bell*, 547 U.S. 518, 559–60 (2006).

[23] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[24] *See id.*

[25] *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid.  Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011) (holding that Section 282 "requires an invalidity defense to be proved by clear and convincing" evidence).

[26] *See* 35 U.S.C. § 251(a).

less than he had a right to claim."[27]  A patent's claims may not be broadened, pursuant to Section 251, after two years.[28]  At the same time, a "change in a reissue application that is only clerical does not necessarily broaden the scope of the claims and so does not render the patent invalid."[29]  Put another way, "clarified or corrected" claims are not impermissibly broadened and thus invalid.[30]

---

> In general. – Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.  No new matter shall be introduced into the application for reissue.

*See also* 35 U.S.C. § 251(d).

> Reissue patent enlarging scope of claims. – No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

[27] *Medrad, Inc. v. Tyco Healthcare Grp. LP*, 466 F.3d 1047, 1052 (Fed. Cir. 2006) ("Given the remedial nature of the statute and with an eye to its liberal construction we find such a reading to be entirely appropriate." (citation omitted)); *see also In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986).

> In enacting the statute, Congress provided a statutory basis for correction of "error". The statute is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally.  [string cite]  Nonetheless, not every event or circumstance that might be labeled "error" is correctable by reissue.
>
> * * *
>
> Though the term "error" is to be interpreted liberally, *In re Wesseler*, 367 F.2d 838 (C.C.P.A. 1966), Congress did not intend to alter the test of "inadvertence, accident, or mistake" established in relation to the pre-1952 statutes.  *In re Wadlinger*, 496 F.2d 1200, 1207 (C.C.P.A. 1974).  *See In re Mead*, 581 F.2d 251, 257 (C.C.P.A. 1978) ("conscious choice" not to file continuing application not "error"); *In re Clark*, 522 F.2d 623, 626 (C.C.P.A. 1975) (dereliction in duty of candor not "error"); *In re Byers*, 230 F.2d 451, 454 (C.C.P.A. 1956) (deliberate amendment of claim not "error").  *See also In re Petrow*, 402 F.2d 485 (C.C.P.A. 1968) (cancellation of claim in original application was "error"); *In re Willingham*, 282 F.2d 353 (C.C.P.A. 1960) (cancellation of claim was "error").

[28] *See id.*

[29] *Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1270 (Fed. Cir. 2007) ("The question before us is whether the change effected in the reissue application here broadened the scope of claim 11 or merely clarified or corrected the original claim.").

[30] *Id.*

"Comparison of the scope of the reissue claims with the claims of the original patent is a matter of claim construction, and it is performed from the perspective of one having ordinary skill in the art."[31] "Whether the claims of a reissue patent violate 35 U.S.C. § 251 is a question of law" predicated "on underlying" facts.[32]

### C.   Anticipation

A patent claim is invalid if it was "in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."[33] Determining if a claim is anticipated involves two steps: first, the court must construe the claims, and second the construed claims must be compared against the prior art.[34] "While anticipation is a question of fact, 'it may be decided on summary judgment if the record reveals no genuine dispute of material fact.'"[35]

### D.   Obviousness

A patent claim is invalid as obvious under Section 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[36] "Under § 103, the scope and content of the prior

---

[31] *Id.* (citing *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1370 (Fed. Cir. 2001); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)).

[32] *Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1270 (Fed. Cir. 2007) (citing *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1373 (Fed. Cir. 2006)).

[33] 35 U.S.C. § 102(a)(1).

[34] *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("A determination that a claim is anticipated involves a two-step analysis: the first step requires construing the claim, and the second step in the analysis requires a comparison of the properly construed claim to the prior art.") (internal quotations omitted) (citing *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004)).

[35] *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (quoting *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008)) ("While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact.")).

[36] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-407 (2007) (citing 35 U.S.C. § 103).

art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background, the obviousness or nonobviousness of the subject matter is determined.  Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."[37]  Although obviousness is a question of law predicated on underlying questions of fact,[38] it "may be decided on summary judgment."[39]

### III. DISCUSSION

**A.     Motion for Summary Judgment of Invalidity of the '731 and '633 Reissue Patents**

Microsoft first moves for summary judgment of invalidity of the '731 and '633 reissue patents.[40]  Because Sentius impermissibly broadened the disputed claim language beyond Section 251's two-year statutory window, says Microsoft, the asserted claims are invalid.

Sentius disagrees.  As Sentius sees it, the claims were not broadened, but merely changed to correct a structural flaw in the claim language identified by Judge Armstrong.  When used to remedy utility and enablement infirmities, as identified by Judge Armstrong here, changes can only fairly be deemed clerical and thus in accordance with the statute.[41]

---

[37] *Id.* at 406 (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

[38] *See infra* note 60.

[39] *Point Plastics, Inc. v. Rainin Instrument Co., Inc.*, Case No. 84-cv-0800-WHO, 1984 WL 63125, at *2 (N.D. Cal. Nov. 20, 1984) (citing *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984); *Cable Electric Products Inc. v. Genmark, Inc.*, 582 F. Supp. 93, 97-98 (N.D. Cal. 1984)).

[40] In light of the parties' stipulated dismissal of claims 8, 18, 24, 26, 27 and 49 of the '731 patent the court does not address Microsoft's argument regarding the preclusive effect regarding Judge Armstrong's enablement holding about cutting non-textual sources.  *See* Docket No. 90.

[41] *See* 4A-15 Chisum on Patents § 15.03.

> If a patentee claimed "more . . . than he had a right to claim," the claim or claims will be "wholly . . . invalid" for one or more reasons. The claim . . . may cover inoperative as well as operative subject matter and hence run afoul of the utility requirement. It may cover

To resolve this dispute, the court begins with Judge Armstrong's order.[42] The order identifies two structural flaws in the patent. First, the limitations of claim 8 could not sensibly be performed in order as her construction required.[43] Second, limitation 1 of claim 8 included two inconsistent definitions of the term "source material image."[44] These flaws rendered claim 8 invalid for want of utility and enablement.

Because it is undisputed that the temporal window had closed by the time the reissue patent applications were filed, the question for the court reduces to whether the redrafted claim is broader than its predecessor under the meaning of Section 251. On this point, Judge Lourie's analysis in *Forest Labs., Inc. v. Ivax Pharm., Inc.* is controlling.[45] In *Forest Labs.* the court

---

subject matter as to which the specification is not enabling and hence run afoul of the disclosure requirement. In such instances, reissue is available to trim the scope of the claim or claims to proper size.

*See also Application of Altenpohl*, 500 F.2d 1151, 1156-57 (C.C.P.A. 1974) (holding that reissue is proper to remedy a lack "of antecedent basis in a claim" which "could render it invalid under 35 U.S.C. § 112").

[42] *See* Docket No. 56-16, Ex. P at 11-16.

[43] *See id.* at 11-14 (Because "the sequence in which the limitations of Claim 8 are presented is illogical and" nonsensical[,]" the court found "clear and convincing evidence that Claim 8 lack[ed] utility.").

[44] *See id.* at 14.

    Defendant also contends that Limitation 8.1 is nonsensical because it contains an inconsistent use of the same term. This argument is persuasive. In fact, the Court expressly recognized the fatal inconsistency of the term "source material image" in the claim construction order. Claim Constr. Order, 23.

    As discussed in more detail in the previous order, the term "source material image" as it appears in Limitation 8.1 has two different meanings. The first use of the "source material image" means "the source material once it is entered into the system and from which the discrete parts are cut." Claim Constr. Order, 24:4-6. However, the second use of the identical term means "an image displayed on a computer screen derived from the text (and/or other material) created by means of the: (1) linking, and (2) reassembly of the cut pieces (from the 'source material')." *Id.* at 24:1-4. Essentially, the identical term refers to the before and after process -- i.e., the material upon which the process is applied and the result of the process with which the user interacts. Construing the same term to have two different meanings was the only way the patent could be logically construed.

    The inconsistent use of the same term is fatal to Claim 8.

(citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357-59 (Fed. Cir. 1999)).

11
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

rejected the accused infringer's claim that a "change in the optical rotation sign of the diol intermediate" within a disputed claim "during reissue was clearly a broadening of the claim because the claim now covers a process beginning with a different enantiomer."[46] The court instead held that "a change in a reissue application that is only clerical does not necessarily broaden the scope of the claims and so does not render the patent invalid."[47] To make this determination, a holistic evaluation of the reissue patent informed by the specification is required.[48] A court may consider a "plain reading" and "additional supporting expert testimony" to assess whether "a person of ordinary skill in the art reviewing the patent would find the error" immediately apparent.[49] *Forest Labs.* ultimately held "that the change in the optical sign during reissue does not represent a change of claim scope, but merely a correction of the claim to be consistent with the disclosure of the specification."[50]

A review of the record and arguments raised demonstrates that, under *Forest Labs.*, summary judgment must be denied.

First, neither party has suggested that Judge Armstrong's evaluation of claim 8 of the '720 parent in the *Flyswat* case binds this court's evaluation of whether a person having ordinary skill in the art would find the allegedly clerical error with claim 8 immediately

---

[45] 501 F.3d 1263 (Fed. Cir. 2007).

[46] *Id.* at 1270.

[47] *Id.*

[48] *Id.* at 1271.

> The diagram of Reaction Scheme II makes clear that it is the (-)-diol that is converted to (+)-citalopram and that the correction in the claim corresponds to the disclosure in the specification. We therefore agree that the change in the optical sign during reissue does not represent a change of claim scope, but merely a correction of the claim to be consistent with the disclosure of the specification.

[49] *Id.*

[50] *Id.*

12
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

                                                                          Case5:13-cv-00825-PSG   Document119   Filed08/15/14   Page13 of 19

apparent. The court, too, is not persuaded that it is bound, even if it can look to Judge

Armstrong's prior construction and summary judgment order as persuasive authority.

Second, Microsoft's suggestion that any invalid patent cannot be rewritten without breaching Section 251's bar on redrafting broader claims – an invalid patent claim covers no products – does not hew to the standard articulated in *Forest Labs.*[51] Nor is Microsoft's suggestion that *Forest Labs.* involved only a typographical error, and not a substantive change to the claim, persuasive.[52] Stereoisomers, like the enantiomers at issue in *Forest Labs.*, can exhibit profoundly different physical properties.[53] Microsoft's lurking beef is that the

---

[51] *See Forest Labs.*, 501 F.3d at 1270.

> The '712 reissue patent resulted from an application filed more than two years after the grant of the original patent, and the claims of a reissue patent filed after that date are invalid if they enlarge the scope of the original claims. *See* 35 U.S.C. § 282; *Quantum Corp. v. Rodime PLC,* 65 F.3d 1577, 1583 (Fed. Cir. 1995). However, a change in a reissue application that is only clerical does not necessarily broaden the scope of the claims and so does not render the patent invalid. The question before us is whether the change effected in the reissue application here broadened the scope of claim 11 or merely clarified or corrected the original claim.

*See also Hickory Springs Mfg. Co. v. Fredman Bros. Furniture Co.*, 338 F. Supp. 636, 637 (S.D. Ill. 1972).

> Defendant argues that original claim 3, having been adjudged invalid, has no scope, and that the comparison of reissue 3 must be limited to the scope of other original claims, except original 3. That argument must be rejected. Original 3 is a nullity and it has no scope in the context of any contention that it might be infringed. However, it must be considered in the context of any determination whether reissue claims enlarge the scope of the claims of the original patent which they supersede. The determination question is whether a contested reissue claim is broader in scope than the apparent scope of the totality of the claims allowed in the original patent.

[52] *See* Docket No. 115 at 6.

> This is not a case involving a mere correction of a simple "typographical error" – the changes at issue here are far more substantial than in Forest Laboratories, which dealt with changing a single character from a plus sign to a minus sign. (citing *Forest Labs.*, 501 F.3d at 1271).

[53] *See* Roland Kallenborn & Heinrich Huhnerfuss, *Chiral Environmental Pollutants: Trace Analyzed Ecotoxicology* 11-12 (2001) (comparing diastereomers which "in general possess different physical" properties, with enantiomers that "exhibit identical physical and chemical properties except in two important" respects).

> [Enantiomers] rotate the plane of linearly polarised light in opposite directions, though in equal amounts. The isomer that rotates the plane to the left (counterclockwise) is called the levo-isomer which is indicated with (-), while the one that rotates the plane to the right (clockwise) is called the dextro-isomer and is designated (+).

<pre>United States District Court
For the Northern District of California</pre>

Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

Federal Circuit got it wrong in *Forest Labs.*[54]  The court appreciates the tension between the plain language of Section 251 and *Forest Labs.*' holding that a substantive amendment more than two years after issuance nevertheless can be deemed clerical.  But this trial court is not in a position to challenge clear Federal Circuit precedent.

Third, 35 U.S.C. § 282 requires Microsoft to prove its invalidity defense "by clear and convincing evidence."[55]  Here, the court must respect that four examiners from the PTO have

---

> [Enantiomers] react at different rates with other chiral compounds. These rates may be so close that the distinction is practically useless, or they may be so far apart that one enantiomer undergoes the reaction at a convenient rate, while the other does not react at all. This is the reason why many compounds are biologically active while their enantiomers are not.  However, enantiomers react at the same rate with achiral compounds.
>
> Furthermore, enantiomers may react at different rates with achiral molecules, if a chiral catalyst is present, they may show different solubilities in a chiral solvent, they may exhibit different indexes of refraction or absorption spectra when examined with circularly polarised light.

*See generally* Malcolm W. Browne, *'Mirror Image' Chemistry Yielding New Products* (Aug. 13, 1991) available at http://www.nytimes.com/1991/08/13/science/mirror-image-chemistry-yielding-new-products.html

> Chemical compounds that come as mirror-image pairs are sometimes compared with left-hand and right-hand gloves and are referred to by chemists as "chiral" (pronounced "KYE-ral"), or handed molecules.  Each twin is called an enantiomer (pronounced en-ANT-ee-oh-mer).
>
> Despite the close resemblance of such twins, the differences in their biological properties can be profound.
>
> In 1960, hundreds of European babies whose mothers had taken the sedative thalidomide were born deformed.  Some chemists believe that one of the two mirror-image molecules contained in thalidomide may have been responsible, and that had thalidomide been purified to exclude the evil, mirror-image twin, the disaster might never have occurred.
>
> Because the left- and right-handed twin of a chemical pair often behave very differently from each other in the body, chiral twins are coming under increasing scrutiny among chemical and pharmaceutical manufacturers, biologists, agronomists, entomologists and regulatory agencies.

[54] *See* Docket No. 115 at 4 n.3.

> Microsoft respectfully disagrees with the Federal Circuit's creation of this exception. Whether an error is "clerical" or not, the plain language of 35 U.S.C. § 251 provides only a narrow two-year window within which to correct it.

[55] *i4i*, 131 S. Ct. at 2242.

> Under § 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.

14
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

already considered whether or not the reissue application complied with Section 251.[56] Each of these examiners ultimately concluded that the reissue application complied with Section 251.[57] Because a reasonable jury could consider this and similarly find that a person having ordinary skill in the art would immediately recognize the error – a key fact underlying the Section 251 inquiry – summary judgment of invalidity is not warranted.[58]

At bottom, whatever its wisdom, Congress established a liberal mechanism for fixing otherwise invalid patents and the Federal Circuit has made it clear that some substantive mending beyond the typographical beyond two years is permitted.[59] Given Microsoft's burden

---

[56] Docket No. 85-5 at ¶ 12.

> During the second interview, Examiner Lamont Spooner, Supervisory Patent Examiner Patrick Edouard, and Special Programs Examiner Kenneth Wieder all agreed that the broadening rejection of claims 1-96 would be resolved by applicant submitting a response reflecting the discussions conducted during the second interview. Indeed, Examiner Lamont Spooner, Supervisory Patent Examiner Patrick Edouard, and Special Programs Examiner Kenneth Wieder all agreed that claims 1-96 as amended/added in the '519 application were much clearer and indeed narrower than claims 1-16 in original U.S. Patent No. 5,822,720.

The court need not explore whether additional deference on top of the clear and convincing standard is warranted. That question is not dispositive of the motion before the court.

[57] *See id.* at ¶¶ 12-15.

[58] As explained above, Section 251 is a question of law predicated on underlying questions of fact. *Cf. CardioFocus, Inc. v. Cardiogenesis Corp.*, 859 F. Supp. 2d 192, 198-99 (D. Mass. 2012).

> Because genuine issues of material fact remain with respect to the scope and content of the prior art, the differences between the asserted claims and the prior art, the understanding of a person of ordinary **\*199** skill and secondary conditions of non-obviousness, defendant's motion for summary judgment on obviousness grounds will be denied.

*Innovention Toys, LLC v. MGA Entm't, Inc.*, Case No. E-07-cv-6510, at 4 (E.D. La. Oct. 1, 2012).

> As a finding of obviousness pursuant to 35 U.S.C. § 103 is a conclusion of law predicated on factual findings, *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012), and the Court's review of the submitted summary judgment evidence indicates that the Court would be required to resolve disputed material facts to make this finding, summary judgment for Innovention or MGA is inappropriate at this time. The Court concludes that whether the '242 patent is obvious or nonobvious is better left to a full presentation of the evidence, subject to crossexamination, that a trial on the issue will afford.

[59] *See In re Weiler*, 790 F.2d at 1579 (Fed. Cir. 1986).

of proof and the existence of a genuine disputed factual issue as to whether the fixes to the structural problems of the claim would have been immediately apparent to a person having ordinary skill in the art, trial on the invalidity of the reissue patents is required.[60]

### B. Motion for Summary Judgment of Invalidity of the '985 Patent

Microsoft also urges that summary judgment is warranted because the automatic distribution of dictionary files in the prior art – specifically Office 95 and Office 97 – "to end-user machines as part of the initial installation is sufficient to satisfy the Court's claim construction. Because systems administrators could use SMS to 'syndicate' dictionary files automatically to remote subscribed" computers, use of Microsoft Office together with SMS "anticipates and renders obvious all of the asserted claims from the '985 patent."[61]

Sentius counters with the declaration of its expert Vijay Madisetti who explains that "Office 95 or Office 97 simply could not automatically obtain any dictionaries from Microsoft so as to be able to use the latest available dictionary" versions and thus "Microsoft does not demonstrate that it made available syndicated data objects representing a portion of a <u>term database</u> for <u>automatic</u> download over a network by <u>subscribed</u> programs that are then used perform the

---

In enacting the statute, Congress provided a statutory basis for correction of "error". The statute is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally. (citations omitted).

[60] The court observes that both Section 251 and Section 103, while ultimately questions of law reserved for the court, reserve underlying questions of fact for jury determination. *See Pregis Corp. v. Kappos*, 700 F.3d 1348, 1353-54 (Fed. Cir. 2012).

Obviousness under 35 U.S.C. § 103 is a question of law based on underlying facts. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed.Cir. 2003). What a reference teaches and whether a person of ordinary skill in the art would have been motivated to combine the teachings of separate references are questions of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed.Cir. 2000); *Para-Ordnance Mfg. v. SGS Imps. Int'l*, 73 F.3d 1085 (Fed.Cir.1995). [The Federal Circuit] reviews a jury's conclusions on obviousness de novo, "and the underlying findings of fact, whether explicit or implicit in the verdict, for substantial evidence." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1353 (Fed.Cir.2001).

*See also* supra note 32.

[61] *See* Docket No. 92 at 2.

16
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

parsing, identifying and associating steps by such" programs.[62]  SMS 1.2 in combination with either Microsoft Office 1995 or 1997 "does not disclose or provide these requirements of the asserted claims of the '985 patent."[63]

Once again the court confronts whether the asserted claims of the '985 patent require the dictionary files lodged within Office to be loaded or available to be accessed by a subscribed computers (e.g. the clients) or whether the claims cover a term database that is updatable and capable of being sent out to subscribed computers.  This fight has spilled over from the parties' thoughtful claim construction arguments.  Relevant here, the court held that "syndicating" and "syndicated" within claims 1 and 11 of the '985 patent means "making content available for automatic download over a network to one or more remote subscribed computers."[64]  The court adopted Sentius' proposed construction because it agreed that the '985 patent was directed towards automatic updates of the term database.

Madisetti's declaration, at a minimum, creates a triable issue whether or not "making content available for automatic download over the internet to one or more remote subscribed computers" is satisfied by the automatic distribution of dictionary files to end-user machines as part of the initial installation of the Microsoft Office suite.  Summary judgment is not warranted.[65]

**C.     Construction of "Reference Information" in Claim Claims 70 & 154 of the '633 Patent**

Dependent claims 70 and 154 of the '633 patent provide:

---

[62] *See* Docket No. 87-4 at ¶¶ 41, 46 (emphasis in original).

[63] *Id.* at ¶ 41.

[64] *See* Docket No. 66 at 2.

[65] The court does not reach the parties' arguments whether or not Microsoft's reliance on the *Evans Cooling* doctrine was sufficient to warrant summary judgment. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997).

17
Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY

> The method of claim [64 or 146] wherein the link is reference information for retrieving the selected one of the plurality of external reference materials.[66]

Sentius urges the court to adopt a plain and ordinary meaning construction.[67] Microsoft counters that "reference information" means "the external content that is pointed to by the link in the look-up table."[68] All agree that Microsoft's construction would grammatically render the claim nonsensical.[69] Because the court is not inclined to adopt a construction that would facially render the claims nonsensical,[70] and the court finds a plain and ordinary meaning is sufficient, the plain and ordinary meaning of "reference information" will apply.[71]

---

[66] *See* Docket No. 52-4, Ex. 3 at 18:22-24 and 23:42-44.

[67] Sentius alternatively suggests the court construe "reference information" to mean "of information that refers the system to the at least one of the plurality of external reference Materials."

[68] Docket No. 97 at 1.

[69] *See* Docket No. 117 at 114:20-115:2

> Now Microsoft has offered a construction. Their construction is the external content that is pointed to by the link in the lookup table.
>
> And there are a lot of flaws with that, we point them out in our brief. But the main flaw is that it creates this nonsensical circular construction in which the external reference material and the external content become the same thing.

*See id.* at 128:10-12.

> They put us to task and say, well Microsoft's construction, you know, makes nonsense of the claims and would lead probably to a finding of invalidity, we acknowledge that straight up, but so does theirs.

[70] *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("the claim construction inquiry" begins "and ends in all cases with the actual words of the claim").

[71] *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008).

> Although we agree with the district court's initial assumption that a single "claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent," *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1342 (Fed. Cir. 2001), the patentee's mere use of a term with an antecedent does not require that both terms have the same meaning. Specifically, *Process Control* did not announce a rule that the reference to an antecedent absolutely requires a term to be consistently construed across uses. *Cf. Epcon Gas Sys., Inc. v. Bauer Compressors,* Inc., 279 F.3d 1022, 1030-31 (Fed. Cir. 2002) ("A word or phrase *used consistently* throughout a claim should be

**IT IS SO ORDERED.**

Dated: August 15, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

*interpreted consistently."* (quoting *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998))).

Case No. 5:13-cv-00825-PSG
ORDER DENYING MICROSOFT'S MOTIONS FOR SUMMARY JUDGMENT OF INVALIDITY