Steven G. Sklaver (SBN 237612)
Meng Xi (SBN 280099)
Krysta Kauble Pachman (SBN 280951)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Email:  ssklaver@susmangodfrey.com
Email:  mxi@susmangodfrey.com
Email:  kpachman@susmangodfrey.com

Seth Ard (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone:  (212) 336-8330
Email: sard@susmangodfrey.com

Max L. Tribble (*Pro Hac Vice*)
Vineet Bhatia (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Email: mtribble@susmangodfrey.com
Email: vbhatia@susmangodfrey.com

Sandeep Seth (SBN 195914)
SETH LAW OFFICES
Two Allen Center
1200 Smith St., Suite 1600
Houston, TX 77002
Telephone: 713-353-8847
Email: ss@sethlaw.com

Attorneys for Sentius International, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 5:13-cv-00825-PSG<br><br>**PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT (DIRECT, INDIRECT, OR WILLFUL)**<br><br>Date:   January 13, 2015<br>Time:  10:00 a.m.<br>Judge: Hon. Paul S. Grewal |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ............................................................... 2

        A.      History of the Patents and Technology ........................................................ 2

        B.      Claim Construction ...................................................................................... 3

        C.      Asserted Claims and Accused Products and Functionalities ....................... 4

        D.      Undisputed Facts Regarding the "Link" Limitation .................................... 5

        E.      Microsoft's Pre-Suit Knowledge of Sentius's Patents and Technology ...... 6

III.    LEGAL STANDARDS ............................................................................................. 7

        A.      Summary Judgment ...................................................................................... 7

        B.      Infringement ................................................................................................. 7

        C.      Willful Infringement .................................................................................... 8

        D.      Pre-Suit Damages for Indirect Infringement ............................................... 9

IV.     ARGUMENT ............................................................................................................ 9

        A.      Microsoft Infringes Because Background Spell Check and Grammar
                Check Both Use a Pointer in the Look-Up Table ......................................... 9

                1.      Microsoft's fError Flag and the "Link" Limitation ......................... 9

                2.      Microsoft's Non-Infringement Arguments Are Fallacious ........... 12

        B.      Sentius Already Dropped "Actions" for 2010 and 2013 ............................ 16

        C.      Sentius Can Prove Direct Infringement ..................................................... 17

        D.      Sentius's Willful Infringement Claim Should Be Tried to a Jury ............. 19

                1.      Pre-Suit Knowledge of the Reissued Patents May Be Inferred .... 19

                2.      A Denial of And Pendency of Summary Judgment Motions Do
                        Not Defeat Sentius's Ability to Prove Objective Recklessness ..... 21

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT

CASE NO. 5:13-CV-00825-PSG

3480335v1/012741

3.      Microsoft's Pre-Suit Conduct Also Favors Preserving
Willfulness for Trial ................................................................................22

E.      Sentius Can Prove Entitlement to Pre-Suit Damages for Indirect
Infringement ......................................................................................................23

V.      CONCLUSION ..............................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3480335v1/012741

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Absolute Software, Inc. v. Stealth Signal, Inc.,*
    659 F.3d 1121 (Fed. Cir. 2011) ........................................................................7

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.,*
    682 F.3d 1003 (Fed. Cir. 2012) ...................................................................8, 21

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.,*
    635 F.3d 1373 (Fed. Cir. 2011) ........................................................................7

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
    246 F.3d 1336 (Fed. Cir. 2001) ........................................................................8

*Gart v. Logitech, Inc.,*
    254 F.3d 1334 (Fed. Cir. 2001) ........................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    131 S. Ct. 2060 (2011) ......................................................................................9

*Great No. Corp. v. Davis Core & Pad Co., Inc.,*
    782 F.2d 159 (Fed. Cir. 1986) ........................................................................20

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,*
    897 F.2d 508 (Fed. Cir. 1990) ..........................................................................8

*In re Seagate,*
    497 F.3d at 1374 ............................................................................9, 21, 22, 23

*McConnell v. Frank Howard Allen & Co.,*
    574 F. Supp. 781 (N.D. Cal. 1983) ................................................................18

*Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.,*
    527 F.3d 1330 (Fed. Cir. 2008) ........................................................................8

*Optical Disc Corp. v. Del Mar Avionics,*
    208 F.3d 1324 (Fed. Cir. 2000) ........................................................................8

*Provenz v. Miller,*
    102 F.3d  1478 (Fed. Cir. 1996) ........................................................................8

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992) ..........................................................................8

*See Lift-U v. Ricon Corp.*, No. 10-cv-1850-LHK,
  2012 U.S. Dist. LEXIS 153795 (N.D. Cal. Oct. 25, 2012) ...............................................22

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010) ..................................................................................9, 21

*SRI Int'l v. Matsushita Elec. Corp.*,
  775 F.2d 1107 (Fed. Cir. 1985) ........................................................................................7

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
  96 F.3d 1409 (Fed. Cir. 1996) ........................................................................................19

*SynQor, Inc. v. Artesyn Techs.*,
  709 F.3d 1365 (Fed. Cir. 2013) ...............................................................................passim

*TV Interactive Data Corp. v. Microsoft Corp.*,
  No. C-02-02385-JSW, 2005 WL 1910929 (N.D. Cal. Aug. 10, 2005) .................9, 19, 23

*Union States Gypsum Co. v. Nat'l Gypsum Co.*,
  74 F.3d 1209 (Fed. Cir. 1996) ..........................................................................................7

<u>Statutes</u>

35 U.S.C. § 252 .......................................................................................................................21

35 U.S.C. § 271(b) and (c) ....................................................................................................9, 24

35 U.S.C. § 284 .........................................................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3480335v1/012741

## I.      **INTRODUCTION**

Microsoft argues that there is no infringement of either the '731 patent or the '633 patent because it does not record a link to external reference materials in a look-up table as claimed in the asserted claims.   This is factually incorrect.   The recording of the fError flag links a given misspelled word or grammatically incorrect word or phrase to its corresponding spelling or grammar correction in at least the following three ways, all of which are consistent with the Court's construction that the term "link" acts as a "pointer to data or information or the location of data or information that is external to the source material":

Microsoft has previously conceded that a "link" can be either a pointer directly to external reference material (a "direct" pointer), or a pointer to another pointer (an "indirect" pointer).   Dkt. 74 at 7; *see also* Dkt. 55 at 15-17.   But it now seeks to backtrack on that admission by arguing that the link "by itself" must directly point to external reference information.   This eleventh hour change of position should be rejected.

Microsoft also incredulously asserts that it has never itself used the accused background spell check and grammar check functionality, but the facts show otherwise.   Microsoft seeks summary judgment on "Actions" for Office 2010 and 2013, which is moot as Sentius previously withdrew those products from the accused products list.   Microsoft does not seek summary judgment on "Actions" in Office 2007, so that issue is ready for trial.

Finally, Microsoft seeks to exclude a claim for willful infringement and pre-suit damages

1

for indirect infringement on the ground that it had no pre-suit knowledge of the reissue patents. But Microsoft clearly had pre-suit notice of the patents after multiple meetings with Sentius's founder, who demonstrated technology embodying the reissue patents to various teams at Microsoft.  Microsoft's citation of the asserted patents using their predecessor's patent number dozens of times in its own USPTO filings for the last decade—including many years after the '731 patent reissued—also militates against its assertion of lack of pre-suit knowledge.  Microsoft now argues that it never had notice that the patents reissued.  Microsoft's knowledge is a fact issue that precludes summary judgment.

## II.        RELEVANT FACTUAL BACKGROUND

### A.        History of the Patents and Technology

Sentius developed, marketed, and licensed software for over 13 years.  *See* Dkt. 85-1 at 1. Sentius owns the two patents-in-suit,[1] which relate to database linking technology invented by Sentius's founder, Marc Bookman, and three other former Sentius employees.  *Id.* at 2.  The two reissue patents at issue in this motion, U.S. Patent Nos. RE40,371 ("'731 Patent") and RE43,633 ("'633 Patent"), arose out of work begun by the inventors in 1991.  *Id.*  The reissue patents claim priority to an application filed in February of 1994, and the inventors have continued to work as known experts in related fields.  *Id.*  The reissue patents disclose and claim features incorporated into particular versions of Sentius's RichLink and Mikan technologies, which practiced the patented inventions beginning in 1993.  After Mr. Bookman demonstrated the technology that practiced the reissue patents to Microsoft in 1998, a Microsoft employee sent an internal email stating that he "[r]an across a company with some interesting technology: Sentius with a product: RichLink that provides automatic and manual indexing/annotation of documents."  *Id.* & Dkt. 85-2.  After Mr. Bookman demonstrated later technology to Microsoft in 2003, Microsoft employees again praised the technology.  Dkt. 85-1 at 2.

The specification of the '720 patent—which is identical to the specifications of the reissue patents—describes a process involving a series of steps whereby (1) a document is loaded into

---

[1] Sentius previously asserted two patents from a second patent family but voluntarily withdrew assertion of these patents in order to streamline the litigation.  *See* Dkt. 88 & 127.

memory with a beginning position address, (2) parsed (i.e. cut into pieces) to identify terms or phrases of interest, (3) the starting and ending addresses to the beginning position are determined for the terms or phrases of interest and recorded in a look-up table, and (4) linking information is also recorded for each identified term or phrase so as to allow the system to retrieve external content corresponding to that "piece" of the document. Dkt. 85-3 at 5.  When a user indicates an interest in getting more information about a portion of the document, such as by right-clicking  a word or phrase at a particular cursor point, the system (a) selects the indicated portion, (b) determines its address, (c) converts the address to an offset value relative to the beginning position of the document, (d) compares the offset value to the starting and ending addresses stored in the table to identify if it corresponds to a piece of the document for which a link has been recorded, and then (e) uses the linking information to access and retrieve external reference information for display in a pop-up window.  *Id.*

**B.      Claim Construction**

After briefing and a hearing held on January 8, 2014, the Court construed the following terms relating to the reissue patents in its claim construction order:

| CLAIM TERM/DISPUTE | CONSTRUCTION |
| --- | --- |
| "database"<br>The '633, '731, and '985 patents | a collection of data with a given structure for accepting, storing and providing, on demand, data for at least one user |
| "a link to the at least one of the plurality of external reference materials/links to the external reference materials"<br>The '633 and '731 patents | a pointer to data or information or the location of data or information that is external to the source material<br><br>/<br><br>pointers to data or information or the location of data or information that is external to the source material |

Dkt. 66.  The Court subsequently held that the plain and ordinary meaning of the term "reference information" will apply in dependent claims 70 and 154 of the '633 patent, which provide: "The method of claim [64 or 146] wherein the link is reference information for retrieving the selected one of the plurality of external reference materials."  Dkt. 119 at 17-18.

With regard to the construction of "link," Microsoft has repeatedly conceded that a "link" can be either a direct pointer to external reference material or an indirect pointer to another pointer. Dkt. 74 at 7 ("There is no dispute that a 'link' in the independent claims can be either a pointer directly to external reference material (a "direct" pointer), or a pointer to another pointer (an 'indirect' pointer)."); *see also* Dkt. 55 at 15-17.  Microsoft has also conceded that a link may be "static" or "dynamic," giving the examples of "a memory address," "a hyperlink," and a "reference numeral."  Dkt. 55 at 16 ("A "pointer" can be static (*i.e.*, always pointing to the same thing) or dynamic (*i.e.*, pointing to different things at different times).  None of these are excluded by Microsoft's proposed construction.")

### C.      Asserted Claims and Accused Products and Functionalities

On September 8, 2014, Sentius served an infringement report by its technical expert, Dr. Vijay Madisetti.  *See* Ex. A to the Declaration of Dr. Vijay Madisetti in Support of Sentius International, LLC's Opposition to Defendant's Motion for Summary Judgment of No Infringement, filed concurrently herewith ("Madisetti Decl.").  As the case now stands, the remaining asserted claims (i.e., excluding previously asserted claims that have been dropped) are:

- For the '731 patent: claim 96
- For the '633 patent: claims 62, 64, 70, 146, 148, 149, 154, 164

The accused products for the '731 and '633 patents are the 2013, 2010, and 2007 versions of Microsoft Word, Outlook, PowerPoint, OneNote, and Publisher for Windows, and the 2011 versions of Microsoft Word, Outlook, and PowerPoint for Macintosh.  For the patents-in-suit, the accused functionality is the spell check functionality of each of the accused products; the grammar check functionality of Word and Outlook in both Windows and Macintosh versions, and the "Actions"/"Smart Tags" functionality of Word, Outlook, and PowerPoint in Windows.  The "Actions"/"Smart Tags" functionality is only accused for the 2007 Office version.  The "Actions" functionality in the 2010 and 2013 Office versions is not accused.

Dr. Madisetti's 731-page infringement report provided in painstaking detail Sentius's infringement theory for each asserted claim.  The report cites at length to Microsoft's documents,

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

CASE NO. 5:13-cv-00825-PSG

3480335v1/012741

deposition testimony, and source code, along with external sources.  The report contains a detailed analysis of why a flag functions as a pointer in Microsoft's accused products, and explains how, for example, the accused Microsoft functionalities meet the claim element by using the Court's construction of "link": because they "link to the at least one of the plurality of external reference materials."  *See, e.g., id.* at ¶¶ 213-33.

**D.     Undisputed Facts Regarding the "Link" Limitation**

There is no genuine dispute that the accused background spell check functionality[2] identifies a misspelled word in an open Word document and records its starting and ending character position values in the spelling PLC. Madisetti Decl., ¶¶32, 42.  There is also no dispute that the accused table

_____

[2] The "link" functionality for spell check and grammar check is substantially similar for purposes of this motion. Madisetti Decl., ¶14. Accordingly, the same discussion pertaining to spell check also applies to grammar check, and vice versa.

5

The language of the character string of the clicked-on word is identified based

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  These suggestions are subsequently contained in a pop-up menu for display to a user. *Id.* ¶¶7, 9.

### E.    Microsoft's Pre-Suit Knowledge of Sentius's Patents and Technology

Sentius representatives, including founder Marc Bookman, met with Microsoft representatives, including Don Bradford, General Manager of Macintosh Internet, on multiple occasions between January and April 1998 to discuss a potential partnership. Dkt. 85-1 at 2; Dkt. 85-2; Exs. 1 to 5 the Declaration of Seth Ard in Support of Sentius International, LLC's Opposition to Defendant's Motion for Summary Judgment of No Infringement, filed concurrently herewith ("Ard Decl."). During these meetings, Sentius demonstrated its patented technology to Microsoft. Ard Decl., Exs. 1 to 4.  There can be no dispute that the demonstrated technology "practiced the reissue patents." *See id.;* Ex. 6 (Bookman 5/29/14 Dep. Tr. at 189:22-200:15). Further, the materials demonstrated to Microsoft were marked "patent pending" along with the relevant patent "application number" corresponding to what would have been a published application available at the USPTO.  *Id.* at Ex. 6 (Bookman 5/29/14 Dep. Tr. at 196:12-197:22.); *see also id.* at Ex. 7 ("About Us" page).

Between June and November 2003, Sentius representatives, including Mr. Bookman, again met with Microsoft representatives, including Alay Desai, Director of Business Development, Microsoft Emerging Business Team, to discuss a potential partnership. Dkt. 85-1 at 2; Ard Decl. at Exs. 8 to 17.  During these meetings, Sentius demonstrated its patented technology to Microsoft. *Id.* at Exs. 9 to 11.  The parties also exchanged various emails and Sentius sent Microsoft demo materials and presentations further discussing its technology.  *Id.* at Exs. 8 to 17.  At least two

Microsoft employees downloaded and registered Sentius's RichLink Author tool off the web after a demonstration.  Dkt. No. 133-1.

Before this lawsuit was instituted, Microsoft cited the '720 patent as prior art to its patents in Information Disclosure Statements ("IDS") filed with the Patent Office close to thirty-five times.  Ard Decl. at Exs. 18 to 48, 52 to 57.  Microsoft's earliest patent application filings that cite the '720 patent date back to December 1999, with IDSs disclosing the patent as prior art filed in May and June 2004.  *Id.* at Exs. 18 to 26.  After June 9, 2009, when the '731 patent, the first of the reissue patents, issued from the predecessor '720 patent, Microsoft continued to cite the '720 patent at least five times.  *Id.* at Exs. 55 to 58.

## III.      LEGAL STANDARDS

### A.      Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Union States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996). The burden of demonstrating the absence of any genuine issue of material fact rests with the moving party. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

### B.      Infringement

Patent infringement is a question of fact.  *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130-31 (Fed. Cir. 2011).  To determine infringement, the fact-finder compares the construed claims to the allegedly infringing product and determines whether every limitation is present. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). Summary judgment is proper only if no reasonable jury could find infringement. *Id.* at 1339. All of Sentius's infringement evidence must be credited and all justifiable inferences from that evidence must be drawn in Sentius's favor.  *Id.*  A conflict between the parties' experts on a material issue defeats summary judgment.  *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011); *see also Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1339 (Fed. Cir. 2008) ("The conflict in [expert] declarations created a genuine issue of material fact that

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT

CASE NO. 5:13-cv-00825-PSG

3480335v1/012741

made summary judgment inappropriate."); *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1338-39 (Fed. Cir. 2000) (vacating summary judgment where the parties' experts offered conflicting testimony); *Provenz v. Miller*, 102 F.3d  1478, 1490 (Fed. Cir. 1996) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.").

### C.    Willful Infringement

Under 35 U.S.C. § 284, the Court has discretion to award enhanced damages when "the infringer acted in wanton disregard of the patentee's patent rights, that is, where infringement is willful." *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed. Cir. 1992). Willfulness is a question of fact determined from the totality of the circumstances. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990).

Infringement is willful when the infringer was aware of the asserted patent, but nonetheless "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) *aff'd,* 131 S. Ct. 2238 (2011) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).   After satisfying this objective prong, "the patentee must also show that the infringer knew or should have known of this objectively high risk." *Id.*   Pre-suit notice of a related patent to the patents-in-suit may be sufficient to establish the knowledge prong of a willful infringement claim. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1352-57, 1361 (Fed. Cir. 2001) (upholding enhanced damages for willful infringement when damages were calculated from the date the infringer had pre-suit notice of a related patent-in-suit even though notice of the other patents-in-suit occurred five years later when the suit was filed).

To establish objective recklessness, one prong of the willful infringement inquiry, a plaintiff must prove that the "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012). An accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions, Inc. v.*

8

*Medtronic Sofamor Danek USA*, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010); *see In re Seagate*, 497 F.3d at 1374 ("A substantial question about invalidity or infringement is likely sufficient [to avoid] a charge of willfulness based on post filing conduct.").   However, that question is normally reserved for the jury.  *i4i*, 598 F.3d at 860 (jury properly heard and rejected Microsoft's arguments that it reasonably believed there were substantial defenses to a claim of infringement).

### D.        Pre-Suit Damages for Indirect Infringement

Liability for induced or contributory infringement under 35 U.S.C. § 271(b) and § 271(c) requires "knowledge of the existence of the patent that is infringed." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  Direct evidence of that knowledge, however, is not required; circumstantial evidence giving rise to an inference of pre-suit knowledge is sufficient. *See SynQor, Inc. v. Artesyn Techs.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013) (affirming denial of JMOL of noninfringement where circumstantial evidence established defendant's pre-suit knowledge of the patents because defendants were shown to have had in their possession datasheets and products marked with plaintiff-patentee's earlier patents, including one to which the patents-in-suit claimed priority). Indeed, if defendant had pre-suit knowledge of the patent—or a related patent—summary judgment to preclude pre-suit damages for indirect infringement will be denied. *TV Interactive*, 2005 WL 1910929, at *2.

## IV.      ARGUMENT

### A.        Microsoft Infringes Because Background Spell Check and Grammar Check Both Use a Pointer in the Look-Up Table

#### 1.        Microsoft's fError Flag and the "Link" Limitation

Microsoft disputes whether a misspelled word (or a grammatically incorrect word or phrase) is linked to its suggested corrections in its accused spell (and grammar) check system.  It does not take much more than seeing that the same suggested corrections are repeatedly shown for any given misspelled word or grammatically incorrect word or phrase to see that the misspelled word and its suggested corrections are "linked."  That is because the recording of an fError flag in a given location in the spell check look-up table points the system to (a) an appropriate language spell check library for the misspelled word and (b) the character string of the misspelled word

9

needed to be passed to that library so that (c) the corresponding corrections for that character string may be selected, retrieved, and displayed.  Madisetti Decl., ¶¶27, 29-41.  The recording of an fError flag in the grammar check look-up table links to suggested grammatical corrections in the same manner.  *Id.* ¶¶28, 42-54.

The claim language requires a "link to the at least one of the plurality of external reference materials."  The accused spell check functionality indisputably meets this requirement. ███████ ██████████████████████████████████████████████████████████████ s "a pointer to data or information or the location of data or information that is external to the source material," because it links a misspelled word to its suggested spelling corrections from an appropriate language spell check library. Microsoft does not dispute that of the specific language spell or grammar check libraries are (1) "external" to the source material, and (2) contain the specific corrections that will be selected and retrieved for display.  Madisetti Decl., ¶ 25.

Moreover, there is no factual dispute that the fError flag is used in selecting and retrieving a spelling correction for a given misspelled word from its corresponding language spell check dictionary (i.e., at least one of the plurality of external reference materials).  *Id.* ¶¶12, 15-18, 26, 45.  The accused functionality uses the fError flag to identify ████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██

Specifically, the Court's construction is met in the following three ways with respect to the fError flag for the accused spell check and grammar check functionalities:

███ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

███ █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

In each example, the fError flag is used as "a link to the at least one of the plurality of external reference materials," as the claim requires. Specifically, the spell-check and grammar-check features links a misspelled word or grammatically incorrect word or phrase to the corresponding corrections for that word or phrase from an external library. Madisetti Decl., ¶¶25, 63. As set forth above, the fError flag

Microsoft's technical 30(b)(6) witnesses also confirm that the accused spell check and grammar check functionalities use a "look-up table" with a "link" between a word or phrase in the document and some external content.[3]

---

[3] *See* Ard Decl., Ex. 61 (Little 5/15/14 Dep. Tr. at 57:3-60:10

; *see also id.* at Ex. 62 (Crawley 5/12/14 Dep. Tr. at 33:23-34:7

11

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT
CASE NO. 5:13-CV-00825-PSG

3480335v1/012741

1

2

### 2. Microsoft's Non-Infringement Arguments Are Fallacious

Microsoft's motion, which does not cite any facts about how its code operates or rest on a declaration setting out the lack of any factual dispute, sets forth three principal arguments for non-infringement based on its assertion that there is no "link" in a "look-up table."  None of these arguments has merit.

*First*, Microsoft argues that a flag (Microsoft's "fError" flag) cannot be a "pointer" because "the error flag, by itself, does not identify what the potential corrections are (if there even are any), or where to find them."  Dkt. 129 at 15.  Microsoft's use of the phrase "by itself" must be emphasized, because with it Microsoft attempts to limit the "link" limitation to a "direct pointer." But Microsoft has repeatedly conceded that "a 'link' in the independent claims can be either a pointer directly to external reference material (a "direct" pointer), or a pointer to another pointer (an "indirect" pointer)."  *See, e.g.,* Dkt. 74 at 7; Dkt. 69 at 65:8-9 ("The dispute is not direct/indirect.  That has never been the dispute.").  The Court has construed "link" to be a "pointer"—without any limitation as to whether it must directly refer to external material or whether it may refer to that material through several intermediate steps.  Microsoft's new argument that the link "by itself" must point to the external reference information is inconsistent with its previous positions and the Court's construction, and must be rejected.  In the accused functionalities, the fError flag                          to the external reference material in at least three ways, discussed in the previous subsection.

Microsoft claims that the flag cannot point to the corrections for misspelled words because it is merely a status indicator (of whether an error in spelling or grammar is present) and does not "literally . . . point to anything."  Dkt. 129 at 16.  But this argument depends entirely on Microsoft's added limitation that the "link" be a "direct pointer," and the Court's construction does not require that a pointer must "literally point" to external reference material.  Indeed, Microsoft's

28

position at the *Markman* hearing had been that a flag can be a pointer as long as *eventually* it gets you to the external reference material. *See* Dkt. 69 at 65:23-66:2 ("Mr. Lamberson: I would agree with Your Honor in the sense that if you're saying there has to be something here that is directly connected to something there, or indirectly connected, in the sense that one has to get you to the other, I would agree.")

Microsoft also argues that the error flag cannot be a "pointer" because it does not "point to" or identify potential corrections until *after* the user right-clicks on the marked word or phrase. This "temporal" argument misses the mark because the asserted claims, which recite each step in the order to be performed, specifically contemplate that the "linking" is executed after a user selects a word or phrase for which additional information from an external source is desired. Indeed, the selecting, retrieving (where applicable), and displaying steps occur *after* the recording step (i.e., when the flag is entered along with the starting and ending position of the misspelled or grammatically incorrect word or phrase) in each of the claims. *See* Madisetti Decl., ¶64. Indeed, after the flag is recorded in the accused systems, the linked to spelling or grammar corrections are determined by virtue of the one-to-one correlation between the pointed to character string (and language) and the corrections that will be selected for retrieval and displayed to the user. *Id.*

While it is true that the selecting, retrieval, and displaying steps occur after the flag is recorded in the accused systems, the claim language requires nothing more for infringement. In the accused systems, the link is executed upon the user right clicking on a misspelled word or grammatically incorrect word or phrase in the manner set forth above. *See id*. ¶¶27-28, 64. Microsoft's "temporal" argument thus obscures the issue in dispute because the "link" limitation is satisfied *so long as* the fError flag eventually points to the external reference material.

***Second***, Microsoft contends that no genuine dispute exists because the named inventors on the Sentius reissue patents, Brian Yamanaka and Marc Bookman, conceded that a flag cannot act as a pointer is meritless. Microsoft misstates their testimony. As for Mr. Yamanaka, he clearly testified that there were programming contexts in which a flag could be used as a pointer, and that he has not reviewed Microsoft's code and does not know how Microsoft uses the fError flag:

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT

CASE NO. 5:13-cv-00825-PSG

3480335v1/012741

Q. Now, earlier I believe that **you testified that there are some circumstances in which a flag could be a pointer, if the programming allowed for that?**

**A. If you're referring to earlier today, yes, I did**.

Q. So can you, for example, conceive of the flag being interpreted by the programming to refer to a particular place to look up a dictionary?

MR. LAMBERSON: Objection; incomplete hypothetical, vague.

THE WITNESS: As I had said earlier, so it's an easy trick in C that we use often because back then memory and CPU constraints, where a variable may have two different purposes, oftentimes they would test saying like if null, meaning there is nothing existent. A**nd if it was not null, then I would immediately interpret it as actually pointing to something. Hypothetically, that could be the case.**

Ard Decl., Ex. 63 (Yamanaka 6/20/14 Dep. Tr. at 62:21-63:15 (emphasis added)); *id. at* 60:10-21 ("Do you have any specific information regarding the -- what is happening behind the scenes, for example, in Microsoft's spell check as you go with the red squiggles? A. I have no understanding of that. No, beyond being a user, I'm not sure how it's implemented. Q. So there's no opinions that you're expressing here regarding whether or not the specifics of that system might be infringing this patent? A. I had not even considered that.").

As for Mr. Bookman, just after the excerpt Microsoft cites, he clarifies that a flag can be a pointer and Sentius easily could have used a flag as a pointer in the preferred embodiment:

However, I am certain that if we decided to make this a zero or one, that we would have been able to implement it this way because, again, we were cognizant that this was the exemplary embodiment and there would be many ways for this table to work and we didn't specify exactly how the table should work. So I do believe -- I do believe that if we went with a zero or one for the instructions here in the link column that, yes, the software would have worked and we would have made it work.

*Id.* at Ex. 6 (Bookman 5/29/14 Dep. Tr. at 174:13-22).

Microsoft also repeatedly asserts that a flag and a pointer are not "interchangeable" terms. But that is not the dispute here.[4]  What is in dispute is whether the fError flag is *also* used by the

---

[4]  Nonetheless, one of ordinary skill in the art would know that flags and pointers could be used interchangeably at least as early as the 1980s.  *See, e.g.*, Ard Decl., Ex. 64, U.S. Patent No. 4,872,163 (issued 10/3/1988) at 6:62-65 ("The transmission of the 8-bit code effectively raises a flag or pointer (the "1" in a certain position) …"); Ex. 65, U.S. Patent No. 4,734,931 (issued 3/29/1988) at 17:27-29 ("These mailbox messages can be simply the setting of a flag or pointer for many communication applications.").

14

---

accused programs as a pointer to external reference information, irrespective of whether it is also used a status indicator.  The fError flag in the respective accused functionalities acts as a pointer to external reference information on three levels, as demonstrated above.

Next, Microsoft argues that Sentius's infringement theory improperly conflates the link and starting position address limitations and posits a link that does not point to anything external to the source material.  As shown above, this is incorrect because it is the recording of the fError flag at a particular location in the table that acts as the link.  At best, Microsoft's arguments are tantamount to stating that the linking information cannot be used in conjunction with the starting position address, which is simply false.  The preferred embodiment demonstrates that the purpose of the linking information is to link the word or phrase for a given starting and ending position to the specific external information for retrieval via the linking information.  Madisetti Decl., ¶¶6-7, 11.  Therefore, Sentius does not conflate the "link" limitation and the "starting position address" limitations.

Nor is there any merit to Microsoft's argument that Sentius's infringement theory runs afoul of the "external" limitation because the starting position address in the PLC data structure only indicates a position internal to the document.  This argument ignores Sentius's position that the link indirectly points to suggested corrections for misspelled words from the appropriate library, which are clearly external to the source material (i.e., the document text).  *See* Madisetti Decl., ¶¶17, 24, 57, 58.  At best, Microsoft is arguing that indirect links to the external source material are excluded by the Court's construction, but that, again, is contrary to Microsoft's repeated concessions as well as the Court's construction.

*Finally*, Microsoft calls Sentius's infringement position "flawed" and "nonsensical" because it requires the dictionaries to be called before the error flag is set in order to determine what value to give the flag.  Dkt. 129 at 17-18.  This argument again muddles the issue.  The issue is whether the fError flag recorded in the look-up table is used to link the misspelled word or grammatically incorrect phrase to the specific dictionary and the proper content to be retrieved therefrom for display upon the right-click.  The issue is not—and the claim does not speak to—

whether libraries are also consulted in creating the look-up table.  As Dr. Madisetti testified. ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉

Microsoft sets up a straw man by mischaracterizing Dr. Madisetti's testimony, which was

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See id.* ¶¶5, 34, 36-38, 41,

49-51, 54, 59-61, 63.  The source code cited in the supporting Madisetti Declaration documents this process well.  *See id.*

Microsoft also argues that Sentius's infringement theory contradicts the alleged benefit of using the claimed "look-up table," which is to avoid the need to search through potentially multiple dictionaries each time a user wishes to retrieve a particular piece of external content associated with a word in the document.  Dkt. 129 at 18.  First, there is no "benefit" limitation in the claims.  Second, Microsoft is not required to search through multiple dictionaries to infringe.  To the contrary, Dr. Madisetti has described how the fError flag is used to indirectly point to the particular dictionary to be used to retrieve the external content for display.  Madisetti Decl., ¶¶29-41, 44-54.  Third, to the extent Microsoft is asserting that selecting the material for display after recording the link is somehow excluded by the claim, this would be contradicted by the claim language itself.  Each of the asserted claims specifically include the step of "selecting one of the plurality of external reference materials corresponding to the identified one of the plurality of discrete pieces" after the link recording step.  Thus, the link may be a dynamic link whose particulars are resolved after it is recorded.

## B.       Sentius Already Dropped "Actions" for 2010 and 2013

Microsoft requests summary judgment of non-infringement for the "actions"

functionality of the 2010 and 2013 versions of the accused products.  This request is moot because Sentius informed Microsoft that it no longer accused the "Actions" functionality of the 2010 and 2013 versions of the accused products and confirmed this at Dr. Madisetti's deposition.  *See* Ard. Decl., Ex. 66, at ¶11 (Supplemental Expert Report of Dr. Madisetti,).

Microsoft's does not seek summary judgment on Sentius' theory of infringement by the 2007 "Actions" functionality.  As such, "Actions" in the 2007 version of the accused products is ready for trial.

### C.   Sentius Can Prove Direct Infringement

Microsoft argues that "Sentius has no evidence regarding Microsoft's internal testing or usage of its accused software in the United States" to prove direct infringement by Microsoft. *Mot.* at 15.  Microsoft is essentially arguing that there is no evidence—even circumstantial—that anyone at Microsoft ever used the accused functionalities in its flagship Office product that it developed and that is a cornerstone of its business.

To prove its point, Microsoft disputes the significance of two pieces of evidence that ***directly*** show its internal testing and usage of its accused software in the United States.  First, there is a Microsoft LinkedIn job posting that seeks an employee to test the features of Microsoft office. Dkt. 133-4.  Microsoft attempts to argue that the evidence fails to show that a Microsoft office employee actually used Microsoft's own programs, which defies common sense.  A reasonable jury, however, may infer from the LinkedIn job posting seeking an employee to "test, support and drive design changes to" Microsoft Office that Microsoft employees actually ***do*** test Microsoft Office.  Dr. Madisetti also testified that his understanding, based on reviewing the job posting, is that the chosen applicant would be joining an "existing team" of test engineers for Microsoft Office products. Ard Decl., Ex. 67 (Madisetti 11/24/14 Dep. Tr. at 44:18-45:7).  Second, Microsoft refers to a "Proofing Tools Integration" document seemingly circulated to Microsoft employees that labels the spell checker and grammar checker as "proofing tools" and explains that "we are only responsible for checking the functionality within the Word Application." Dkt. 133-5.  Rather than argue that Microsoft's discussion of how it checks the functionality of its spell checkers and

grammar checkers in Microsoft Word cannot itself constitute direct infringement, Microsoft takes issue that this document was not introduced at deposition.  Microsoft's arguments about whether an employee was actually hired, or whether anyone ever used the "Proofing Tools Integration" document clearly seek to invade the role of the jury by testing the strength of inferences from the evidence at hand.  *See McConnell v. Frank Howard Allen & Co.*, 574 F. Supp. 781, 788 (N.D. Cal. 1983) (noting that summary judgment is inappropriate where conflicting inferences can be drawn from the facts).

Microsoft neglects to address additional evidence that may prove Microsoft's internal testing and use of the relevant software in the United States.  For example, Alex Mogilevsky, a software developer at Microsoft, testified that ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████  Ard Decl., Ex. 68 (Mogilevsky 5/8/14 Dep. Tr. at 30:5-15 ("████████████████████████████████ ████████████").  Another Microsoft employee refers to the accused background spellcheck functionality ███████████████████████████████[5]  A number of internal Microsoft documents also discuss employees testing and using the software.  *See, e.g.*, *id.* at Ex. 70 (MS_SENTIUS086460-61 (████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████) (emphasis added)); Ex. 71 (MS_SENTIUS036640 (█████████████████████████████████████████ ████████████████████████████); Ex. 72 (MS_SENTIUS035208 (internal Microsoft email discussing the contextual spell checker's interaction with the documents prepared in Microsoft Word)); Ex. 73 (MS011104-11 at MS011110 (internal email discussing a smart tag plug-in "that's

---

[5] *See* Ard Decl., Ex. 69 (MS_SENTIUS098309-10); Ex. 68 (Mogilevsky 5/8/14 Dep. Tr. at 131:2-132:8 (confirming ████████████████████████████████); *see also* Ex. 62 (Crawley 5/12/14 Dep. Tr. at 122:21-124:8 (confirming the same)).

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT
CASE NO. 5:13-cv-00825-PSG

3480335v1/012741

tailored to MS office folks")); Ex. 74 (MS096007-08 at MS096007 (" ████████████ ██████████████████████████████████████ ")).

Thus, to the extent Microsoft disputes that a job posting and an internal document about testing Microsoft Office features do not *actually show* Microsoft employees using the features, there are a number of other documents to assist the jury in making the obvious inference.

**D.     Sentius's Willful Infringement Claim Should Be Tried to a Jury**

Microsoft makes two arguments in an attempt to keep Sentius's willful infringement claim from proceeding to trial. First, Microsoft asserts that because Sentius's contacts with Microsoft pre-date the issuance of the reissue patents in 2009, Sentius cannot demonstrate the requisite knowledge of the patents to be able to prove pre-suit willfulness as a matter of law.  Dkt. 129 at 22. Second, Microsoft alleges that its motions for summary judgment of invalidity (Dkt. 76) and non-infringement (Dkt. 129) evidence the presence of "good-faith defenses" sufficient to defeat Sentius's claim of willfulness.  Dkt. 129 at 23.  Microsoft is twice mistaken.

**1.     Pre-Suit Knowledge of the Reissued Patents May Be Inferred**

Microsoft's argument based on lack of pre-suit knowledge turns the summary judgment standard on its head. It is well-settled that a plaintiff need not prove that the defendant had actual pre-suit notice of the patents-in-suit; "circumstantial evidence" is enough.  *See, e.g., i4i Ltd.*, 598 F.3d at 860; *TV Interactive Data Corp. v. Microsoft Corp.*, No. C-02-02385-JSW, 2005 WL 1910929, at *2 (N.D. Cal. Aug. 10, 2005) ("The reference to TVI's '156 patent on a form attached to an Office Action during the prosecution of one of Microsoft's patents . . . indicates that there is a genuine issue of material fact as to whether Microsoft had actual notice of the '156 patent at that time" for willfulness claim). *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1415 (Fed. Cir. 1996)[6] (concluding that the infringer had actual notice of the patent when patent counsel for the defendant saw a drawing and reference to the patent in the Official Gazette of the Patent and Trademark Office); *Great No. Corp. v. Davis Core & Pad Co., Inc.,* 782 F.2d 159, 166-67 (Fed. Cir. 1986) (concluding that the infringer had notice of the patent when a third party

---

[6] While *Stryker*'s "duty of care" standard has been called into question, its analysis of what constitutes pre-suit knowledge of a patent has not.

mentioned to the president of the company that there was a similar product on the market that had been patented).

Here, before this lawsuit was instituted, five times the patent examiners prosecuting Microsoft's patents cited the '720 patent, the predecessor patent from which the patents-in-suit reissued, to Microsoft. *See* Ard Decl., Exs. 51 to 53, 59, 60.  At minimum, this places into dispute Microsoft's actual knowledge of the patents-in-suit by June 2010.   Separately and notably, Microsoft itself cited the '720 patent as prior art to its patents to the USPTO not once, but almost *forty times* before this lawsuit was filed.  *Id.* at Exs. 18 to 48, 52 to 58.  Microsoft's earliest IDS filings that listed the '720 patent date back to May and June 2004.  *Id.* at Exs. 18 to 26.   Thus, Microsoft's pre-suit notice of the '720 patent through its dealings with the USPTO is a disputed issue to be decided by a jury.

Moreover, to the extent Microsoft is arguing that notice of the '720 patent is not the same as notice of the reissue patents, Microsoft's knowledge of the reissue patents may be imputed from its pre-suit knowledge of the predecessor '720 patent.  Recently, the Federal Circuit held that pre-suit knowledge may be inferred if it is shown that the defendant had actual knowledge of an earlier, predecessor patent to the patents-in-suit.  *SynQor*, 709 F.3d at 1380 (affirming denial of JMOL of noninfringement where circumstantial evidence allowed the inference of defendant's pre-suit knowledge of the patents-in-suit because defendants were shown to possess datasheets and products marked with plaintiff-patentee's earlier patents, including one to which the patents-in-suit claimed priority).  Sentius is able to establish more than what the *SynQor* Court found to be sufficient.  First, Microsoft did not merely possess products marked with the '720 patent, but affirmatively cited the '720 patent to the USPTO almost forty times over the course of a decade before this suit was even filed.  Ard Decl., Exs. 18 to 48, 52 to 58.  Second, unlike in *SynQor* where the patents-in-suit merely claimed priority to a patent that the defendant had notice of, here the patents-in-suit reissued from the original '720 patent as its replacement and continuation.  *See* 35 U.S.C. § 252 ("The *surrender* of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the

trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form . . . [and] shall *constitute a continuation thereof* and *have effect continuously from the date of the original patent*.") (emphasis added). Thus, Microsoft's pre-suit knowledge of the '720 patent is imputed to the reissue patents, which are effectively continuations of the '720 patent and are deemed to "have effect continuously from the date of the original ['720] patent." *Id.*

Finally, Microsoft cited the '720 patent at least four times *after* the '731 patent, the first of the reissue patents, issued on June 9, 2009. Ard Decl., Exs. 55 to 58. At minimum, imputation of knowledge of the reissue patents should start from that date, because as a matter of statute the '720 patent is deemed to have been "surrendered" as of that date and the '731 patent is deemed to "have the same effect and operation in law" as the '720 patent from the date of the '720 patent, which issued October 13, 1998. Indeed, after the '731 patent reissued, any search for the '720 patent would have revealed or led the inquirer to the '731 or the '633 patent. From these and the foregoing facts, a jury may plausibly infer that Microsoft had notice of the reissue patents.

### 2. A Denial of And Pendency of Summary Judgment Motions Do Not Defeat Sentius's Ability to Prove Objective Recklessness

Generally, an accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Solutions*, 620 F.3d 1319; *see In re Seagate*, 497 F.3d at 1374 ("A substantial question about invalidity or infringement is likely sufficient [to avoid] a charge of willfulness based on post filing conduct."). The Federal Circuit has explained that the threshold determination of objective recklessness distills to "whether a defense or noninfringement theory [is] 'reasonable." *Bard*, 682 F.3d at 1006. Here, Microsoft's motion does not detail why and how its non-infringement and invalidity defenses as presented in its summary judgment motions are objectively reasonable. Instead, Microsoft makes the conclusory claim that its very filing of these motions, which purportedly evidences its "good faith defenses" to the litigation, is sufficient to defeat a finding of objective recklessness as a matter of law. Not so. Microsoft's motion for summary judgment of invalidity based on Sentius's correction of "clerical errors" (as they were identified by another court) in two non-broadening reissues was swiftly denied by this Court. Dkt. 119. Microsoft's instant motion for summary judgment of non-infringement—theories

21

which are just as likely to be reasonable as they are meritless—is yet to be decided. A showing such as Microsoft's that "does not address the objective reasonableness of the [d]efendant's non-infringement and invalidity defenses" is insufficient to warrant a grant of summary judgment of no willfulness. *See Lift-U v. Ricon Corp.*, No. 10-cv-1850-LHK, 2012 U.S. Dist. LEXIS 153795, at *35-36 (N.D. Cal. Oct. 25, 2012). Further, any question about whether Microsoft's defenses are adequate for it to form a good-faith belief of non-infringement is properly reserved for the jury. *i4i*, 598 F.3d at 860 (jury properly heard Microsoft's arguments that its defenses to validity and infringement gave Microsoft a reasonable belief of non-infringement, and jury had sufficient evidence to reject that contention).

### 3. Microsoft's Pre-Suit Conduct Also Favors Preserving Willfulness for Trial

The Federal Circuit has recognized that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *Seagate*, 497 F.3d at 1374. Microsoft contests this point in the course of denying that it had pre-suit knowledge of the patents-in-suit from Sentius's 1998 and 2003 meetings. However, Sentius possesses sufficient evidence to show that a genuine issue of material fact exists regarding whether Microsoft acted in "willful disregard" of Sentius's patent rights. In addition to the arguments provided in Section II.D.1, *supra*, additional deposition testimony and documents also establish Microsoft's pre-suit knowledge of the patents-in-suit, as follows:

- Mr. Bookman has testified at length about the multiple meetings in 1998 and in 2003 during which he or his team demonstrated Sentius technology "that practiced the reissue patents" to various teams at Microsoft. Ard Decl., Ex. 6 (Bookman 5/29/14 Dep. Tr. at 189:22-200:15); Ex. 75 (Bookman 5/30/14 Dep. Tr. at 214:13-261:9, 267:22-274:13).

- Directly contradicting Microsoft's allegation that "he never told Microsoft anything confidential about the operation of his systems," Dkt. No. 129 at 22, Mr. Bookman testified that all materials demonstrated and sent to Microsoft were marked "patent pending" along with the relevant patent "application number" corresponding to what would have been a published application available at the U.S. Patent & Trademark Office. *Id.*, Ex. 6 (Bookman 5/29/14 Dep. Tr. at 196:12-197:22).

- Both parties have produced dozens of emails and other documents in the course of this litigation evidencing interactions and exchanges in 1998 and 2003 between Microsoft and Sentius involving Sentius's patents and patented technology. Dkt. 85-

2; *see* Ard Decl., Exs. 1 to 5 (1998 communications); Ex. 7 ("About Us" page); Exs. 8 to 17 (2003 communications).

Thus, at the very least, a factual dispute exists over whether Microsoft knew about the asserted patents and patented technology before this lawsuit and acted in willful disregard of such knowledge. The Court should deny Microsoft's motion for summary judgment of no willful infringement.

**E.      Sentius Can Prove Entitlement to Pre-Suit Damages for Indirect Infringement**

Lastly, Microsoft moves to preclude pre-suit damages (that is, damages before February 22, 2013, the date this suit was filed) for Sentius's indirect infringement claim, alleging that Sentius cannot prove that Microsoft had "actual knowledge of the asserted patents" prior to that date.[7] Dkt. 129 at 21. In seeking to exclude "significant . . . damages in this case" hinging on this very issue, Microsoft inexplicably cites to a single interrogatory response by Sentius as evidence of Microsoft's purported lack of pre-suit knowledge of the patents.[8] Dkt. 129 at 21; *see* Dkt. 133-2 at 7. That interrogatory response does nothing to foreclose Sentius's ability to prove pre-suit knowledge of the patents by Microsoft at trial.

Quite the opposite, as detailed at Section II.D.1, *supra*, and incorporating the same arguments in this section, circumstantial evidence giving rise to an inference of pre-suit knowledge sufficiently preserves a claim for pre-suit damages for trial. *SynQor*, 709 F.3d at 1380 (pre-suit knowledge may be inferred if it is shown that the defendant had actual knowledge of an earlier, predecessor patent to the patents-in-suit); *TV Interactive*, 2005 WL 1910929, at *2 (denying summary judgment to preclude pre-suit damages for indirect infringement because defendant had

---

[7] Microsoft limits its argument regarding indirect infringement to the issue of pre-suit knowledge of the patents. Microsoft does not dispute Sentius's ability to prove indirect infringement post-suit or any of the other requirements per 35 U.S.C. § 271(b) and (c) for inducement and/or contributory infringement, e.g., Microsoft's role in actively inducing direct infringement by others or the existence of substantial non-infringing uses of the accused functionalities.

[8] "Interrogatory No. 20: Identify the date on which you contend that You first gave Microsoft actual notice of infringement of the Asserted Claims, and set forth all facts upon which you base your contention and all evidence that supports that contention.  Response: [Objections omitted.] Sentius gave Microsoft actual notice of infringement of the Asserted Claims no later than the date of filing this lawsuit." Dkt. 133-2 at 5-6.

23

pre-suit knowledge of a related patent).   Sentius possesses precisely such evidence. A jury may plausibly infer from Microsoft's knowledge of and citations to the '720 patent that it had actual notice of the two patents-in-suit that reissued from the '720 patent.   *Id.*

As discussed in Section II.D.3, *supra*, and incorporating the same arguments here, Sentius has also shown that it has extensive witness testimony and documentary evidence pertaining to the parties' 1998 and 2003 interactions that bear upon the disputed fact of Microsoft's actual pre-suit notice of the patents-in-suit. Thus, Microsoft's conclusory proclamation that it "did not have actual knowledge of the patents-in-suit prior to the filing of this lawsuit" is demonstrably false.

The Court should not on summary judgment preclude pre-suit damages for Sentius's indirect infringement claim.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Microsoft's Motion for Summary Judgment of No Infringement (Direct, Indirect, or Willful) should be denied in its entirety and the case should proceed to trial.

Dated:  December 30, 2014

SUSMAN GODFREY L.L.P.

By: *s/ Seth Ard*
<u>                                        </u>
Steven G. Sklaver (SBN 237612)
Meng Xi (SBN 280099)
Krysta Kauble Pachman (SBN 280951)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Email:  ssklaver@susmangodfrey.com
Email:  mxi@susmangodfrey.com
Email:  kpachman@susmangodfrey.com

Max L. Tribble (*Pro Hac Vice*)
Vineet Bhatia (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Email: mtribble@susmangodfrey.com
Email: vbhatia@susmangodfrey.com

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Seth Ard (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone:  (212) 336-8330
Email: sard@susmangodfrey.com

Sandeep Seth (SBN 195914)
SETH LAW OFFICES
Two Allen Center
1200 Smith St., Suite 1600
Houston, TX 77002
Telephone: 713-353-8847
Email: ss@sethlaw.com

Attorneys for Plaintiff Sentius International, LLC

25

1

<u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that a true and correct copy of the above and foregoing

3

document has been served on December 30, 2014 to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-1(h)(1).

5

6

By: <u>*s/ Seth Ard*</u>

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF SENTIUS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT

CASE NO. 5:13-cv-00825-PSG

3480335v1/012741