Steven G. Sklaver (SBN 237612)
Meng Xi (SBN 280099)
Krysta Kauble Pachman (SBN 280951)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Fax:  (310) 789-3150
Email:  ssklaver@susmangodfrey.com
Email:  mxi@susmangodfrey.com
Email:  kpachman@susmangodfrey.com

Max L. Tribble (*Pro Hac Vice*)
Vineet Bhatia (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
Email: mtribble@susmangodfrey.com
Email: vbhatia@susmangodfrey.com

Seth Ard *(Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone:  (212) 336-8330
Fax:  (212) 336-8340
Email: sard@susmangodfrey.com

Sandeep Seth (SBN 195914)
SETH LAW OFFICES
Two Allen Center
1200 Smith St., Suite 1600
Houston, TX 77002
Telephone: 713-353-8847
Email: ss@sethlaw.com

*Attorneys for Sentius International, LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 5:13-00825-PSG<br><br>**PLAINTIFF SENTIUS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF SENTIUS' DAMAGES EXPERT, ROBERT MILLS**<br><br>DATE:       January 13, 2015<br>TIME:        10:00 a.m.<br>JUDGE:     Hon. Paul S. Grewal |

**\*\*\* FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER\*\*\***
**CONTAINS INFORMATION DESIGNATED AS "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" AND "HIGHLY CONFIDENTIAL SOURCE CODE"**

1

## TABLE OF CONTENTS

2

3

**TABLE OF AUTHORITIES** ................................................................................................. ii

4

**INTRODUCTION** ......................................................................................................... 1

5

**I.       BACKGROUND** ...................................................................................... 3

6

    **A.   Mr. Mills** ........................................................................................ 3

7

    **B.   Mr. Mills' Damages Analysis** ........................................................ 3

8

**II.      LEGAL STANDARD** ............................................................................... 5

9

**III.     ARGUMENT** ........................................................................................... 6

10

    **A.   Mr. Mills Properly Relied on the Lucent and Arendi Agreements** ...................... 6

11

        **1.   Mr. Mills Relied on the Lucent Agreement, Not the JMOL** ..................... 6

12

        **2.   Mr. Mills Properly Relied on the Arendi Litigation Settlement** ................... 7

13

        **3.   Mr. Mills Properly Converted the Lump Sum Values** ............................... 11

14

        **4.   The Lucent Patent Is Technically Comparable** ........................................ 13

15

        **5.   Mr. Mills Accounted for Differences in Arendi Settlement** ....................... 16

16

        **6.   Mr. Mills Accounted for Economic Differences in the Lucent Settlement** ........................................................................................ 17

17

    **B.   Mr. Mills' "Income Approach" Is Sound** .................................................. 18

18

    **C.   Mr. Mills Did Not Need To Measure Damages By Instances of Usage** ............... 19

19

    **D.   Microsoft's Profits Are Relevant Under *Georgia-Pacific*** .......................... 20

20

**IV.     CONCLUSION** ....................................................................................... 21

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 767 -768 (N.D. Ill. 2010) .......................... 10

*Accessories Marketing, Inc. v. Tek Corp.*, No. C 11-4773 PSG, 2013 WL 1409887,
at *1 (N.D. Cal. April 2, 2013) ................................................ 14

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed.
Cir. 2012) ...................................................... 15

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) ..................................... 6, 15

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indusies., Inc.*, 1 Fed. Appx.
879, 884 (Fed. Cir. 2001) ............................................... 20

*DataQuill Limited v. High Tech Computer Corp.*, Case No. 08-CV-543 IEG
(BGS) , 2012 WL 1284381, (S.D. Cal. April 16, 2012). ..................................... 13

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL
4537838, at *7 (N.D. Cal. Aug. 22, 2013), appeal dismissed (Mar. 18, 2014) ................. 8, 9

*Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2014 WL 2889764, at *3, 6
(N.D. Cal. June 25, 2014) ............................................. 5, 20

*Ericsson, Inc. v. D-Line Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, -- F.3d --,
2014 WL 6804864 (Fed. Cir. 2014). ......................................... 9

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ...................... 15

*Fujitsu Ltd. v. Belkin Intern., Inc.*, No. 10–CV–03972–LHK, 2012 WL 5835741,
*2-*3 (N.D. Cal. Nov. 16, 2012) ........................................ 11, 12

*Golden Bridge Tech. v. Apple Inc*., Case No. 5:12-cv-04882-PSG, slip op. at 7
(N.D. Cal. May 18, 2014) ............................................. 5

*GPNE Corp. v. Apple, Inc*., 2014 WL 1494247, at *10 (N.D. Cal. Apr. 16, 2014) .............. 7, 10

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) *aff'd*, 131 S.
Ct. 2238, 180 L. Ed. 2d 131 (2011) ........................................ 6

*In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ..................................... 8, 11

*Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL
3786633, at *11 (N.D. Cal. July 18, 2013) ..................................... 9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012) ............... 9, 12

*LecTec Corporation v. Chattem, Inc.*, No. 5:08-cv-1302014 WL 5163421, (E.D.
Tex. Jan. 4, 2014) ................................................... 16

*Lucent Technologies, Inc. v. Gateway, Inc.,*580 F.3d 1301, 1330 (Fed. Cir. 2009) ............passim

*Multimedia Patent Trust v. Apple, Inc.*, Case No. 10-CV-2618 H (KSC), 2012 WL
5873711 (S.D. Cal. Nov. 20, 2012),  ....................................... 12

*ResQNet v. Lansa*, 594 F.3d 860, 872 (Fed. Cir. 2010) ...................................passim

ii

*O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088
    (N.D. Cal. 2006)........................................................................................................... 13

*Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) .............................. 15, 16

iii

1    Plaintiff Sentius International, LLC ("Sentius") respectfully submits the following

2    memorandum in opposition to Defendant Microsoft Corporation's ("Microsoft") Daubert Motion

3    to Exclude Testimony of Sentius' Damages Expert, Robert Mills.

4                                   **INTRODUCTION**

5    Mr. Mills submitted a 334-page report, plus exhibits, on the damages adequate to

6    compensate Sentius for Microsoft's use of three infringing features of the accused products:

7    background spell-checking, background grammar-checking and smart tags. He conducted a

8    reasonable royalty analysis using the *Georgia-Pacific* factors.  For background spell-checking

9    and background grammar-checking, Mr. Mills' analysis has two main parts relevant here.  First,

10   relying on Dr. Madisetti's conclusion that the technology of a Lucent patent is comparable to the

11   technology of the '731 patent and the '633 patent as they are used for the accused spell checker

12   and the accused grammar checker, Mr. Mills drew guidance from Microsoft's litigation

13   settlement agreement with Lucent.  Second, relying on a survey conducted by Sentius' survey

14   expert, Dr. Wecker, Mr. Mills drew guidance from an "Income Approach" to valuation, which

15   estimates the incremental profits that Microsoft would stand to lose if it were to remove the

16   accused spell checker and grammar checker from the accused products.  The comparable license

17   and income approaches are analytically distinct, but both confirmed the conclusions reached by

18   Mr. Mills. Finally, for smart tags, Mr. Mills drew guidance from a litigation settlement license

19   between Microsoft and Arendi involving smart tags, again relying on Dr. Madisetti's conclusion

20   that the licensed Arendi technology (smart tags) is comparable to the technology of the '731 and

21   '633 patents as they relate to smart tags.

22   Microsoft first argues that Sentius's "primary theory" seeks to rely "not on a settlement

23   agreement, but on a post-trial decision" in Lucent, then Microsoft complains at length that Mr.

24   Mills has no authority for relying on a JMOL order.   Motion at 1-3, 7.   This is a

25   misunderstanding: Mr. Mills relied on the settlement agreement between Microsoft and Lucent,

26   which retroactively and prospectively released all claims under the Lucent patent (which had

27   expired as of the effective date of the agreement).  Mr. Mills relied on Judge Huff's JMOL

28

1

1  decision only to determine the portion of the ████████ license fee paid by Microsoft to Lucent

2  that is attributable to the license for the '356 patent as it is used in Microsoft Outlook, as opposed

3  to a license for Microsoft Money or an award of costs and prejudgment interest. *Id.* Even if Mr.

4  Mills relied on the JMOL for more than a limited purpose (which he did not), Microsoft does not

5  explain why it would be improper to seek guidance from a judicial decision and jury verdict that

6  decided what the outcome of a relevant hypothetical negotiation would be.

7      Next Microsoft argues that the Arendi smart-tag license cannot be used for calculating the

8  reasonable royalty for Microsoft's infringing use of smart tags because it is a settlement license,

9  but Microsoft ignores that this is the best and only license that either party has cited as being

10  relevant to the accused smart tags feature.  The case law expressly permits use of settlement

11  licenses in this context.

12      Microsoft also seeks to exclude Mr. Mills from relying on the Lucent and Arendi

13  agreements because they are not technically comparable, but Mr. Mills explicitly relies on Dr.

14  Madisetti for those conclusions and Microsoft has not sought to exclude Dr. Madisetti.  For the

15  reasons he gave, these licenses are technically comparable – and notably, Microsoft has not

16  identified any other license that is technically comparable to the patents in dispute here.

17      Finally, Microsoft seeks to exclude the income approach, which it claims is "wholly

18  derivative" on the Lucent effective royalty rate.  That is incorrect: the income approach is an

19  alternative theory of damages based on the Wecker Survey, which made no mention of Lucent,

20  the Lucent patent, or the date-picker functionality in Lucent.  Mr. Mills used the Wecker Survey

21  to determine the revenue and profit Microsoft would stand to lose if it replaced the accused spell

22  and grammar check functionality with the next best and non-infringing alternative that was

23  available to it. After analyzing the relative bargaining positions of the parties, Mr. Mills

24  determined that a 50/50 split of this amount would be reasonable.  Because the Lucent effective

25  royalty rate would yield a 22% split for Sentius of these at-risk profits, Mr. Mills also noted that

26  22% would be conservative estimate.

27      For these reason, Sentius respectfully requests that the motion be denied.

28

2

# I.     BACKGROUND

### A.     Mr. Mills

He is an economist and Director at Micronomics, Inc., an economic research and consulting firm located in Los Angeles, California.

### B.     Mr. Mills' Damages Analysis

Mr. Mills submitted a 334-page report, plus exhibits, on the damages adequate to compensate Sentius for Microsoft's use of three infringing features of the accused products: background spell-checking, background grammar-checking and smart tags. He conducted a reasonable royalty analysis using the *Georgia-Pacific* factors.

For background spell-checking and background grammar-checking, Mr. Mills' analysis has two main parts relevant here.

3

1  [REDACTED] According to the Court's analysis, no

2  less than $24.6 million of the total damages award is attributable to Outlook, as opposed to

3  Money (which is not accused here).  Mr. Mills used the Court's analysis to determine the portion

4  of the settlement agreement that was attributable to Outlook. [REDACTED]

5  [REDACTED]

6  [REDACTED]

7  [REDACTED]

8  [REDACTED]

9  [REDACTED]

10 [REDACTED]

11 [REDACTED]

12 [REDACTED]

13 [REDACTED]

14 [REDACTED]

15      Second, relying on a survey conducted by Sentius' survey expert, Dr. Wecker, Mr. Mills

16 drew guidance from an "Income Approach" to valuation, which estimates the incremental profits

17 that Microsoft would stand to lose if it were to remove the accused spell checker and grammar

18 checker from the accused products. [REDACTED]

19 [REDACTED]

20 [REDACTED]

21 [REDACTED]

22 [REDACTED]

23 [REDACTED]

24 [REDACTED]

25 [REDACTED]

26 [REDACTED]

27 [REDACTED]

28

4

1

2

3

4

5

6

7

8    That said, the comparable license and income approaches are

9    analytically distinct, but both confirmed each other.

10    Finally, for smart tags, Mr. Mills drew guidance from a litigation settlement license

11    between Microsoft and Arendi involving smart tags, again relying on Dr. Madisetti's conclusion

12    that the licensed Arendi technology (smart tags) is comparable to the technology of the '731 and

13    '633 patents as they relate to smart tags. Drawing on that agreement, he derives a $.03 per-copy

14    royalty rate.

15    ## II.    LEGAL STANDARD

16    In evaluating expert testimony in response to a *Daubert* motion, the critical prerequisite is

17    that "the methodology . . . [be] sound." *Golden Bridge Tech. v. Apple Inc*., Case No. 5:12-cv-

18    04882-PSG, slip op. at 7 (N.D. Cal. May 18, 2014). "The inquiry into admissibility of expert

19    opinion is a 'flexible one,' where shaky 'but admissible evidence is to be attacked by cross

20    examination, contrary evidence, and attention to the burden of proof, not exclusion.'" *Emblaze*

21    *Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2014 WL 2889764, at *3 (N.D. Cal. June 25, 2014)

22    (quoting *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010)).   "Under *Daubert*, the district

23    judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule

24    702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give

25    that testimony." *Id.* (quoting *Primiano*, 598 F.3d at 564).

26    "That the gatekeeping role of the judge is limited to excluding testimony based on

27    unreliable principles and methods is particularly essential in the context of patent damages."

28

5

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014).  The Federal Circuit "has recognized that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are for the jury."  *Id.* (quotations omitted); *see also i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 852 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility").

### III.   ARGUMENT

**A.    Mr. Mills Properly Relied on the Lucent and Arendi Agreements**

**1.    Mr. Mills Relied on the Lucent Agreement, Not the JMOL**

Microsoft's headline argument is a red-herring: Microsoft protests that Mr. Mills does not identify any judicial authority for relying on a judicial decision in another court in a hypothetical negotiation. Motion at 7.  But this is a misunderstanding:

Microsoft strangely criticizes Sentius for making this conservative

assumption (using $24.6 million rather than ██████ , without addressing or noticing the reason it was made.

Even assuming that Mr. Mills relied on Judge Hoff's decision for more than a limited purpose (which he did not), Microsoft does not identify any reason why that would be inappropriate.   Assuming the Arendi and Lucent patents and technology are comparable (discussed below), Judge Hoff was looking at the exact same question that Mr. Mills needs to answer about the outcome of a hypothetical negotiation.  Assuming Judge Hoff's (and the jury's) analysis was correct, that would seem to be an ideal place to look to determine how hypothetical negotiation would turn out.

### 2.      Mr. Mills Properly Relied on the Arendi Litigation Settlement

In its effort to exclude reference to the Arendi litigation settlement, Microsoft attempts to draw a bright-line rule that litigation settlement agreements are inadmissible for *Georgia-Pacific* analyses, while ignoring clear authority to the contrary.  The Arendi patents licensed to Microsoft relate to the smart tags feature that is included in many Microsoft products.[4]   Dr. Madisetti testified that the technology of Arendi patents is comparable to the technology of the Sentius patents as they are used for smart tags. Mr. Mills uses the Arendi patents only to assess damages relating to smart tags.

Microsoft's bright-line argument against the use of litigation settlements is inconsistent with the Federal Circuit's decision in *ResQNet.com*, which noted that "the most reliable license in the record arose out of litigation." 594 F.3d 860, 872 (Fed. Cir. 2010).  In one of the primary cases relied upon by Microsoft, Judge Koh, citing *ResQNet.com*, permitted a damages expert to rely on a litigation settlement agreement, noting that "the Federal Circuit has found that, in certain circumstances, the most reliable license in the record can be one that arose out of litigation." *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *10 (N.D. Cal. Apr. 16, 2014), citing

_____

██████████████████████████████████████████████████████████
███████████████████████████████████████████████

*ResQNet.com*, 594 F.3d at 872 ("the most reliable license in this record arose out of litigation"). Microsoft surprisingly omits mention of this legal principle in its motion.

Here, as in *ResQNet.com*, the most reliable license in the record for smart tags is the Arendi license.  That license arose out of litigation in which Arendi accused Microsoft of infringing its patents through smart tags and Dr. Madisetti testified that the technology of the Arendi and Sentius patents are comparable insofar as they relate to smart tags. Notably, Microsoft does not identify any other license that it claims is more reliable and in fact has consistently denied that there are <u>any</u> comparable licenses.

Outside *GNPE* – which approved the use of a litigation license – Microsoft cites a series of cases that pre-date *ResQNet* or that are from other jurisdictions to support the proposition that litigation licenses are inadmissible. Motion at 7-10.  Post-*ResQNet*, the Federal Circuit and Courts in this Circuit recognize that litigation settlements can be pertinent to reasonable royalties.  *In re MSTG, Inc.,* 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties."); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *7 (N.D. Cal. Aug. 22, 2013), appeal dismissed (Mar. 18, 2014) (denying motion to exclude settlement agreement and holding that "Under ResQNet, there is no basis to prevent Synopsys from using a comparable license like the Axiom settlement agreement amount to assess damages.").

Microsoft attempts to distinguish *ResQNet* because the two settlement agreements in *ResQNet* concerned the patents-in-suit and *ResQNet* was a bench trial, where jury confusion was not an issue. Neither distinction matters.  Neither *GNPE* nor *Dynetix* stated that the licenses had to involve the same patents-in-suit: *GNPE* stated that the party espousing litigation licenses "must only show that [its expert's] consideration of [the] patent litigation settlements is sufficiently reliable to be admissible under *Daubert*," 2014 WL 1494247, at *9;[5] *Dynetix* stated that the

---

[5] It is difficult to decipher what conclusions the GNPE Court drew about similarities of the specific licenses at issue in that case because the relevant passages are redacted in that decision. However, the Court acknowledged that litigation licenses can clearly be used if they are the "most comparable" licenses in the record. 2014 WL 1494247, at *9.

1    relevant inquiry was whether the licenses were "comparable," not whether they were from the

2    same suit. 2013 WL 4537838, at *7.  Similarly, *GNPE* was a jury trial and *Dynetix* would have

3    been a jury trial had the case proceeded to trial.  The *ResQNet* Court concluded that a settlement

4    agreement was "the most reliable license in this record."  594 F.3d at 872. That is precisely the

5    case here.

6         While Microsoft does not seek to preclude reliance on the Lucent agreement – presumably

7    because it does not recognize that Mr. Mills relied on the Lucent agreement – the same

8    considerations establish its admissibility.  Dr. Madisetti testified that the Lucent agreement is

9    technically comparable to the Sentius patents insofar as they relate to background spell- and

10   grammar-checking.  There is no more comparable license in the record and Microsoft has

11   repeatedly denied that any license is comparable. *Compare Interwoven, Inc. v. Vertical Computer*

12   *Sys.*, No. CV 10-04645 RS, 2013 WL 3786633, at *11 (N.D. Cal. July 18, 2013) (permitting use

13   of settlement agreements, in spite of defendants' arguments that the agreements were not

14   sufficiently comparable either technologically or economically, where there was no evidence that

15   any license for the exact patents-in-suit was negotiated but not considered) *with LaserDynamics,*

16   *Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012) (excluding comparisons to

17   existing licenses where expert had ignored many licenses expressly for the patent in issue in favor

18   of a license somewhat removed from the relevant technology).  Further, "the fact that a license is

19   not perfectly analogous generally goes to the weight of the evidence, not its admissibility."

20   *Ericsson, Inc. v. D-Line Sys., Inc.*, Nos. 2013-1625, -1631, -1632, -1633, -- F.3d --, 2014 WL

21   6804864, at *20 (Fed. Cir. 2014).

22   ████████████████████████████████████

23   ████████████████████████████████████

24   ████████████████████████████████████

25   ████████████████████████████████████

26   ████████████████████████████████████

27   ████████████████████████████████████

28

9

1

2

3

4

5

6

7  Based on these similarities, Mr. Mills determined that the parties would very likely consider

8  Microsoft's settlement with Lucent at the hypothetical negotiation.

9      Moreover, similar to *GPNE*, Mr. Mills does not rely solely on the Lucent license, but

10 rather uses the income approach (along with all the other *Georgia-Pacific* factors) to cross-check

11 the results of the comparable license analysis.[6]

12     Microsoft also argues that some courts have cautioned that admission of "evidence of

13 settlement agreements with third parties would 'invite a mini-trial on similarities and differences

14 in the facts regarding the 'same' claims against other defendants to determine the value of the

15 claim in the case at hand." Motion at 10 (quoting *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d

16 762, 767 -768 (N.D. Ill. 2010)).  Leaving aside that *Abbot Labs* permitted the use of a settlement

17 agreement, *id.*, Microsoft does not identify what "mini-trial on similarities and differences" it

18 thinks would be occasioned by using the Arendi (or Lucent) agreements.  In fact, Microsoft's

19 30(b)(6) witness designated on the topic of those agreements could not identify any factual issues

20

21

22

23

24 _____

25 [6] In *GPNE*, the Court noted that "five facts" counseled against granting GPNE's motion to exclude the testimony, including that the expert "only relies on the GPNE settlement licenses to check the reasonableness of his royalty

26 calculation."  2014 WL 1494247, at *10.  The *GPNE* Court did not suggest that any the five factors were necessary or sufficient, and acknowledged that the inquiry was fact-specific, but Mr. Mills' reliance on other analyses besides the Lucent license confirms the appropriateness of allowing him to rely on the Lucent license.

27

28

relevant to the Lucent or Arendi licenses or negotiations that would make them different than this case.[7]

Finally, Microsoft ignores Federal Circuit authority when it argues that permitting Mr. Mills to testify based on the *Arendi* settlement would "contravene both the letter and the spirit of Federal Rule of Evidence 408." Motion at 10-11.  In *In re MSTG, Inc.*, the Federal Circuit held that "settlement negotiations related to reasonable royalties and damage calculations are not protected" by a Rule 408 settlement privilege. 675 F.3d 1337, 1348 (Fed. Cir. 2012).  Because the Court recognized that Rule 408 directly addresses "the admissibility of settlements and settlement negotiations," the same ruling applies to settlement agreements as to settlement negotiations.  The Court explicitly acknowledged that Rule 408 does not bar settlement agreements for reasonable royalty analyses, noting that Federal Circuit "cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties." *Id.* Nor would use of the settlement agreement here unduly chill parties from reaching settlements – Courts commonly use litigation settlements and no thumb will be put on the scale by allowing that here.

### 3.   Mr. Mills Properly Converted the Lump Sum Values

Microsoft argues that Mr. Mills impermissibly converted the lump-sum values in the Lucent JMOL and the Arendi settlement, but ignores the case law that permits that conversion in similar circumstances.  In *Fujitsu Ltd. v. Belkin Intern., Inc.*, for example, the Court denied a motion to exclude the patentee's damages expert's testimony that based a running royalty on prior

[7]

11

lump-sum license agreements because the expert provided some rationale for how the lump-sum rate was relevant to determining a running-royalty rate, and therefore the accused infringer's challenges to the testimony went to its weight not its admissibility. No. 10–CV–03972–LHK, 2012 WL 5835741, *2-*3 (N.D. Cal. Nov. 16, 2012), citing *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1330 (Fed. Cir. 2009) ("For a jury to use a running-royalty agreement as a basis to award lump sum damages . . . *some basis for comparison must exist in the evidence presented to the jury*." (emphasis added by *Fujitsu* Court)).[8]

Furthermore, all of these facts were known by both Lucent and Microsoft when they entered into their settlement agreement.

Courts have accepted experts' use of lump sum agreements, and converting the payment to a running royalty in similar circumstances. *See e.g.*, Order, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, Case No. 2:06-CV-348, January 19, 2011; Order Granting in Part and Denying In

---

[8] As the *Fujitsu* Court explained, in *Lucent,* the running royalties did not constitute substantial evidence in support of the verdict because "the jury had almost no testimony with which to recalculate in a meaningful way the value of any of the running royalty agreements to arrive at the lump-sum damages award." *Id.*

Part Defendants' *Daubert* Motion to Exclude Plaintiff's Damages Experts, *Multimedia Patent Trust v. Apple, Inc.*, Case No. 10-CV-2618 H (KSC), 2012 WL 5873711, (S.D. Cal. November 20, 2012); and Order Granting in Part and Denying In Part HTC's Motion to Exclude the Revised Expert Opinions of Joseph Gemini, *DataQuill Limited v. High Tech Computer Corp.*, Case No. 08-CV-543 IEG (BGS), 2012 WL 1284381, (S.D. Cal. April 16, 2012).

### 4.   The Lucent Patent Is Technically Comparable

For this reason alone, this portion of the motion should be denied.   *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088 (N.D. Cal. 2006) (denying motion for new trial where defendant argued that the court improperly permitted one expert to rely on another expert's test results, in part because defendant never met its burden of challenging the other expert's methodology in its rebuttal case).

---

[9] Ard Decl., Ex. C (Infringement Expert Report of Dr. Vijay K. Madisetti, September 8, 2014, Section XII (Review of Other Licensed Patents)).

13

1

2 [redacted] This provides more than the "discernible link to the claimed

3 technology" that Microsoft claims is lacking. Motion at 13.

4 Microsoft does not cite, criticize, or seek to exclude Dr. Madisetti's testimony on this, but

5 criticizes a summary given by Mr. Mills.  Microsoft complains that Mr. Mills' summary of Dr.

6 Madisetti's conclusions is "unsupported" but it fails to consult the expert report that supports the

7 conclusion.  Experts may of course rely on other experts and Microsoft's decision not to seek to

8 exclude Dr. Madisetti's testimony is strange but telling.  *See Accessories Marketing, Inc. v. Tek*

9 *Corp.*, No. C 11-4773 PSG, 2013 WL 1409887, at *1 (N.D. Cal. April 2, 2013) ("experts may

10 rely on the opinion of other experts to formulate their opinions") (citation omitted).

11 Microsoft's next series of complaints are bizarre.  Microsoft states the relevant inquiry for

12 comparability is the "claimed inventions" of the Lucent and Sentius patents, not the "features

13 accused of infringement."  Motion at 14.  But Microsoft criticizes Mr. Mills for acknowledging

14 differences in the <u>accused features</u> (date-picker versus spell-check) in response to questions posed

15 of him by Microsoft's counsel at a deposition.  Under Microsoft's own analysis, this should be

16 irrelevant.  Worse still, Microsoft misquotes Mr. Mills' report to generate the supposed confusion

17 that is Microsoft's own making. [redacted]

18

19

20

21 While Mr. Mills clearly stated that the claimed <u>invention</u> in the Lucent patent related to word

22 processing, Microsoft misquotes the report by characterizing it to say that the "date-picker <u>feature</u>

23 at issue in *Lucent*" was directed to word processing.  Motion at 14 (emphasis added).

24

25

26

27

28

14

To complete the bizarre critique, Microsoft accuses Mr. Mills of backtracking on a statement he did not make and that Microsoft agrees would be irrelevant anyway – namely, a statement about the technical comparability of the accused features of the Lucent and Sentius litigation.

The ultimate issue for the jury to decide is whether the Lucent and Sentius patents are sufficiently comparable to permit a comparison on the license. On *Daubert*, the standard is much lower.  "Here, whether these licenses are sufficiently comparable such that [the patentee's] calculation is a reasonable royalty goes to the weight of the evidence, not its admissibility." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014); *accord ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the … license agreements as well as any failure on the part of [the damages] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").   For *Daubert*, the issue is whether Mr. Mills' analysis of comparable licenses, resting in part on Dr. Madisetti's expertise, used "reliable principles and methods, and reliably applied them to sufficient facts and data on the record to calculate the overall value of the" Sentius patents.  *Apple*, 757 F.3d at 1326.  That low standard is clearly met here.[11]

Most of the lead cases cited by Microsoft reach the same result. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (the Court permitted the expert to use licenses "drawn to related technology" that were "not immune from challenge," noting that "all of the other differences that [defendant] complains of were presented to the jury, allowing the jury to fully evaluate the relevance of the licenses. No more is required in these circumstances."); *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1211 (Fed. Cir. 2010) (While there were several differences between the single license relied upon and the hypothetical negotiation, most notably that Finjan did not compete with the licensee as it did with the defendant in the case, and that the license involved a lump sum rather than a running royalty, the Court affirmed the damages award

---

[11] Microsoft cites the wrong line of cases.

based on that license because "[those] differences permitted the jury to properly discount the ... license.").[12]

The two cases cited by Microsoft that criticized the use of licenses do not compel a different result, for the reasons explained in *Virnetx*. In *ResQNet,* the Court faulted the district court for relying on licenses with "no relationship to the claimed invention," nor even a "discernible link to the claimed technology." 594 F.3d at 870. And in *Lucent,* the Court rejected reliance on licenses from "vastly different situation[s]" or where the subject matter of certain agreements was not even ascertainable from the evidence presented at trial. 580 F.3d at 1327–28. As in *Virnext*, the Lucent license is admissible because it "bear[s] a closer relationship to the hypothetical negotiation that would have occurred." 767 F.3d at 1330.

### 5. Mr. Mills Accounted for Differences in Arendi Settlement

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

Microsoft first complains that Mr. Mills did not try to qualify a damages range in the *Arendi* litigation, but Microsoft cites no case or authority for the proposition that a damages expert must try to quantify damages range in other litigation. Microsoft suggests that Mr. Mills' deposition testimony also states that he did not "attempt to account for the differences between the issues there and those that would surround a hypothetical negotiation here." Motion at 15. But that grossly distorts his testimony:  in the cited passages, he simply said he did not try to figure out a damages range for the Arendi litigation or seek any facts that would help him do so. Mr. Mills Report contains a 10 page discussion that "attempts to account for the differences" and similarities between the issues in Arendi and here.

---

[12] Further, to the extent Microsoft relies on *LecTec Corporation v. Chattem, Inc.*, No. 5:08-cv-130, 2014 WL 5163421 (E.D. Tex. Jan. 4, 2014), the case is inapposite insofar as it analyzes lump sum settlements that do not provide any per-unit royalty rate.  Here, there is no risk of juror confusion and unfair prejudice because the lump sum settlements do provide a per-unit royalty rate.

1     Microsoft next complains that "Mr. Mills placed no value on, and did not specifically

2   account for the effects of, Arendi's European injunction threat." ████████████████████

3   ████████████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████ Mr. Mills also accounted

7   for the value of foreign patent rights by calculating an effective royalty rate based upon

8   worldwide sales of Microsoft products licensed under the Arendi settlement, which resulted in a

9   significant downward adjustment.

10     Microsoft finally complains that Mr. Mills did not attempt to value the other Arendi

11   patents that were asserted in that case.  But Microsoft's 30(b)(6) witness acknowledged that he

12   did not know whether they had any value[14] and Mr. Mills testified that he looked to that

13   testimony in preparing his report.  And Microsoft has not presented any evidence that these

14   additional patents brought any value beyond those examined by Dr. Madisetti.

15         **6.    Mr. Mills Accounted for Economic Differences in the Lucent
             Settlement**

16   ████████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████ Additionally, as discussed above, nearly all of

21   these factors are the same across the hypothetical negotiation and the Lucent settlement and

22   _____

23   [13] ████████████████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   █████████████████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████████████

28

warrant no adjustment.  Microsoft does not even reference that discussion, nor explain why Mr. Mills' analysis of any particular *Georgia-Pacific* factor is irrelevant.

Furthermore, all the differences Microsoft cites in this section are either irrelevant or addressed by Mr. Mills:

- Microsoft states that Lucent was a multi-billion dollar corporation with countless products, while Sentius had no products and was focused on monetizing its intellectual property.  As Mr. Mills discusses, Lucent did not compete with Microsoft, and licensing the '356 patent would not amount to Lucent licensing away a competitive advantage.

- Microsoft states that Lucent employed over 76,000 people while Sentius had one employee.  Microsoft does not say what impact (if any) the number of people employed by a licensor would have on the outcome of a hypothetical negotiation.  This fact is irrelevant.

- Microsoft states that Lucent had a 29,000+ patent portfolio, while Sentius had only a handful of patents.  This fact is irrelevant because Microsoft did not negotiate a license to Lucent's entire patent portfolio—the agreement settled litigation involving <u>one</u> Lucent patent (the '356 patent).

- Microsoft and Lucent were engaged in another patent infringement lawsuit filed by Lucent.  This is irrelevant: the settlement agreement between Lucent and Microsoft only settled litigation surrounding Microsoft's infringement of the '356 patents—it did not settle any other litigation between Microsoft and Lucent.  Additionally, the Court's damages award to Lucent was determined based upon Microsoft's use if the '356 patent, and no other patents were considered in the Court's ruling.

**B.     <u>Mr. Mills' "Income Approach" Is Sound</u>**

Microsoft's claim that the "income approach" alternative theory is wholly derivative of the Lucent effective royalty rate is incorrect.  This analysis was completed independent of the Lucent effective royalty rate.  Indeed, the Wecker Survey (which forms the foundation of this approach) made no mention of Lucent, the '356 patent, or the date picker functionality.  The Wecker Survey was used to determine the revenue and profit Microsoft would stand to lose if it replaced the accused spell and grammar check functionality with the next best and non-infringing alternative that was available to it.

18



Microsoft does not identify a single factor that Mr. Mills should have considered but failed to consider. Notably, Microsoft does not say what it believes the proper relative bargaining power is. Microsoft complains that the factors considered "provide[] no quantification," but it does not suggest any factors that would give a precise quantification of their bargaining power. Nor does Microsoft cite any case excluding an expert because the factors he considered do not provide a precise quantification of the parties relative bargaining power.

### C.   Mr. Mills Did Not Need To Measure Damages By Instances of Usage

Microsoft's claim that damages for method claims must be tied to actual instances of use is contrary to the case law and the common sense perspective of a hypothetical negotiator. This Court rejected the same argument recently:

[15]



> [The alleged infringer] does not cite to a single case suggesting that the royalty base of a hypothetical negotiation must be limited to units deemed to directly infringe. Such a rule makes especially little sense in cases like this one, where indirect infringement by the defendant is alleged and the bulk of the direct infringement alleged is that of third parties.

*Emblaze Ltd. v. Apple Inc.*, No. 5:11-CV-01079-PSG, 2014 WL 2889764, at *6 (N.D. Cal. June 25, 2014); *accord Chiuminatta Concrete Concepts, Inc. v. Cardinal Indusies., Inc.*, 1 Fed. Appx. 879, 884 (Fed. Cir. 2001) (rejecting implication that patentee "is required to demonstrate a one-to-one correspondence between units sold and directly infringing customers"). It is not surprising that Microsoft fails to cite a single case for the proposition that there must be one-to-one correspondence between damages and instances of indirect infringement.[16]

Sentius's claim, which is that every accused Microsoft device is capable of infringement, without any modification or programming by the end user, and in combination with circumstantial evidence of demand and use, is sufficient to support a claim for damages for all units sold. *Chiuminatta Concrete Concepts, Inc.*, 1 Fed. Appx. 879.

Further, with respect to the comparable license analysis, Mr. Mills is making an apples-to-apples comparison to *Lucent*, which also involved method claims and did not base damages on instances of use.

### D.   Microsoft's Profits Are Relevant Under *Georgia-Pacific*

Microsoft seeks to exclude any mention of the profitability of Microsoft as a whole and of the Office business specifically, but omits to discuss the stated reasons these numbers are mentioned in the Mills Report.

---

[16] The only cases Microsoft cites stand for the unremarkable proposition that method claims are not infringed until the claimed method is performed.  The cases do not say or suggest that damages for method claims must be measured by actual instances of performance.

20

1 ███████████████████████████████████████████

2 ███████████████████ Without this information, there is no way of knowing that the accused

3 features are an important part of Microsoft's overall business and the impact that fact would have

4 on Microsoft's approach to the hypothetical negotiation.   In addition, to the extent that Office

5 profitability metrics are used in the "income approach" analysis, they are critical to the damages

6 analysis and Microsoft gives no reason to exclude them.

7      Microsoft also seeks to exclude mention of Microsoft's acquisition, in 1987, of

8 Forethought Inc., the predecessor of PowerPoint, for $14 million and a valuation of certain of

9 Sentius' intellectual property performed by VRC.  Sentius consents not to mention either of these

10 during trial.

11 ### IV.   **CONCLUSION**

12      Microsoft's Daubert motion to exclude the report and testimony of Robert Mills should be

13 denied in its entirety.

14 Dated:  December 30, 2014

15                 SUSMAN GODFREY L.L.P.

16            By:  *s/Seth Ard*

17              Steven G. Sklaver (SBN 237612)
             Meng Xi (SBN 280099)

18              Krysta Kauble Pachman (SBN 280951)
             SUSMAN GODFREY L.L.P.

19              1901 Avenue of the Stars, Suite 950
             Los Angeles, CA 90067

20              Telephone:  (310) 789-3100
             Email:  ssklaver@susmangodfrey.com

21              Email:  mxi@susmangodfrey.com
             Email:  kpachman@susmangodfrey.com

22              Max L. Tribble (*Pro Hac Vice*)

23              Vineet Bhatia  (*Pro Hac Vice*)
             SUSMAN GODFREY L.L.P.

24              1000 Louisiana, Suite 5100
             Houston, TX 77002

25              Telephone:  (713) 651-9366
             Email: mtribble@susmangodfrey.com

26              Email: vbhatia@susmangodfrey.com
             Email: sseth@susmangodfrey.com

27

28         21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Seth Ard
(Appearance *Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone:  (212) 336-8330
Email: sard@susmangodfrey.com

Sandeep Seth (SBN 195914)
SETH LAW OFFICES
Two Allen Center
1200 Smith St., Suite 1600
Houston, TX 77002
Telephone: 713-353-8847
Email: ss@sethlaw.com

Attorneys for Plaintiff Sentius International, LLC

22