1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SENTIUS INTERNATIONAL, LLC, | ) | Case No. 5:13-cv-00825-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING-IN-PART** |
| | ) | **DEFENDANT'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT OF NO** |
| | ) | **INFRINGEMENT** |
| MICROSOFT CORPORATION, | ) | |
| | ) | **(Re: Docket No. 129)** |
| Defendant. | ) | |
| | ) | |

The humble squiggle (or tilde) plays a rather prominent role in the worlds of mathematics and computer science. In symbolic logic the squiggle negates that which it follows. In Unix operating systems, the squiggle represents a home directory. Quake fans will recall that the squiggle launches the command line interface. The squiggles at issue in this case are the red, blue and green squiggles that indicate spelling and grammar errors in various applications produced by Defendant Microsoft Corporation.

Plaintiff Sentius International LLC charges that the functionality surrounding these squiggles directly and indirectly infringes United States Patent Nos. RE40,731 and RE43,633. Sentius further charges that Microsoft's infringement was willful. Microsoft naturally disagrees. While the parties' dispute about direct infringement presents issues of material fact that must be resolved by a jury, no reasonable jury could find that Microsoft is liable for either pre-suit induced

1

1    infringement or willful infringement.  The motion for summary judgment therefore is GRANTED,

2    but only IN PART.

3                                              I.

4         Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant

5    shows that there is no genuine dispute as to any material fact and the movant is entitled to

6    judgment as a matter of law."[1]  At the summary judgment stage, the court "does not assess

7    credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

8    for trial."[2]  Material facts are those that may affect the outcome of the case.[3]  A dispute as to a

9    material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

10   the nonmoving party.[4]

11        "To establish infringement of a patent, every limitation set forth in a claim must be found in

12   an accused product or process . . . .  Thus, [an] accused infringer [] is entitled to summary

13   judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth

14   evidence to support a finding that a limitation of the asserted claim was met."[5]  "Although not

15   directly infringing, a party may still be liable for inducement or contributory infringement of a

16   method claim if it sells infringing devices to customers who use them in a way that directly

17   infringes the method claim.  Liability for either active inducement of infringement or for

18   contributory infringement is dependent upon the existence of direct infringement."[6]

19

20   _____

21   [1] Fed. R. Civ. P. 56(a).

     [2] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

22
     [3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that
23   might affect the outcome of the suit under the governing law will properly preclude the entry of
     summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").
24
     [4] *See id.*
25
     [5] *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989) (citations omitted).
26
     [6] *AquaTex Indus. v. Techniche Solutions*, 419 F.3d 1374, 1379-80 (Fed. Cir. 2005) (citations
27   omitted).

28                                              2
     Case No. 5:13-cv-00825-PSG
     ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
     NO INFRINGEMENT

**United States District Court**
For the Northern District of California

1    To establish a claim for induced infringement, "a patent holder must prove that once the

2    defendants knew of the patent, they actively and knowingly aided and abetted another's direct

3    infringement. . . . The mere knowledge of possible infringement by others does not amount to

4    inducement; specific intent and action to induce infringement must be proven."[7]

5    "[T]o establish willful infringement, a patentee must show by clear and convincing

6    evidence that the infringer acted despite an objectively high likelihood that its actions constituted

7    infringement of a valid patent.  The state of mind of the accused infringer is not relevant to this

8    objective inquiry.  If this threshold objective standard is satisfied, the patentee must also

9    demonstrate that this objectively-defined risk (determined by the record developed in the

10   infringement proceedings) was either known or so obvious that it should have been known to the

11   accused infringer."[8]

12   Sentius alleges that Microsoft infringes claim 96 of the '731 patent and claims 62, 64, 70,

13   146, 148, 149, 154 and 164 of the '633 patent.[9]  The patents describe a method of indexing terms

14   and phrases in a document and then storing particular information about the terms and phrases in a

15   "look-up table" should a user want more detailed information about them.[10]  For example, while

16   looking through a document written in Japanese a user would be able to find English translations of

17   Japanese characters, or, as another example, the term "Golden Gate Bridge" might be linked to

18   historical information or pictures.[11]  But before the user actually requests or commands the

19   program to display the English translation, the document has already been parsed "to identify terms

20   or phrases of interest."[12]  The beginning and ending locations of the terms or phrases are found

21

22   [7] *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

23   [8] *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc) (internal citations omitted).

24   [9] Docket No. 129 at 6; Docket No. 151-4 at 4.

25   [10] Docket No. 151-4 at 2-3.

26   [11] *See* Docket No. 129 at 4.

27   [12] Docket No. 151-4 at 2-3.

28

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

*United States District Court*
For the Northern District of California

relative to the number of character spaces from the beginning of the document and recorded in a look-up table.[13]  Each entry in the look-up table has linked information to the corresponding term or phrase in the document.[14]

When a user wishes to access more information, such as by right-clicking on a term or phrase of interest, the location is ascertained and, via the corresponding starting and ending locations, it is determined whether there is relevant information in the look-up table that pertains to the user's request.[15]  If the requested area corresponds to a location in the look-up table, then the linked information is used to retrieve the external reference information and is displayed in a pop-up window for the user.[16]

Claim 96 of the '731 patent is illustrative.  It recites:

96. A method for linking textual source material to external reference materials for display, the method comprising the steps of:

> determining a beginning position address of textual source material stored in an electronic database;
> cutting the textual source material into a plurality of discrete pieces;
> determining a starting point address and an ending point address of at least one of the plurality of discrete pieces based upon the beginning position address;
> recording in a look up table the starting and ending point addresses;
> linking at least one of the plurality of discrete pieces to at least one of a plurality of external reference materials by recording in the look-up table, along with the starting and ending point addresses of the at least of the plurality of discrete pieces, a link to the at least one of the plurality of external reference materials, the plurality of external reference materials comprising any of textual, audio, video, and picture information;
> displaying an image of the textual source material;
> selecting a discrete portion of the displayed source material image;
> determining a display address of the selected discrete portion;
> converting the display address of the selected discrete portion to an offset value from the beginning position address;

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

1

comparing the offset value with the starting and ending point addresses
recorded in the look-up table to identify one of the plurality of discrete
pieces;

2

selecting one of the plurality of external reference materials corresponding to
the identified one of the plurality of discrete pieces;

3

retrieving the selected one of the plurality of external reference materials using
a recorded link to the selected one of the plurality of external reference
materials; and

4

5

displaying the retrieved external reference material.[17]

6

Sentius claims infringement by various spell check and grammar check functions in the

7

"2013, 2010 and 2007 versions of Microsoft Word, Outlook, PowerPoint, OneNote, and Publisher

8

for Windows, and the 2011 versions of Microsoft Word, Outlook, and PowerPoint for

9

Macintosh."[18]   These functions are: (1) the background spell check function in each accused

10

product, which identifies portions of text that may be misspelled with a red squiggly underline;[19]

11

(2) the background grammar check function for Word and Outlook—in both Windows and

12

Macintosh versions—which identifies portions of text that may be grammatically incorrect with a

13

green or blue squiggly underline;[20] and (3) the "additional actions" function of Word, Outlook and

14

PowerPoint in Windows, which allows for a range of specific actions for particular types of text.[21]

15

In each function, if something is misspelled or grammatically incorrect, then the starting and

16

ending locations of the word or phrase are recorded relative to the number of character spaces from

17

the beginning of the document and are assigned a binary value of 1.[22]   All other portions (i.e.

18

correctly spelled and grammatically correct portions) are assigned a binary value of 0.[23]   Without

19

user input, such as a right-click, there is no link to potential corrections and it is unknown if there

20

21

[17] Docket No. 1 at Exh. C.

22

[18] Docket No. 151-4 at 2-3.

23

[19] *Id.*

24

[20] *Id.*

25

[21] *Id.*

26

[22] *See* Docket No. 129 at 1.

27

[23]*Id.*

28

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT

1    are any.[24]  If a user right-clicks on the identified portion, a new search is performed across the

2    entire spelling dictionary or complete set of grammatical rules to identify potential corrections.[25]

3    Instead of creating a look-up table with external information already entered prior to user input,

4    Microsoft's background spell check and grammar check simply mark the location of portions of

5    text that are misspelled or grammatically incorrect until the user issues a command—such as by

6    right clicking—at which point a search is initiated.

7        Before filing this suit almost two years ago, Sentius contacted Microsoft several times.[26]

8    The parties met both in 1998 and in 2003.[27]  During the 1998 meeting, they discussed and

9    subsequently shared literature pertaining to some of Sentius's patent-pending technologies.[28]

10   During the 2003 meeting, they again discussed the technologies—now patented—and

11   subsequently, two Microsoft employees downloaded and registered the RichLink Author tool off

12   the web.[29]

13       In January 2014, the court issued a claim construction order.  The court held, among other

14   things, that "a link to the at least one of the plurality of external reference materials/links to the

15   external reference materials" means "a pointer" or "pointers" "to data or information or the

16   location of data or information that is external to the source material."[30]

17       Arguing that their products include no such pointer, and that it did not know of the patents-

18   in-suit before this suit, Microsoft now moves for summary judgment of no direct, no pre-suit

19   induced or willful infringement.

---

20   [24] *Id.*

21   [25] *Id.*

22   [26] Docket No. 129 at 7; Docket No. 151-4 at 6.

23   [27] *Id.* The '731 and '633 reissue patents were not issued until 2009 and 2012, respectively; the '720
24   patent was pending in 1998 and issued by 2003.

25   [28] *Id.*

26   [29] *Id.*

27   [30] Docket No. 66 at 2.

28

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT

United States District Court
For the Northern District of California

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

Beginning with the issue of direct infringement, the parties do not dispute that the asserted patents claim "a process for creating a 'look-up table,' which stores the offset for the start and end of each word, along with 'links' to external content associated with the word."[31]  Nor do they dispute that the court has construed the claim language "linking" to mean "a pointer to data or information or the location of data or information that is external to the source material."[32]  There also is no dispute that the "fError" flag—a specific code contained in Microsoft's spelling and grammar check feature—merely stores a binary value and that the flag alone does not identify potential corrections.[33]  Corrections are only identified once a user right-clicks the marked word or phrase.[34]

What they dispute is whether the flag itself is a pointer as contemplated by this court's claim construction.  Microsoft contends that the fError flag is not a pointer because it simply identifies a binary "state" as to whether something is true or false and does not link to "external reference materials."[35]  Sentius responds that Microsoft has imposed additional limitations by

---

[31] Docket No. 129 at 3.

[32] Docket No. 66 at 2; Docket No. 129 at 11.

[33] *See* Docket No. 129 at 11.

[34] *See id.*

[35] *See id.* at 12–14.  Microsoft also argues that there are "fundamental differences" in the 2007, 2010 and 2013 versions of Microsoft Office and the court should grant summary judgment on the 2010 and 2013 versions of Microsoft Office with respect to the accused "actions functionality." *See id.* at 15; Docket No. 159 at 7.  Sentius agrees but counters that the issue has been rendered moot by Sentius's expert Dr. Vijay Madisetti in a supplemental expert report.  *See* Docket No. 151-4 at 17.  The court agrees with Microsoft that absent a judgment on the "actions functionality" in Microsoft Office 2010 and 2013, Microsoft cannot avail itself of the estoppel benefits of a clear judgment.  Summary judgment thus is granted on this discrete issue.

7

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT

United States District Court
For the Northern District of California

requiring that the link must be a direct pointer and that a distinction should not exist as to whether a pointer is direct or indirect: essentially, a pointer is a link.[36]  Both parties cite each other's experts in a fight about whether Microsoft's fError flag calls the spelling and grammar engine before the error flag value is even set.[37]  In light of the dueling expert opinions on the operation of the fError flag, a genuine factual issue exists that must be resolved by a jury.[38]

The parties also dispute whether Microsoft's employees carried out each and every step of Sentius's method claims.  To prove direct infringement of a method claim, a patent holder must show that the accused infringer—either personally or through the infringer's control—has performed all steps of the claimed method.[39]  Sentius presents (1) a Microsoft LinkedIn job posting for an employee position to test the features of Microsoft Office and (2) an internal Microsoft document that explicitly mentions testing and the spelling and grammar checkers.[40]  Alex Mogilevsky, a Microsoft software developer, testified that he has never met anyone who refuses to use the background spell checker and he cannot remember anyone ever expressing a desire to go back to the old way of checking for misspelled words.[41]  Another Microsoft employee refers to the accused background spellcheck functionality as "everybody's favorite feature" in an email.[42]  A

---

[36] *See* Docket No. 151-4 at 12.

[37] *See* Docket No. 129 at 14; Docket No. 151-4 at 11; Docket No. 159 at 2.

[38] *See House v. Bell*, 547 U.S. 518, 559–60 (2006) ("[A] court does not assess credibility or weigh the evidence [at summary judgment phase], but simply determines whether there is genuine factual issue for trial."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining a material fact as a fact that might affect the outcome of the case).

[39] *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citations omitted).  Microsoft makes an argument that there is no direct infringement under the doctrine of equivalents.  Sentius has no response.  *See* Docket No. 151-4; Docket 159 at 6.  The court will consider this issue conceded.  *See Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1383 (Fed. Cir. 2009).

[40] *See* Docket No. 151-4 at 17.

[41] Docket No. 151-94 at 30 ("I personally haven't met people who have refused to use the background spell checking.").

[42] *See* Docket No. 151-96; Docket No. 151-94 at 131-32 (confirming the statement refers to popularity of background spell check); *see also* Docket No. 151-85 at 122-24 (confirming the same).

8

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

United States District Court
For the Northern District of California

1   number of other internal Microsoft documents also discuss employees testing and using the

2   software.[43]  Whatever the shortcomings,[44] a reasonable jury could rely on this material as

3   circumstantial evidence that Microsoft indeed conducted testing of one or more of the accused

4   products.

5          Turning to Sentius's claim of pre-suit inducement, the law is well-settled that an accused

6   infringer must have had actual knowledge of the asserted patents at the time that it was allegedly

7   inducing the infringement.[45]  Sentius concedes that it never informed Microsoft about the existence

8   of the asserted patents prior to filing suit.[46]  And in spite of Sentius's arguments that Microsoft

9   should have more diligently kept tabs on the status of Sentius's pending patents, this court does not

10  see any evidence from which a reasonable jury could deduce that Microsoft nevertheless had the

11  requisite knowledge.

12         In particular, Sentius relies on case law that suggests that at the summary judgment stage, a

13  plaintiff can rely on circumstantial evidence.  As shown above, the court readily accepts that a

14  reasonable jury may rely on circumstantial evidence as much as direct evidence in minding its

15

16  [43] *See, e.g.*, Docket No. 151-98 (Internal Microsoft email describing the proofing tools "Spell
    Checker, Context Sensitive Spell Checker, Thesaurus, and Hyphenator" as "world-class writing
17  assistance tools," requesting employees to "please install the proofing tools on top of your Office
    2010 build and use them in your daily work!" and noting that "We'd like to have as many native
18  speakers of those 19 languages inside Microsoft as possible to dogfood those tools."); Docket No.
    151-100 (email between Microsoft employees re: whether background spell check is broken on the
19  dogfood build); Docket No. 102 (internal Microsoft email discussing the contextual spell checker's
    interaction with the documents prepared in Microsoft Word); Docket No. 151-104 (internal email
20  discussing a smart tag plug-in "that's tailored to MS office folks"); Docket No. 151-106 ("Jeff and
    I STRONGLY encourage everyone turn on all smart tag Recognizers in Word").
21
22  [44] *See* Docket No. 129 at 16.

23  [45] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("we proceed on the
    premise that § 271(c) requires knowledge of the existence of the patent that is infringed.  Based on
24  this premise, it follows that the same knowledge is needed for induced infringement under
    § 271(b).").

25  [46] While Sentius argues that the presentation of a single interrogatory response is insufficient to
    substantiate Microsoft's position that it had no pre-suit knowledge of the '731 or '633 patents,
26  Sentius fails to present its own evidence of Microsoft's pre-suit knowledge.  Sentius merely states
    that it will be able to "prove pre-suit knowledge of the patents by Microsoft at trial" with nothing
27  more.  *See* Docket No. 151-4 at 23.

28                                              9

findings.  But none of the cases cited by Sentius for the premise suggest that sufficient circumstantial evidence of pre-suit notice can be found in this record.  For example, in *TV Interactive Data Corp. v. Microsoft Corp.*, the patent-in-suit was attached to an Office Action during the prosecution of one of the defendant's patents, creating a question of fact as to whether the defendant had in fact seen the form and whether that would have constituted actual notice.[47]  In *Stryker Corp. v. Intermedics Orthopedics, Inc.*, the court found that the defendant had actual notice of the patent-in-suit when its patent counsel saw a drawing and reference to the patent in the Official Gazette of the PTO.[48]  And in *Great Northern Corp. v. Davis Core & Pad Co., Inc.*, the Federal Circuit found adequate notice when a third party had informed the president of the alleged infringing company that a similar product already existed that had been patented.[49]

Nothing Sentius points to comes close to the evidence considered in these cases.  The best Sentius can do is to point to the fact that Microsoft cited the '720 patent—which is not at issue in this case because it has since been invalidated—during patent prosecutions predating the current lawsuit and again cited the '720 patent as prior art in subsequent patent applications to the PTO.  But this seems to cut against Sentius rather than in its favor.  If Microsoft had knowledge of the '731 and '633 patents, it would have been nonsensical to continue to cite to the '720 patent, especially since it had been invalidated and replaced by the '731 and '633 patents.

As a last ditch effort, Sentius offers an alternative theory that knowledge of the reissue patents can reasonably be inferred from Microsoft's knowledge of the predecessor '720 patent.  Sentius cites to the reissue statute to establish that every reissued patent "shall constitute a continuation [of the original patent] and have effect continuously from the date of the original patent."[50]  But this is only the case where "the claims of the original and reissued patents are

---

[47] *See* Case No. 02-cv-02385, 2005 WL 1910929, at *2 (N.D. Cal. Aug. 10, 2005).

[48] *See* 96 F.3d 1409, 1415 (Fed. Cir. 1996).

[49] *See* 782 F.2d 159, 166-67 (Fed. Cir. 1986).

[50] 35 U.S.C. § 252.

10

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT

1  substantially identical."[51]  Here, in light of the invalidation of the '720 patent due to "nonsensical"

2  errors, nothing suggests that the predecessor patent resembled the reissue patents to constitute a

3  continuation under the statute.

4       And even minimal consideration of the only case Sentius cites to support this proposition

5  shows the insufficiency of its claim.  Sentius looks to *SynQor, Inc v. Artesyn Technologies*, in

6  which the Federal Circuit affirmed the denial of judgment as a matter of law of noninfringement

7  where circumstantial evidence led to the inference that the defendants knew about subsequent

8  patents based on their possession of documents referencing the earlier patents.[52]  But in *SynQor*,

9  the district court found that "[t]he evidence indicates a highly competitive industry in which each

10  of the [Defendants] closely followed SynQor's technology and obtained access to its products and

11  datasheets."[53]  There is no evidence that Microsoft closely followed Sentius and its technology in

12  the years leading up to the issuance of the '731 and '633 patents in 2009 and 2012.  In fact, after

13  meetings in 2003, Sentius has not alleged close contact or competition with Microsoft that would

14  suggest that Microsoft would have had any reason to know of the patents or any reason to keep up

15  with Sentius technology.

16       Finally, in order for Microsoft to have learned of the patents-in-suit so as to have been in a

17  position to willfully infringe, the patents would have had to have existed at the time that Microsoft

18  and Sentius engaged in pre-suit contact.[54]  Sentius again argues that pre-suit knowledge of the

19  reissue patents may be "inferred" due to Microsoft's knowledge of the '720 patent, by marking and

20  otherwise.  But as explained above, there is no basis for drawing such an "inference."  Similar to

21  induced infringement, willful infringement requires a finding that Microsoft was subjectively and

---

[51] *Id.*

[52] 709 F.3d 1365, 1380 (Fed. Cir. 2013).

[53] *SynQor, Inc. v. Artesyn Techs., Inc.*, Case No. 07-cv-00497, 2011 WL 3624957, at *6 (E.D. Tex. Aug. 17, 2011).

[54] *See The American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 465 (Fed. Cir. 1985).

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT

1   objectively reckless with respect *to the patents at issue*.[55]  Whether Microsoft was "reckless" with

2   respect to the predecessor '720 patent is irrelevant because (1) that patent is not asserted, and (2) its

3   claims were nonsensical and invalidated long before any of the accused products were ever

4   released.[56]

5         Post-suit, Microsoft moved for summary judgment of invalidity under the doctrine of

6   broadening reissue.[57]  While the court ultimately denied that motion, it did so on the basis of a

7   reasonable dispute about whether Sentius corrected clerical errors in the claims.[58]  Microsoft also

8   has set forth a number of good faith defenses of no infringement, as discussed above.  These kinds

9   of good-faith disputes—during the only time when Microsoft even knew of the patents[59]—preclude

10  a finding of objective recklessness as a matter of law.[60]

---

[55] *See Seagate*, 497 F.3d at 1374.   Objective recklessness may be decided as a matter of law.  *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012) ("the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review").

[56] Each of the cases Sentius relies upon pre-date *Seagate*.  *See* Docket No. 151-4 at 19.  The cases rely upon outdated notions of an "affirmative duty" to pursue information about the possibility of existing patent rights—a legal regime that no longer exists.  These cases further involved circumstances where the accused infringer did in fact discover at least one of the asserted patents. No such evidence is present in the record here.

[57] *See* Docket No. 76.

[58] *See* Docket No. 119.

[59] Because both of the reissue patents are now expired, Microsoft's alleged willful infringement could only cover a time period from February 22, 2013 (the filing of this lawsuit) to February 16, 2014 (the patents' expiration date).  That time period ended before the court ruled on Microsoft's invalidity summary judgment motion. *See id.*

[60] *Cf. Emblaze*, 2014 U.S. Dist. LEXIS 57893 at *55 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012) ("the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review")).  *See also Advanced Fiber*, 674 F.3d at 1377-78; *Tarkus Imaging, Inc. v. Adobe Sys.*, 867 F. Supp. 2d 534, 536-37 (D. Del. 2012).

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.**

Defendants' motion for summary judgment of no infringement is GRANTED-IN-PART:

- Summary judgment as to literal direct infringement is DENIED;

- Summary judgment as to direct infringement under the doctrine of equivalents is GRANTED;

- Summary judgment as to the 2010 and 2013 versions of Microsoft Office with respect to the accused "actions functionality" is GRANTED;

- Summary judgment as to pre-suit inducement is GRANTED;

- Summary judgment as to willful infringement is GRANTED.

**SO ORDERED.**

Dated: January 23, 2015

PAUL S. GREWAL
United States Magistrate Judge

13

Case No. 5:13-cv-00825-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT